# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

THE AMERICAN LEGION, AMVETS, MILITARY ORDER OF THE PURPLE HEART, VIETNAM VETERANS OF AMERICA, AND NATIONAL VETERANS LEGAL SERVICES PROGRAM,

*Petitioners,*

v.

ROBERT A. MCDONALD, IN HIS OFFICIAL CAPACITY AS SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

## PETITION FOR REVIEW
## PURSUANT TO 38 U.S.C. § 502

Pursuant to 38 U.S.C. § 502, Federal Rule of Appellate Procedure 15(a), and Federal Circuit Rule 47.12, Petitioners the American Legion, AMVETS, Military Order of the Purple Heart, Vietnam Veterans of America, and National Veterans Legal Services Program hereby petition the Court for review of portions of a final rule of the Department of Veterans Affairs ("VA") entitled "Standard Claims and Appeals Forms" (hereinafter, "Final Rule"), which was published in the Federal Register on September 25, 2014 and will become effective on March 24, 2015.  78 Fed. Reg. 65,490 (2014).  A copy of the Final Rule is attached as Exhibit A.

## JURISDICTION AND VENUE

This Court has jurisdiction over this Petition pursuant to 38 U.S.C. § 502. Section 502 provides that rules and regulations promulgated by the Secretary such as the Final Rule are subject to direct review in this Court in accordance with the Administrative Procedure Act ("APA"). *See, e.g.*, *National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*, 669 F.3d 1340, 1345 (Fed. Cir. 2012). The Petition is timely because it is being filed within the six-year statute of limitation set forth in 28 U.S.C. § 2401(a). *See Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1307 (Fed. Cir. 2008). Moreover, this Petition complies with Federal Circuit Rule 47.12(a) because it is being filed within 60 days of the Final Rule's effective date on March 24, 2015. 79 Fed. Reg. 57,660 (Sept. 25, 2014) ("This final rule is effective March 24, 2015."). *See Preminger v. Secretary of Veterans Affairs*, 632 F.3d 1345, 1353 (Fed. Cir. 2011) ("[D]ate of issuance in Fed. Cir. R. 47.12(a) means the effective date of the rule." (citing *Disabled American Veterans v. Gober ("DAV")*, 234 F.3d 682, 690 (Fed. Cir. 2000)).

## PARTS OF THE FINAL RULE
## ON WHICH JUDICIAL REVIEW IS SOUGHT

The Final Rule amends critical and longstanding aspects of the informal and non-adversarial framework enacted by Congress for adjudicating veterans' claims

and related appeals. *See* 79 Fed. Reg. 57,660-57,698 (amending 38 C.F.R. parts 3

("Adjudications"), 19 ("Board of Veterans' Appeals: Appeals Regulations"), and

20 ("Board of Veterans' Appeals: Rules of Practice")). Among other amendments,

the Final Rule (1) mandates the use of formal standardized forms to initiate and file

claims and, in most cases, appeals, *see* 79 Fed. Reg. at 57,660, 57,694-57,696

(amending, *inter alia*, 38 C.F.R. §§ 3.1, 3.155, 3.160), 57,697-57,698 (amending

38 C.F.R. parts 19-20); (2) eliminates VA's informal claim system as it has existed

for decades and replaces it with a highly formalized "intent to file" process which

is based on standardized forms, *see id.* at 57,660, 57,695-57,696 (amending, *inter

alia*, 38 C.F.R. § 3.155); and (3) severely limits the types of benefits that VA will

generally adjudicate when presented with a claim by a veteran, *see id.* at 57,672-

57,673, 57,694-57,696 (amending, *inter alia*, 38 C.FR. §§ 3.1(p), 3.155(d)(2),

3.160).

Petitioners challenge two aspects of the rulemaking and Final Rule:

1.  Effective Date of Informal Claims. For decades, veterans have been

able to initiate a claim for VA benefits in one of two ways: (a) by filing an

"informal claim"—i.e., a "communication or action[] indicating an intent to apply

for one or more benefits" that "identif[ies] the benefit sought," 38 C.F.R.

3

§ 3.155(a) (2014);[1] or (b) by filing a formal claim—i.e., a standardized application form issued by VA for the particular benefit sought. As required by statute, upon receipt of an informal claim, VA now typically sends a formal claim form to the veteran. 38 U.S.C. § 5102(a); 38 C.F.R. §§ 3.150(a), 3.155(a) (2014). If the veteran files the formal claim form within one year, then the effective date for any VA benefits awarded based on that claim can be as early as the date VA received the informal claim—as opposed to the later date of receipt of the formal claim form. 38 C.F.R. § 3.155(a) (2014). As VA recognizes, approximately half of VA's claimant population currently seeks benefits through the informal claim system. 79 Fed. Reg. at 57,661.

The Final Rule eliminates the informal claim system entirely. As a result, under the Final Rule, the effective date of an award of benefits can be no earlier than the date the VA receives:

- a paper formal claim form, 38 C.F.R. § 3.155(c)-(d);

- an electronically submitted formal claim form, *id.* § 3.155(b)(1)(i), (d);

- a new standard paper form called "Intent to File a Claim for Compensation and/or Pension Benefits" form, which VA announced

---

[1] This Petition refers to VA's regulations currently in effect as the 2014 regulations. All other references are to the regulations that will go into effect on March 24, 2015.

and discussed for the first time in the Final Rule, *id.* § 3.155(b)(1)(ii); or

- an oral statement of intent to file a claim, but only if (a) the oral communication is "directed to a VA employee designated to receive such a communication" *and* (b) the VA employee documents the date the employee received the oral communication, *id.* § 3.155(b)(1)(iii).

Thus, under the Final Rule, if the VA receives a letter printed on plain paper from a veteran that clearly expresses the veteran's intent to apply for a particular benefit, receipt of that letter will no longer serve to establish the effective date for any VA benefits that may be ultimately awarded to the veteran—even if the letter provides sufficient biographical information to identify the veteran. 79 Fed. Reg. at 57,665. Instead, although the VA will continue to collect and review such letters and send appropriate claim forms as required by statute, 38 U.S.C. § 5102(a); 38 C.F.R. § 3.155(a), the earliest possible effective date will be the date the formal claim form is received by the VA. 79 Fed. Reg. at 57,660, 57,664-57,665; 38 U.S.C. § 3.155(b)(4).

Petitioners respectfully request that the Court hold unlawful and set aside the Final Rule's elimination of a veteran's ability to establish the effective date for his or her benefits through an informal submission (i.e., the Final Rule's amendments to 38 C.F.R. § 3.155 and conforming amendments) as (i) arbitrary, capricious, an

abuse of discretion, and otherwise not in accordance with law, 5 U.S.C.

§ 706(2)(A); (ii) in excess of statutory jurisdiction, authority, or limitations, and

short of statutory right, *id.* § 706(2)(C); and (iii) without observance of procedure

required by law, *id.* § 706(2)(D).

2.      "Reasonably Raised" Claims.  Congress, the courts, and the VA have

all long agreed that the VA claims adjudication process is intended to be non-

adversarial and pro-claimant and that VA must "fully and sympathetically develop

the veteran's claim to its optimum before deciding it on the merits.''  H.R. Rep.

No. 100-963, 100th Cong. at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782,

5795; *see also, e.g.*, *Cook v. Principi*, 318 F.3d 1334, 1347 (Fed. Cir. 2002)

(same); 38 C.F.R. § 3.103(a) (2014) ("[I]t is the obligation of VA to assist a

claimant in developing the facts pertinent to the claim and to render a decision

which grants every benefit that can be supported in law while protecting the

interests of the Government.").  Consistent with these well-settled principles, if the

evidence of record supports a grant of benefits for medical disability, VA is

required to identify the disability and award the benefit even if the particular

condition was not specifically identified in the veteran's claim.  *See Szemraj v.*

*Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (holding that VA is required to give

"a sympathetic reading to the veteran's filings by 'determining *all* potential claims

raised by the evidence, applying all relevant laws and regulations.'" (quoting

*Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) (emphasis added)). This means that, if VA considers a veteran's claim for a particular service-connected disability (disability X) and the record plainly reveals that the veteran is entitled to service-connected disability benefits for a different disability (disability Y), VA has a duty to adjudicate the veteran's entitlement to service connection for disability Y, even though the veteran did not expressly request benefits for disability Y.

The Final Rule and its preamble abandon this longstanding and congressionally mandated non-adversarial approach. The Final Rule (i) narrows the definition of a "[c]laim" to include only requests to "*specific* benefit[s]," 38 C.F.R. § 3.1(p) (emphasis added); (ii) limits VA's obligation to adjudicate medical disability benefits to "the claimed condition" and "complications of the claimed condition"—to the exclusion of other conditions even when those conditions are plain on the face of the veteran's record, 38 C.F.R. § 3.155(d)(2); and (iii) requires that, to be deemed "complete," a claim for medical disability "must identify the benefit sought," *id.* § 3.160(a)(3), and provide "[a] description of any symptom(s) or medical condition(s) on which the benefit is based," *id.* § 3.160(a)(4).

As VA explains in the preamble to the Final Rule, the consequences of these amendments are far-reaching. Under the Final Rule, medical conditions that are not specifically identified on a standard claim form and are "unrelated to th[ose]

7

particular claims" generally "will not be the subject of claims that are reasonably raised by the evidence of record"—regardless of how obvious the veteran's condition, service connection, and benefit eligibility may be. 79 Fed. Reg. at 57,672. Thus, under the new Final Rule, if a veteran files a disability claim based on post-traumatic stress disorder ("PTSD") but fails to mention in his application that he lost both legs in combat, VA would no longer be obligated to develop or adjudicate any benefits related to the veteran's amputations—even if those amputations are obvious on the face of the veteran's VA record.

Petitioners request that the Court hold unlawful and set aside the Final Rule's new restrictions on the types of claims and benefits that VA deems "reasonably raised" by a veteran—including but not limited to the Final Rule's amendments to 38 C.F.R. §§ 3.1(p), 3.155(d)(2), 3.160, all conforming amendments, and VA's accompanying explanation in the Final Rule's preamble— because such restrictions are (i) arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, 5 U.S.C. § 706(2)(A); and (ii) in excess of statutory jurisdiction, authority, or limitations, and short of statutory right, *id.* § 706(2)(C).

## PARTIES ADVERSELY AFFECTED

Each of Petitioners will be adversely affected by the Final Rule when it takes effect on March 24, 2015 and has standing to bring this challenge.

The American Legion.  Chartered and incorporated by Congress in 1919, 36 U.S.C. § 21701 *et seq.*, the American Legion is a nonpartisan, not-for-profit veterans membership organization open to anyone who is currently serving, or who has honorably served, in the U.S. Armed Forces during wartime.  With approximately 2.5 million veterans as its members, the American Legion stands as the nation's largest veterans service organization.  One of the pillars upon which the American Legion was founded is Veterans Affairs and Rehabilitation.  Consistent with its core mission, the American Legion advocates for adequate funding of health care, timely access to health care facilities, fair rulings on benefit claims, and economic opportunities for veterans who have returned home shaped and sometimes changed by their military experiences.

The American Legion is also recognized by VA for the purpose of preparation, presentation, and prosecution of claims under laws administered by VA, pursuant to 38 U.S.C. § 5902 and 38 C.F.R. § 14.628.  In that capacity, the American Legion maintains a network of accredited service officers who are specially trained to provide expert assistance to veterans and their families.  In addition, the American Legion regularly submits public comments in connection with VA's proposed rules and regulations, including in this case.  *See* 79 Fed. Reg. at 57,662.

AMVETS.  Founded in 1944 and chartered by Congress 1947, 36 U.S.C. § 22701 *et seq.*, AMVETS is a non-partisan, not-for-profit veterans membership organization open to anyone who is currently serving, or who has honorably served, in the U.S. Armed Forces from World War II to the present.  AMVETS has approximately 260,000 members nationwide.  AMVETS's corporate purpose is, among other things, "to maintain a continuing interest in the welfare and rehabilitation of the disabled veterans of World War II, the Korean conflict, and the Vietnam era" and "to establish facilities for the assistance of all veterans and to represent them in their claims before the Department of Veterans Affairs and other organizations without charge."  *Id.* § 22702(2).  Consistent with these missions, AMVETS advocates on behalf of its members on public-policy issues related to veterans rights.  Further, AVETS is recognized by VA for the purpose of preparation, presentation, and prosecution of claims under laws administered by VA, pursuant to 38 U.S.C. § 5902 and 38 C.F.R. § 14.628.  In that capacity, AMVETS' national service officers process thousands of claims every year on behalf of veterans and their families, resulting in hundreds of millions of dollars in compensation every year.

Military Order of the Purple Heart.  Founded in 1932 and chartered by Congress in 1958, 36 U.S.C. § 140501, the Military Order of the Purple Heart ("MOPH") is a non-partisan, not-for-profit membership organization open to all

persons of good moral character who are serving in or have served in the armed forces of the United States and have received the award of the Purple Heart for wounds received in action. MOPH has more than 40,000 members nationwide. MOPH's corporate purpose includes "assisting, comforting, and aiding all needy and distressed members and their dependents." 36 U.S.C. § 140502(b)(4).

In addition to vigorously advocating for its members in the legislative arena, MOPH is recognized by VA for the purpose of preparation, presentation, and prosecution of claims under laws administered by VA, pursuant to 38 U.S.C. § 5902 and 38 C.F.R. § 14.628; *see also* 36 U.S.C. § 140502(b)(5) (MOPH's corporate purposes expressly include "giving needed hospital and service work through its Department of Veterans Affairs certified service officers"). Through its National Service Program, MOPH maintains a nationwide network of 77 Service offices, where veterans and their dependents can receive expert assistance in obtaining benefits from VA. Every year, MOPH secures hundreds of millions of dollars in VA benefits on behalf of its members and other claimants it assists. In addition, MOPH regularly submits public comments in connection with VA's proposed rules and regulations, including in this case. *See* 79 Fed. Reg. at 57,662.

Vietnam Veterans of America. Founded in 1978 and chartered by Congress in 1986, 36 U.S.C. § 230501, Vietnam Veterans of America ("VVA") is a non-partisan, not-for-profit national veterans membership organization that is open to

11

all Vietnam-era veterans.  Today, VVA has a national membership of approximately 74,000.  VVA's corporate purpose is focused on assisting and improving the condition and social welfare of Vietnam-era veterans.  36 U.S.C. § 230503(2)-(6).  To this end, VVA engages in vigorous advocacy efforts on behalf of its members.  These efforts have included advocating for the enactment of laws providing for judicial review of adverse VA decisions in court, for increased job-training and job-placement assistance for unemployed and underemployed Vietnam-era veterans, and for assisting veterans suffering from Agent Orange exposure.

VVA is also recognized by VA for the purpose of preparation, presentation, and prosecution of claims under laws administered by VA, pursuant to 38 U.S.C. § 5902 and 38 C.F.R. § 14.628.  In that capacity, VVA provides assistance to veterans seeking to obtain the VA benefits they have earned through their service.  In addition, VVA regularly submits public comments in connection with VA's proposed rules and regulations, including in this case.  *See* 79 Fed. Reg. at 57,662.

National Veterans Legal Services Program.  National Veterans Legal Services Program ("NVLSP") is an independent, not-for-profit organization that was founded in 1980 for the purpose of ensuring that the U.S. government keeps its pact with our nation's veterans by providing them, their survivors, and dependents with the federal benefits our nation's veterans have earned through

their service to our country. NVLSP accomplishes its mission through litigation, representation of veterans, their survivors, and dependents before VA and the courts, training lawyer and non-lawyer advocates to represent VA claimants effectively, and publishing advocacy materials on veterans law. NVLSP is recognized by VA for the purpose of preparation, presentation, and prosecution of claims under laws administered by VA, pursuant to 38 U.S.C. § 5902 and 38 C.F.R. § 14.628. In that capacity, NVLSP regularly represents claimants in connection with claims for VA benefits before VA regional offices, the Board of Veterans' Appeals, the U.S. Court of Appeal for Veterans Claims, and other federal courts. NVLSP also regularly submits public comments in connection with VA's proposed rules and regulations, including in this case. *See* 79 Fed. Reg. at 57,662.

Petitioners have associational standing to bring this Petition. "To establish … associational standing[], an association must establish (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *DAV*, 234 F.3d at 689 (internal quotation marks omitted). Petitioners satisfy each of these requirements.

*First,* over the last fifty years, VA's informal claims process has permitted many of Petitioners' members and clients to secure benefits from an earlier effective date than they would otherwise have been able to claim. *See* 79 Fed. Reg. at 57,661 ("[A]pproximately half of the claimant population files non-standard submissions."). Likewise, VA's statutory obligation to "determine *all* potential claims raised by the evidence," *Roberson*, 251 F.3d at 1384 (emphasis added), has resulted in many of Petitioners' members being able to secure VA benefits that were not specifically requested in their applications. In contrast, under the Final Rule, Petitioners' members and clients will be subject to the formalities newly injected into the VA claim adjudication system. As a result, they will face substantial additional burdens in obtaining VA benefits, and many of them will not receive the full extent of the benefits to which they are entitled based on their service to the nation.

*Second*, the interests asserted in this Petition are "'germane to [Petitioners'] purpose.'" *DAV*, 234 F.3d at 689. As noted above, Petitioners' organizational purposes include advancing the interests of their respective members and of veterans more generally. *See supra* pp. 8-13. Preventing VA from turning the claims adjudication process into a highly formalized, adversarial process falls squarely under that mandate.

*Third*, the challenges asserted in this Petition are purely legal. If successful, they will result in portions of the Final Rule being vacated. Accordingly, neither Petitioners' claims nor the relief requested "'requires the participation of individual members in the lawsuit.'" *DAV*, 234 F.3d at 689.

For these reasons, Petitioners are "adversely affected" by the Final Rule, Fed. Cir. R. 47.12(b), and have standing to bring this Petition.

March 20, 2015

Respectfully submitted,

/s/ Francesco Valentini
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com

# CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of March 2015, two copies of the

foregoing Petition for Review were sent by first class, certified mail with postage

prepaid to:

Hon. Robert A. McDonald
Secretary of Veterans Affairs
Department of Veterans Affairs
810 Vermont Ave., N.W.
Washington, D.C. 20420

Hon. Leigh A. Bradley
General Counsel
Department of Veterans Affairs
810 Vermont Ave., N.W.
Washington, D.C. 20420

Hon. Eric H. Holder, Jr.
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530-0001

March 20, 2015                              Respectfully submitted,

                                           /s/ Francesco Valentini
                                           FRANCESCO VALENTINI
                                           WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
                                           1875 Pennsylvania Avenue, N.W.
                                           Washington, D.C.  20006
                                           Tel.: (202) 663-6000
                                           Fax: (202) 663-6363
                                           francesco.valentini@wilmerhale.com