No. 15-7061

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

THE AMERICAN LEGION, AMVETS, THE MILITARY ORDER OF THE PURPLE HEART,
VIETNAM VETERANS OF AMERICA, AND
NATIONAL VETERANS LEGAL SERVICES PROGRAM,

*Petitioners*,

*v.*

ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

On Petition For Review
Pursuant To 38 U.S.C. § 502

**BRIEF FOR PETITIONERS THE AMERICAN LEGION,
AMVETS, THE MILITARY ORDER OF THE PURPLE HEART,
VIETNAM VETERANS OF AMERICA, AND
NATIONAL VETERANS LEGAL SERVICES PROGRAM**

BARTON F. STICHMAN
NATIONAL VETERANS LEGAL
  SERVICES PROGRAM
1600 K Street, N.W.
Suite 500
Washington, D.C. 20006
(202) 621-5677

CARL J. NICHOLS
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000

May 14, 2015

# CERTIFICATE OF INTEREST

Counsel for Petitioners The American Legion, AMVETS, The Military Order of the Purple Heart, Vietnam Veterans of America, and National Veterans Legal Services Program certifies:

1.  The full name of every party or amicus represented by us is:

    The American Legion;
    AMVETS (American Veterans);
    The Military Order of the Purple Heart of the United States, Inc.;
    Vietnam Veterans of America, Inc.; and
    National Veterans Legal Services Program.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

    Not applicable

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

    None

4.  The names of all law firms and the partners or associates who appeared for the party or amicus now represented by us in the trial court or agency or have or are expected to appear in this Court are:

    WILMER CUTLER PICKERING HALE AND DORR LLP:  Carl J. Nichols and Francesco Valentini;

    NATIONAL VETERANS LEGAL SERVICES PROGRAM:  Barton F. Stichman.

Dated:  May 14, 2015

/s/ Francesco Valentini

FRANCESCO VALENTINI

WILMER CUTLER PICKERING
  HALE AND DORR LLP

1875 Pennsylvania Avenue, N.W.

Washington, D.C.  20006

Tel.: (202) 663-6000

Fax: (202) 663-6363

francesco.valentini@wilmerhale.com

**TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ....................................................................i

TABLE OF AUTHORITIES ......................................................................v

STATEMENT OF RELATED CASES .................................................. xii

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF ISSUES ........................................................................2

INTRODUCTION ....................................................................................3

STATEMENT OF FACTS .........................................................................6

      A.     The Veterans' Benefit Statutory Framework .......................................6

      B.     Effective Dates And Informal Claims....................................................8

      C.     The Proposed Rule ......................................................................11

      D.     Comments........................................................................12

      E.     The Final Rule ................................................................13

SUMMARY OF ARGUMENT .........................................................18

STANDARD OF REVIEW ..................................................................21

ARGUMENT .......................................................................................22

I.     THE FINAL RULE'S NEW REQUIREMENTS FOR ESTABLISHING
EFFECTIVE DATES ARE CONTRARY TO STATUTE AND
ARBITRARY AND CAPRICIOUS ........................................................22

      A.     When It Enacted The Current Effective-Date Provisions
In 1957, Congress Codified VA's Longstanding Rule
That Informal Submissions Can Establish A Claimant's
Effective Date ................................................................22

1. By 1957, VA's regulations had long recognized that the effective dates of veterans' benefits may be established through informal submissions ..........................23

2. The Veterans' Benefits Act of 1957 codified VA's longstanding rule .......................................................25

B. Post-1957 Legislation Confirms Congress' Intent To Tie Effective Dates To Informal Submissions ...........................29

C. The Final Rule Conflicts With Congress' Mandate That The Veterans System Be As Informal And Beneficial As Possible ..................................................................................34

D. The Final Rule Is Arbitrary And Capricious ......................39

II. THE FINAL RULE'S NEW EFFECTIVE-DATE REGULATIONS DO NOT COMPLY WITH THE APA'S NOTICE AND COMMENT REQUIREMENTS ..........................................................................46

III. THE FINAL RULE'S RESTRICTIONS ON CLAIMS THAT ARE RAISED BY RECORD EVIDENCE BUT NOT SPECIFICALLY IDENTIFIED BY THE VETERAN IS CONTRARY TO LAW ............................................48

A. Congress Has Mandated That VA "Determine All Potential Claims Raised By The Evidence" ........................49

B. The Final Rule Impermissibly Restricts The Claims Deemed Raised By Veterans ...............................................51

CONCLUSION ................................................................................56

ADDENDUM

STATUTORY ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Andrews v. Nicholson*,
421 F.3d 1278 (Fed. Cir. 2005) ...................................................................50

*Association of Private Sector Colleges & Universities v. Duncan*,
681 F.3d 427 (D.C. Cir. 2012)..............................................................46, 48

*Boggs v. Peake*,
520 F.3d 1330 (Fed. Cir. 2008) .....................................................18, 26, 27

*Brown v. Gardner*,
513 U.S. 115 (1994).................................................................................22, 35

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984)........................................................................................21

*Comer v. Peake*,
552 F.3d 1362 (Fed. Cir. 2009) ..................................... 21, 36, 37, 39, 42, 50

*Commodity Futures Trading Commission v. Schor*,
478 U.S. 833 (1986)........................................................................................25

*Cook v. Principi*,
318 F.3d 1334 (Fed. Cir. 2002) .............................................................16, 50

*CSX Transp., Inc. v. Surface Transportation Board*,
584 F.3d 1076 (D.C. Cir. 2009)...................................................................46

*Disabled American Veterans v. Secretary of Veterans Affairs*,
327 F.3d 1339 (Fed. Cir. 2003) .............................................................22, 32

*Disabled American Veterans v. Gober*,
234 F.3d 682 (Fed. Cir. 2000) ...................................................................1, 22

*Dixon v. Shinseki*,
741 F.3d 1367 (Fed. Cir. 2014) .............................................................36, 39

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)....................................................................................26

*Fertilizer Institute v. EPA*,
935 F.2d 1303 (D.C. Cir. 1991)....................................................................48

*GPX International Tire Corp. v. United States*,
666 F.3d 732 (Fed. Cir. 2011) ................................................................25, 26

*Harris v. Shinseki*,
704 F.3d 946 (Fed. Cir. 2013) ........................................................50, 51, 54

*Heino v. Shinseki*,
683 F.3d 1372 (Fed. Cir. 2012) ...................................................................21

*Helvering v. R.J. Reynolds Tobacco Co.*,
306 U.S. 110 (1939)....................................................................................25

*Henderson v. Shinseki*,
131 S. Ct. 1197 (2011)......................................................3, 6, 7, 34, 35, 36

*Hensley v. West*,
212 F.3d 1255 (Fed. Cir. 2000) ...................................................................35

*Hodge v. West*,
155 F.3d 1356 (Fed. Cir. 1998) ........................................................6, 35, 49

*In re Cuozzo Speed Technologies, LLC*,
778 F.3d 1271 (Fed. Cir. 2015) ...................................................................25

*International Union, United Mine Workers of America v. Mine Safety
& Health Administration*, 626 F.3d 84 (D.C. Cir. 2010) .......................46, 48

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
559 U.S. 573 (2010)................................................................................25, 33

*King v. St. Vincent's Hospital*,
502 U.S. 215 (1991)....................................................................................35

*Kingdomware Technologies, Inc. v. United States*,
754 F.3d 923 (Fed. Cir. 2014) .....................................................................22

*Lindahl v. OPM*,
470 U.S. 768 (1985)..........................................................................25

*Lorillard v. Pons*,
434 U.S. 575 (1978)....................................................................25, 29

*Microsoft Corp. v. i4i Ltd. Partnership*,
131 S. Ct. 2238 (2011)....................................................................30

*Military Order of Purple Heart of USA v. Secretary of Veterans*
*Affairs*, 580 F.3d 1293 (Fed. Cir. 2009) ..........................................46

*Moody v. Principi*,
360 F.3d 1306 (Fed. Cir. 2004) .................................................50, 52

*Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mutual*
*Automobile Insurance Co.*, 463 U.S. 29 (1983) ..........................40, 44

*National Organization of Veterans' Advocates, Inc. v. Secretary of*
*Veterans Affairs*, 260 F.3d 1365 (Fed. Cir. 2001)............................22

*National Organization of Veterans' Advocates, Inc. v. Secretary of*
*Veterans Affairs*, 669 F.3d 1340 (Fed. Cir. 2012)......................1, 39

*NLRB v. Bell Aerospace Co.*,
416 U.S. 267 (1974)........................................................................25

*NLRB v. Gullett Gin Co.*,
340 U.S. 361 (1951)........................................................................25

*PPL Wallingford Energy LLC v. FERC*,
419 F.3d 1194 (D.C. Cir. 2005).....................................................40

*Paralyzed Veterans of America v. Secretary of Veterans Affairs*,
345 F.3d 1334 (Fed. Cir. 2003) .........................................21, 32, 33

*Paralyzed Veterans of America v. West*,
138 F.3d 1434 (Fed. Cir. 1998) ......................................................55

*Preminger v. Secretary of Veterans Affairs*,
517 F.3d 1299 (Fed. Cir. 2008) ........................................................1

*Preminger v. Secretary of Veterans Affairs*,
632 F.3d 1345 (Fed. Cir. 2011) ...................................................................1

*Roberson v. Principi*,
251 F.3d 1378 (Fed. Cir. 2001) ...............................................5, 17, 20, 49, 55

*Shedden v. Principi*,
381 F.3d 1163 (Fed. Cir. 2004) ...................................................................7

*Shinseki v. Sanders*,
556 U.S. 396 (2009)...............................................................34, 35, 45, 49, 53

*Szemraj v. Principi*,
357 F.3d 1370 (Fed. Cir. 2004) ...........................................5, 7, 17, 20, 50, 52

*Veterans' Justice Group, LLC v. Secretary of Veteran Affairs*,
No. 15-7021, at 15 (Feb. 2, 2015) ...............................................................54

*Walters v. National Ass'n of Radiation Survivors*,
473 U.S. 305 (1985)...................................................................................6, 35

## STATUTES AND REGULATIONS

5 U.S.C.
§ 553 ...................................................................................................46
§§ 701-706 .........................................................................................21
§ 706 ...........................................................................................2, 21, 31

28 U.S.C. § 2401 ...........................................................................................1

38 U.S.C.

§ 105 ..................................................................................................7
§ 501 ................................................................................................34
§ 502 .............................................................................................1, 21
§ 5101 ..............................................................................................54
§ 5102 .....................................................................................*passim*
§ 5103 ......................................................................................7, 32, 33
§ 5103A.............................................................................................7
§ 5107 ...........................................................................................7, 52
§ 5108 ................................................................................................8
§ 5109A.............................................................................................8
§ 5110 .........................................................................8, 10, 11, 27, 29
§ 7104 ..............................................................................................27
§ 7105 ................................................................................................7
§ 7111 ................................................................................................8
§ 7251 ................................................................................................8
§ 7252 ................................................................................................8
§ 7261 ................................................................................................8
§ 7292 ................................................................................................8

Economy Act of 1933,
    Pub. L. No. 73-2, 48 Stat. 8 ........................................................23

Pub. L. No. 78-144, 57 Stat. 554 (1943).............................9, 10, 23, 27

Veterans' Benefits Act of 1957,
    Pub. L. No. 85-56, 71 Stat. 83 ...........................8, 9, 27, 28, 32

Pub. L. No. 85-857, 72 Stat. 1105 (1958).............................11, 29

Pub. L. No. 87-674, 76 Stat. 558 (1962)...............................10, 29

Pub. L. No. 87-825, 76 Stat. 948 (1962)...............................10, 29

Pub. L. No. 91-376, 84 Stat. 787 (1970)...................................29

Pub. L. No. 91-584, 84 Stat. 1575 (1970).................................29

Pub. L. No. 93-177, 87 Stat. 694 (1973)...................................29

Pub. L. No. 93-527, 88 Stat. 1702 (1974).................................29

Pub. L. No. 94-71, 89 Stat. 395 (1975)...................................................................29

Pub. L. No. 97-66, 95 Stat. 1026 (1981).............................................................29

Pub. L. No. 102-40, 105 Stat. 187 (1991)....................................................11, 29

Pub. L. No. 102-83, 105 Stat. 378 (1991).............................................................29

Veterans Benefits Act of 2003,
  Pub. L. No. 108-183, 117 Stat. 2651 .................................................30, 32, 33

Pub. L. No. 108-454, 118 Stat. 3598 (2004)......................................................29

Pub. L. No. 112-154, 126 Stat. 1165 (2012).......................................................29

38 C.F.R.
  § 2.1027 (1938)................................................................................10, 22, 24
  § 3.1 .................................................................................13, 14, 17, 51
  § 3.1 (2003)...............................................................................31, 34
  § 3.27 (1949)...............................................................................10
  § 3.27 (1956)................................................................10, 11, 24, 30
  § 3.103 ...........................................................................16, 50
  § 3.155 .................................................................................*passim*
  § 3.155 (1961)..........................................................................11, 30
  § 3.155 (2014)..........................................................................11, 30
  § 3.159 ...................................................................................33
  § 3.160 .............................................................11, 13, 18, 51, 55
  § 3.212 (1956)...........................................................................9, 23, 27
  § 3.217 .................................................................................15

Veterans Regulation 2, Part I, ¶ I(a) (1933)...................................................9, 23, 27

37 Fed. Reg. 14,780 (July 25, 1972).................................................................50

*Standard Claims and Appeals Forms*,
  78 Fed. Reg. 65,490 (Oct. 31, 2013) .........................................11, 12, 42, 47

*Standard Claims and Appeals Forms*,
  79 Fed. Reg. 57,660 (Sept. 25, 2014).......................................................*passim*

Fed. Cir. R. 47.12.................................................................................1

## LEGISLATIVE MATERIALS

H.R. 53, 85th Cong. (Jan. 3, 1957) ...........................................................................28

H.R. Rep. No. 85-279 (1957),
*reprinted in* 1957 U.S.C.C.A.N. 1214 .........................................9, 26, 27, 28

H.R. Rep. No. 100-963 (1988),
*reprinted in* 1988 U.S.C.C.A.N. 5782 ...............................5, 6, 16, 37, 49, 53

S. Rep. No. 85-332 (1957),
*reprinted in* 1957 U.S.C.C.A.N. 1214 .......................................................9, 27

## OTHER AUTHORITIES

Ridgway, J.D., *Recovering an Institutional Memory:  The Origins
of the Modern Veterans' Benefits System from 1914 to 1958*,
5 Veterans L. Rev. 1 (2013) ....................................................................9, 28

U.S. Census Bureau, *2013 American Community Survey, American
FactFinder*, Table B21007, *available at* http://factfinder.census.
gov/faces/tableservices/jsf/pages/productview.xhtml?
pid=ACS_13_3YR_B21007&prodType=table .....................................37, 38

U.S. Census Bureau, *Computer and Internet Use in the United States*,
(2013), *available at* https://www.census.gov/prod/2013pubs/
p20-569.pdf...............................................................................................37

U.S. Census Bureau, *Veterans Day 2010: Nov. 11* (Oct. 27, 2010),
*available at* https://www.census.gov/newsroom/releases/
archives/facts_for_features_special_editions/cb10-ff21.html.......................37

# STATEMENT OF RELATED CASES

Petitioners are aware of four other cases currently pending before this Court that involve challenges to the same Department of Veterans Affairs ("VA") final rule at issue in this Petition: (i) *Veterans Justice Group, LLC v. Secretary of Veterans Affairs* (15-7021); (ii) *National Org. of Veterans Advocates v. Secretary of Veterans Affairs* (15-7025); (iii) *Paralyzed Veterans of America v. Secretary of Veterans Affairs* (15-7080); and (iv) *Disabled American Veterans v. Secretary of Veterans Affairs* (15-7081). Those cases will directly affect and/or be directly affected by this Court's decision in the present case. Counsel is not aware of any other case arising from the VA's final rule that was previously before this or any other appellate court.

Dated: May 14, 2015

/s/ Francesco Valentini

FRANCESCO VALENTINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com

**JURISDICTIONAL STATEMENT**

This Court has jurisdiction pursuant to 38 U.S.C. § 502. This Petition seeks review of a final rule promulgated by the Secretary of the Department of Veterans Affairs ("VA"), *Standard Claims and Appeals Forms*, 79 Fed. Reg. 57,660 (Sept. 25, 2014) ("Final Rule"). Under § 502, this Court has exclusive jurisdiction over such actions. *See, e.g.*, *National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs ("NOVA II")*, 669 F.3d 1340, 1345 (Fed. Cir. 2012).

The Petition is timely because it was filed within the six-year statute of limitation set forth in 28 U.S.C. § 2401(a). *See Preminger v. Secretary of Veterans Affairs*, 517 F.3d 1299, 1307 (Fed. Cir. 2008). This Petition also complies with Federal Circuit Rule 47.12(a) because it was filed within 60 days of the Final Rule's effective date on March 24, 2015. 79 Fed. Reg. at 57,660; *Preminger v. Secretary of Veterans Affairs*, 632 F.3d 1345, 1353 (Fed. Cir. 2011) ("[D]ate of issuance in Fed. Cir. R. 47.12(a) means the effective date of the rule." (citing *Disabled American Veterans v. Gober*, 234 F.3d 682, 690 (Fed. Cir. 2000)).

Petitioners are "adversely affected" by the Final Rule, Fed. Cir. R. 47.12(b), and have standing to bring this Petition for the reasons set forth in the Petition for Review, ECF No. 1-2, at 8-15.

# STATEMENT OF ISSUES

I.      Whether the Final Rule's elimination of a veteran's long-recognized ability to establish the effective date for VA benefits through an informal submission is contrary to law, arbitrary, or capricious.  5 U.S.C. § 706(2)(A), (C).

II.     Whether the Final Rule's new "Intent to File" framework was promulgated in violation of the Administrative Procedure Act's procedural requirements because it is not a logical outgrowth of the proposed rule.  5 U.S.C. § 706(2)(D).

III.    Whether the Final Rule's new restrictions on the types of claims and benefits that VA deems "reasonably raised" by a veteran are contrary to law.  5 U.S.C. § 706(2)(A), (C).

**INTRODUCTION**

In his Second Inaugural Address, President Lincoln articulated the essence of the nation's commitment to our veterans: "[L]et us strive on … to care for him who shall have borne the battle and for his widow and his orphan." Faithful to this promise, over the decades Congress has developed a veterans' benefit system that is "'designed to function throughout with a high degree of informality and solicitude for the claimant.'" *Henderson v. Shinseki*, 131 S. Ct. 1197, 1200 (2011). Two critical components of this non-adversarial, veteran-friendly system are at issue in this case.

*First*, for over 80 years, Congress has developed the veterans benefit system against the bedrock understanding that, while a veteran can be required to file a formal application as part of the process to obtain his benefits, he will not be deprived of his earned benefits simply because he initiated his claim through an "informal" submission, as opposed to a standardized form. Thus, it has long been established—and Congress has long intended—that an informal submission can determine the effective date for benefits ultimately obtained by a veteran.

In a set of recently promulgated regulations, the Department of Veterans Affairs ("VA") purports to upend this long-settled rule, effecting a radical change that may penalize, by VA's own estimate, "approximately half of the claimant population." *Standard Claims and Appeals Forms*, 79 Fed. Reg. 57,660, 57,661

(Sept. 25, 2014) ("Final Rule"). Under its new regulations, VA no longer recognizes a veteran's first request for benefits—no matter how unambiguous—as the benefits' effective date, unless that request is submitted according to one of VA's new formal, standardized processes. Instead, upon receiving an "informal" submission, VA continues to review it and respond to the claimant, as VA is required to do by statute. 38 U.S.C. § 5102(a). But VA then disregards the informal submission in establishing the effective date for the veteran's benefits. This, VA contends in the Final Rule, is necessary to "modernize" the agency's processes and reduce its existing backlog. 79 Fed. Reg. at 57,662, 57,678.

VA's new effective-date approach is indefensible. It contradicts Congress' clear understanding at the time it codified the existing effective-date provisions in 1957—an understanding that Congress has since implicitly ratified more than a dozen times. It is irreconcilable with Congress' determination that veterans be granted one year to complete their applications if their initial submissions are incomplete. It conflicts with Congress' overarching mandate that the veterans system be as informal and beneficial as possible. And it is arbitrary and capricious on its own terms, because VA has failed to provide a reasoned explanation of how the regulations will improve administrative efficiency and adjudication wait times—as opposed to merely VA's own *accounting* of its performance metrics.

*Second*, as part of the non-adversarial veterans system, Congress has also imposed on the VA a special duty to "fully and sympathetically develop the veteran's claim to its optimum." H.R. Rep. No. 100-963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795. Time and again, this Court has explained what this duty requires in the context of claims for disability benefits by *pro se* claimants: VA must "determin[e] *all* potential claims raised by the evidence, applying all relevant laws and regulations.'" *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (quoting *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001)) (emphasis added)).

The Final Rule departs from this well-settled principle as well. Instead of adjudicating "'all potential claims raised by the evidence,'" *Szemraj*, 357 F.3d at 1373, VA will adjudicate only those disability conditions that are specifically identified by the claimant and related complications. It will not adjudicate other claims "raised by the evidence" before the agency—no matter how unambiguously presented on the face of the record. Because this approach flouts this Court's interpretation of VA's statutory duties, it should be set aside.

Petitioners agree that VA needs to reform its processes to make them more efficient and provide better service to the veteran population. Petitioners also agree that the use of standardized forms can play a part in the application process. But VA cannot change its adjudicative framework in a way that defies Congress'

legislative intent or arbitrarily penalizes veterans. The Final Rule should be set aside.

## STATEMENT OF FACTS

### A. The Veterans' Benefit Statutory Framework

Congress has charged the Department of Veterans Affairs ("VA") with "administer[ing] the federal program that provides benefits to veterans." *Henderson v. Shinseki*, 131 S. Ct. 1197, 1200 (2011). "The VA's adjudicatory 'process is designed to function throughout with a high degree of informality and solicitude for the claimant.'" *Id.* at 1201; *see also Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 323-324 (1985) ("[S]urely Congress desired that the proceedings be as informal and nonadversarial as possible.").

At the claim initiation stage, Congress has imposed no time limitation on a veteran's ability to file a claim. If an applicant "express[es] an intent to claim or apply for … a benefit," VA "shall furnish such person, free of all expense, all instructions and forms necessary to apply for that benefit." 38 U.S.C. § 5102(a). When a claim is filed, the VA must "'fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits.'" *Hodge v. West*, 155 F.3d 1356, 1362-1363 (Fed. Cir. 1998) (quoting H.R. Rep. No. 100-963, at 13, *reprinted in* 1988 U.S.C.C.A.N. at 5795)) (emphasis omitted).

As part of this congressionally mandated duty to assist, VA must "give a sympathetic reading to the veteran's filings by 'determining all potential claims raised by the evidence, applying all relevant laws and regulations.'" *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (alteration omitted). It must "notify the claimant … of the information necessary to complete the application" if the veteran's submission is incomplete. 38 U.S.C. § 5102(b). And it must assist the veteran in developing the evidence necessary to substantiate his claim—for example, by "mak[ing] reasonable efforts to obtain relevant private records" on the claimant's behalf. *Id.* § 5103A(b); *see also id.* § 5103(a).

At the claim-adjudication stage, veterans are entitled to a "presumption of service connection," i.e., a presumption "that a disability first manifested or aggravated during active duty" is "service connected" and thus compensable. *Shedden v. Principi*, 381 F.3d 1163, 1166 (Fed. Cir. 2004) (interpreting 38 U.S.C. § 105(a)). And "whenever positive and negative evidence on a material issue is roughly equal," the VA "must give veterans the 'benefit of the doubt.'" *Henderson*, 131 S. Ct. at 1201 (quoting 38 U.S.C. § 5107(b)).

Congress has provided veterans with expansive appellate rights. If a veteran is unsuccessful in the VA's regional office, he has a full year to appeal the decision to the Board of Veterans' Appeals. 38 U.S.C. § 7105(b)(1). If still unsuccessful, the veteran can obtain comprehensive judicial review in the U.S. Court of Appeals

for Veterans Claims. 38 U.S.C. §§ 7251, 7252(a), 7261. The Veteran Court's decisions on questions of law are then subject to review in this Court. *Id.* § 7292(c). A veteran may also reopen a previously denied claim at any time by presenting "'new and material evidence.'" *Id.* § 5108. And he can even overturn a previous final denial of benefits by filing a claim at any time and showing that the final denial contains "clear and unmistakable error." *Id.* §§ 5109A(a), 7111.

### B. Effective Dates And Informal Claims

Congress enacted the precursors of today's effective-date provisions for veterans benefits in the Veterans' Benefits Act of 1957. Pub. L. No. 85-56, § 910(a)-(b), 71 Stat. 83, 119. As amended, the relevant provisions state:

> (a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim … shall be fixed in accordance with the facts found, but shall not be earlier than *the date of receipt of application therefor*.

> (b)(1) The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release *if application therefor is received within one year from such date of discharge or release*.

38 U.S.C. § 5110(a)-(b)(1) (emphases added). The date on which VA "recei[ves]" the veteran's "application" thus plays an important function in the VA effective-date system: In the typical case in which the veteran's application is initiated *after* the onset of the benefit entitlement (or, in disability cases, more than one year after discharge), the date of receipt of the application determines how much of his earned benefits a veteran will actually receive.

8

Congress did not write the 1957 Act on a clean slate. Instead, Congress' primary purpose was to codify existing law. H.R. Rep. No. 85-279, at 2 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1214, 1214-1215 ("[The bill] incorporate[s] into a single act the subject matter of the extensive body of existing legislation authorizing and governing" veterans' benefits). Congress also made clear that its codification was not limited to existing *legislation*, but also "consolidate[d] into one act all the *administrative* provisions relating to these benefits, as well as those common to all benefits administered by the Veterans' Administration." *Id.* (emphasis added); *see also* S. Rep. No. 85-332, at 1-2 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1214, 1242 (same). As commentators have observed, the 1957 Act "elevated much of the law that had previously existed only as regulations to the status of statutory law." Ridgway, *Recovering an Institutional Memory: The Origins of the Modern Veterans' Benefits System from 1914 to 1958*, 5 Veterans L. Rev. 1, 23 (2013).

Consistent with its overall intent, in 1957 Congress enacted effective-date provisions that closely mirrored the VA regulations then in force. *Compare* Pub. L. No. 85-56, § 910(a)-(b), 71 Stat. at 119, *with* 38 C.F.R. § 3.212 (1956) (incorporating Veterans Regulation 2, Part I, ¶ I(a) (1933) as amended by Pub. L. No. 78-144, § 17, 57 Stat. 554, 560 (1943)); Veterans Regulation 2, Part I, ¶ I(a) (1933) (setting "[t]he effective date … in accordance with the facts found" but no

earlier than *inter alia* "the date of receipt of application"); Pub. L. No. 78-144,

§ 17, 57 Stat. 554, 560 (1943).  By the mid-1950s, those regulations had long been

construed by VA to allow the veteran to secure an early effective date by filing an

informal (i.e., narrative) submission:

> Informal claims.  *Any communication from or action by a claimant …*
> *which clearly indicates an intent to apply for disability or death*
> *compensation or pension, may be considered an informal claim*.  To
> constitute an informal claim, the communication must specifically
> refer to and identify the particular benefit sought.  When such
> informal claim is received and a formal application is forwarded for
> execution by the claimant, such application shall be considered as
> evidence necessary to complete the initial application, and, unless a
> formal application is received within 1 year from the date it was
> transmitted for execution by the claimant, no award shall be made by
> virtue of such informal claim.  *If received within 1 year in such*
> *instances, it will be considered filed as of the date of receipt of the*
> *informal claim by the Veterans' Administration*.

38 C.F.R. § 3.27 (1956) (emphasis added); *see also* 38 C.F.R. § 3.27 (1949); 38

C.F.R. § 2.1027 (1938).[1]

Since 1957, Congress has amended § 5110 on several occasions to add new

subsections and make other conforming amendments.  *See, e.g.*, Pub. L. No. 87-

674, § 3, 76 Stat. 558, 558 (1962) (adding current 38 U.S.C. § 5110(k)); Pub. L.

No. 87-825, § 1, 76 Stat. 948, 948-949 (1962) (adding various subsections); *infra*

---

[1]     The informal claims process itself dates back to internal legal memoranda
issued in 1921 by the Bureau of War Risk Insurance in connection with its
administration of veteran disability benefits under the War Risk Insurance Act.  79
Fed. Reg. at 57,664.

n.9.[2] Through all these enactments, Congress has not retreated from the 1957 understanding that informal submissions can preserve the effective date of veterans' benefits. Nor had VA ever purported to depart from that rule prior to the rulemaking at issue in this case. *See* 38 C.F.R. § 3.155(a) (2014).[3]

### C.     The Proposed Rule

On October 31, 2013, VA issued a notice of proposed rulemaking entitled *Standard Claims and Appeals Forms*, 78 Fed. Reg. 65,490 (Oct. 31, 2013) ("Proposed Rule"). VA proposed to eliminate the longstanding informal claims process entirely. *See id.* at 65,494, 65,507 (proposed 38 C.F.R. § 3.155). Under the Proposed Rule, submitting an informal claim—i.e., a narrative submission— would no longer preserve the effective date of future benefits. VA proposed to deem even submissions of standardized paper forms insufficient for effective-date purposes unless the form was "fully filled out" and "provide[d] all requested information." *Id.* at 65,507 (proposed 38 C.F.R. § 3.160). Only two actions would preserve a veteran's effective date: submitting a fully completed paper form or

---

[2]     Congress has also renumbered current § 5110 on two occasions. Pub. L. No. 85-857, § 3010(a)-(b), 72 Stat. 1105, 1226 (1958); Pub. L. No. 102-40, § 402(b)(1), (d)(1), 105 Stat. 187, 238-239 (1991).

[3]     In a comprehensive 1961 rulemaking, VA renumbered 38 C.F.R. § 3.27 (1956) (cited in text *supra*) as 38 C.F.R. § 3.155(a) (1961), with minor substantive changes not relevant here.

initiating an application through "a VA web-based electronic claims application system." 78 Fed. Reg. at 65,507.[4]

### D.    Comments

VA received more than 50 comments in response to the Proposed Rule. 79 Fed. Reg. at 57,661-57,662. These included comments from most major veteran service organizations, from veteran legal services groups, and from several individuals. *Id.*

Commenters opposed VA's elimination of the informal claims process and discrimination against paper claims as both contrary to governing law and ill-considered. They explained that the proposed regulations ran afoul of Congress' mandate that the veterans' benefit system remain as informal, non-adversarial, and pro-claimant as possible. *E.g.*, JA179-185 (National Veterans Legal Services Program ("NVLSP") and Military Order of the Purple Heart ("MOPH")); JA203-205, JA207 (American Legion); JA269, JA271-273, JA276-277 (Vietnam Veterans of America ("VVA")); JA151-153 (Disabled American Veterans ("DAV")); JA290-296 (Paralyzed Veterans of America ("PVA")). They complained that VA had failed to provide a reasoned explanation for departing from the agency's

---

[4]    VA also proposed to revise 38 C.F.R. Parts 19 and 20 to require the use of standard forms to commence the appellate process before the Board in most cases. 78 Fed. Reg. at 65,499-65,500. VA promulgated the proposed amendments in its Final Rule. 79 Fed. Reg. at 57,679. This Petition does not challenge those portions of the rulemaking.

longstanding position.  *E.g.*, JA291-292 (PVA).  And they demonstrated that the

Proposed Rule's discrimination against paper submissions would unfairly penalize

the veterans who are most vulnerable and least likely to have internet access:  the

elderly, the poor, and those who suffer from serious physical or mental illness.  *E.g.*,

JA204, JA207 (American Legion); JA184 (NVLSP and MOPH); JA271 (VVA).

### E.     The Final Rule

On September 25, 2014, VA published its Final Rule.  79 Fed. Reg. at

57,660.  The Final Rule amends critical and longstanding aspects of the informal

and non-adversarial framework enacted by Congress.  *See id.* at 57,660-57,698

(amending 38 C.F.R. Parts 3 ("Adjudications"), 19 ("Board of Veterans' Appeals:

Appeals Regulations"), and 20 ("Board of Veterans' Appeals: Rules of Practice")).

Among other changes, the Final Rule (1) mandates the use of formal standardized

forms to initiate and file claims and, in most cases, appeals, *see id.* at 57,694-

57,696 (amending, *inter alia*, 38 C.F.R. §§ 3.1, 3.155, 3.160), 57,697-57,698

(amending 38 C.F.R. parts 19-20); (2) eliminates VA's effective-date system as it

has existed for decades and replaces it with an "intent to file" process based on

standardized forms, *see id.* at 57,695-57,696 (amending, *inter alia*, 38 C.F.R.

§ 3.155); and (3) limits the types of claims and benefits that VA adjudicates when

presented with a claim by a veteran, *see id.* at 57,672-57,673, 57,694-57,696

(amending, *inter alia*, 38 C.FR. §§ 3.1(p), 3.155(d)(2), 3.160).

This Petition challenges two aspects of the Final Rule.

1.    <u>Effective Date of Informal Claims</u>.  The Final Rule eliminates the informal claims process through two amendments.  First, it narrows the definition of a "claim" to include only communications "submitted on an application form prescribed by the Secretary. "  79 Fed. Reg. at 57,662, 57,694 (new 38 C.F.R. § 3.1(p)).  Second, it provides that an informal submission is deemed merely a "request for an application" and, as such, cannot establish an effective date.  *Id.* at 57,695 (new 38 C.F.R. § 3.155(a), (d)).

In lieu of the informal claims process, the Final Rule establishes an "intent to file" process that differs significantly from the framework VA had set forth in the Proposed Rule.  Under this "intent to file" process, to establish the effective date of benefits, a veteran must complete one of three standardized processes, *e.g.* 79 Fed. Reg. at 57,664, 57,666, 57,695 (new 38 C.F.R. § 3.155(b)(1)):

- Submit a new standardized paper form called "Intent to File a Claim for Compensation and/or Pension Benefits," *e.g.*, *id.* at 57,664, 57,666, 57,695 (new 38 C.F.R. § 3.155(b)(1)(ii));

- Save an initiated electronic application on a "VA Web-based electronic claims application system," *e.g.*, *id.* at 57,666, 57,695-57,696 (new 38 C.F.R. § 3.155(b)(1)(i), (d)); or

14

- Convey an oral statement of intent to file a claim to "certain designated VA personnel," *id.* at 57,666, but only if the designated VA employee (i) "documents the date VA received the claimant's intent to file a claim in the claimant's records" and (ii) "follows the provisions set forth in [38 C.F.R.] § 3.217(b)." *Id.* at 57,695 (new 38 C.F.R. § 3.155(b)(1)(iii)); 38 C.F.R. § 3.217(b) (setting extensive requirements for agency action based on oral statements).

If, after completing this "intent to file" process, the veteran submits an application form prescribed by the Secretary within one year, VA will relate it back to the date the "intent to file" form was received. 79 Fed. Reg. 57,664-57,666, 57,695 (new 38 C.F.R. §§ 3.155(b)).[5]

An example illustrates the impact that the "intent to file" process is likely to have on the "approximately half of the claimant population [that currently] files non-standard submissions." 79 Fed. Reg. at 57,661. If the VA receives from a veteran a letter printed on plain paper that clearly expresses an intent to apply for a particular benefit, receipt of that letter no longer serves to establish the effective date for any VA benefits that may be ultimately awarded to the veteran—even if the letter provides sufficient biographical information to identify the veteran and

---

[5]    An incomplete application also holds the claimant's effective date of benefits for up to one year, but only if filed on the standardized form prescribed by VA. *Id.* at 57,667, 57,696 (new 38 C.F.R. § 3.155(c)).

detailed information about the specific benefit requested.  79 Fed. Reg. at 57,665.

Instead, the earliest possible effective date is the date the standardized application

form (or intent-to-file form) is received by VA.  *Id.* at 57,660, 57,668, 57,695 (new

38 C.F.R. § 3.155(b)(4)).

In the preamble to the Final Rule, VA purported to justify the elimination of

the informal claims process on efficiency grounds.  *See, e.g.*, 79 Fed. Reg. at

57,661.  VA also indicated that it will continue to collect and review veterans' non-

standard submission (i.e., letters) requesting benefits and respond, as required by

statute.  *See* 79 Fed. Reg. at 57,667, 57,695 (new 38 C.F.R. § 3.155(a)).  VA

further asserted that the "use of  standard forms [is] indispensable to reaching and

maintaining" its stated goal of "process[ing] all claims with 98 percent accuracy

within 125 days."  *Id.* at 57,678.  VA did not attempt to measure to what extent any

improvements in wait times would be attributable to mere accounting changes in

when claims are deemed "pending."

2.      Inferred Claims.  Congress, the courts, and the VA have all long

agreed that the VA claims adjudication process is intended to be non-adversarial

and pro-claimant and that VA must "fully and sympathetically develop the

veteran's claim to its optimum before deciding it on the merits."  H.R. Rep. No.

100-963, at 13, *reprinted in* 1988 U.S.C.C.A.N. at 5795; *see also, e.g.*, *Cook v.*

*Principi*, 318 F.3d 1334, 1347 (Fed. Cir. 2002) (same); 38 C.F.R. § 3.103(a).

16

Under this Court's precedent, if the evidence of record supports a grant of benefits for medical disability, VA is required to identify the disability and award the benefit even if the particular condition was not specifically identified in the veteran's claim. *See Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (holding that VA is required to give "a sympathetic reading to the veteran's filings by 'determining *all* potential claims raised by the evidence, applying all relevant laws and regulations.'" (quoting *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) (emphasis added)). For example, if VA considers a veteran's claim for a particular service-connected disability (disability X) and the record plainly reveals that the veteran is entitled to service-connected disability benefits for a different disability (disability Y), VA has a duty to adjudicate the veteran's entitlement to service connection for disability Y, even though the veteran did not expressly request benefits for disability Y.

The Final Rule abandons this approach. The Final Rule (i) narrows the definition of a "[c]laim" to include only requests to "*specific* benefit[s]," 79 Fed. Reg. at 57,694 (new 38 C.F.R. § 3.1(p) (emphasis added)); (ii) limits VA's obligation to adjudicate medical disability benefits to "the claimed condition" and "complications of the claimed condition"—to the exclusion of other conditions, *id.* at 57,696 (new 38 C.F.R. § 3.155(d)(2)); and (iii) requires that, to be deemed "complete," a claim for medical disability "must identify the benefit sought," *id.*

17

(new 38 C.F.R. § 3.160(a)(3)), and provide "[a] description of any symptom(s) or medical condition(s) on which the benefit is based," *id.* (new 38 C.F.R. § 3.160(a)(4)).

Under the Final Rule, medical conditions that are not specifically identified on a standard claim form (either as such or through their symptoms) and that VA deems "unrelated to th[ose] particular claims" generally will not be considered—regardless of how obvious the veteran's condition, service connection, and benefit eligibility may be. 79 Fed. Reg. at 57,672. Thus, if a veteran files a disability claim based on post-traumatic stress disorder ("PTSD") but fails to mention in his application that he lost both legs during combat, VA is no longer obligated to develop or adjudicate any benefits related to the veteran's amputations—even if those amputations are obvious on the face of the veteran's record.

## SUMMARY OF ARGUMENT

I.     Prior to enactment of the 1957 Act, VA's regulations unambiguously provided that informal submissions preserved the effective date of benefits ultimately awarded to the veteran. The 1957 Act expressly codified VA's effective-date regulations. This Court presumes that, in so doing, Congress intended the statute to be interpreted consistent with the meaning of those effective-date regulations at the time, *e.g.*, *Boggs v. Peake*, 520 F.3d 1330, 1334-1335 (Fed. Cir. 2008), and nothing warrants discarding this sensible presumption

18

here.  To the contrary, since 1957, Congress has repeatedly ratified that construction by reenacting and amending the effective-dates provisions at least a dozen times.  At no point has Congress departed from the tenet that informal submissions can serve as effective-date placeholders.  In fact, in 2003, Congress affirmatively provided that veterans must be granted one year to complete their applications if their initial submissions are incomplete—an accommodation that cannot be reconciled with VA's position that only formal submissions can preserve effective dates.  Because the Final Rule is contrary to Congress' intent with respect to effective-date determinations, it must be set aside.

More fundamentally, VA's insistence on formal submissions for effective-date purposes—even when the informal submission provides all the information necessary to initiate a claim—contradicts Congress' mandate that the veterans system be as informal and veteran-friendly as possible.  That alone is reason to invalidate the Final Rule.

Finally, VA's new effective-date framework is arbitrary and capricious.  VA has failed to provide a reasoned explanation why it must *require* use of its new "intent-to-file" form to establish an effective date, as opposed to simply making the form optional.  As VA itself implies, for anyone who is aware of the form's existence and can reasonably be expected to use it, the form is more user-friendly than composing an informal submission.  Capable claimants will *choose* to use it

19

regardless. The only consequence of making the intent-to-file form a requirement is to set a trap for the unwary. And, to compound the rule's illogic, while the new hurdle will likely have a disproportionate impact on the most disadvantaged segments of the veteran population (i.e., the elderly, the disabled, and the poor), it will save VA no work: VA will continue to review all informal submissions it receives and respond to the claimants, as it is required to do by statute.

II. VA's amendment of the effective-date framework also violates the Administrative Procedure Act ("APA")'s notice-and-comment requirements. VA's substantive regulations must be a logical outgrowth of the proposal on which the agency solicited public comment. The Final Rule fails this test, however, as it introduces a new "intent-to-file" framework that was never mentioned in the Proposed Rule. Had VA done so, it would have better understood the significant burdens that this new set of requirements impose on the most vulnerable segments of the veteran population.

III. The Final Rule's new restrictions on the types of claims and benefits that VA deems "reasonably raised" by a veteran are also contrary to law. As this Court has repeatedly held, Congress has mandated that VA "'determine *all* potential claims raised by the evidence,'" *Szemraj*, 357 F.3d at 1373 (quoting *Roberson*, 251 F.3d at 1384) (emphasis added), not just the ones specifically identified by the claimant. The Final Rule ignores this mandate, decreeing that,

from now on, VA will adjudicate only conditions specifically identified by the claimant in his application and related complications.  79 Fed. Reg. at 57,672.  "This is not the first time that [VA] has advanced an overly restrictive interpretation of" its duty to develop veterans' claims, *Comer v. Peake*, 552 F.3d 1362, 1367-1368 (Fed. Cir. 2009), and should not be the first time it is approved.

**STANDARD OF REVIEW**

This Court reviews petitions under 38 U.S.C. § 502 in accordance with the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  *Paralyzed Veterans of Am. v. Secretary of Veterans Affairs*, 345 F.3d 1334, 1339 (Fed. Cir. 2003) ("*PVA II*").  This Court thus "'hold[s] unlawful and set[s] aside agency action' that [it] find[s] to be arbitrary, capricious, an abuse of discretion, or otherwise contrary to law."  *Id.* (citing 5 U.S.C. § 706(2)).

When this Court "review[s] … an agency's interpretation of a statute that the agency is charged with administering," it applies "the standards articulated by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984)."  *PVA II*, 345 F.3d at 1340.  Under *Chevron*, "[i]f the intent of Congress is clear, that is the end of the matter."  467 U.S. at 842-843.  The Court addresses this first question by "examin[ing] 'the statute's text, structure, and legislative history, and apply[ing] the relevant canons of interpretation.'"  *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012); *see also*

21

*Kingdomware Techs., Inc. v. United States*, 754 F.3d 923, 930-931 (Fed. Cir. 2014).  In cases involving veterans' statutes, these tools include the canon that "interpretative doubt is to be resolved in the veteran's favor."  *Disabled Am. Veterans v. Secretary of Veterans Affairs ("DAV II")*, 327 F.3d 1339, 1344 (Fed. Cir. 2003) (quoting *National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs ("NOVA I")*, 260 F.3d 1365, 1378 (Fed. Cir. 2001)); *see also Disabled Am. Veterans v. Gober ("DAV I")*, 234 F.3d 682, 691-692 (Fed. Cir. 2000) ("[M]odifying the traditional *Chevron* analysis is the doctrine governing the interpretation of ambiguities in veterans' benefit statutes"); *Brown v. Gardner*, 513 U.S. 115, 118 (1994).  If, after this inquiry, Congress' intent remains ambiguous, deference to the agency's interpretation is appropriate, but only if that interpretation is itself "reasonable."  *NOVA I*, 260 F.3d at 1378.

## ARGUMENT

**I.   THE FINAL RULE'S NEW REQUIREMENTS FOR ESTABLISHING EFFECTIVE DATES ARE CONTRARY TO STATUTE AND ARBITRARY AND CAPRICIOUS**

**A.   When It Enacted The Current Effective-Date Provisions In 1957, Congress Codified VA's Longstanding Rule That Informal Submissions Can Establish A Claimant's Effective Date**

Prior to 1957, VA's regulations had long established that any written communication—including "informal" ones—that "clearly indicated an intent to apply" for benefits could establish the effective date of those benefits.  *E.g.*, 38 C.F.R. § 2.1027 (1938).  Congress' enactment of the Veterans' Benefits Act of

1957—which elevated VA's effective-date regulations in force at the time to statutory law—codified these well-established rules.

### 1. By 1957, VA's regulations had long recognized that the effective dates of veterans' benefits may be established through informal submissions

The modern approach to effective-date determinations originated in the decades between the World Wars. The modern veterans' benefit system—as it emerged between World War I and the Great Depression—made the date on which a veteran's application is received the linchpin of the effective-date determination in nearly all cases. *See*, *e.g.*, Economy Act of 1933, Pub. L. No. 73-2, § 9, 48 Stat. 8, 10 ("[P]ayments shall not be made for any period prior to date of application."). By the 1950s, this approach was well settled, with VA's regulations making clear that the effective date "shall be fixed in accordance with the facts found, except that … [n]o award of disability or death pension shall be effective prior to … the date of receipt of application therefor." *See* 38 C.F.R. § 3.212(a) (1956) (incorporating Veterans Regulation 2, Part I, ¶ I(a) (1933) as amended by Pub. L. No. 78-144, § 17, 57 Stat. 554, 560 (1943)).[6]

VA did not, however, mandate that veterans submit formal applications— i.e., the forms ultimately required—at the outset of the process as the exclusive

---

[6] Claimants seeking disability benefits within one year of discharge were entitled to a one-year grace period. Pub. L. No. 78-144, § 17, 57 Stat. at 560 (referenced in 38 C.F.R. § 3.212 (1956)).

means of establishing the effective date of their benefits.  Rather, since at least the 1930s, VA had formally construed its effective-date requirements to be satisfied as soon as VA received an informal submission from the veteran clearly expressing the intent to apply for a benefit, so long as a formal application was submitted at a later stage.  The first edition of Title 38 of the Code of Federal Regulations, published in 1938, makes this clear:

> Any communication from or action by a claimant … which clearly indicates an intent to apply for benefits … may be considered an informal claim for compensation or pension[.] … *The formal application in such instances, if submitted within reasonable time will be considered filed as of the date of receipt of the informal claim by the Veterans' Administration.*

38 C.F.R. § 2.1027 (1938).  So does the 1956 version of the Code, the last version published before Congress' codification of veterans' law in 1957:

> Informal claims.  Any communication from or action by a claimant or his duly authorized representative … which clearly indicates an intent to apply for disability or death compensation or pension, may be considered an informal claim. … *If [a formal application is] received within 1 year …, it will be considered filed as of the date of receipt of the informal claim by the Veterans' Administration.*

38 C.F.R. § 3.27 (1956) (emphasis added).  In sum, by the time Congress set out to codify veterans' benefit laws in 1957, VA's regulations had long recognized that an informal submission would establish the effective date of benefits ultimately awarded to veterans.

24

### 2. The Veterans' Benefits Act of 1957 codified VA's longstanding rule

The Supreme Court and this Court have both repeatedly held that "when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274-275 (1974)); *see also, e.g.*, *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *NLRB v. Gullett Gin Co.*, 340 U.S. 361, 366 (1951); *Helvering v. R.J. Reynolds Tobacco Co.*, 306 U.S. 110, 115 (1939); *In re Cuozzo Speed Techs, LLC*, 778 F.3d 1271, 1280 (Fed. Cir. 2015); *GPX Int'l Tire Corp. v. United States*, 666 F.3d 732, 739 (Fed. Cir. 2011), *superseded by statute*, 678 F.3d 1308 (Fed. Cir. 2012). "Even where the legislative history does not explicitly reference a prior interpretation, the Supreme Court has often found that Congress has ratified … agency interpretations through statutory reenactment." *GPX Int'l Tire Corp*, 666 F.3d at 739 (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 589-590 (2010); *Schor*, 478 U.S. at 846)). When "'the legislative history … demonstrates that Congress was indeed well aware of the prior interpretation,'" the presumption is even "stronger." *Id.* (quoting *Lindahl v. OPM*, 470 U.S. 768, 782 (1985))

(alterations omitted); *see also Boggs v. Peake*, 520 F.3d 1330, 1335 (Fed. Cir. 2008) (applying agency ratification canon in the context of veterans' benefit law).

When Congress ratifies an existing agency practice—implicitly or explicitly—the consequences are straightforward: "[A]gencies no longer have discretion to change this interpretation." *GPX Int'l Tire Corp.*, 666 F.3d at 740. Thus, in *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), the Supreme Court held that Congress' implicit ratification of FDA's "consistent and repeated statements that it lacked authority … to regulate tobacco" precluded the agency from later asserting jurisdiction over tobacco products through notice and comment. *Id.* at 144, 156. Similarly, in *GPX*, this Court held that the Department of Commerce could not reverse its position where, "in amending and reenacting the trade laws in 1988 and 1994," Congress had implicitly "adopted the position" previously asserted by the Department. *GPX*, 666 F.3d at 741-743.[7]

Application of these settled principles of statutory interpretation is warranted here. In 1957, Congress enacted the Veterans' Benefits Act for the primary purpose of codifying existing law. H.R. Rep. No. 85-279, at 2 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1214, 1214-1215. The law that Congress set out to codify, moreover, was not limited to "legislation," but expressly included "all the

---

[7] After *GPX* was decided, 666 F.3d 732, Congress superseded the substantive holding of that decision by statute; the panel accordingly granted rehearing and remanded the case based on the law as amended. 678 F.3d at 1313.

*administrative* provisions relating to [veteran's disability, death, pension, and other] benefits, as well as those common to all benefits administered by the Veterans' Administration." *Id.*; *see also* S. Rep. No. 85-332, at 1-2 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1214, 1242 (same); *see also Boggs*, 520 F.3d at 1335 (same). Most directly relevant here, the effective-date provisions enacted by Congress were substantively indistinguishable from the VA regulations then in force. *Compare* Pub. L. No. 85-56, § 910(a)-(b), 71 Stat. 83, 119 (1957) (codified as amended at 35 U.S.C. § 5110(a)-(b)(1)), *with* 38 C.F.R. § 3.212 (1956) (incorporating Veterans Regulation 2, Part I, ¶ I(a) (1933) as amended by Pub. L. No. 78-144, § 17, 57 Stat. 554, 560 (1943)).

Under the codification canon and this Court's precedent, Congress' deliberate elevation of VA's effective-date regulations to statutory law must be interpreted to have codified the full scope of those regulations, including the rule that informal submissions can preserve benefits' effective dates. That is precisely the type of inference this Court drew in *Boggs*, where this Court looked to pre-1957 VA regulations to construe a provision in the veterans statute—"same factual basis" in 38 U.S.C. § 7104(b)—that Congress had enacted in the 1957 Act to codify existing VA regulations. 520 F.3d at 1335.

The inference of codification is particularly compelling here, moreover, because the legislative history of the 1957 Act makes plain that Congress had

27

actual and detailed knowledge of VA's effective-date regulations. The 1957 Act was the result of thorough "study and research [that] extended over a period of months," which involved both the House Veterans' Affairs Committee and VA. H.R. Rep. No. 85-279, at 1, *reprinted in* 1957 U.S.C.C.A.N. at 1214.[8] The resulting House report contains a detailed analysis, drafted by VA, of the intended changes in existing law. *Id.* at 13-14, *reprinted in* 1957 U.S.C.C.A.N. at 1226-1227. It also contains detailed "suggestions dealing with technical aspects of the bill," *id.* at 13, *reprinted in* 1957 U.S.C.C.A.N. at 1226, including suggested amendments to various provisions to conform them with existing law. *Id.* at 14-27, *reprinted in* 1957 U.S.C.C.A.N. at 1227-1240. One of these suggestions pertained to the bill's effective-date provisions, which, as initially drafted, included a slight departure from existing regulations. *Compare* H.R. 53, 85th Cong. § 910(a) (Jan. 3, 1957) (omitting phrase "receipt of" in text of initial bill), *with* H.R. Rep. No. 85-279, at 22, *reprinted in* 1957 U.S.C.C.A.N. at 1235 (recommending insertion of phrase "receipt of" in statutory text). Congress amended the bill as suggested. Pub. L. No. 85-56, § 910(a)-(b), 71 Stat. 83, 119 (1957).

---

[8]    In an article expressing his individual views, the Chief Counsel for Policy and Procedure at the Board of Veterans' Appeals has correctly characterized the 1957 Act as "key to tracing [the] history" of veterans' law. Ridgway, *Recovering an Institutional Memory:  The Origins of the Modern Veterans' Benefits System from 1914 to 1958*, 5 Veterans L. Rev. 1, 23 (2013); *id.* at 25 (1957 Act "consolidated and organized the core of veterans' law, while elevating many provisions that had previously existed only in regulation.").

This record of meticulous study by Congress confirms the presumption that Congress had detailed knowledge of the effective-date regulations it was codifying in the 1957 Act. Had Congress intended to relegate an important aspect of the effective-date framework to administrative grace, it would have said so explicitly. *Lorillard*, 434 U.S. at 581 (ratification presumption "particularly appropriate" where Congress exhibited "detailed knowledge" of existing law).

**B.      Post-1957 Legislation Confirms Congress' Intent To Tie Effective Dates To Informal Submissions**

1.      Legislative developments since the 1957 Act confirm Congress' intent to allow veterans to claim their earliest informal written request to VA as the effective date for benefits. Between 1957 and 2014, Congress took action in connection with the statute's effective-date provisions, 38 U.S.C. § 5110, more than a dozen times.[9] On at least three of these occasions, Congress amended, reenacted, or renumbered the very subsections that had first been signed into statutory law in 1957 and are now codified at 38 U.S.C. § 5110(a)-(b)(1). *See*

---

[9]      Pub. L. No. 85-857, § 3010, 72 Stat. 1105, 1226-1227 (1958); Pub. L. No. 87-674, § 3, 76 Stat. 558, 558 (1962); Pub. L. No. 87-825, § 1, 76 Stat. 948, 948-949 (1962); Pub. L. No. 91-376, § 7, 84 Stat. 787, 790 (1970); Pub. L. No. 91-584, § 13, 84 Stat. 1575, 1578 (1970); Pub. L. No. 93-177, § 6(a), 87 Stat. 694, 696 (1973); Pub. L. No. 93-527, § 9(b), 88 Stat. 1702, 1705 (1974); Pub. L. No. 94-71, § 104, 89 Stat. 395, 396 (1975); Pub. L. No. 97-66, § 204(b), 95 Stat. 1026, 1029 (1981); Pub. L. No. 102-40, § 402(b)(1), (d)(1), 105 Stat. 187, 238, 239 (1991); Pub. L. No. 102-83, §§ 4(a)(2)(A)(vi), (b)(4)(B), 5(c)(1), 105 Stat. 378, 403, 405, 406 (1991); Pub. L. No. 108-454, § 305, 118 Stat. 3598, 3611-3612 (2004); Pub. L. No. 112-154, § 506, 126 Stat. 1165, 1193-1194 (2012).

*supra* pp.10-11 & n.2. Through all these amendments, Congress never deviated from the rule that informal submissions can serve as effective-date "placeholders"—a position that VA also consistently maintained in its regulations and practice. *Compare* 38 C.F.R. § 3.27 (1956) and 38 C.F.R. § 3.155(a) (1961), *with* 38 C.F.R. § 3.155(a) (2014). In light of Congress' extraordinary interest in this specific area of the veterans' benefit system, its acquiescence since 1957 alone warrants application of the codification canon. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2252 (2011).

2. Since 1957, Congress has not merely acquiesced with VA's position; Congress has also enacted legislation that affirmatively contradicts VA's attempts to eliminate informal submissions as placeholders for effective dates.

An important component of the informal and veteran-friendly system is the requirement that VA notify claimants who have submitted "incomplete applications" of the missing information necessary to complete their claims. 38 U.S.C. § 5102(b) ("Incomplete Applications"). But Congress has gone further and also required that, if the veteran then provides the missing information within one year of VA's notice, the application relates back to the date of the initial submission. Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 701(a), 117 Stat. 2651, 2670 (codified at 38 U.S.C. § 5102(c) ("If [the required] information … is not received by the Secretary within one year from the date such notice is sent,

30

no benefit may be paid or furnished by reason of the claimant's application.")).

Section 5102(c) thus confirms that a claim's effective date is tied to the date on which the veteran *initiates it*—not the date of ultimate compliance with formal application procedures. Indeed, Congress' intent on this point is self-evident if one considers that, when § 5102(c) was enacted in 2003, VA had long defined the term "application" to mean "a formal *or informal* communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit." 38 C.F.R. § 3.1(p) (2003). VA cannot now eviscerate what Congress plainly understood it was accomplishing when it enacted § 5102(c).

In the preamble to the Final Rule, VA attempted to deflect the import of § 5102(c) by asserting that it does not "unambiguously require[]" vacatur after all. 79 Fed. Reg. at 57,664. But VA provided no basis to accept even that studiously qualified position. First, VA sought to justify its position on the ground that, while the informal claims process dates back to the 1920s, § 5102(c) was "added in 2003." *Id.* But the question is whether the Final Rule is "contrary to law" as it exists today. 5 U.S.C. § 706(2). It is therefore irrelevant whether the informal effective-date placeholder provisions find their historical root in § 5102(c) or elsewhere.

In any event, the view adopted by VA in the rulemaking misapprehends the chronology of § 5102(c)'s enactment. While § 5102(c) itself was added in 2003,

comparable "Incomplete Application" provisions have been part of the VA statute since at least the 1950s. *See, e.g.*, Pub. L. No. 85-56, § 903(a), 71 Stat. 83, 119 (1957). Congress has thus long understood and intended that submission of an incomplete application—including an informal claim—would preserve an effective date so long as the veteran completed his submission within one year.

Next, VA sought to justify its position on the ground that the "plain language" of § 5102(c) "suggests" that the statute merely "prevents"—but does not *grant*—"any effective date consequences for an incomplete application not formalized within one year." 79 Fed. Reg. at 57,664. But this Court dismissed this same "technical argument" when it interpreted analogous language formerly contained in § 5103(a). *PVA II*, 345 F.3d at 1345, *superseded in part by statute*, Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 701(b), 117 Stat. at 2670.[10] There, this Court held that a construction analogous to the one VA adopted in this rulemaking "[wa]s not a reasonable implementation of congressional intent expressed in the plain language of the statute": "The statute is clearly intended to provide claimants with one year to submit the requested evidence." *Id.*; *see also DAV*, 327 F.3d at 1348 (same).

---

[10]  Similarly to current § 5102(c), the language in § 5103(b)(1) at issue in *PVA II* provided, "In the case of information or evidence that the claimant is notified … is to be provided by the claimant, if such information or evidence is not received by the Secretary within one year from the date of such notification, *no benefit may be paid or furnished by reason of the claimant's application*." (Emphasis added).

The history of § 5102's enactment confirms that this Court was correct in rejecting in *PVA II* the position now adopted by VA. Congress added the one-year provision to § 5102 only *after PVA II* was decided. Pub. L. No. 108-183, § 701(a), 117 Stat. at 2670. By then, Congress was reasonably presumed to be aware of this Court's decision, and Congress' use of analogous language in § 5102(c) is compelling evidence that Congress intended to incorporate this Court's construction. *Jerman*, 559 U.S. at 589-590 (presuming Congress' awareness of lower court decisions).

In any event, there is no need to invoke any *presumption* here: In the same bill in which Congress added the one-year provision to § 5102, Congress also made targeted changes to § 5103 to respond to other aspects of *PVA II*'s construction. Pub. L. No. 108-183, § 701(b), 117 Stat. at 2670.[11] These changes make clear that Congress was well aware of this Court's rejection of VA's construction in *PVA II* and that Congress codified it in § 5102(c).

Finally, VA sought to explain its amendments to the effective-date framework by asserting that, at most, § 5102(c) could attach effective-date

---

[11] In the Veterans Benefits Act of 2003, Congress superseded the portion of *PVA II* that prohibited VA from deciding a claim in less than one year. *Compare id.* at 1346, *with* Pub. L. No. 108-183, § 701(b), 117 Stat. at 2670 (adding 38 U.S.C. § 5103(b)(3)). As a result, now, "VA may decide the claim prior to the expiration of the one-year period[.] … If VA does so, however, and the claimant subsequently provides the information and evidence within one year of the date of the notice, VA must readjudicate the claim." 38 C.F.R. § 3.159(b)(1).

consequences to what VA now considers, under the regulations at issue in this case, to be "incomplete applications"—but not to "all informal claimant submissions." 79 Fed. Reg. at 57,664. But VA's contention assumes what VA must (and cannot) prove: That the phrase "incomplete application[]" in § 5102(b) can mean what VA now says it means, as opposed to what it meant at the time of Congress' enactment: "a formal *or informal* communication." 38 C.F.R. § 3.1(p) (2003).[12] Because "incomplete applications" always included informal submissions, VA's explanation cannot justify the agency's action.

### C. The Final Rule Conflicts With Congress' Mandate That The Veterans System Be As Informal And Beneficial As Possible

In addition to misinterpreting the relevant statutory provisions, VA's elimination of informal effective-date placeholders runs contrary to Congress' overarching purpose in enacting the veterans' benefit laws: maintaining a claimant-friendly, non-adversarial process for providing service-related benefits to veterans and their families.

"Congress has made clear that the VA is not an ordinary agency." *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009); *Henderson*, 131 S. Ct. at 1204. As part of

---

[12] In the rulemaking, VA also states that the Final Rule is consistent with the statute because 38 U.S.C. § 501(a)(2) authorizes the Secretary to "prescribe … the forms of application by claimants." But, as the plain text makes clear, § 501(a)(2) has nothing to do with effective-date determinations. Thus, while § 501(a)(2) authorizes VA to make standardized application forms a part of the application process, it does not authorize VA to impose effective-date requirements that contradict Congress' specific intent reflected in other parts of the statute.

this "special solicitude for the veterans' cause," *Sanders*, 556 U.S. at 412,

Congress has long been committed to ensuring that the VA process "'function

throughout with a high degree of informality and solicitude for the claimant.'"

*Henderson*, 131 S. Ct. at 1200 (quoting *Walters*, 473 U.S. at 311). "A veteran,

after all, has performed an especially important service for the Nation, often at the

risk of his or her own life." *Sanders*, 556 U.S. at 412. And while the system's

uniquely pro-claimant attributes pervade all stages of adjudication before the

agency, *supra* pp.6-8, they are most evident—and most important—in "the early

stages of the application process," when "the veteran is almost always unassisted

by legal counsel." *Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir. 2000),

*superseded by statute on other grounds*. It is at this stage that it is most important

that VA "'fully and sympathetically develop the veteran's claim to its optimum.'"

*Hodge*, 155 F.3d at 1362-1363.

The Supreme Court has "long" recognized that, to account for these policies,

"'provisions for benefits to members of the Armed Services are to be construed in

the beneficiaries' favor.'" *Henderson*, 131 S. Ct. at 1206 (quoting *King v. St.

Vincent's Hosp.*, 502 U.S. 215, 220-221 n.9 (1991)); *see also Brown v. Gardner*,

513 U.S. at 117-118. Both the Supreme Court and this Court have applied this

"*Gardner* canon" with particular force where, as here, a contrary interpretation

would impose inflexible requirements that jeopardize veterans' ability to receive

their earned benefits. *Henderson*, 131 S. Ct. at 1206 ("Rigid jurisdictional treatment" deadline for filing notice of appeal in Veterans Court "clash sharply" with the pro-claimant scheme created by Congress); *Dixon v. Shinseki*, 741 F.3d 1367, 1376 (Fed. Cir. 2014) (same for a "mechanistic bar on the introduction of clarifying evidence on motion for reconsideration of an equitable tolling decision").

VA's elimination of informal effective-date placeholders runs contrary to Congress' veteran-friendly purpose. Under the Final Rule, only compliance with VA's new formalities serves to preserve an early effective date. 79 Fed. Reg. at 57,695 (new 38 C.F.R. § 3.155(b), (d)). VA, moreover, attaches harsh penalties to submitting a non-standardized benefit request: The veteran loses his entitlement to his benefits until a standardized form is filed. By injecting these formalities into the system and imposing significant penalties for non-compliance, the Final Rule effectively transforms the claim initiation phases into precisely the kind of "trap for the unwary" that Congress has long rejected in the veterans context. *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009). At a minimum, VA's elevation of formal compliance over discerning the veteran's intent violates Congress' purpose of preserving a "beneficial non-adversarial system of veterans benefits," in which VA "fully and sympathetically develop[s] the veteran's claim *to its optimum*."

H.R. Rep. No. 100-963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795 (emphasis added).

The contrast between Congress' "'paternalistic'" approach to veterans' benefits, *Comer*, 552 F.3d at 1369, and the Final Rule's formalism is especially strident considering the predicaments of large swaths of the veteran population. Approximately 9 million of the Nation's veterans are 65 or older—an age group in which only 45.5 percent of Americans access the Internet from any location. *E.g.*, JA204, JA207 (American Legion (citing studies)); JA184 (NVLSP and MOPH); U.S. Census Bureau, *Veterans Day 2010: Nov. 11* (Oct. 27, 2010);[13] U.S. Census Bureau, *Computer and Internet Use in the United States*, at 4 (2013).[14] A total of approximately 5.5 million veterans suffer from disabilities—1.9 million of them under 65 years of age. U.S. Census Bureau, *2013 American Community Survey, American FactFinder*, Table B21007.[15] These disabilities, which are often the result of injury sustained in combat, include blindness, brain injury, mental health conditions, and cognitive impairments. According to the U.S. Census Bureau, 17% of disabled veterans under 65 years of age are estimated to live below the

---

[13]    https://www.census.gov/newsroom/releases/archives/facts_for_ features_special_editions/cb10-ff21.html.

[14]    https://www.census.gov/prod/2013pubs/p20-569.pdf.

[15]    http://factfinder.census.gov/faces/tableservices/jsf/pages/ productview.xhtml?pid=ACS_13_3YR_B21007&prodType=table (raw data).

poverty line.  U.S. Census Bureau, *2013 American Community Survey, American FactFinder*, Table B21007.[16]

These are, in all likelihood,[17] the segments of the veteran population who are disproportionately represented in the "approximately half of the claimant population [who currently] files non-standard submissions."  79 Fed. Reg. at 57,661.[18]  For many of these veterans, it will be impossible to access VA's electronic platform or, in many cases, even know or understand the requirements VA is imposing.  *See supra* pp.12-13 (citing comments from veteran services organizations); JA301-302 (Rep. O'Rourke); JA303-304 (Sen. Moran).[19]

The Final Rule's elimination of informal effective-date placeholders contradicts Congress' guiding principle in arranging the veterans' benefit system:

---

[16]     http://factfinder.census.gov/faces/tableservices/jsf/pages/ productview.xhtml?pid=ACS_13_3YR_B21007&prodType=table (raw data).

[17]     VA does not track detailed statistics on who uses the informal claims process.  79 Fed. Reg. at 57,690, 57,693.

[18]     The disproportionate impact of the Final Rule on disadvantaged veterans is not mitigated by the fact that VA is required by statute to furnish standardized forms in response to informal submissions.  *See* 38 U.S.C. § 5102(a).  There is no time limit to how long VA can take to furnish the forms, potentially leading to loss of benefits for extended periods of time.

[19]     The Final Rule's provision allowing for submission of an "Intent to File" form to a VA representative by telephone, 79 Fed. Reg. at 57,695 (new 38 C.F.R. § 3.155(b)(1)(iii)), does not bring the Final Rule in line with Congress' veteran-friendly legislative purpose.  Even assuming that elderly and disabled veterans can be expected to reliably navigate VA's automated telephone systems, the principal obstacle for many disadvantaged veterans is that they will not know about VA's requirements in the first place.  Allowing telephonic submissions does not alleviate this problem.

that "[t]he government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them.'" *Comer*, 552 F.3d at 1369; *see also Dixon*, 741 F.3d at 1376 (Congress' solicitude for veterans prohibits "'punish[ing] some of the most vulnerable'" claimants—"'unrepresented veterans whose illnesses, often related to their military service,' prevent them from fully apprehending the prerequisites for" preserving the full extent of their benefits). To remain faithful to that promise, VA can (and should) make standardized forms available to veterans as an *option*, but it cannot impose them as an early-stage *requirement* on pain of denial of earned benefits.

### D. The Final Rule Is Arbitrary And Capricious

The Final Rule's elimination of informal effective date placeholders should also be set aside as arbitrary and capricious because VA (1) has failed to establish a rational connection between its requirement that initial submissions be on standard forms and its asserted objectives; and (2) has not adequately considered the Rule's impact on the veteran population.[20]

It is well established that the Final Rule must be set aside if VA "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision

---

[20] Because the analysis under arbitrary and capricious review overlaps with the *Chevron* step two inquiry, VA's failure to articulate a rational basis for the Final Rule is dispositive under either rubric. *See National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*, 669 F.3d 1340, 1348 (Fed. Cir. 2012).

that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Furthermore, "an agency's 'failure to respond meaningfully' to objections raised by a party [also] renders its decision arbitrary and capricious." *PPL Wallingford Energy LLC v. FERC*, 419 F.3d 1194, 1198 (D.C. Cir. 2005) ("'Unless the [agency] answers objections that on their face seem legitimate, its decision can hardly be classified as reasoned.'" (alterations omitted)). VA's elimination of informal submissions as effective-date placeholders does not meet these standards.

1.     In the rulemaking, VA attempted to justify its effective-date overhaul on essentially one basis:  administrative efficiency—a concept that VA invokes at least 20 times in the preamble to the Final Rule. *See, e.g.*, 79 Fed. Reg. at 57,667. But while administrative efficiency can be a valid consideration, VA must still show how its chosen course serves that objective. *State Farm*, 463 U.S. at 43. VA's asserted rationale—that standard forms are efficient, and therefore must be required, 79 Fed. Reg. at 57,678—does not withstand scrutiny.

During the rulemaking process, several commenters explained that VA "should have standard forms," but that "use of those forms should be *optional*."  79 Fed. Reg. at 57,678 (emphasis added); *see, e.g.*, JA301-302 (Rep. O'Rourke);

JA275 (VVA); JA295 (PVA).  In its Final Rule, VA provided no reasoned response to these comments.  Instead, it made an unsupported assertion that "[m]aking standard forms optional will not achieve the necessary standardization of the process because VA personnel would still be required to engage in time-intensive interpretive review of narrative submissions in order to determine whether a claim or appeal has been filed."  79 Fed. Reg. at 57,678.

VA's conclusory assertion is most striking for what it does *not* say.  VA does not—and cannot—claim that requiring the use of standardized forms obviates the need for agency review of informal submissions.  As VA concedes, informal submissions requesting benefits "clearly trigger[] VA's obligation to send the correct form."  79 Fed. Reg. at 57,667; *see also id.* at 57,696 (new 38 C.F.R. § 3.155(a) (treating informal submissions as "request[s] for an application")); 38 U.S.C. § 5102(a) (requiring VA to furnish forms).  And VA must also presumably record the date when the submission was received to document its own compliance with 38 U.S.C. § 5102(a).  *Cf.* 79 Fed. Reg. at 57,663 ("A piece of mail must be identified, sorted, sent to a scanning facility, and meta-data must be entered.").  Thus, VA must still review informal submissions as they are received.

Nor does VA offer any valid reason to believe that requiring standardized intent-to-file forms meaningfully decreases the overall number of informal submissions when compared to simply making those forms optional.  As VA itself

explains, numerous factors make standard forms preferable to informal claims for most claimants. Standard-form claimants are not required to compose time-consuming letters and narrative descriptions. 79 Fed. Reg. at 57,661. They do not have to "identify the specific benefit sought." *Id.* at 57,665. They have the option to make their submissions electronically. *Id.* at 57,666 (describing new 38 C.F.R. § 3.155(b)(1)(i)). And they may well experience shorter processing times. Because capable claimants will *choose* to use the standardized forms wherever possible,[21] the only consequence of *requiring* their use is to set a "trap for the unwary," *Comer*, 552 F.3d at 1369—i.e., prevent those who do not know or cannot comply with VA's new requirements from obtaining their earned benefits.

Instead, in the rulemaking, VA took the position that review of narrative submissions would be more time-consuming if those submission have effective-date consequences because VA personnel would have to "determine whether a claim … has been filed." 79 Fed. Reg. at 57,678. But even that limited assertion is incorrect. The issue is whether informal submissions should be accepted for the

---

[21] VA's own pilot project supports this conclusion. In 2012, VA's Houston Regional Office included a standard "Notice of Disagreement" ("NOD") form with its notification letters. 78 Fed. Reg. at 65,498. Within only five months, approximately 60% of NODs received by VA came on standard forms. *Id.* This statistic is particularly impressive because it does not even net out the veterans who, because of age or disability, could not adapt to VA's experimental form. VA would likely achieve even higher response rates in the context of a sustained nationwide effort in which forms can be submitted online, paper forms are accessible on VA's website, and shorter processing times are properly publicized.

limited purpose of establishing an effective date—not whether informal claims should be accepted as complete applications more generally.[22]  To establish an effective date, VA personnel would not need to engage in any "interpretative review," much less determine whether the narrative establishes a valid claim.  *Id.*  VA's personnel would merely record from the informal submission "sufficient identifiable or biographical information to identify the claimant"—exactly as it does when it reviews handwritten information submitted on a paper intent-to-file form.  *Id.* at 57,665; *see also id.* at 57,695 (new 38 C.F.R. § 3.155(b)(1)(ii)).  The agency's insistence on treating these two indistinguishable placeholders differently is arbitrary and capricious.

Finally, the Final Rule cannot be supported on the basis of VA's assertion that it will help the agency meet its "operational goal" of "process[ing] all claims with 98 percent accuracy within 125 days" and "eliminate the backlog" in 2015.  79 Fed. Reg. at 57,678.  Backlog reduction is a legitimate end only to the extent it is a proxy for *actual* agency efficiency.  But VA's imposition of a requirement to use these new forms does not promote *actual* efficiency, because, as explained *supra*, it does not reduce the volume of informal claims or simplify VA's review.

---

[22]  Petitioners do not dispute that VA can require use of standardized forms to complete the application process; Petitioners' objections, again, are limited to the Final Rule's elimination of informal submissions as a means of establishing effective dates in instances where the claimant subsequently submits a standardized form.

Any backlog reduction will reflect merely the fact that VA is now delaying the time when claims technically become "pending."  Surely, improvements in the agency's performance metrics that are attributable exclusively to accounting changes are not among the "factors which Congress … intended [VA] to consider" in carrying out its rulemaking function.  *State Farm*, 463 U.S. at 43.

2.     VA has also failed to meaningfully address the disproportionate impact that the Final Rule's treatment of informal submissions will have on the most vulnerable veterans:  those who are old, severely disabled, or impoverished.  In the rulemaking process, several commenters raised this precise issue.  *See supra* pp.12-13 (citing comments from veteran services organizations); JA301-302 (Rep. O'Rourke); JA303-304 (Sen. Moran).  VA offered two cursory responses, but neither has merit.  First, it noted that the Final Rule "provide[s] that claimants may establish an effective date placeholder via oral contact with designated VA personnel." 79 Fed. Reg. at 57,677.  But while this option is an improvement over the Proposed Rule, it cannot substitute for direct mailing of an informal letter informing VA of the veteran's intent to apply for benefits.  Most obviously, telephone submissions do nothing for the many veterans who suffer from debilitating disabilities—including brain injury, mental health problems, cognitive impairments, and, especially among the elderly, hearing loss—that make telephone contact with VA unrealistic or unreliable.  *Id.*  Nor will telephone contact be a

44

solution for countless veterans who, having relied on written correspondence with VA for decades, may not be aware of the option of filing VA's new intent-to-file form by telephone. VA's failure to provide any reasoned explanation of—much less solution to—these problems renders the Final Rule arbitrary and capricious.[23]

Second, VA stated that, if a veteran is "mentally incompetent" or "physically unable to sign a form," a caretaker can sign the form on his behalf. 79 Fed. Reg. at 57,677. But that provision does not help those veterans who, due to age or disability, are not aware of or cannot meaningfully understand or comply with VA's requirements and its forms' fine print, yet are in no way "mentally incompetent" or "physically unable to sign a form." That VA even suggests this provision as an adequate safeguard only shows how far the Final Rule strays from Congress' "special solicitude for the veterans' cause." *Sanders*, 556 U.S. at 412.

In light of the outsized impact that the Final Rule is likely to have on the most disadvantaged segments of the veteran population, rational decisionmaking would have called for, at a minimum, creating equitable exceptions for those who do not know about the new framework or cannot reasonably be expected to comply

---

[23] In the rulemaking, VA asserted that it postponed the Final Rule's effective date until March 2015 to perform "robust outreach" about the new intent-to-file framework. *E.g.*, 79 Fed. Reg. at 57,661; *see also id.* at 57,686. The Final Rule does not provide a detailed explanation of this purported "outreach," much less information sufficient to assess its effectiveness.

with it.  VA's failure to make—or even give reasoned consideration to—any such accommodation renders the Final Rule arbitrary and capricious.

## II.   THE FINAL RULE'S NEW EFFECTIVE-DATE REGULATIONS DO NOT COMPLY WITH THE APA'S NOTICE AND COMMENT REQUIREMENTS

The Final Rule's intent-to-file framework should be set aside on procedural grounds as well, because it is not a logical outgrowth of the Proposed Rule.  5 U.S.C. § 553.  The APA prohibits agencies from promulgating substantive final rules[24] unless they are "'a 'logical outgrowth' of [their] notice.'"  *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079-1080 (D.C. Cir. 2009).  This doctrine "ensures that regulated parties have an opportunity to comment on new regulations." *Association of Private Sector Colls. & Univs. v. Duncan ("APSCU")*, 681 F.3d 427, 442 (D.C. Cir. 2012). "A final rule is a logical outgrowth of the proposed rule 'only if interested parties should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period.'" *International Union,*

---

[24]    The Final Rule is a "substantive" rule for purposes of the APA.  5 U.S.C. § 553(b)(3)(A).  It has the force of law.  It upends decades of VA non-adversarial, veteran-friendly law granting benefits based on informal placeholders. *See supra* pp.8-11, 23-25.  And it affects the benefit entitlements of applicants by determining their effective dates. *See Military Order of Purple Heart of USA v. Secretary of Veterans Affairs*, 580 F.3d 1293, 1296 (Fed. Cir. 2009) (rule is substantive if it is a "'change in existing law or policy which affects individual rights and obligations'").

*United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94-95 (D.C. Cir. 2010).

The Final Rule's intent-to-file framework does not meet these standards. In the Proposed Rule, VA did not propose to create a new "Intent to File" form for initiating claims. Instead, VA proposed to eliminate the informal claims process and replace it with a system where (i) existing application forms are designated as "complete" or "incomplete"; and (ii) electronic claims receive preferential treatment over paper ones. *E.g.*, 78 Fed. Reg. at 65,490, 65,494-65,497; 79 Fed. Reg. at 57,663. The Final Rule replaces it with something very different: a new intent-to-file "concept" based on a "new form" that was never mentioned in the Proposed Rule. 79 Fed. Reg. at 57,664.

While the new system is, in some respects, an improvement over the Proposed Rule, it also raises significant new questions that should be tested through public comment. VA touts the new intent-to-file process as "strik[ing] an appropriate balance," 79 Fed. Reg. at 57,676, and highlights its purported "liberalizing" features, *id.* at 57,665. But VA's assessment leaves many questions unaddressed: How will the requirements of the new intent-to-file "concept" and "form" impact the most disadvantaged veterans—i.e., the elderly, the disabled, and the poor? Can these groups be expected to understand and comply with VA's new requirements? Can they even be informed of its existence? Are VA's telephone

resources adequate to serve the unique needs of these groups?  Are VA's

employees adequately trained to carry out their new function?  Are they *perceived*

to be adequately trained, so that veterans will call in the first place?  Are equitable

exceptions to the new system warranted?

The answers to these and similar questions are critical to ensuring that the

veterans system remains faithful to Congress' mandate and reasonably

administered.  Yet VA is unlikely to know the relevant facts, because much of the

relevant information lies with VA's customers and their representatives.  VA's

failure to meaningfully address any of these crucial issues in the Final Rule, *see*

*supra* pp.44-45, confirms as much.  Because VA failed to "ensure fairness to [the]

affected parties," the Final Rule's intent-to-file system should be set aside.  *United*

*Mine Workers of Am.*, 626 F.3d at 95.[25]

### III.   THE FINAL RULE'S RESTRICTIONS ON CLAIMS THAT ARE RAISED BY RECORD EVIDENCE BUT NOT SPECIFICALLY IDENTIFIED BY THE VETERAN IS CONTRARY TO LAW

The Final Rule's new restrictions on the types of claims and benefits that

VA will adjudicate when presented with a disability claim by a veteran are

contrary to law and should be set aside.

---

[25]    VA suggests that the new intent-to-file form is a logical outgrowth of the original proposal because the agency purportedly based its rule change on comments it received from some commenters.  79 Fed. Reg. at 57,665.  But "[t]he [agency] must *itself* provide notice of a regulatory proposal."  *APSCU*, 681 F.3d at 462 (quoting *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1312 (D.C. Cir. 1991)).  "[I]t cannot bootstrap notice from a comment."  *Fertilizer Inst.*, 935 F.2d at 1312.

**A. Congress Has Mandated That VA "Determine All Potential Claims Raised By The Evidence"**

In its "special solicitude for the veterans' cause," *Sanders*, 556 U.S. at 412, Congress has mandated that VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." H.R. Rep. No. 100-963, at 13, *reprinted in* 1988 U.S.C.C.A.N. at 5795 (emphasis added). This Court defined the contours of that duty in *Roberson v. Principi*, 251 F.3d 1378. Roberson had sought to obtain an earlier effective date for his "total disability based upon individual unemployability" ("TDIU") award by arguing that he had implicitly raised an informal TDIU claim in an earlier application for benefits. *Id.* at 1381-1382. He argued that VA had committed "clear and unmistakable error" in failing to adjudicate a TDIU claim because, though he never mentioned the claim, his earlier application had requested the highest disability rating possible in connection with a claim for service-connected disability and there was evidence of unemployability. *Id.* This Court agreed, holding that VA has a duty to "'fully and sympathetically develop the veteran's claim to its optimum.'" *Id.* at 1384 (quoting *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998)). This Court thus held that VA "must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of [the claim's] specific[] label[]." *Id.*

This Court has repeatedly reaffirmed a broad reading of *Roberson*, rejecting VA's repeated attempts to impose an overly restrictive construction of its duty. *See*

*Cook v. Principi*, 318 F.3d 1347 (Fed. Cir. 2002) (en banc) ("[I]n order to develop a claim 'to its optimum … the VA 'must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled as a claim for TDIU.'"); *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) (*Roberson* "is not limited to its particular facts" and applies "to all pro se pleadings"); *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004) (reversing decision that "disregard[ed] the broader holding of *Roberson*"); *Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir. 2005) ("We trust that, after this clarification, the Veterans Court will have no difficulty in applying *Roberson* correctly in future cases."); *Comer v. Peake*, 552 F.3d 1362, 1367-1368 (Fed. Cir. 2009) ("The government reads *Roberson* too narrowly. This is not the first time that it has advanced an overly restrictive interpretation of *Roberson*, and this will not be the first time its efforts will be rejected."); *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013) (reversing decision that had failed to expressly acknowledge the duty articulated in *Roberson*). Indeed, VA's own longstanding regulations recognize that the agency must adjudicate claims even if they are not requested by the claimant. *See* 38 C.F.R. § 3.103(a) ("[I]t is the obligation of VA to … render a decision which grants *every benefit that can be supported in law* while protecting the interests of the Government." (emphasis added)); 37 Fed. Reg. 14,780, 14,780 (July 25, 1972).

In sum, Congress' declared intent and this Court's precedent establish a clear floor on VA's interpretation of veterans' benefit-related submissions: VA "must generously construe a pro se veteran's filing to discern *all* possible claims raised by the evidence." *Harris*, 704 F.3d at 948 (emphasis added).

**B.      The Final Rule Impermissibly Restricts The Claims Deemed Raised By Veterans**

The Final Rule's new restrictions on inferred claims would eviscerate the "duty to develop" claims to their "optimum" required by Congress and crystallized in *Roberson* and subsequent cases.

Under the Final Rule, VA adjudicates medical disability benefits only for (i) "the claimed condition"—i.e., the condition (or symptom) that is specifically identified on a standard claim; and (ii) "complications of the claimed condition." 79 Fed. Reg. at 57,673; *id.* at 57,696 (new 38 C.F.R. § 3.155(d)(2)). VA refuses to adjudicate benefits for any medical condition that is not specifically identified and that VA deems "unrelated to th[ose] particular claims"—no matter how apparent the condition is on the face of the record. *Id.* The Final Rule also (i) narrows the definition of a "[c]laim" to include only requests to "*specific* benefit[s]," 38 C.F.R. § 3.1(p) (emphasis added); and (ii) requires that, to be deemed "complete," a claim for medical disability "must identify the benefit sought," *id.* § 3.160(a)(3), and provide "[a] description of any symptom(s) or medical condition(s) on which the benefit is based," *id.* § 3.160(a)(4).

The implications of these amendments can be illustrated by example: If a veteran files a disability claim based on PTSD but fails to mention in his application that he lost both legs during service, VA purports to have no obligation to develop, adjudicate, or even inform the veteran of any benefits related to his amputations—even if those amputations are obvious on the face of the record and the VA adjudicator has actual knowledge of them.

This rule once again defies this Court's holdings in *Roberson* and subsequent cases. Those decisions lay out the controlling law in unmistakable terms: "*Roberson* requires … that the VA give a sympathetic reading to the veteran's filings by 'determin[ing] *all potential claims* raised by the *evidence*, applying all relevant laws and regulations.'" *Moody*, 360 F.3d at 1310 (quoting *Szemraj*, 357 F.3d at 1373) (emphases added). Under the plain terms of this holding, VA may not limit its review and adjudication to medical conditions and symptoms that are expressly identified in the veteran's filings and conditions secondary to those. It must (i) review the record relevant to the adjudication of the expressly claimed condition; (ii) adjudicate the claimed condition; and (iii) determine if any other condition is raised by the record for which the veteran can claim service connection.[26]

---

[26]　This Court's interpretation of VA's duty to develop veterans' claims is further supported by 38 U.S.C. § 5107(b), which requires VA to "consider *all*

The obligation to adjudicate all potential *claims* of course does not mean that VA must adjudicate all possible *conditions* that are raised by the record. For example, VA is not obligated to consider conditions for which VA has no basis to believe, based on the record, that the veteran may be able to establish service connection.[27] But when the record itself indicates entitlement, there is no reason why VA's adjudicators—who are knowledgeable about veterans' benefit law and are statutorily presumed to have reviewed the entire record—should not inform the veteran of his earned rights and adjudicate them. Congress' "special solicitude for the veterans' cause," *Sanders*, 556 U.S. at 412, its insistence on maintaining a paternalistic non-adversarial system, and this Court's repeated holdings demand no less.

None of VA's purported explanations has merit. In the rulemaking, VA took the position that Congress' relevant statement of intent—that VA must "fully and sympathetically develop the veteran's claim to its optimum," H.R. Rep. No. 100-963, at 13, *reprinted in* 1988 U.S.C.C.A.N. at 5795—should be interpreted

---

information and lay and medical evidence of record in a case before the Secretary with respect to benefits." (Emphasis added).

[27] For this reason, there is no merit to VA's suggestion that claimants might deliberately "identify only one condition on the standard application form, but submit evidence relating to multiple conditions on the expectation VA will identify and adjudicate those unidentified claims." 79 Fed. Reg. at 57,673. Claimants have every incentive to expressly identify and establish service connection for each of their conditions, because doing so ensures that those claims will be adjudicated.

narrowly. 79 Fed. Reg. at 57,673. According to VA, this statement imposes a duty to develop only the specific claim expressly raised in the veteran's filing—not all claims raised by the record. But that is plainly not how this Court has interpreted VA's duty in *Roberson* and like cases: VA "must generously construe a *pro se* veteran's filing to discern *all possible* claims raised by the evidence." *Harris*, 704 F.3d at 948 (emphasis added). *See supra* pp.49-51.

VA's attempts to distinguish *Roberson* are even more meritless. *See* Resp. Opp. To Mot. For Injunction Pending Appeal, *Veterans' Justice Group, LLC v. Secretary of Veteran Affairs*, No. 15-7021, at 15 n.10 (Feb. 2, 2015). For example, VA claims that *Roberson* "is specific to TDIU." *Id.* But, in fact, "[i]n *Roberson*, [this Court] held that the VA has a duty to fully develop *any filing* made by a *pro se* veteran by determining all potential claims raised by the evidence." *Harris*, 704 F.3d at 948 (emphasis added). And *Harris* itself remanded for application of *Roberson* even though the veteran's claim did not involve TDIU. *Id.* at 948-949. Nor is there substance to VA's attempt to narrow *Roberson* based on 38 U.S.C. § 5101(a)(1), which provides: "A specific claim in the form prescribed by the Secretary … must be filed in order for benefits to be paid or furnished." Section 5101(a)(1) merely requires compliance with formal requirement *as a prerequisite to payment* of the benefit—i.e., to complete a claim—not to *initiate* a claim. It says nothing about VA's duty to develop claims.

Finally, in the rulemaking, VA asserted that a duty to identify all claims reasonably raised by the evidence of record would be "incompatible" with the Final Rule's new requirement in § 3.160(a)(4) that "a complete claim enumerate the conditions and symptoms on which the claim is to be based." 79 Fed. Reg. at 57,673. But it is "*Congress* [that] … mandated" the duty to "develop the veteran's claim to its optimum before deciding it." *Roberson*, 251 F.3d at 1384 (emphasis added). It is "axiomatic" that a regulation cannot amend a statute. *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998).

\* \* \*

Petitioners agree that VA needs to reform and modernize its processes to provide better service to the veteran population. Petitioners also agree that the use of standardized forms can play a part in the application process. But VA cannot change its adjudicative framework in a way that defies Congress' mandate that the veterans system remain as informal and veteran-friendly as possible. Because the Final Rule fails this test, it should be set aside.

**CONCLUSION**

For the foregoing reasons, the Final Rule should be declared unlawful and set aside insofar as it (i) eliminates a veteran's ability to establish the effective date for his or her benefits through an informal submission; or (ii) restricts the types of claims and benefits that VA deems "reasonably raised" by a veteran to conditions specifically identified in the veteran's application and those derivative thereof.

May 14, 2015

Respectfully submitted,

/s/ Francesco Valentini

| | |
|---|---|
| BARTON F. STICHMAN | CARL J. NICHOLS |
| NATIONAL VETERANS LEGAL | FRANCESCO VALENTINI |
|    SERVICES PROGRAM | WILMER CUTLER PICKERING |
| 1600 K Street, N.W. |    HALE AND DORR LLP |
| Suite 500 | 1875 Pennsylvania Avenue, N.W. |
| Washington, D.C.  20006 | Washington, D.C.  20006 |
| Tel.: (202) 621-5677 | Tel.: (202) 663-6000 |
| Fax: (202) 328-0063 | Fax: (202) 663-6363 |
| | francesco.valentini@wilmerhale.com |

# ADDENDUM



# FEDERAL REGISTER

Vol. 79

No. 186

Thursday,

September 25, 2014

Part II

Department of Veteran Affairs

38 CFR Parts 3, 19, and 20
Standard Claims and Appeals Forms; Final Rule

# DEPARTMENT OF VETERANS AFFAIRS

## 38 CFR Parts 3, 19, and 20

### RIN 2900–AO81

### Standard Claims and Appeals Forms

**AGENCY:** Department of Veterans Affairs.

**ACTION:** Final rule.

**SUMMARY:** The Department of Veterans Affairs (VA) amends its adjudication regulations and the appeals regulations and rules of practice of the Board of Veterans' Appeals (Board) to require that all claims governed by VA's adjudication regulations be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. This rulemaking also eliminates the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims for increase or to reopen while retaining the retroactive effective date assignment for awards for claims for increase which are filed on a standard form within 1 year of such hospitalization, examination, or treatment. This final rule also implements the concept of an intent to file a claim for benefits, which operates similarly to the current informal claim process, but requires that the submission establishing a claimant's effective date of benefits must be received in one of three specified formats. Finally, these amendments will provide that VA will accept an expression of dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction(AOJ) as a Notice of Disagreement (NOD) only if it is submitted on a standardized form provided by VA for the purpose of appealing the decision, in cases where such a form is provided. Although a standardized NOD form will only initially be provided in connection with decisions on compensation claims, VA may require a standard NOD form for any type of claim for VA benefits if, in the future, it develops and provides a standardized NOD form for a particular benefit. The purpose of these amendments is to improve the quality and timeliness of the processing of veterans' claims for benefits by standardizing the claims and appeals processes through the use of forms.

**DATES:** *Effective Date:* This final rule is effective March 24, 2015.

**FOR FURTHER INFORMATION CONTACT:** Stephanie Li, Chief, Regulations Staff (211D), Compensation Service,

Department of Veterans Affairs, 810 Vermont Avenue NW., Washington, DC 20420, (202) 461–9700. (This is not a toll-free number.)

**SUPPLEMENTARY INFORMATION:**

## Executive Summary

### I. Purpose of the Final Rule

The Department of Veterans Affairs (VA) amends its adjudication regulations and its appeals regulations and rules of practice of the Board of Veterans' Appeals (Board) for the purpose of improving the quality and timeliness of the processing of veterans' claims for benefits and appeals. Under 38 U.S.C. 501(a), VA is authorized to make these regulatory changes as it is granted broad authority to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by [VA] and are consistent with those laws," including specifically authority to prescribe "the forms of application by claimants under such laws." Congress has characterized a request for Board review as an "[a]pplication for review on appeal." 38 U.S.C. 7106, 7107, 7108. Additionally, 38 U.S.C. 5101 explicitly provides that claimants must file "a specific claim in the form prescribed by the Secretary" in order for VA to pay benefits.

### II. Summary of Major Provisions

The major provisions of this final rule include the following: VA will standardize the claims and appeals processes through the use of specific mandatory forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. These amendments will apply to all benefits within the scope of 38 CFR part 3, namely pension, compensation, dependency and indemnity compensation, and monetary burial benefits. These changes to VA's adjudication regulations not only will drive modernization of the claims and appeals processes, but will also provide veterans, claimants, and authorized representatives with a clearer and easier way to initiate and file claims.

These final regulations also eliminate the provisions of 38 CFR 3.157 which allowed various documents other than claims forms to constitute claims, specifically, VA reports of hospitalization or examination and other medical records which could be regarded as informal claims for increase or to reopen a previously denied claim. Nonetheless, this rule retains the current retroactive effective date assigned for awards for claims for increased evaluation as long as they are filed on a standard form within 1 year

of such hospitalization, examination, or treatment.

This final rule further implements a procedure to replace the non-standard informal claim process in 38 CFR 3.155 by employing a standard form on which a claimant or his or her representative can file an "intent to file" a claim for benefits.

Finally, this final rule provides that VA will accept an expression of dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction (AOJ) as a Notice of Disagreement (NOD) only if it is submitted on a standardized form provided by VA for the purpose of appealing the decision. This requirement only applies in cases where VA provides such a form with the Notice of Appeal Rights sent with the notice of a decision on a claim. In these cases, this rule replaces the current provision in 38 CFR 20.201 which permitted an appellant to begin the appeal process by filing in any format a statement that can be "reasonably construed" as seeking appellate review. This procedure made the identification of an appeal a time-intensive and inefficient interpretive exercise, complicated by the fact that an NOD could be embedded within correspondence addressing a variety of other matters, often contributing to delay in VA recognizing that an appellant sought to initiate an appeal.

VA also adds two new sections to part 19 in this final rule. For NODs filed on a form provided by the AOJ, new 38 CFR 19.24 will govern. This provision sets forth the procedures governing the treatment of incomplete forms, the criteria of a complete form, the timeframe to cure an incomplete form, the failure to respond to request to cure, action when a complete form is filed, and clarification of issues which are not enumerated on the form for appellate review. For NODs filed where no form is provided by the AOJ, new 38 CFR 19.23 which clarifies whether the requirements of current 38 CFR 19.26, 19.27, and 19.28, or newly adopted § 19.24 would apply to a particular case, will govern. Although a standardized NOD form will only initially be provided in connection with decisions on compensation claims, VA may require a standard NOD form for any type of claim for VA benefits if, in the future, it develops and provides a standardized NOD form for a particular benefit.

### III. Costs and Benefits

This rulemaking will not affect veterans' eligibility for benefits, but rather prescribe that they must use a

standard application form to formally apply for benefits. It also specifies that medical records themselves no longer constitute claims in the absence of a claim submitted formally. However, the retroactive effective date treatment for hospitalization, treatment, or examination under current regulation will apply if a claimant files an intent to file a claim or a complete claim within one year of such medical care. Likewise, this rulemaking amends VA's appeals regulations and rules of practice of the Board of Veterans' Appeals (Board) to provide that VA will only accept an expression of dissatisfaction or disagreement with an adjudicative determination by the AOJ as a Notice of Disagreement (NOD) if it is submitted on a standardized form provided by VA for the purpose of appealing the decision, in cases where such a form is provided. This rulemaking seeks to change the format in which claimants initiate a claim, file a claim, and initiate an appeal through the use of VA-prescribed forms but does not alter claimants' entitlement to benefits or the amounts of awards granted.

While there are no substantial monetary burdens on the claimant, the cost to claimants in submitting complete claims or initiating an appeal on a prescribed form or submitting expressions of intent to file in a specified format can be calculated in terms of a claimant's time to fill out VA forms. Claimants and/or authorized representatives may need to learn and acclimate themselves to the new intent to file a claim process, which functions similarly to the current informal claim process. However, those claimants who are familiar with VA's claims process may recognize the operation of the intent to file process as functioning similar to the current informal claim process. The difference is that the intent to file a claim form serves as the effective date placeholder like the informal claim itself but must be submitted in specified standard formats and will only trigger VA's duty to furnish the claimant the appropriate form.

While VA recognizes this time cost to claimants in completing a prescribed claim or appeal form, it concludes that this up-front time burden to claimants is equivalent to (or even lesser than the unquantifiable time it takes for approximately half of claimants to compose non-standard submissions and the time VA spends identifying and clarifying the communication received in non-standard submissions, all of which add to delays in processing and adjudicating claims and appeals and the overall timeliness of delivering benefits

to claimants. Therefore, we have determined that the time required by claimants to fill out forms is less than or equal to the current time burdens on claimants submitting non-standard submissions along with the time it takes for VA to identify, clarify, and develop these non-submissions. This also applies to claimants opting to submit an intent to file a claim and a complete claim.

By requiring data to be formatted in a standard way through the use of forms, VA will be able to cut processing time in identifying and developing claims, which will result in faster delivery of benefits to all veterans. While approximately half of the claimant population files non-standard submissions, the other half continues to file claims on a prescribed form. For the claimant population filing on prescribed forms, there is no additional burden as a result of this rulemaking.

As previously stated, this rulemaking does not affect the amount of monies paid to a claimant or entitlement to benefits except in the case where a claimant who is not familiar with the intent to file a claim process submits an informal claim which VA will deem as a request for an application for benefits, resulting in the claimant submitting an intent to file a claim form or complete claim at a later date. VA intends to mitigate this situation by delaying the effective date of this rule by 180 days from publication in order to perform robust outreach to inform and educate claimants and authorized representatives of this new standardized procedure of the claims and appeals processes.

This rulemaking will allow VA to decrease the processing time in identifying, clarifying, and processing non-standard submissions as claims or appeals since VA will be able to easily target and identify these claims or initiations of appeals based on the submitted form. This means increased quality in processing claims as VA would be able to more accurately identify claims and to correctly assign effective dates of awards for claims submitted on prescribed forms. Thus, standardizing the claims and appeals processes through the use of forms translates to faster delivery of benefits to claimants. In addition, standardizing submissions on prescribed forms is an essential component to VA's current and developing electronic business programs which are designed to facilitate the efficient and accurate processing and adjudication of claims and appeals. In order to utilize the efficiency of such programs, data inputs require a standard format which would

be achieved through the use of prescribed forms.

In sum, we are only making procedural changes to the claims process by mandating the submission of standard forms to initiate a claim or to file a claim and to the appellate process by mandating the submission of standard forms where such a form is provided. We have determined that the costs associated with this rulemaking are mostly in terms of the burden of time required by claimants and/or authorized representatives but such time burdens are equivalent to the current time burdens in our current claims and appeals processing. Moreover, the use of standardized forms will result in realtime savings to VA in identifying, clarifying, and processing claims and appeals. Thus, there is an overall benefit to the public as a result of this rulemaking. On October 31, 2013, VA published in the **Federal Register** (78 FR 65490) a proposed rule to amend its adjudication regulations and the appeals regulations and rules of practice of the Board of Veterans' Appeals (Board). There were several major components of these proposed changes. The first was to require that all claims be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. The second component proposed was to eliminate the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims for increase or to reopen (see current 38 CFR 3.157) while retaining the beneficial retroactive effective date that may be assigned for grants for increase filed on a standard form within 1 year of such hospitalization, examination, or treatment. The third component proposed that VA would accept an expression of dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction (AOJ) as a Notice of Disagreement (NOD) only if it is submitted on a standard form provided by VA for the purpose of appealing the decision. VA proposed that this requirement would apply only in cases where VA provides the standard form with the Notice of Appeal Rights sent to the claimant with the notice of a decision on a claim.

VA provided a 60-day public comment period, which ended on December 30, 2013, and received 53 public comments, 4 of which were received after the comment period expired. Although VA is not legally required to consider late-filed comments, it has reviewed, considered, and addressed all comments received in

the interest of maximizing public dialogue to further serve veterans, claimants, and authorized representatives. VA received comments from various organizations and individuals, including The Center for Elder Veterans Rights; the County Veteran Service Officer Association of Wisconsin; Veteran Warriors; New York State Division of Veterans' Affairs; Wounded Warrior Project; Disabled American Veterans; National Veterans Legal Services Program and the Military Order of the Purple Heart (jointly submitted); American Legion; Veterans for Common Sense; Veterans Justice Group, LLC; Veterans of Foreign Wars of the United States; Military Officers Association of America; Vietnam Veterans of America; VetsFirst; National Organization of Veterans Advocates; Paralyzed Veterans of America; State of Illinois Department of Veterans' Affairs; the law firms of Bergmann and Moore; and Chisholm Chisholm and Kilpatrick; and other interested persons. We responded to all commenters as follows.

All of the issues raised by the commenters that concerned at least one portion of the rule can be grouped together by similar topic, and we have organized our discussion of the comments accordingly. For the reasons set forth in the proposed rule and below, we are adopting the proposed rule as final, with changes, explained below, to proposed 38 CFR 3.1, 3.154, 3.155, 3.160, 3.400, 3.812, 19.24, and 20.201. To ensure consistency with these changes, we have also implemented changes to 38 CFR 3.108, 3.109, 3.403, 3.660, 3.665, 3.666, and 3.701.

**I. Changes to Initial Claims Process Based on Public Comments**

*A. Definition of "Claim"*

In proposed § 3.1(p), VA defined "Claim" to mean "a written communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by the Department of Veterans Affairs." VA proposed to replace the current term, "Claim—Application" which is defined as "a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit" in current paragraph (p). This definition was confusing and did not make clear the difference between a "claim" and an "application." Therefore, VA proposed to clarify the current definition by eliminating the words "Application," "formal," and "informal" in the

proposed definition in order to conform with the amendments to the adjudication regulations.

One commenter stated that the proposed definition of a "claim" was inconsistent with proposed § 3.155, which provides that a standard form which VA determines does not contain all requested information would not be considered a claim if that document is not submitted via electronic means. We agree with this comment. In order to clarify the regulatory definition as proposed, VA has revised this definition to add that the written communication must be "submitted on an application form prescribed by the Secretary." This change requires that the communication be on a VA form in order to be considered a claim and maintains the essence of the "formal communication" in the current definition of a "claim" in § 3.1(p). Therefore, any written communication requesting a determination of entitlement to a specific benefit received on or after the effective date of this rulemaking will be defined as one that has been submitted on a VA-prescribed form.

*B. Claims for Benefits Under 38 U.S.C. 1151*

Currently, VA does not require that claims for entitlement to compensation under 38 U.S.C. 1151, which provides disability compensation and death benefits for a qualifying disability or death of a veteran from VA treatment, examination, or vocational rehabilitation, be submitted or filed on a standard form or application. 38 U.S.C. 1151; 38 CFR 3.150(c), 3.154, 3.361. Because VA is adopting as a final rule the amendment to its adjudication regulations to require that all claims be filed on standard forms prescribed by the Secretary, VA is revising current § 3.150 by removing paragraph (c), which provides that when disability or death is due to VA hospital treatment, training, medical or surgical treatment, or examination, a specific application for benefits will not be initiated.

VA also revises § 3.154, which currently provides that "VA may accept as a claim for benefits under 38 U.S.C. 1151 . . . any communication in writing indicating an intent to file a claim for disability compensation or dependency and indemnity compensation," to require claimants to file or submit a complete paper or electronic claim in order to apply for benefits under 38 U.S.C. 1151 and § 3.361, the regulation governing the criteria of entitlement to 38 U.S.C. 1151 benefits. 38 U.S.C. 1151; 38 CFR 3.150 and 3.154.

Commenters stated that requiring claimants to file a complete claim for this benefit is an unreasonable burden to place on veterans who allegedly became disabled by VA. One commenter stated that requiring an application for this benefit would delay an effective date of any award to the detriment of the claimant.

VA makes no change based on this comment. VA's intent is to modernize the claims processing system by standardizing the format in which all disability claims are received. In order for AOJ personnel to readily identify claims and process them efficiently, it is imperative that all claims appear in easily identifiable formats using a standardized form. Similar to VA's current informal claims, VA does not require that claims for benefits under 38 U.S.C. 1151 be filed on any particular form. *See* 38 CFR 3.154. Since these claims are received in a non-standard format, VA has to determine whether any statements can be construed as a claim for benefits under 38 U.S.C. 1151. Reviewing and clarifying these non-standard submissions is extremely time consuming and can also result in claims being overlooked. VA believes that using a standard form is a minimal burden to place on claimants, even those who may be due compensation as a result of VA's own errors in providing medical treatment. Additionally, as discussed at length in section I.E. below, the requirements of a complete claim are minimal and simple. Accordingly, VA will require that even claims based on disability or death due to VA hospital care, medical or surgical treatment, examination, training and rehabilitation services or compensated work therapy program be initiated by completing and filing a standard form. Moreover, the effective date of any award granted for this benefit is governed by current § 3.400(i) which provides that an effective date for an award granted would be "date injury or aggravation was suffered if claim is received within 1 year after that date; otherwise, date of receipt of claim." Therefore, this final rule will not have any detrimental effect on the effective date of any payment that may be awarded for this type of claim.

However, VA makes minor revisions to § 3.154 as proposed, in order to ensure consistency with the intent to file process, discussed more fully in section I. C. Specifically, we have removed any reference to "paper or electronic" forms and instead made clear that claimants must file a complete claim on the appropriate "application form prescribed by the Secretary" to apply for section 1151 benefits. We have

also added a reference to § 3.155(b), which establishes the ''intent to file'' process in order to make clear that the liberalizing features of this process are available for section 1151 benefits. This process essentially provides that a claim will be deemed received on the date a claimant submitted an intent to file a claim, provided the application form is received within 1 year from the date the intent to file is submitted. Therefore, claimants will have up to 1 year from the date injury or aggravation was suffered due to hospitalization, treatment, or examination, pursuant to operation of § 3.400(i), to submit their intent to file, and up to 1 additional year to perfect the intent to file with an application form prescribed by the Secretary by operation of § 3.155(b).

### C. Standardizing the Informal Claim Process With Intent To File a Claim Form

VA's procedures for informal claims, currently governed by § 3.155, provide that an informal claim is any communication or action, i.e., in a non-standard format, indicating a claimant's intent to apply for benefits from a claimant, an authorized representative, a Member of Congress, or a person acting as next friend of a claimant who is not of full capacity or age, which identifies the benefit sought. If an application has not been previously filed, VA would forward one to the claimant and if filed within 1 year of submission of the informal claim, the application would be considered filed as of the date of receipt of the informal claim. 38 CFR 3.155(a). Generally, when a compensation claim is granted, VA pays a monthly benefit according to the severity of the veteran's disability beginning from the claim's effective date, which is usually the date the claim was filed. 38 U.S.C. 5110. Therefore, § 3.155 allowed claimants to secure a potential earlier effective date for an award by submitting an informal claim that was subsequently ratified by a formal application or for which an application was already of record.

Although current § 3.155 provided claimants with a favorable effective date in the filing of informal claims, it allowed informal claims to be submitted in a non-standard format that not only could be difficult to distinguish from other routine correspondence but could also be incomplete for adjudication. In particular, as we explained in the proposed rule, § 3.155(c) allowed informal requests for increase or reopening to constitute claims without any need for formal ratification or filing on a standard form of any kind. *See* 78 FR at 65491–92. While the informal

claims process was meant to make the process of initiating a claim as informal as possible, it also unintentionally incentivized the submission of claims in non-standard formats that frustrate timely, accurate, and orderly claims processing.

Therefore, VA proposed to eliminate the concept of an ''informal'' claim in § 3.155 by replacing ''informal claim'' with ''incomplete'' and ''complete'' claims, and by differentiating between non-electronic and electronic claims in order to incentivize the submission of claims in a format, whether filed in paper or electronically, that would be more amenable to efficient processing. VA proposed that claims filed through an online claims submission tool within a VA Web-based electronic claims application system would be considered filed as of the date of the ''incomplete claim''—i.e., the date the claim was electronically saved in VA's electronic claims application system but not electronically submitted to VA—if the claim is ultimately completed and submitted within 1 year. As stated in the proposed rule, filing a claim through this electronic process would allow claimants to preserve an effective date while affording the claimant the opportunity to gather the necessary evidence to substantiate the claim. In other words, VA maintained the favorable effective date treatment of the informal claim process for incomplete electronic claims whereas incomplete non-electronic claims did not receive such treatment. VA proposed that non-electronic claims be considered filed as of the date VA received a complete claim.

The purpose of the distinction between electronic and non-electronic claim submission with regard to effective date treatment was to incentivize claimants to file electronic claims, which are processed by VA more efficiently and result in more expeditious delivery of benefits to claimants. VA believed that the advantages of its Web-based paperless claims systems offered claimants and/or their authorized representatives, as well as VA personnel, a faster, more convenient way of processing and adjudicating claims. VA's Web-based paperless claims systems, such as eBenefits and the Stakeholder Enterprise Portal, guide claimants and/or their authorized representatives in an interview-style process where responses are auto-populated into a VA form and can be submitted electronically with a press of a button. VA will receive the electronic claim within 1 hour as opposed to the receipt of paper claims which can take several days. Claimants

and/or their authorized representatives are also able to upload evidence electronically for consideration with their electronic claim. This electronic process ensures more accurate responses from the claimant or representative as well as a more consistently completed form. The nature and format of the interview in eBenefits prompts claimants to answer all pertinent questions in order to obtain information necessary to substantiate the claim, checks for errors and missing information, and readdresses any unanswered questions, all of which ensure more accurate claims processing and adjudication. However, claimants who file on paper do not have these types of checks to ensure accuracy or sufficiency of responses provided on a form. Thus, there is an increased likelihood that these applications or forms on paper may be incomplete, incorrect, or insufficient for processing. Moreover, the advantages of VA's Web-based paperless claims system offer VA personnel a way to process and adjudicate electronic claims more efficiently and more accurately through the Veterans Benefits Management System (VBMS), an internal VA business application that facilitates the evidence-gathering phase of the claims process and employs evaluation and rules-based decision-support tools to increase the speed and accuracy of rating decisions. For electronic claims files in VBMS, robust optical character recognition capabilities make it possible to search thousands of pages of evidence in a fraction of the time required to search paper files. Paper submissions must be manually scanned into VBMS, adding an extra time-intensive step for paper submissions. A piece of mail must be identified, sorted, sent to a scanning facility, and meta-data must be entered. This delay does not exist for submissions that are initially received in an electronic format.

VA received many comments regarding the elimination of the informal claim under current § 3.155. The majority of the commenters expressed concern that eliminating the current informal claim process would be burdensome to claimants since the favorable effective date treatment of the current informal claim process would not exist for claimants who file paper claims. One commenter stated that ''eliminating informal claims with a process of incentivizing submissions of claims in a format more amenable to efficient processing makes the claims process more formalized to the detriment of claimants.'' Commenters further stated that the informal claim

was a way for veterans to establish a date of claim while they are being assisted in filing the proper forms and in gathering evidence in support of their claims by veterans service organizations and other authorized representatives. Another commenter expressed that the informal claim process provided claimants of different educational backgrounds a way of filing for benefits because VA's current claims process is difficult to understand. The major concern regarding the elimination of informal claims was the loss of potential benefits due to a claimant's inability to preserve an earlier effective date for an award granted.

Numerous commenters advanced the position that the current informal claim process, with its attendant effective date rules, is required by statute, specifically by 38 U.S.C. 5102(c). That subsection reads in pertinent part: "Time limitation . . . If information that a claimant and the claimant's representative, if any, are notified under subsection (b) is necessary to complete an application is not received by the Secretary within one year from the date such notice is sent, no benefit may be paid or furnished by reason of the claimant's application." Subsection (b), in turn, requires the Secretary to notify claimants of the information necessary to complete an incomplete application for benefits.

VA does not agree with these comments to the extent they view the informal claim process as unambiguously required by statute. VA does not interpret 38 U.S.C. 5102(c) to require the informal claims process, or to require effective date consequences of any kind for incomplete applications. There are several reasons for this conclusion.

First and foremost, the informal claims process and the effective date rules that it entails did not originate in 38 U.S.C. 5102(c). Rather, the current informal claim process is a longstanding feature of VA's regulations, grounded in VA's authority to administer the veterans benefits claim system in a pro-claimant way. The concept behind informal claims originated in the internal memoranda of one of VA's predecessor entities, the Bureau of War Risk Insurance, in the course of implementing the War Risk Insurance Act, Public Law 63–193, 38 Stat. 712 (1914), as amended by Act of June 12, 1917, ch. 26, § 5, 40 Stat. 102, 103–104. The Office of General Counsel of the Bureau of War Risk Insurance held that a veteran who was so disabled as to be precluded from filling out a form 526 prior to his death, but expressed an intent to file a compensation claim while being treated by the U.S. Public Health Service, was considered to have filed a valid claim during his lifetime. The informal claims rule in substantially its current form was ultimately included in the publication of part 3 of Title 38, CFR 26 FR 1561, 1570 (Feb. 24, 1961). By contrast, 38 U.S.C. 5102(c) was added in 2003. Veterans Benefits Act of 2003, Sec. 701(a), Public Law 108–183, 117 Stat. 2651, 2670 (Dec. 16, 2003).

The plain language of section 5102(c), similarly suggests that section 5102 does not require the informal claim process, or for incomplete applications to hold a claimant's effective date. The statutory language creates a "limitation" on what benefits "may" be paid by reason of an incomplete application in the event it is not perfected within one year. By specifying that "no benefit may be paid" for incomplete applications that are not properly completed and formalized within one year, the statute allows VA to maintain a rule treating the incomplete application as a basis for an effective date in the event benefits are ultimately granted, but does not require VA to do so. The statute affirmatively prevents any effective date consequences for an incomplete application not formalized within one year.

The statutory structure strongly favors the same conclusion. Section 5102 appears in Chapter 51 of Title 38, United States Code. The Chapter is entitled "Claims, Effective Dates, Payments." Section 5102 appears in Subchapter I, dealing with "Claims." "Effective Dates" are the subject of an entirely separate Subchapter II. 38 U.S.C. 5110. Further, Congress explicitly created numerous statutory bases for effective date retroactivity, using the construction "the effective date of an award . . . shall be" each time. 38 U.S.C. 5110(b)(1)–(4), (c), (d). No such language appears in section 5102(c). Consistent with this reasoning, the legislative history of section 5102(c) does not suggest that Congress understood itself to be providing a rule of effective date retroactivity when it added this subsection to the United States Code.

Finally, we note section 5102(c) applies only to responses to notifications from the Secretary, required by section 5102(b), that a claimant has submitted an incomplete application. Therefore, even to the extent section 5102(c) is construed to require that a claimant's submissions establish an effective date, it applies only to incomplete applications under section 5102(b), not to all informal claimant submissions.

Because the informal claims rule is a liberalizing feature of VA's regulations and is not clearly required by statute, it may be adjusted by regulation in order to meet contemporaneous needs in administering the claims workload. This is a reasonable exercise of the authority granted to VA by statute. VA will continue to pursue and implement technological solutions as a major part of its drive to eliminate the backlog of claims. VA will strive for a claims process that is paperless to the extent feasible both as relates to VA's own work, and claimant inputs.

Nevertheless, VA recognizes that a transition of such magnitude takes time. Numerous commenters objected strenuously to two features of the proposed rule: that non-standard submissions would no longer preserve a claimant's effective date for paper original claims, and that electronic claims would be treated more favorably, continuing to receive the effect of this liberalizing feature of VA's regulations. VA has carefully considered the input it has received from commenters and determined that changes to the rule as originally proposed are appropriate. Modernization and standardization must accommodate the interests and preferences of the veterans and other stakeholders for whose benefit we seek to modernize the process, and the comments make clear that many veterans and stakeholders continue to prefer more informal processes than VA originally proposed. Accordingly, necessity may dictate more continued reliance on non-electronic submissions than was originally proposed.

Therefore, in order to strike a balance between standardizing, modernizing, and streamlining the claims process and providing veterans, claimants, and their survivors with a process that remains veteran-friendly and informal, VA has revised proposed § 3.155 to replace the concept of an "informal" claim with the concept of an "intent to file a claim for benefits." The "intent to file" process will share similarities with the current informal claim process. However, one major difference is that it requires the submission holding a claimant's effective date to be in a standard format in order for claimants to preserve the date of a claim for a complete claim that is filed within 1 year of receipt of such intent to file a claim. To implement this provision, VA introduces a new form to be used in conjunction with revised § 3.155, VA Form 21–0966, *Intent to File a Claim for Compensation and/or Pension Benefits,* (hereinafter "VAF 21–0966") which is described in more detail in the Paperwork Reduction Act section of this rulemaking. The intent to

file a claim process is a standardized method of filing an informal claim which would be submitted in a format more amenable to efficient processing, while still allowing veterans to receive favorable effective date treatment similar to that available under the current ''informal claim'' rule. It also achieves the standardization of the claims process by requiring that all claims or initiation of claims be filed on a VA-prescribed form.

VA considers the process put in place by this rule a logical outgrowth of the original proposal, particularly in light of the comments received. The original proposal would have required all claims to originate on standard forms regardless of format or posture in which the claim arose, but with effective date placeholder treatment similar to the current informal claims rule available in order to incentivize electronic submissions. VA considers this change responsive to comments urging VA to maintain a way for all veterans to secure an effective date placeholder while the formal application form is completed, and responsive to comments urging that paper and electronic claims receive identical treatment for effective date purposes. Additionally, one commenter explicitly suggested that VA adopt a ''standardized Informal Claim form.'' Another commenter suggested ''maintaining informal claims in the context of standardized forms.''

While VA requires submission of the intent to file a claim in a designated form, the substantive information required to preserve an effective date through the intent to file a claim process is less than the requirements for claimants to preserve an effective date for a claim through the informal claim process under current § 3.155. Currently, an informal claim is defined as any communication or action, indicating an intent to apply for one or more benefits from certain persons that must identify the benefit sought. See 38 CFR 3.155(a).

In this final rule, VA revises § 3.155(b) to provide that a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of claimant who is not of full age or capacity, may indicate a claimant's desire to file a claim for benefits by submitting an intent to file a claim to VA. The intent to file a claim must be submitted on a VA-prescribed form or other specified format designated for the purpose of indicating the claimant's intent to file a claim. An intent to file a claim must provide sufficient identifiable or biographical information to identify the claimant. This requirement is necessary because if

VA cannot identify the claimant to whom an intent to file pertains, the intent to file cannot serve its intended function as an effective date placeholder for that claimant. VA has chosen the flexible, functional standard of a claimant being identifiable based on the information provided, rather than enumerating specific pieces of necessary information in order to establish an intent to file. This is because different claimants will have different pieces of identifying information close at hand, and VA wants the placeholder to be easy for claimants to establish. The prescribed paper intent to file form accordingly solicits several pieces of information to identify the claimant, such as name, Social Security Number, address, telephone number(s), email address(es), and VA file number, if applicable. Claimants and authorized representatives will no longer be required to identify the specific benefit sought in order to preserve a potential earlier effective date as required by current § 3.155, but the designated form or other specified format must be used.

An intent to file a claim therefore differs in two crucial respects from the current informal claim process. It must be submitted in a designated format rather than in a non-standard communication, and the claimant must be identifiable, but it requires less substantive specificity than would be required to establish an informal claim under current regulations. In particular, an intent to file a claim need not identify the particular medical issues, symptoms, or conditions on which the claim will ultimately be based in order to establish an effective date. The current regulation requires the claimant to ''identify the benefit sought.'' 38 CFR 3.155(a). Case law is clear that this means the claimant must describe the nature of the disability for which he is seeking benefits, such as by describing a body part or symptom of the disability. *Brokowski* v. *Shinseki*, 23 Vet. App. 79, 86–87 (2009). An intent to file a claim need not contain this level of specificity.

This substantive liberalization of the information necessary to establish an effective date will align claimant incentives with the interests of efficient and accurate claims processing. Under the current process, veterans filing an initial claim are incentivized to file multiple informal claims in piecemeal fashion as soon as they become aware of potential entitlement to benefits for each condition. This leads to confusion and potentially duplicative administrative action by VA. Under the intent to file a claim process, claimants will have up to a year to gather evidence, potentially

facilitating the process of establishing entitlement for any additional conditions without fear that they will lose benefits by not claiming each individual condition with specificity as quickly as possible, before presenting a comprehensive package to VA for processing.

We accomplish this substantive liberalization of the information necessary to establish an effective date by providing in § 3.155(b)(2) that an intent to file a claim ''need not identify the specific benefit claimed or any medical condition(s) on which the claim is based.'' In the rest of § 3.155(b)(2), however, we make clear that if a claimant provides extraneous information beyond what is needed to establish an intent to file a claim, such as information that VAF 21–0966 does not solicit, this extraneous information does not alter the status of the intent to file a claim, and in particular does not convert it into a complete claim or a substantially complete application. For example, if a claimant provides, in white space on a paper VAF 21–0966, information suggesting the particular disability on which the claim will be based, this extraneous information is of no force and effect other than that it is added to the file as evidence for adjudicative purposes. Such extraneous statements or information may be used as evidence in support of a claim that is filed to perfect VAF 21–0966. If a veteran or claimant submits information such as a description of symptoms or complaints of a medical condition on VAF 21–0966 and identifies the same description of symptoms or complaints of a medical condition in a complete claim filed within 1 year, VA may consider such information as evidence to substantiate the claim. Similarly, we also make clear at the end of § 3.155(b)(2) that extraneous information provided in an oral communication meant to establish an intent to file under § 3.155(b)(1)(iii) is of no effect and generally will not be recorded in the record of the claimant's intent to file. This limitation is necessary to ensure that the intent to file process does not degenerate into case-by-case determinations as to whether a claimant has unintentionally provided sufficient information to elevate an intent to file to a complete claim, which would displace the statutory requirement to ultimately file an application form prescribed by the Secretary. Because the purpose of an intent to file is to establish a placeholder for any and all issues ultimately raised in the complete claim, this limitation does not limit the

substantive scope of the claimant's intent to file, and only operates to prevent an intent to file a claim from constituting a substantially complete application.

In response to comments received, this final rule provides that there are three ways to submit an intent to file a claim for benefits, which we enumerate in this final rule at § 3.155(b)(1). First, in § 3.155(b)(1)(i), we provide that a claimant or authorized representative may submit an intent to file a claim electronically by saving an application in a claims-submission tool within a VA Web-based electronic claims application system prior to submitting the electronic claim for processing. Currently, the claim submission tool within VA's Web-based electronic claims application system prompts the claimant and/or authorized representative to enter biographical or identifiable information upon entering the electronic claims application process and records the date a claimant or authorized representative saves the online application prior to submission for processing. The electronic claims application system also notifies the claimant and/or authorized representative that the date the electronic application was saved will serve as an effective date for an award granted if a complete application is submitted within 1 year; otherwise, the date VA electronically receives the complete electronic claim will serve as the date of claim. The claimant and/or authorized representative must acknowledge this notice by checking a box.

VA considers the following actions in VA's current electronic claims process together to constitute an electronic intent to file a claim: (1) The act of a claimant or authorized representative entering into and commencing the online application process indicates an intent to apply for benefits, i.e., disability compensation benefits; (2) entering in biographical or identifiable information in electronic application for benefits in the claims submission tool within a VA Web-based electronic claims application system; (3) without providing the specific benefit sought or the symptoms or medical condition(s) for which the benefit is sought. Therefore, an electronic version of VAF 21–0966 for the purpose of submitting an electronic intent to file a claim for benefits is not necessary as the claims submission tool within VA's Web-based electronic claims application system achieves the intent to file a claim requirements through the act of entering and saving an electronic application in the claims submission tool within VA's

Web-based electronic claims application system.

As we explained in the proposed rule, the limitation that the communication must take place within an online benefits account is necessary to prevent open-ended narrative format submissions, such as unsolicited emails, from constituting an intent to file a claim. The further limitation that the intent to file must be submitted through a claims submission tool within VA's Web-based electronic application system is to ensure that non-standard communications, such as emails within the current eBenefits system, do not constitute an intent to file a claim merely because they took place within eBenefits. VA must be careful to define an intent to file a claim in a way that channels claimant submissions through a predictable, standardized process.

Second, § 3.155(b)(1)(ii) provides that claimants and/or authorized representatives may submit an intent to file a claim using the new proposed form, VAF 21–0966. Specifically, the submission to an agency of original jurisdiction, such as a VA regional office, of a signed and dated intent to file, on the form prescribed by the Secretary for that purpose, will be accepted as an intent to file. This form has three components: (1) a checkbox for a claimant to indicate his or her intent to file for compensation, pension, survivors' benefits, and/or other benefits governed by 38 CFR part 3 (this information is used to furnish the appropriate application form(s) to the claimant); (2) claimant identification such as name, Social Security Number, date of birth, gender, VA file number, if applicable, mailing and/or forwarding address, telephone number(s), and email address(es); and (3) signature and date block for claimant's declaration of intent to apply for one or more benefits and acknowledgement that a complete application for each type of benefit selected must be received by VA within 1 year of receipt of VAF 21–0966 to be considered filed as of the date of receipt of such form. VA intends to make this form available online as well as in the paper format to claimants who request one.

Third, § 3.155(b)(1)(iii) provides that a claimant or authorized representative may submit an oral intent to file a claim by contacting certain designated VA personnel, typically in one of VA's call centers. However, claimants may express an intent to apply for benefits to VA personnel either in person or by telephone. The oral intent to file will be captured on a paper VAF 21–0966 generated from transaction in person or over the phone call which will then be

uploaded into claimant's electronic file. In order for VA to take action based on oral statements, the VA employee must adhere to the requirements under 38 CFR 3.217(b) which provides that the VA employee must: identify himself or herself as a VA employee who is authorized to receive the information or statement; verify the identity of the provider as either the beneficiary or his or her fiduciary by obtaining specific information about the beneficiary that can be verified from the beneficiary's VA records, such as Social Security Number, date of birth, branch of military service, dates of military service, or other information; inform the provider that the information or statement will be used for the purpose of calculating benefit amounts; and must document in the beneficiary's VA record the specific information or statement provided, the date such information or statement was provided, the identity of the provider, and the steps taken to verify the identity of the provider. This contact provides VA with an opportunity to educate veterans, claimants, and their families on the process of filing a complete claim in conjunction with the intent to file a claim, the benefits of VA's Fully Developed Claim program, obtaining electronic access to our Web-based electronic claims submission tool such as eBenefits, and the benefits of receiving assistance from accredited veterans service organizations.

In the event a dispute arises over whether an oral intent to file was received on a particular date, the presence or absence of a record of the intent to file in VA's records will govern, absent a specific basis to conclude that designated VA personnel received an oral intent to file but did not contemporaneously document the communication as required. This is consistent with the general principle, often referred to as the ''presumption of regularity,'' that government officials are presumed to ''have properly discharged their official duties'' unless there is clear evidence otherwise. *Miley* v. *Principi,* 366 F.3d 1343, 1347 (Fed. Cir. 2004); see also *Butler* v. *Principi,* 244 F.3d 1337, 1339–41 (Fed. Cir. 2001) (presumption of regularity applies to the administration of veterans benefits). This limitation is necessary to ensure that the possibility of establishing an effective date of benefits payments through oral communications with VA personnel does not become a way to claim entitlement to an earlier effective date with no basis other than the bare assertion that a particular undocumented conversation took place.

We emphasize that allowing oral communications with certain designated personnel to constitute intents to file a claim is an extremely liberal approach to allowing claimants and their representatives to establish an effective date. We also note that the presumption of regularity, like all presumptions, is rebuttable. Finally, to the extent a claimant or representative wishes to guard against the possibility that the designated VA personnel who receive the communication will erroneously fail to contemporaneously document it, he or she can submit an intent to file in one of the other two formats.

When VA receives VAF 21–0966 or an oral intent to file a claim, VA will notify the claimant and/or the authorized representative of any information necessary to complete the formal application form, such as a VAF 21–526EZ and, as statutorily required pursuant to 38 U.S.C. 5102, VA will furnish the claimant with the appropriate application form(s) as claimant indicates on the 21–0966 or orally to VA personnel.

Non-standard narrative communications not falling within these three enumerated scenarios will not be considered an intent to file a claim received on the designated form, and accordingly will not establish an effective date placeholder.

Finally, notwithstanding our conclusion that 38 U.S.C. 5102(c) does not require that an incomplete application hold a claimant's effective date, we have provided via regulation, in § 3.155(c), that an incomplete application form will hold the claimant's date of application for up to 1 year.

As discussed in more detail below, revised § 3.155 of the final rule also provides that only one complete claim for a given benefit (e.g., compensation, pension) may be associated with each intent to file a claim for the same benefit for purposes of the effective date placeholder mechanism. In other words, if a claimant submits a VAF 21–0966 for compensation, and then files two or more successive complete compensation claims within 1 year, only the issues contained in the first complete compensation claim would relate back to the VAF 21–0966 for effective date purposes.

Similarly, we address the possibility a claimant may file both an intent to file and an incomplete application relating to the same claim in § 3.155(d). We make clear that, in the event the application is ultimately perfected, VA will consider it filed as of the date of receipt of whichever was filed first, the

incomplete application or the intent to file. However, we also make clear the complete claim will not be considered filed more than one year prior to the date of receipt of the complete claim, absent a separate basis for additional retroactivity. *See e.g.,* 38 U.S.C. 5110(b)(3).

VA believes that the revisions to proposed § 3.155 serve as an optimal solution to the concerns expressed by the commenters by providing veterans, claimants, and their families a way to preserve a potential favorable effective date while giving them 1 year from the date of submission to file a complete claim as currently provided in the informal claim process as well as help VA streamline the claims process through the standardization of inputs.

The intent to file a claim process also serves to modernize VA's claims process by keeping non-standard submissions from constituting claims. By requiring an intent to file a claim be submitted on a designated standard form, VA personnel will spend less time determining whether a claimant wishes to file a claim, when a claim has been filed, and what type of benefit the claimant is seeking. VA believes the intent to file a claim process ensures more efficient processing that does not unduly erode the longstanding informal, non-adversarial, pro-claimant nature of the VA system. *See Walters* v. *Nat'l Ass'n of Radiation Survivors,* 473 U.S. 305, 323–24 (1985). In order to implement the standardization of the informal claim process with the intent to file a claim process, VA has reorganized proposed § 3.155 by eliminating the distinction between non-electronic and electronic claims as published in the proposed rule and designated this section of the final rule as a description of how claimants can file a claim. VA has consolidated the types of requests for application for benefits as published in proposed subparagraphs (c)(1) and (c)(3) of § 3.155 of the proposed rule in paragraph (a) of this final rule.

One commenter noted that the person acting as next friend of claimant must be of full age and capacity and that the term "full age" is not defined and that the term "capacity" is broad and susceptible to challenge in the future. VA has mirrored the language in current § 3.155 to describe persons submitting the informal claim and replaced the term "*sui juris*" with its definition, "of full age or capacity." See Black's Law Dictionary, 1662 (10th ed. 2014). While use of the word-for-word legal definition "of full age and capacity" in this context would not imply that the claimant in question must be both under

18 and not of full capacity, given the resulting sentence as a whole, we have opted to use the disjunctive "or" in order to make clear that claimants who are not of full capacity need not also be under 18 in order to be within the "next friend" provision of this paragraph. Accordingly, there is no substantive change in the definition. Rather, VA is merely continuing to provide a way for claimants who cannot engage in a legal contract due to age or disability to be represented by someone (or next friend) who can do so on their behalf. Therefore, VA makes no change to the proposed rule based on this comment.

One commenter stated that email requests for benefits should trigger the duty to provide claimants with the information necessary to complete the application. VA agrees with this comment and has provided in § 3.155(a) of this final rule that upon receipt of any request for an application, to include email transmissions, VA will provide the appropriate form or application pursuant to current § 3.150 and will provide claimants with the information necessary to complete it. We note, however, that an email requesting benefits, without more, is a non-standard narrative submission. While such a submission clearly triggers VA's obligation to send the correct form, it does not on its own serve as an effective date placeholder.

Further, VA has redesignated proposed subparagraph (c)(2) of § 3.155 of the proposed rule which provides that an application form prescribed by the Secretary that does not meet the standard of a complete claim is a request for an application for benefits. VA believes that an incomplete application form prescribed by the Secretary is not equivalent to a non-standard submission. Therefore, VA has redesignated this as paragraph (c) in the final rule to distinguish an incomplete application form from a non-standard submission request, which is an application for benefits and governed by paragraph (a) of the final rule. Regarding incomplete application forms, VA has added the statement that it will notify the claimant and his or her representative, if any, of the information necessary to complete the application form prescribed by the Secretary and that if a complete claim is received within one year of submission of the incomplete application or form, VA will calculate an effective date of any award granted as of the date the incomplete application form was received.

VA received comments noting that the proposed rule did not provide for when VA would notify claimants and/or authorized representatives of the

information necessary to complete a claim for benefits if VA receives an application form that is not complete pursuant to the proposed § 3.160(a). In response, VA has provided the 1-year timeframe as described above in revised § 3.155(c) of this final rule. In current § 3.109, VA provides a 1-year filing period for claimants to submit evidence necessary to complete an application. VA believes that a 1-year timeframe to cure an incomplete application provides claimants with sufficient time and remains consistent with other current existing adjudication regulations.

VA has also eliminated the categorization of ''non-electronic claims'' and ''electronic claims'' in proposed paragraphs (a) and (b) of the proposed rule and replaced these distinctions with the concept of the ''intent to file a claim'' to standardize the current informal claim process in paragraph (b) of § 3.155 of this final rule. VA clarifies that this process would apply to all claims governed by part 3 of title 38 in the Code of Federal Regulations.

One commenter requested an explanation of the effects of the changes implemented by this final rule on authorized representatives and inquired about the type of interaction VA envisions for authorized representatives if electronic mail communication through eBenefits is delivered directly to the claimant. In the proposed rule, filing an electronic claim was the only way to secure an effective date placeholder. As we explain above, the structure of this final rule no longer attaches unique effective date consequences to a claim being submitted in electronic versus non-electronic format. In § 3.155(b)(5), we make clear that the only requirement specifically directed toward representatives is that a power of attorney must have been executed at the time the intent to file is written. This is substantively identical to requirements pertaining to representatives for the informal claim process. 38 CFR 3.155(b) (2013). To the extent this comment asks a broader question, separate from the structure governing what inputs may and may not constitute a claim, it is beyond the scope of the rule as now revised. VA will take this comment and all other stakeholder input under advisement in continuing to address the scope of representative access to electronic communications between VA personnel and claimants.

In new subparagraphs (b)(1) through (b)(2) of § 3.155 of this final rule, VA outlines the criteria for an intent to file a claim, namely, that it must be in a prescribed form (whether on paper,

electronic, or oral), must identify the general benefit to be claimed, but it need not identify the specific benefit sought or symptom(s) or medical condition(s) on which the claim is based. In new subparagraph (b)(3), VA provides the action it will take upon receipt of an intent to file a claim. In addition to furnishing the appropriate application form prescribed by the Secretary in association with the intent to file a claim, VA will notify the claimant and claimant's representative, if any, of the information necessary to complete the appropriate application form prescribed by the Secretary. We note that in the context of intents to file submitted as incomplete eBenefits applications pursuant to § 3.155(b)(1)(i), this requirement is satisfied by automated system prompts.

In new subparagraph (b)(4) of § 3.155 of the final rule, VA provides that if an intent to file a claim is not submitted in the appropriate form as outlined in subparagraph (b)(1) and (b)(2) or is not ratified by a complete claim within 1 year of submission of the intent to file a claim, VA will not take further action unless a new claim or a new intent to file a claim is received. In new subparagraph (b)(5), VA provides that any service organization, attorney or agent indicating a represented claimant's intent to file a claim must have executed a power of attorney at the time the communication was written. This mirrors what is currently provided in the informal claim regulation in § 3.155(b).

The ''intent to file a claim'' process does not interfere with VA's other initiatives to eliminate the backlog of claims. In particular, the Fully Developed Claim (FDC) program allows VA to provide faster decisions and delivery of benefits to claimants through the use of the standard forms created specifically for FDCs that contain the notice to claimants of the information and evidence necessary to substantiate the claim (hereinafter ''section 5103 notice'') and claimant's certification that all evidence has been submitted with the FDC. Claimants receive the section 5103 notice at the time they file a claim and not after they submit the claim to VA. While VA continues to be responsible for obtaining relevant Federal records and provides a medical examination when necessary to decide the claim pursuant to 38 U.S.C. 5103A, VA is able to adjudicate the claim more expeditiously because additional time is not taken to request and obtain other evidence that a claimant identifies but does not have in his or her possession. We note that one commenter suggested that delays in the claims processing

system are because VA spends ''too much time and paper on a 'duty to assist' letter.'' Much of the value in standard forms is they allow VA to discharge the very legal and procedural obligations to which this commenter refers more efficiently, so that a greater share of VA personnel's time may be devoted to engaging the substance of the claim.

The intent to file a claim process complements and does not conflict with the FDC process. The effective date placeholder provided by the intent to file a claim process allows claimants to ''protect'' their effective date while they gather all information and evidence they have to submit with their complete claim. If a claimant is able to gather and submit all evidence he or she wishes to submit within this one year period, there will often be no reason why the claimant cannot file the claim as an FDC. This, in turn, may lead to an even more favorable effective date if the claim is an original FDC, because Congress has provided for up to one year of special effective date retroactivity for ''an original claim that is fully-developed'' if filed before August 6, 2015. 38 U.S.C. 5110(b)(2)(A). In the event the claim is not amenable to filing as an FDC, the claimant nevertheless will receive the benefit of the effective date placeholder established by the intent to file a claim.

We note that, similar to the effective date treatment given to original FDCs, it is possible for specific statutory effective date provisions in 38 U.S.C. 5110 to apply in cases where an intent to file a claim has also been filed. For example, section 5110(b)(1) allows the effective date for an award of disability compensation to be the day following the date of the veteran's discharge from service if an application is received within a year of such date. Similarly, up to a year of retroactivity is available for claims for increased disability compensation. *See* 38 U.S.C. 5110(b)(3) (''[t]he effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date.''). This rule does not, and indeed could not, operate to displace these special statutory effective dates enumerated in section 5110. These statutory effective dates are generally tied to the date of receipt of the application. This rule provides that VA will deem the ''application'' to have been received as of the date of the intent to file a claim, which is the mechanism by which a claimant puts VA on notice that he or she intends to ultimately

submit an application for benefits. Accordingly, the special statutory retroactive effective dates operate independently of, and in addition to, VA's decision to provide claimants up to a year to perfect and complete their application from the date they initially put VA on notice that they intend to file a claim.

We further note that, to the extent the intent to file process and these special statutory effective dates intersect, the amount of retroactive benefits is always limited by the facts found—a claimant can never receive disability benefits for a period in which he or she was not, as a factual matter, disabled, or at a degree of disability higher than supported by the contemporaneous facts. This caveat is current, established law, unaltered by this rule. Basic entitlement to compensation is always dependent on the existence of a current or contemporaneous "disability," and its accompanying severity as determined by the rating for that disability. 38 U.S.C. 1110, 1114, 1131; 38 CFR part 4. Additionally, all effective dates are generally "fixed in accordance with the facts found." 38 U.S.C. 5110(a). The special retroactive effective date provisions in section 5110 generally contain similar restrictions. In particular, the statutory provision that increased disability compensation may be effective for up to a year prior to the date of application is limited by "the earliest date as of which it is ascertainable that an increase in disability had occurred." 38 U.S.C. 5110(b)(3).

The following examples illustrate this implementing principle.

If a hypothetical claimant files an intent to file a claim on April 1, 2019, and files a complete claim for increase on September 1, 2019, and evidence of record establishes the disability worsened on January 1, 2019, the effective date will be January 1, 2019. This is the "earliest date as of which it is ascertainable an increase in disability occurred" and it is within one year of the date the application was deemed received (April 1, 2019). Section 5110(b)(3), as applied to the claim process defined in this rule, permits an effective date corresponding to the date the disability worsened in this factual scenario.

Similarly, if a hypothetical claimant files an intent to file a claim on April 1, 2019, and files a complete claim on March 1, 2020, and evidence of record establishes that the disability worsened on January 1, 2019, the effective date will be January 1, 2019. The application was received within 1 year of the "earliest date as of which it is ascertainable an increase in disability occurred" and was itself perfected within 1 year.

In the event the intent to file is received more than a year following the increase in disability, section 5110(b)(3) is inapplicable. *See Gaston* v. *Shinseki,* 605 F.3d 979, 983–84 (Fed. Cir. 2010) (special effective dates in section 5110 apply to claims filed within one year of the triggering event specified in statute). Therefore, if a hypothetical claimant files an intent to file a claim on April 1, 2029, and files a complete claim on September 1, 2029, and evidence of record establishes that the disability worsened on January 1, 2019, the effective date will be April 1, 2029.

In new § 3.155(b)(6), we provide that VA will not recognize more than one intent to file concurrently for the same benefit (e.g., compensation, pension). If an intent to file has not been followed by a complete claim, a subsequent intent to file regarding the same benefit received within one year of the prior intent to file will have no effect. There are two alternatives to this rule, neither of which VA believes are sound policy. The first would be simply to allow claimants to file an unlimited number of intents to file for the same benefit, and relate back to the earliest filed that is within one year of the complete claim. This rule would allow, and even encourage, multiple unnecessary filings, with attendant wasted administrative action and confusion. The second alternative would be to allow claimants to file multiple intents to file, but make clear that each intent to file "updates" or "cancels" any other pending intents to file for the same benefit. While this structure would allow a claimant to protect an interim effective date in the event it becomes clear he or she will be unable to complete a claim within the year provided, this structure would also imply that the claimant has abandoned the earlier, more favorable date. Since it should be extremely rare for claimants to be unable to file a complete claim within the full year provided, VA is concerned that allowing claimants to "update" pending intents to file in order to accommodate this scenario could lead to many claimants inadvertently harming their interests by canceling earlier and more favorable dates through unnecessary filings. Accordingly, only one intent to file may be recognized at a time for a given benefit.

## D. Treatment of Complete Claims

In new paragraph (d) of § 3.155 of the final rule, VA provides that all claims, regardless of type, must be complete claims, and the effective date for benefits is generally the date VA receives a complete claim (subject to the intent to file process). This requirement in the first sentence of § 3.155(d) is to make clear that complete claims are not a distinguishable entity from the other types of claims enumerated in § 3.160— in other words, the standards of a complete claim must be met for all types of claims, including claims to reopen and claims for increase. Furthermore, VA has reiterated the effective date treatment of the intent to file a claim process by stating that an intent to file a claim that meets the requirements as provided in new paragraph (b) of § 3.155 of this final rule will serve to establish an effective date if a complete claim is received within 1 year. This reiteration makes clear that the intent to file process applies to all claims governed by 38 CFR part 3. VA also makes clear that only one complete claim for a particular benefit may be associated with each intent to file a claim for that same benefit for purposes of this special effective date rule. In other words, if a claimant files one intent to file a claim for compensation, and then files two or more successive complete claims for compensation within 1 year, only issues contained within the first complete claim would relate back to the intent to file a claim for effective date purposes. There is no limit on the number of issues or conditions in each complete claim. Accordingly, it is in claimants' best interests to claim all potential issues under a particular benefit in one comprehensive package.

VA believes this final rule is less apt to cause confusion than the alternative, which would allow claimants to submit several claims under the same benefit over the course of a year while still relating back to the earliest effective date. This would encourage fragmented presentation of claims which further complicates and delays the development and disposition of already pending claims by causing duplicative VA processing actions or creating confusion regarding the development actions that must be taken for each claim. Although claimants may submit new claims at any time, it is far more efficient to submit all issues under the same benefit in a single unified claim.

As discussed above, VA will recognize multiple intents to file at a time provided each intent to file identifies a different benefit sought (e.g., compensation, pension). VA does not intend to limit a claimant to identifying only one benefit sought in an intent to file. For example, an intent to file may indicate that a claimant intends to file complete claims for both compensation and pension. However, if a claimant submits an intent to file for only one

benefit (e.g., compensation), VA will not recognize another intent to file for compensation benefits until a complete claim for compensation has been submitted or 1 year has expired, whichever occurs first.

VA's decision to recognize multiple intents to file stems directly from the fact that § 3.155(d) of the final rule provides that only one complete claim for a particular benefit may be associated with each intent to file a claim for that benefit. VA seeks to encourage claimants to utilize its electronic claims submission tools to promote accuracy and efficiency of claims processing. Currently, however, claimants are able to submit an electronic application only for compensation benefits. Thus, if VA were to require a claimant to submit only one complete claim for all benefits (e.g., compensation and pension) at the same time, it would be impossible to utilize VA's electronic claims submission tools to apply for compensation benefits. Allowing claimants to submit multiple intents to file, provided that each is for a different benefit, enables veterans to submit a claim for compensation electronically while still preserving an effective date for other benefits through the paper or oral intent to file process.

For example, if a veteran submits a VAF 21–0966 for pension on January 1, 2018, saves an online application for compensation on February 28, 2018, and VA receives a complete claim for pension on August 1, 2018 and a complete claim for compensation on September 1, 2018, VA will treat the pension claim as having been received on January 1, 2018, and the compensation claim as having been received on February 28, 2018, for effective date purposes. In addition, if a veteran submits a VAF 21–0966 for compensation and pension on March 1, 2020, and VA receives a complete claim for compensation via VA's electronic claims submission tool on November 1, 2020, and a complete claim for pension on paper on January 1, 2021, VA will treat both the compensation and pension claims as having been received on March 1, 2020.

One commenter noted that in the proposed rule VA allowed only one complete claim to be associated with an incomplete claim and inquired whether disabilities that are service connected as secondary to a claimed or named issue would be afforded the effective date of the claimed or named issue being adjudicated. If a benefit is granted for the primary claim or issue for which an intent to file a claim has been submitted and a benefit is granted on a secondary

basis to the primary claim or issue associated with an intent to file a claim, the effective date would be the same as for the primary claim because it was an entitlement established by the evidence of record and within the scope of the issue or condition enumerated in the complete claim giving rise to the primary claim. For example, if VA awards compensation benefits for the primary condition of diabetes and evidence of record shows other conditions are caused by or related to the diabetes, VA would assign an effective date for the secondary conditions as of the date VA awarded the primary condition. The result would be different if the claim for secondary service connection arose in the course of a later, separate claim from the one in which the primary condition was determined to be service connected, either because of changed facts (such as changed status of disability), or because entitlement was not granted in the original claim and VA's decision became final. For example, suppose a hypothetical claimant in receipt of compensation benefits for a lower back disability and diabetes files a claim for increase only for the diabetes and the evidence of record shows that claimant has a right knee disability secondary to the service-connected lower back disability. In this case, VA would adjudicate the claim for increase for the diabetes and solicit a claim for an increase in the lower back disability and secondary condition of the right knee. The result in both cases flows from the plain terms of §§ 3.155(b) and 3.400, and from VA's obligation to consider entitlements reasonably within the scope of complete claims filed on a standard form (see Section I. E. below).

*E. Types of Claims*

In response to comments, VA has revised proposed § 3.160 to define certain types of claims in a way that is meant to complement the structure created in revised § 3.155. In proposed § 3.160, VA defined a complete claim as "[a] submission on a paper or electronic form prescribed by the Secretary that is fully filled out and provides all the requested information. This includes, but is not limited to, meeting the following requirements: (1) . . . must be signed by the claimant or a person legally authorized to sign for the claimant[;] (2) . . . identify the benefit sought[;] and (3) . . . [provide] a description of any symptom(s) or medical condition(s) on which the benefit is based . . . [; and] (4) [for pension or survivor benefits, provide] a statement of income . . . .".

Some commenters stated that a "[v]eteran who submits a paper claim and inadvertently fails to check a single box on the VA form may lose thousands of dollars in disability benefits, particularly in the case where VA renders the application 'incomplete'." The proposed rule made clear that it was not VA's intent to reject forms for minor ministerial or formalistic deficiencies. *See* 78 FR at 65496. Nevertheless, we agree that a less amorphous standard for completeness is appropriate. In response to the concerns expressed in the public comments regarding the term "fully filled out" to describe a complete claim and the proposed language that the requirements for a complete claim would "not [be] limited to" those proposed requirements listed in proposed § 3.160, VA has deleted the open-ended requirement that a form be "fully filled out," and the qualifier that the requirements of a complete claim are not limited to those specifically enumerated in the rule. To address the concern that forms would be rejected for minor ministerial deficiencies, such as failure to check a box, this final rule provides a clear and consistent standard for what constitutes a complete claim. Accordingly, VA has defined a complete claim as a submission of an application form prescribed by the Secretary, whether paper or electronic, that contains the following express information requirements: (1) The name of the claimant; the relationship to the veteran, if applicable; and sufficient service information for VA to verify the claimed service, if applicable; (2) a complete claim must be signed by the claimant or a person legally authorized to sign for the claimant; (3) A complete claim must identify the benefit sought; (4) A description of any symptom(s) or medical conditions on which the benefit is based must be provided to the extent the form prescribed by the Secretary so requires; and (5) for a nonservice-connected disability or death pension and parents dependency and indemnity compensation claims, a statement of income must be provided to the extent the form prescribed by the Secretary so requires.

These revised requirements of a complete claim are similar to the criteria for which VA considers an application to be "substantially complete" under current 38 CFR 3.159 in order to trigger VA's duty to assist under 38 U.S.C. 5103A. Current § 3.159, the regulation governing VA's assistance in developing claims, provides that a "substantially complete application" means "an application containing the claimant's

name; his or her relationship to the veteran, if applicable; sufficient service information for VA to verify the claimed service, if applicable; the benefit claimed and any medical condition(s) on which it is based; the claimant's signature; and in claims for non-service connected disability or death pension and parents' dependency and indemnity compensation, a statement of income.'' Therefore, claimants who submit an intent to file a claim will have 1 year from the date of such submission to file a complete claim that is similar to the current standards of a substantially complete application.

One commenter inquired whether the ''paper'' on which a claimant is seeking benefits must be ''prescribed by the Secretary'' as described in proposed § 3.160(a), or if an advocate's letterhead used to file a claim on a claimant's behalf constitutes a submission on paper for the purpose of a complete claim. One commenter stated that requiring a form prescribed by the Secretary for submission of claims would interfere with an advocate's ability to provide representation to the fullest extent possible since such a requirement would curtail the advocate's ability to provide rationale to support a claimant's entitlement to a particular benefit. The proposed rule made clear that a complete claim must be submitted on a ''paper or electronic form prescribed by the Secretary.'' In response to this comment, VA has revised the relevant portion of the final rule in § 3.160(a), to clarify that a complete claim must be submitted in the form prescribed by the Secretary, whether paper or electronic. In order to achieve standardization of the claims and appeals processes, it is necessary that submissions to initiate a claim or to file a claim be in a standard format that is easily digitalized and processed in conjunction with VA's transition to the technological solutions implemented such as several Web-based paperless claims systems.

However, we make no changes in response to the concern in these comments that requiring claims to be filed on standard forms would somehow impair claimants' ability to submit evidence in support of their claims, or would impair representatives' ability to represent their clients. Similarly, some commenters expressed the view that the proposed rule attempted to require claimants to file an FDC, which requires claimants to certify that they have submitted all evidence they intend to submit, in order to file a claim at all. This rule does not alter the scope of evidence submission in the VA system. The fact that a claim must be initiated

on a standard form does not in any way imply that a claimant cannot submit evidence in favor of that claim while the claim is pending. We note that neither the proposed rule, nor this final rule, alter 38 CFR 3.103(d), which governs submission of evidence and provides that ''[a]ny evidence . . . offered by the claimant in support of a claim . . . [is] to be included in the records.'' The proposed rule did not contain any provision requiring that all evidence in favor of a claim accompany its initial submission. We do note, however, that claimants who protect their effective date by filing an intent to file a claim, gather all possible evidence, and submit all evidence along with their claims will frequently be able to participate in the FDC program. VA disagrees that mandating the use of VA-prescribed forms interferes with an advocate's ability to provide claimants with representation to the fullest extent possible. Mandating the use of standard forms does not preclude advocates from filing claims on behalf of a claimant or from submitting statements of rationale in support of a represented claimant's entitlement to a particular benefit.

Additionally, some commenters noted that while submitting a complete claim may seem easy, some claimants or representatives filing on a claimant's behalf may not have the necessary information readily available, resulting in delays in submitting a complete claim which would result in establishing a later date of claim. VA believes the intent to file a claim process addresses this concern.

In paragraph (a)(4), VA further clarifies that for compensation claims, a description of symptoms and specific medical conditions on which the benefit is to be based must be provided to whatever extent the form prescribed by the Secretary so requires, or else the form may not be considered complete. Similarly, in paragraph (a)(5), VA clarifies that a statement of income must be provided for nonservice-connected disability or death pension and parents' dependency and indemnity compensation claims to the extent the form prescribed by the Secretary so requires in order for the claim to be considered complete.

VA received several comments stating that its requirement that claimants identify the benefit sought, particularly, to specifically identify the medical condition(s) on which the benefit is based in order to be considered a complete claim is onerous, especially for the elderly, homeless, and those with limited education or mental and/ or physical disabilities, because it forces the claimant to diagnose a specific

medical condition for which they are not competent to do and subjects claimants to a strict pleading standard. The commenters expressed concern that requiring claimants to identify a diagnosis as part of meeting the criteria for a ''complete claim'' would undo the process of VA reasonably raising claims through a sympathetic reading of the evidence. The commenters stated that requiring claimants to provide the benefit sought and, particularly, the requirement of a description of the symptom(s) or medical condition(s) on which the benefit is based contradicted existing caselaw. Many of the commenters quoted case law providing that ''[a]lthough an appellant who has no special medical expertise may testify as to the symptoms he can observe, he generally is not competent to provide a diagnosis that requires the application of medical expertise to the facts presented.'' *See Clemons* v. *Shinseki,* 23 Vet. App. 1, 4–5 (2009). Furthermore, commenters also referenced *Ingram* v. *Nicholson,* 21 Vet. App. 232, 255–56 (2007), which holds that unsophisticated claimants cannot be presumed to know the law and plead claims based on legal elements and that the Secretary must look at the conditions stated and the causes averred in a pro se pleading to determine whether they reasonably suggest the possibility of a claim for a benefit under title 38, regardless of whether the appellant demonstrates an understanding that such a benefit exists or of the technical elements of such a claim.

VA understands the concerns raised in the public comments regarding the specificity required in order for a claim to be considered complete. However, the regulatory language of § 3.160(a)(4) clearly states that for compensation claims, VA requires ''a description of any symptom(s) or medical condition(s) on which the benefit is based'' as one of the criteria for a claim to be considered complete. VA is aware that claimants are generally not competent to diagnose a medical disability and are generally only competent to identify and explain the symptoms observed and experienced. The regulatory requirement in § 3.160(a)(4) is consistent with this caselaw because it only requests a description of ''symptom(s) or medical condition(s) on which the benefit is based'' which claimants are competent to describe to VA. The regulatory language, both as proposed and as here revised, is clear that VA is not requiring claimants to provide a medical diagnosis. Rather, VA intends to continue its current

longstanding practice of accepting claimants' description of observable symptom(s) or experiences or reference to a part of the anatomy such as "right knee" in order to meet the criteria of identifying the benefit sought for a "complete claim." For example, a claim for the "right knee" can be sympathetically read, based on the evidence of record, to encompass claims for arthritis, ankylosis of the knee, knee "locking," etc. We note also that claimants whose conditions have been diagnosed by a treating physician are competent to report those diagnoses. *See Jandreau* v. *Nicholson,* 492 F.3d 1372, 1377 (Fed. Cir. 2007). However, in order to accommodate different circumstances, the regulation is drafted broadly to require only a description of the condition or its symptoms.

One commenter asked that we clarify how VA would proceed when a claimant specifies a particular disability on the claim form, but the disability is ultimately determined to be a different disability from the one listed, such as when development of a claim for post-traumatic stress disorder (PTSD) leads to a diagnosis of depression or another psychiatric disorder other than PTSD. Consistent with our reasoning above and the fact that the rule requires only that claimants identify "symptom(s) or medical condition(s) on which the benefit is based," VA would continue to develop and ultimately adjudicate this claim as appropriate without requiring the claimant to "re-file" a new form specifically identifying the new diagnosis. The result would be different if the claim were not reasonably within the scope of the same "symptom(s) or medical condition(s)" on which the original claim was based.

Similarly, the requirements of § 3.160 clearly do not equate to a legal pleading or require specific medical knowledge and are not overly technical. It is VA's intent to maintain the current practice of accepting the claimant's account of symptoms and lay statements of experiences in identifying a medical condition for which he or she is seeking benefits. While VA has revised one of the requirements of a "complete claim" to request claimants provide identifiable information, it has made no change to the regulatory language in the requirement of identifying the benefit sought in compensation claims to mean "symptom(s) or medical condition(s)" based on these comments. The regulation language requires only that the claimant identify the "symptoms or medical conditions" on which the claim of entitlement to compensation is based, in order to facilitate the orderly development of the claim.

In addition, VA received several comments expressing concern that it would no longer grant benefits based on inferred claims or claims reasonably raised by the evidence of record due to the requirements of a "complete claim" which specifies that a claimant must identify the benefit sought, to include symptom(s) or medical condition(s) on which the benefit is based. Many commenters stated that the proposed regulation assumes that the veteran possesses a complete understanding of the entire spectrum of benefits available to them which they do not. Commenters were concerned that, in order to qualify as a complete claim, the claimant must list particular benefits with specificity on their application forms, or else risk having the claim denied.

We agree that it is necessary to provide a more detailed explanation of how we will reconcile the pro-claimant practice of VA identifying and adjudicating claims raised by the evidence of record but not specifically raised by the claimant with the requirement that all claims be submitted on a standard form. It has been VA's longstanding practice to infer or identify and award certain benefits that a claimant has not expressly requested but that are related to a claimed condition and there is evidence of record indicating entitlement. The practice of identifying these "reasonably raised claims" is not mandated or defined by any statute or regulation. We note, however, that the "[s]tatement of policy" in 38 CFR 3.103(a) provides that, in developing and deciding the "claim" filed by a claimant, "it is the obligation of VA . . . to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government." Relatedly, a number of court decisions have noted that, in the legislative history of the Veterans Judicial Review Act, Public Law 100–687, the House Committee on Veterans' Affairs stated that VA should "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." H.R. Rep. No. 100–963 at 13 (1988); *reprinted in* 1988 U.S.C.C.A.N. 5782, 5794–95; *see Roberson* v. *Principi,* 251 F.3d 1378, 1384 (Fed. Cir. 2001); *Norris* v. *West,* 12 Vet. App. 413, 420 (1999). Consistent with these policies, VA employs the practice of identifying and adjudicating reasonably raised claims as an administrative tool to provide for consideration of issues and benefits that have not been expressly claimed but that logically are placed at issue upon a sympathetic reading of the claim(s)

presented to VA and the record developed with respect to such claim(s).

This rule does not alter VA's general practice of identifying and adjudicating issues and claims that logically relate to and arise in connection with a claim pending before VA. Although the rule requires claimants to specify the symptoms or conditions on which their claims are based and the benefits they seek, it generally would not preclude VA from identifying, addressing, and adjudicating related matters that are reasonably raised by the evidence of record which the claimant may not have anticipated or claimed, but which logically should be addressed in relation to the claim filed. Rather, such matters generally may be viewed as being within the scope of the claim filed, as sympathetically interpreted in light of the record. This rulemaking does not alter or delete the requirement in 38 CFR 3.103(a) for VA to "render a decision which grants every benefit that can be supported in law while protecting the interests of the Government." This policy recognizes that many ancillary benefits that many veterans are not aware of may continue to be adjudicated and awarded as part of VA's disposition of the issues a claimant has specifically raised.

However, entirely separate conditions never identified on a standard claim form generally will not be the subject of claims that are reasonably raised by the evidence of record. As an initial matter, we do not construe 38 CFR 3.103(a) or other governing authorities to establish a legal duty to identify and adjudicate claims that are unrelated to the particular claims raised by the claimant. Section 3.103(a) specifies that claimants are entitled to written notice of the decision made "on his or her claim" and that VA will assist in developing "the facts pertinent to the claim" and will render a decision which grants every benefit that can be supported in law while protecting the interests of the Government. Those provisions thus relate to matters that are reasonably within the scope of the claim filed by the claimant. They do not, however, create a duty to adjudicate matters unrelated to the claim filed. In this way, § 3.103(a) reflects the principle of sympathetic construction of claims, while adhering to the general statutory framework that requires a specific claim in order to support a benefit award, 38 U.S.C. 5101(a), and to establish the date on which entitlement to an award may be effective, 38 U.S.C. 5110(a). Similarly, insofar as judicial decisions have referenced a duty of sympathetic development deriving from congressional intent expressed in H.R.

Rep. No. 100–963, that report similarly refers to a duty to fully and sympathetically develop the claimant's "claim" to its optimum before deciding such claim. We do not construe that statement as requiring VA to identify and adjudicate issues and claims that are unrelated to the claim(s) presented to VA.

Further, establishing a duty on VA's part to identify claims reasonably raised by the evidence of record which are unrelated to the claim(s) presented would be incompatible with the requirement in § 3.160(a)(4), as prescribed in this final rule, that a complete claim enumerate the conditions or symptoms on which the claim is to be based. If claims that are reasonably raised by the evidence of record for totally new conditions were permissible, it would be possible to identify only one condition on the standard application form, but submit evidence relating to multiple conditions on the expectation VA will identify and adjudicate those unidentified claims. This would inevitably lead to exactly the time-intensive clarifications and interpretations we seek to avoid remaining necessary in a large volume of cases.

The permissible scope of claims that are reasonably raised by the evidence of record in light of the requirement in § 3.160(a)(4) overlaps somewhat with the scope of the implicit denial rule. The basic idea of that rule is that claims pending but not explicitly denied in a decision addressing other claims can be deemed "implicitly denied" in certain circumstances. In *Ingram* v. *Nicholson,* 23 Vet. App. 232, 248 (2007), the Court of Appeals for Veterans Claims (hereinafter "Veterans Court") said the implicit denial rule cannot cover claims that are very different from one another in content. For instance, the denial of nonservice-connected pension claims did not put Mr. Ingram on notice that his claims under 38 U.S.C. 1151 had been denied. *Ingram,* 23 Vet. App. at 243. However, the United States Court of Appeals for the Federal Circuit (hereinafter "Federal Circuit") later held that a claim for endocarditis was implicitly denied when the AOJ denied a claim for rheumatic heart disease. *Adams* v. *Shinseki,* 568 F.3d 956, 963 (Fed. Cir. 2009).

Applying a similar scope to these claims that are reasonably raised by the evidence of record but not specifically claimed by the claimant will allow VA to continue this pro-claimant practice largely undisturbed while still requiring claims to originate on standard forms. VA's grant or denial of a pending claim necessarily implies that VA has

considered all potential theories of entitlement reasonably inferable from the evidence of record and reasonably within the scope of that claim. This is consistent with the requirement in § 3.160(a)(4) that the completed application form enumerate "symptom(s) or condition(s)" but not "diagnoses" or some other more discrete requirement. For example, if a claimant lists "heart condition" on a standard form, VA would consider entitlement theories based on both endocarditis and rheumatic heart disease, to the extent justified by the evidence of record. This means VA would continue to award benefits reasonably raised by the evidence of record based on secondary service connection or service connection based on aggravation due to an already service-connected disability, entitlement to total disability based on individual unemployability, benefits such as housing or automobile allowance, or special monthly compensation benefits if the evidence is clear that the claimant meets the eligibility or requirements for such benefits and VA can adjudicate these claims. This provision has been outlined in new paragraph (d) of § 3.155. In new § 3.155(d)(2), we have provided that VA will continue to identify and adjudicate claims reasonably raised by the evidence of record that are related to or are reasonably within the scope of the claimed issues in the complete claim. As explained above, § 3.103(a) currently provides the predicate for full and sympathetic development of claims, to include consideration of matters reasonably related to and raised in connection with a claim before VA, whether or not raised expressly by the claimant. We have provided that VA will put at issue for adjudication any ancillary benefit(s) or other claims not expressly raised by the claimant that are related and arise as a result of the adjudication of a claimed issue. Such issues, other than ancillary benefits, which have not been claimed by the claimant but have resulted as complications of claimed service-connected conditions will continue to be identified and adjudicated as also indicated by part 4 of the CFR, VA Schedule for Rating Disabilities.

We note that the existence of the discretionary, pro-claimant practice of identifying claims reasonably raised by the evidence of record does not imply that claims potentially remain pending indefinitely, awaiting the suggestion that contemporaneous evidence may have supported inferring a claim that was not actually filed. As the implicit

denial rule itself suggests, VA's grant or denial of a pending claim necessarily implies that VA has determined that no other claims are reasonably raised by the claims specifically identified by the claimant and the accompanying evidence of record. The correct way to contest this determination is on direct appeal, or in a claim for clear and unmistakable error. *See Deshotel* v. *Nicholson,* 457 F.3d 1258, 1261–62 (Fed. Cir. 2006). VA also notes that "where there can be found no intent to apply for VA benefits, a claim for entitlement to such benefits has not been reasonably raised." *Criswell* v. *Nicholson,* 20 Vet.App. 501, 504 (2006). Accordingly, in the next to last sentence of § 3.155(d)(2), we clarify that VA's decision addressing some, but not all, of the issues raised in a complete claim does not imply that the reminder of the enumerated issues (and issues reasonably within their scope in light of the evidence of record) have been denied, since VA must still decide the remaining enumerated issues. However, in the final sentence of § 3.155(d)(2) we make clear that VA's decision on a claim necessarily implies that VA has determined the evidence of record does not support a grant of benefits for any other issue reasonably within the scope of the issues enumerated in the complete claim. This rule text makes clear that VA's duty to broadly construe the evidence of record does not vitiate the finality of otherwise final VA decisions.

We further note that identifying and adjudicating claims reasonably raised by the evidence of record are a pro-claimant practice meant to resolve claims without the need for unnecessary administrative action when VA is already actively developing and adjudicating a claim. It should not be construed as creating a rule or practice that the filing of evidence, without a claim for increase for a condition already service connected executed on a completed application, constitutes a claim for increase. Such a practice would form a boundless exception to the requirement to file a complete claim for increase made explicit in § 3.155(d), and would be inconsistent with our explicit elimination of current § 3.157.

Some commenters specifically questioned how claims for Total Disability based on Individual Unemployability (TDIU) would operate under a system requiring standard forms. Generally, TDIU is not a "claim," but a rating that is provided in light of the impact of an individual's disabilities. *Rice* v. *Shinseki,* 22 Vet. App. 447, 452–54 (2009). This implies that VA must consider potential

entitlement to TDIU when the necessary substantive thresholds are met, and whenever evidence of record potentially establishes unemployability, whether in the context of an original claim or a claim for increase. As we said in the proposed rule, "[i]t is VA's intent that a request for an increase accompanied by evidence of unemployability continue to constitute a claim for TDIU, but the claim for increase itself must be filed on a standard form." 78 FR at 65497. However, it also implies that the requirements to initiate an original claim or a claim for increase, such as initiating an application with an intent to file a claim and perfecting it with a completed application form, apply, as they would to efforts to seek any other rating.

Other commenters asserted that it has been VA's longstanding practice to assist veterans at the beginning of the claims process and that requiring claimants to provide a complete claim is comparable to the "well-grounded claim" elements which Congress ordered abandoned by the Veterans Claims Assistance Act of 2000. One commenter stated that "the idea of not considering a claim to have been properly filed, and therefore not eligible for an effective date until it is 'complete' sounds remarkably similar to the universally rejected requirement of filing a 'well-grounded' claim." Another commenter stated that electronic applications that fall short of the standards of a complete claim would not constitute a claim of any kind, complete or otherwise, and that the proposed rule was incompatible with the duty to assist as mandated by 38 U.S.C. 5103A. Other commenters seemed to be under the impression that, under the proposed rule, a veteran would be required to complete all development on a claim before it would be considered complete and accepted, and some accused VA of attempting to shift legal burdens onto the veteran, though not all commenters characterized this as requiring a "well-grounded" claim.

Historically, section 5107 of title 38, United States Code provided that a person who submitted a claim for benefits had the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim was well grounded. 38 U.S.C. 5107(a) (1994). This seemingly subjective determination ultimately came to be defined with some particularity, and the elements of a "well grounded claim" eventually bore resemblance to the elements of ultimate entitlement to disability compensation. *Compare Epps* v. *Gober,* 126 F.3d 1464,

1468 (Fed. Cir. 1997) with *Holton* v. *Shinseki,* 557 F.3d 1362, 1366 (Fed. Cir. 2009). The Veterans Court even suggested that VA was legally precluded from providing assistance to claimants who had yet to submit evidence sufficient to establish well-groundedness. *See Grivois* v. *Brown,* 6 Vet. App. 136, 140 (1994). Congress recognized the illogic of requiring claimants to all but establish entitlement to benefits in order to be eligible for receiving VA assistance in gathering the evidence needed to establish entitlement in enacting the Veterans Claims Assistance Act of 2000. *See* H.R. Rep. 106–781 at *6–*9 (July 24, 2000).

We disagree with the assertion that the proposed rule would have resurrected the well-grounded claim requirement, or that this rule as now revised resurrects that requirement. The proposed rule would not have required claimants to submit evidence establishing ultimate entitlement to benefits in order for the claim to be recognized as a complete claim, and neither does this final rule.

The determination that a "complete claim" has been submitted is based on objective standards that are explicitly outlined in § 3.160(a). The criteria of a "complete claim" correspond directly to the current standards for a "substantially complete application" in § 3.159 which governs VA's statutory duty to assist claimants in developing claims. Therefore, once VA receives a complete claim, the statutory duty to assist claimants in obtaining evidence to substantiate the claim is triggered. While a form must contain the elements of information explicitly required by § 3.160(a) in order to be considered complete, there is no requirement to submit medical or other evidence in support of the claim in order for the application form to be considered complete. In other words, requiring that a claim be complete in order for VA to begin adjudicative activity is not at all the same thing as requiring ultimate entitlement to be demonstrated before VA will begin adjudicative activity. Therefore, VA has made no change to the proposed rule based on this comment.

Similarly, another commenter asserted that claimants should not be responsible for developing their claims and that VA has a duty to assist veterans. The requirement that claimants submit a complete claim does not entail shifting the burden on the claimant to develop his or her claim. The submission of a complete claim as set forth in § 3.160(a) of this final rule allows for efficient, fair, and orderly

processing and adjudication of a claim because the information necessary to develop and adjudicate the claim has been provided. VA's statutory duty to notify claimants of information and evidence necessary to substantiate the claim and duty to assist claimants in obtaining evidence necessary to substantiate the claim remain unchanged. VA will continue to develop claims that are considered complete.

VA eliminates the definition of "incomplete claim" that had appeared at paragraph (b) as proposed, and replaces it with the definition of an "original claim" as originally proposed at paragraph (c), with the minor change of deleting "or form" from the phrase, "application form or form prescribed by the Secretary". This change is to make clear that an application form is the form prescribed by the Secretary rather than some distinct administrative tool. In paragraph (c), VA adopts as final the definition of a "pending claim" which was proposed at paragraph (e). This change updates the existing definition of "pending claim," which is currently defined as "an application, formal or informal, which has not been finally adjudicated" by replacing the phrase "an application, formal or informal" with the word "claim."

In paragraph (d), VA adopts as final the definition of "finally adjudicated claim," as originally proposed at paragraph (f). This action primarily replaces the phrase "an application, formal or informal" in the current definition with the word "claim." Since VA is eliminating the term "informal claim," it removes references to the phrase or words, "informal" and "formal" for consistency in the existing definitions. These changes are not meant to alter the law of finality in the VA benefits system. *See Cook* v. *Principi,* 318 F.3d 1334, 1339–41 (Fed. Cir. 2002) (*en banc*).

Furthermore, VA has withdrawn the definitions of "new or supplemental claim" in proposed paragraph (d) of the proposed rule and the revised definition of "claim for increase" in proposed paragraph (h) of the proposed rule. The definition of a claim for increase in current § 3.160(f) accordingly remains unchanged by this final rule. While the new proposed definitions were intended to provide clarification, the statements of commenters demonstrated a misunderstanding and confusion about the usage and application of these terms. Because no substantive change to the scope of what constitutes a claim for increase was intended, and the more particular definition in the proposed rule is not necessary to achieve consistency with the intent to file

process, VA has withdrawn these proposed definitions in this final rule. However, in revised paragraph (e) of this final rule, VA continues the definition of "reopened claim" that appears in current § 3.160(e) with slight modifications to insert "new and material evidence" as clarification of VA's existing criteria for reopening a previously denied claim.

*F. Elimination of Report of Examination or Hospitalization as Claim for Increase or To Reopen*

Through this final rule, VA removes current § 3.157, which had provided that reports of examination or hospitalization can constitute informal claims to increase or reopen. In implementing one consistent standard for the claims process, VA has eliminated informal claims for increase or to reopen based on receipt of VA treatment, examination, or hospitalization reports, private physician medical reports, or state, county, municipal, or other government medical facilities to establish a retroactive effective date as provided in current §§ 3.155(c) and 3.157. The idea that certain records or statements themselves constitute constructive claims is inconsistent with the standardization and efficiency VA intends to accomplish with this final rule.

Therefore, in place of current §§ 3.155 (c) and 3.157, VA adopts the amendments to § 3.400(o)(2) as proposed, with two changes necessary to respond to concerns raised by commenters and to implement the intent to file process we have adopted in order to respond to the broadest concerns in the comments. The first change is to add the words "or intent to file a claim" after "a complete claim" in both the first and second sentences of the rule as proposed. The rule now states that a retroactive effective date may be granted, when warranted by the facts found, based on date of treatment, examination, or hospitalization from any medical facility, if the claimant files a complete claim for increase or an intent to file such a claim within 1 year of such medical care. This amendment preserves the favorable substantive features of the current treatment of reports of examination or hospitalization under § 3.157, but requires claimants to file a complete claim for increase, or an intent to file that is later perfected by a complete claim, within 1 year after medical care was received.

The other change is to insert the words "based on all evidence of record" in the first sentence of the regulation, so

the language describing the relevant effective date now reads, "[e]arliest date as of which it is factually ascertainable based on all evidence of record that an increase in disability had occurred". This addition is to respond to a comment expressing concern that § 3.400(o)(2) as proposed would "restrict[] the evidence needed to establish an earlier effective date to only medical evidence." The language in the second sentence of § 3.400(o)(2) as proposed specific to the treatment of medical records was intended to specifically address, in regulatory text, the situations in which medical records may establish an effective date. This language was intended to make clear, in governing regulation text separate from the elimination of current § 3.157, that medical records are evidence used to establish contemporaneous state of disability once a claim has been filed, and do not themselves constitute claims. By adding "based on all evidence of record" to the first sentence, we are making clear that the date as of which it is factually ascertainable that an increase in disability occurred may be based on any kind of evidence to the extent that evidence is credible and probative. Placing this clarification in the first sentence of the regulation avoids confusing matters by discussing types of evidence other than medical records in the second sentence, which is meant to provide clarification in light of the elimination of § 3.157.

Some commenters asserted that eliminating § 3.157 would shift the burden of filing a claim to the claimant, who may be more focused on undergoing treatment than in considering the existence of a potential monetary benefit. VA fully appreciates that while a veteran is hospitalized or receiving crucial medical treatment, a veteran may be more focused on his or her health than on pursuing a claim for compensation. VA has no desire to preclude veterans from receiving benefits for periods of hospitalization or medical treatment—VA only wishes to receive inputs in a standard format in order to serve veterans as efficiently as possible. Therefore, VA has provided a 1-year window within which a claimant can submit an intent to file a claim as outlined in § 3.155(b) of this final rule or file a complete claim for increase. As we discuss in section I.C of this final rule notice, the filing of an intent to file within this one year period provides up to a year to perfect the application by filing a complete claim. Under this final rule, all a veteran must do to preserve the earliest possible effective date of benefits is take the minimal step of

filing an intent to file within 1 year from the date as of which it is ascertainable that an increase in disability has occurred, in any of the permissible formats discussed in § 3.155(b). 38 U.S.C. 5110(b)(3). Filing the intent to file placeholder then provides the claimant up to another year to perfect the application by filing a complete claim. VA believes this process provides a significant amount of time for veterans undergoing medical treatment or hospitalization to perform these minimal steps without losing any benefits. VA strongly believes that any *de minimis* burden associated with filling out a form, whether an intent to file a claim form or a complete claim, rather than having a medical record itself constitute a claim for increase is clearly outweighed by the efficiencies that will be realized as claims become easier to identify and process.

Several commenters stated that revised § 3.400(o)(2), the effective date provision for claims for increase, limits retroactive payments to no more than 1 year and that, currently, veterans may be eligible for many years of retroactive payments based on facts found in the medical evidence. Other commenters stated that the rule eliminates the present right of a veteran to use the date of treatment in a VA medical facility for a non-service-connected disability if a claim is submitted within 1 year and VA determines that service connection should be granted or when a claim specifying the benefit sought is received within 1 year from the date of such examination, treatment, or hospital admission.

The plain language of the statute governing effective dates for an award of increased compensation based on an increase in disability allows an effective date based on when it is factually ascertainable that an increase in disability had occurred, "if application is received within one year from such date." 38 U.S.C. 5110(b)(3). Accordingly, it is clear that the effective date of a claim for increase can never be more than one year prior to the date of application. With this rule, VA is ending the practice that certain records themselves constitute claims, but is not disturbing the potential period during which a veteran may receive an award of increased compensation, provided the factual basis for such an award exists, and provided the veteran files a complete claim for increased compensation or an intent to file that is ultimately perfected by a complete claim for increased compensation within one year.

The situation identified by the commenters does not arise because VA

grants effective dates more than a year in advance of when the application is received—VA is flatly prohibited by statute from doing so. Rather, it arises when a veteran files a claim for increase, and VA becomes aware of a document, such as record of admission to a VA or uniform services hospital, potentially more than one year old, that itself constitutes a claim pursuant to current § 3.157, but has not been recognized as a claim or obtained by Veterans Benefits Administration (VBA) adjudicators until the instant claim for increase has been filed. In this scenario, benefits are not being paid more than one year prior to the date of application, but are being paid pursuant to a "claim" which was only recently found to have been pending. In other words, in this scenario the veteran is being paid a "retroactive" award because a claim was not properly identified and processed, and remained pending potentially for years. This is exactly the type of situation that VA seeks to prevent by insisting that claims must be on standard forms amenable to easy identification and processing. This rule does not preclude a veteran from receiving increased compensation for any period for which he is so entitled, provided he files a claim on a standard form or an intent to file within one year of when the increase in disability occurs. This rule does not "take away" potential avenues for a veteran to receive years of retroactive benefits, but rather prevents the situations that make retroactive payments necessary in the first place, provided the veteran takes the minimal step of filing a claim on a standard form. VA strongly believes it is preferable for veterans to be in current receipt of benefits to which they are entitled, rather than go without those benefits due to agency error for years before receiving retroactive payments. Additionally, we note that, to the extent a record that itself constitutes a claim is in existence as of the date this rule becomes effective and has not been identified and acted upon, this rule cannot extinguish that record's status as a claim under the law that was in effect as of the time that record was created, to the extent it is ever identified as claim. This rule cannot and does not preclude benefits that might be due for any unidentified and unadjudicated claims now pending.

Likewise, § 3.400(o)(2) does not alter the current procedures and laws governing the assignment of effective date(s) for an award granted for the first time based on treatment, hospitalization, or examination.

*G. Special Allowance Payable Under Section 156 of Public Law 97–377*

Finally, VA adopts minor amendments to proposed § 3.812 which govern a special allowance under Public Law 97–377. VA replaces the terminology "formal" and "informal" claims with "complete claim" and "intent to file a claim," as appropriate, to ensure consistency with the rest of the final rule.

One commenter stated that mandating the filing of a complete form for this particular benefit prior to VA recognizing it as a claim flew in the face of a half century or more of veteran-friendly regulations. However, because VA has replaced the concept of informal claim with the concept of intent to file a claim in § 3.155(b) of this final rule, claimants applying for this benefit in § 3.812 can preserve an earlier effective date by submitting an intent to file a claim that is later ratified by a complete claim if filed within one year of receipt of the intent to file a claim. Therefore, claimants and/or beneficiaries would not lose out on possible benefits due to the requirement of a complete claim being filed for this particular benefit.

*H. Other Comments Regarding Initial Claims*

VA received many comments asserting that VA's mandate of the use of forms in the VA claims process is burdensome to claimants by making it more difficult for claimants to file a claim and by overcomplicating the claims process, particularly for those with disability limitations or limited access to VA forms. The commenters expressed that such mandate of the use of forms creates an adversarial relationship between claimants and VA. Some commenters stated that VA is acting only in its own best interest in reducing the statistics on the claim backlog and not in veterans' interests.

VA has responded to these concerns by adopting the intent to file process, which is meant to reconcile the need for standard inputs with the claimant's need to preserve an effective date while complying with the procedural requirement of filling out an application form. VA is sensitive to the concern that, in some cases, the very disability for which a veteran is seeking compensation may make it difficult to fill out a form. This final rule strikes an appropriate balance between providing claimants with a more efficient process that does not erode the longstanding informal, non-adversarial, pro-claimant nature of the VA system with the ongoing workload challenges relative to VA's operating resources. VA considers

increasing the role of standard forms a key component to streamlining, standardizing and modernizing the claims process. The current informal claim process allows non-standard submissions to constitute claims, which involves increased time spent determining whether a claim has been filed, identifying the benefit claimed, sending letters to the claimant and awaiting a response, and requesting and awaiting receipt of evidence. These steps all significantly delay the adjudication and delivery of benefits to veterans and their families. Requiring the use of standard forms imposes minimal, if any, burden on claimants. Further, by making it possible for all claimants to preserve an effective date by utilizing the "intent to file" process, VA believes the benefits of these changes outweigh any such burden. Even those claimants who, due to their disabilities, may have trouble filling out an application form, can utilize one of the three acceptable formats for an intent to file, including oral communications with certain designated VA personnel, and take up to a year to perfect the application form without losing benefits.

Moreover, current standard forms such as VA Forms 21–526EZ, 21–527EZ, and 21–534EZ (hereinafter "EZ forms") contain the statutorily required notice to claimants of the information and evidence necessary to substantiate a claim at the onset of filing a claim. *See* 38 U.S.C. 5103. This means claimants do not have to wait for VA to send notices to claimants of VA's duty to assist in developing a claim. Claimants will be informed of what information and evidence is necessary in substantiating their claims prior to or at the time they file a claim.

In addition, the EZ forms used for filing disability compensation, pension, and survivor benefits as well as the NOD form are shorter in length, making them less burdensome and time-consuming for claimants to complete. Additionally, EZ forms contain pre-printed lists of potentially available benefits to help guide claimants through the claim process. VA believes that the standard format of VA's forms that provide pre-printed selections from which claimants can choose poses less of a burden on claimants because claimants spend less time describing their intent to file a claim, identifying and describing symptoms or medical conditions, or expressions of disagreement to a VA decision in a narrative format of non-standard submissions.

Some commenters asserted that there would be a constituency of claimants

who would not have access to VA's standard forms. The forms necessary to file claims for benefits are widely available, both online and in VA regional offices. Additionally, VA will continue to provide claimants with the correct forms upon request. 38 U.S.C. 5102. Furthermore, with the regulatory changes to § 3.155 standardizing the informal claim process through the concept of an intent to file a claim, claimants or their authorized representatives can contact designated VA personnel directly to establish an intent to file a claim and preserve a potential earlier effective date of their claim, and VA will furnish claimants with the appropriate claim application form(s) necessary for claimants to submit a complete claim. Many veterans service organizations also have access to VA forms.

One commenter objected to our discussion in the proposed rule pointing out that electronic claims could more easily be separated by issue and routed around the country for consideration by specialists, often referred to as the ''centers of excellence'' concept. The proposed rule would not have implemented or mandated the ''centers of excellence'' concept. It would have incentivized electronic claim submission, which removes many of the manual steps necessary to convert claims to electronic format. VA will only move toward electronic issue-by-issue brokering of workload when it is confident that this step adds both accuracy and efficiency to the claims process.

One commenter stated that the proposed rule would have created multiple definitions of ''receipt'' which 38 U.S.C. 5110, the statute governing effective dates of awards, does not authorize, and that particularly for electronic claims VA would not receive the identical form sent to VA via mail or other means and that the effective date of an electronic claim is outside the meaning of the statute. This final rule no longer attaches effective date distinctions to whether a claim is received in paper or electronic format. VA notes that statutes neither expressly permit nor prohibit VA's current longstanding practice of assigning an effective date based on receipt of an informal claim to establish an effective date when such informal claim is later ratified by a completed application form within 1 year. Through this final rule, VA is simply modifying the traditional informal claims process to make it more amenable to timely and efficient processing, while maintaining essentially the same longstanding liberalizing effective date rule that the

informal claim process has entailed. To the extent this comment is read as raising the broader point that recurring terms in section 5110 such as ''date of receipt of application'' and ''date . . . application is received'' must be interpreted and implemented in a consistent way, VA has done so in this final rule. *See e.g.,* 38 U.S.C. 5110(a), (b)(2), (b)(3). As we explain in section I.C, a claimant must file an application form. However, for effective date purposes, VA will deem that application form to have been received as of the date VA was put on notice, through the submission of an intent to file, that a claimant intended to file a claim. Any specific statutory effective dates that are available (if justified by facts found) prior to the date that the application is deemed filed will operate independently.

Some commenters raised practical complaints with the eBenefits system. Some asserted that eBenefits is confusing to claimants, while others focused on technical barriers to eBenefits access. Similarly, some commenters pointed to past information security breaches, and the fact that the technology necessary to file an electronic claim may be expensive, as reasons why allowing an effective date placeholder solely for incomplete electronic claims would be a potential burden to claimants. Because this final rule no longer attaches potential effective date consequences to whether a claim is initiated electronically prior to its ultimate filing as a complete claim, we consider these comments addressed insofar as the structure of VA's claims rules is concerned. We will continue the operational work of improving online claim submission tools and conducting outreach to veterans on how to submit claims.

Some commenters pointed out that some veterans are illiterate, or are blind, or have brain injury, mental health problems, or other cognitive impairments, and might therefore have difficulty using technology or filling out VA forms. In this final rule, we have provided that claimants may establish an effective date placeholder via oral contact with designated VA personnel. We also note that 38 U.S.C. 5101(a)(2), as amended by Section 502 of Public Law 112–154, allows certain authorized signers to sign a form required by section 5101(a)(1) on behalf of an individual who ''has not attained the age of 18 years, is mentally incompetent, or is physically unable to sign a form''.

One commenter argued there is insufficient space on VA claims forms to identify disabilities with sufficient

particularity, which will cause problems for veterans as well as processing problems at VA. The current form 21–526 contains space for seven conditions, as well as additional open space in which the veteran can indicate additional conditions if necessary. The form 21–526EZ already contains space to specifically list thirty conditions. More fundamentally, forms are capable of being revised based on experience and operational needs, provided VA complies with the necessary procedural requirements in doing so. An objection to the design of one particular form does not, therefore, imply that VA rules cannot or should not require claims to originate on standard forms. Finally, as we explain in section I.C, the commenter is mistaken as to the level of particularity required. The proposed rule would not have, and this final rule does not, require the veteran to identify a specific medical diagnosis in order to complete a claim. As § 3.160(a)(4) makes clear, all that is required is a ''description of any symptom(s) or medical condition(s),'' and this requirement can be satisfied by simply claiming ''right knee'' or ''shoulder,'' which will require VA to consider all possible right knee or shoulder disabilities established by the evidence of record.

Some commenters also suggested that VA's desire to increase the importance of standard forms in the claims process implies that VA cares more about the speed with which decisions are reached than the quality of those decisions. VA disagrees with these comments. Standard forms increase clarity and accuracy as well as efficiency, leading to lower error rates and higher quality in benefits processing. Additionally, VA strongly believes that unacceptable delays in the processing of veterans benefits claims, colloquially known as the ''backlog,'' also hurt veterans because benefits cannot be paid until a claim is decided. Many features of VA's current claims process also contribute to the backlog or, at a minimum, hamper VA's ability to address the backlog. Most inputs into the claims process, such as claimant submissions, are still received in paper format. Further, many submissions, including submissions requiring VA to take action, are not received in a standard format. This increases time spent determining whether a claim or a notice of disagreement to a decision has been filed, identifying the benefit or contention claimed or appealed, sending letters to the claimant and awaiting for a response, and requesting and awaiting receipt of evidence. These

steps all significantly delay the adjudication and delivery of benefits. By requiring the use of standardized forms for all claims and appeals, VA is able to more easily identify issues and contentions associated with claims or the initiation of an appeal that are filed, resulting in greater accuracy, efficiency, and speed in processing and adjudicating claims and appeals.

Some commenters suggested that VA should have standard forms, including for informal claims, but that use of those forms should be optional. VA has made no changes based on these comments. Making standard forms optional will not achieve the necessary standardization of the process because VA personnel would still be required to engage in time-intensive interpretive review of narrative submissions in order to determine whether a claim or appeal has been filed.

One commenter suggested that if the rule as proposed were confirmed as final, staff attorneys should be made available to all veterans who request one, free of charge, to navigate the ''adversarial'' process that would result. We disagree that requiring forms be filed at certain critical phases of the claims and appeals process amounts to an ''adversarial'' approach, particularly in light of the express authority conferred by Congress. Additionally, in this final rule, we have provided multiple avenues for a claimant to protect an effective date while taking up to a year to fill out the required form.

One commenter requested that VA ''clearly state and abide by [a] suspense/ deadline for each claim processed.'' That is exactly what VA is trying to do. The Secretary has clearly stated that VA's operational goal is to process all claims with 98 percent accuracy within 125 days, has defined a claim pending longer than 125 days as part of the ''backlog,'' and pledged to eliminate the backlog in 2015. Given the volume and complexity of VA's workload, the use of standard forms are indispensable to reaching and maintaining this level of accurate production. This comment also suggested that the ''tens levels set forth by the VA'' are redundant. We construe this comment as an objection to VA's Schedule for Rating Disabilities, 38 CFR part 4, rather than to the rules and procedures governing the processing, development, and adjudication of claims, and as such this comment is beyond the scope of this rule. We also note that the 10 percent incremental evaluation applicable to the rating of disabilities is explicitly required by statute. *See* 38 U.S.C. 1114, 1155. This commenter also asserts that ''taking one to two years with no back dating to the

start of a claim is unacceptable by any standard.'' VA agrees, and that is why our operational goal is 125 days. However, we note that once a claim is granted, it is paid as of that claim's effective date, which generally corresponds to the date of the receipt of application, and is not controlled by the date of decision.

Multiple commenters objected to the rule as proposed on constitutional grounds. These comments generally advanced two arguments. First, commenters argued that requiring veterans to fill out an application form deprives them of benefits without due process of law. Second, commenters advanced the related argument that attaching different effective date consequences to whether claims originate in paper or electronic format violates the equal protection component of Fifth Amendment due process.

VA disagrees with these comments, but believes an extended doctrinal discussion is unnecessary given the revisions to our original proposal that we adopt in this final rule. By adopting the intent to file process, VA has provided multiple standardized but claimant-friendly avenues for veterans to hold an effective date while they fill out a formal application form, including oral communications with designated VA personnel. The same amount of effective date protection is available for both paper and electronic inputs. Since this final rule provides that claimants can secure an effective date of benefits with only the minimal action necessary to constitute an intent to file, any constitutional concerns arising out of the rule as proposed are obviated.

One comment argues that VA is changing position from historical practice so suddenly that it renders VA's actions arbitrary and capricious. The argument that the proposed change was too sudden is belied by its very status as a proposal. This rule originated as a proposed rule, and received numerous comments as well as vigorous public scrutiny and debate. In response to the formal comments received, we have revised the proposal significantly in order to reconcile the competing interests as faithfully as possible.

Many comments advanced the position that VA should not consider rule changes when other avenues for improving the accuracy and efficiency of the claims system are available. The embedded premise of these comments is that so long as there is any room for improvements in training, staffing, management of AOJ personnel, and innumerable other areas of administrative responsibility, rule change is impermissible. VA disagrees

for two reasons. First and foremost, many of the inherent difficulties in administering a system as large and complex as the VA benefits system are exacerbated by the prevalence of non-standard submissions. Second, as many commenters acknowledged, VA is actively engaged in improving all aspects of its operations. VA is not relying solely on regulatory change to achieve its goals, but does believe regulatory change is necessary and justified. In any event, these comments are beyond the scope of the rule.

One comment pointed out there would be inconsistencies between the legal structure of the claim system in this rule as proposed, and as reflected in the consolidated re-proposal of the Regulation Rewrite project. 78 FR 71042 (Nov. 27, 2013). The Regulation Rewrite project was not designed to formulate and implement changes to the substantive content of VA's regulations. The Regulation Rewrite project is a comprehensive multi-year effort to ''reorganize and rewrite'' VA's regulations governing claims currently governed by 38 CFR part 3. 78 FR at 71042. Substantive legal changes have been incorporated into the rewritten regulations throughout the project. *See e.g.,* 78 FR at 71065 (discussing changes to 38 CFR part 5 as proposed to accommodate provisions of Section 502 of Public Law 112–154 dealing with persons authorized to sign a claim on a veteran's behalf). Substantive changes at the regulatory level will be handled in similar fashion, with the content of any final publication of 38 CFR part 5 being revised to incorporate the current state of the law.

*I. Other Regulations*

VA has determined that revisions to current adjudication regulations which were not published in the proposed rule are necessary to ensure consistency with the changes in this final rule. Therefore, VA revises current 38 CFR 3.108, 3.109, 3.151, 3.403, 3.660, 3.665, and 3.666. and 3.701, which would not have been amended in the published proposed rule, by generally replacing the phrase ''informal claim'' with the phrase ''claim or intent to file a claim as set forth in § 3.155(b).'' Since VA is eliminating the term ''informal claim,'' it has removed references to the phrase ''informal claim'' and replaced it with the phrase ''claim or intent to file a claim'' for consistency in these adjudication regulations to reflect this change.

We have also made minor changes in phrasing to the affected regulations in order to execute this change. In particular, we have amended

§ 3.403(a)(3) by removing the phrase, "notice of the expected or actual birth meeting the requirements of an informal claim" and replaced it with "a claim or intent to file a claim as set forth in § 3.155(b)". This change preserves the generally beneficial nature of paragraph (a)(3) by providing a date-of-birth effective date whenever VA receives a claim or an intent to file a claim within 1 year of the veteran's death. The replacement of the term "informal claim" with "intent to file a claim" does not change the substance of these regulations.

In § 3.666(c), we have simply removed the phrase "(which constitutes an informal claim)" and have not replaced it with a reference to an intent to file a claim. This section governs resumption of payment of pension for incarcerated beneficiaries and fugitive felons upon release from incarceration. An intent to file a claim is simply inapposite to this situation, because VA does not require a claim for resumption of payment in this context. VA makes the necessary adjustments upon receipt of satisfactory notice. Simply replacing the language in the parenthetical with language designed for the intent to file process would have the bizarre effect of requiring an intent to file a claim, and therefore ultimately a claim, in a context where VA has no reason to require a separate claim. Accordingly, we have simply removed this parenthetical to make clear that pension will be resumed as of the day of release from incarceration if notice is received within one year following release.

We have changed the wording of § 3.701(b), which provides for elections between pension and compensation. Paragraph (b) now reads, "[a]n election generally must be in writing and must specify the benefit the person wishes to receive." This is necessary because an intent to file a claim is a placeholder in VA's systems, and is not structured to be a substantive submission, such as one affecting the election of benefits.

## II. Changes to Appeals Process Based on Public Comments

### A. Commencement and Perfection of an Appeal

VA revises § 20.201 to incorporate the standardized NOD requirement substantially as proposed, with minor amendments and clarifications. In newly added paragraph (a), VA outlines the requirements for appeals relating to cases in which the AOJ provides a standard form for the purpose of initiating an appeal. In paragraph (a)(1), entitled "Format," VA has provided that, for every case in which the AOJ

provides, in connection with its decision, a form identified as being for the purpose of initiating an appeal, an NOD would consist of a completed and timely submitted copy of that form. In these cases, VA will not accept as an NOD any other submission expressing disagreement with an adjudicative determination by the AOJ. As we discuss in greater detail below, this means a completed form must be submitted within one year from the date of mailing of notice of the AOJ decision, or, if VA requests clarification of an incomplete form, within 60 days of the date the request was sent, or the remainder of the one year period from the date of mailing of notice of the AOJ decision, whichever is later.

One commenter suggested that VA's statutory authority in 38 U.S.C. 501(a)(2) to establish the "forms of application" does not extend to notices of disagreement. This commenter argued that the term "[a]pplication for review on appeal" in 38 U.S.C. 7106 is confined to the context of administrative appeals to the Board by VA officials and does not include notices of disagreement. We agree that section 7106, standing alone, potentially bears the reading that an "[a]pplication for review on appeal" refers only to an administrative appeal.

However, we make no changes based on this comment, for three reasons. First, while section 7106 permits the commenter's reading, it does not require it. The limitation in the first sentence of section 7106 that an application for review on appeal must be received within the one-year period described in 38 U.S.C. 7105 could be read simply to impose a time limit on administrative appeals, and does not imply that requests for Board review other than administrative appeals are something other than an "[a]pplication for review on appeal." Second, 38 U.S.C. 7107(a)(1) discusses how "each case received pursuant to an application for review on appeal" will be docketed. This statutory section governs the docketing of all appeals before the Board, not just administrative appeals. Third, section 7108 also refers to an "application for review on appeal," and requires that it be in conformity with the entirety of 38 U.S.C. Ch. 71. Nothing in the language or context of this statute implies that the term "application for review on appeal" is confined to administrative appeals, and the fact that all "application[s] for review on appeal" must comply with all requirements in 38 U.S.C. Ch. 71 implies that an "application for review on appeal" is any request for Board review. Chapter 71 includes 38 U.S.C. 7105, the statute

governing requirements of, and treatment of, NODs.

Some commenters pointed out that the standardized NOD form addresses only compensation claims. As the proposed rule explained, this is necessary due to the legal structure of VA and the dynamics of VA's appellate workload. VA has chosen a flexible standard rather than identifying a particular form number or control number in the rule text in order to ensure the rule functions for all of VA's diverse operations. The standard for what constitutes an NOD applies to all VBA benefit lines, as well as the rest of VA. However, the current standard NOD form was designed only for compensation claims. One of the key features of the form's design is that it solicits particular pieces of information relevant to a compensation claim. Standard NOD forms for other types of benefits, such as loan guaranty and educational benefits, have not yet been created. Requiring appeals of other benefits, such as home loan guaranty or education benefits, to be submitted using this form in its current state would likely be confusing to veterans.

At the same time, the overwhelming majority of the VA appellate workload concerns appeals of AOJ decisions on claims for compensation. Board of Veterans' Appeals, Department of Veterans Affairs, *Report of the Chairman: Fiscal Year 2012,* at 22 (2013) (96.1 percent of Board dispositions in FY 2012 were for compensation claims). Therefore, VA is concerned that making the NOD form so generic as to accommodate appeals of all benefits VA-wide might dilute much of the efficiency gain VA expects from mandating the use of standardized forms. Nevertheless, VA will continue to seek ways to provide a standardized format for VA benefits lines to receive an appeal, whether on one all-purpose form or individual specialized forms.

To reflect these current realities, the standard reflected in amended § 20.201(a)(1) is designed to produce a single rule that can function flexibly VA-wide while allowing for the creation of forms that are functional for each VA benefits line. Additionally, § 20.201(b) provides a "fallback" standard for benefits where standardized appellate processing is not as pressing a need as it is with compensation claims. This approach allows for standard forms in VA benefits lines where the volume, complexity, and frequency of appeal call for standardization, without disrupting the administration of other benefits that are infrequently appealed. In § 20.201(b), if VA does not provide a standard appeal form for a particular

type of claim, the claim is governed by the current standard for what constitutes an NOD as provided in current § 19.26 and regulatory text of § 19.23(b) and § 20.201(b). As of the publication of this final rule, VA only expects regularly to provide a standard appeal form for compensation claims and similar monetary benefits claims. However, VA may choose to provide standard forms with AOJ decisions for other benefits lines as the volume and dynamics of VA's workload continue to evolve. Additionally, if VA fails to provide a standard appeal form to the claimant due to a case-specific error, the claimant would be able to initiate an appeal under the current standard for an NOD where a written communication expressing dissatisfaction or disagreement and a desire to contest the result will constitute an NOD. See § 20.201(b).

The second sentence makes clear that if the AOJ provides a standard form with its decision, triggering the applicability of § 20.201(a), VA will not accept a document or communication in any other format as an NOD. VA believes this rule is necessary to make use of the standard form mandatory and maximize improvement and efficiency in the appellate process. Additionally, VA clarifies in this final rule that submitting a different VA form does not meet the standard for an NOD in cases governed by § 20.201(a). Many VA forms, such as VA Form 21–4138, *Statement in Support of Claim,* are so generic that they would not yield the clarity and standardization this rule change is designed to achieve.

In the future, different standard forms may be developed for different benefit lines. Under this final rule, the particular version provided with the AOJ decision must be used. For example, if a claimant received an AOJ decision relating to a compensation claim and received a compensation-focused form (such as VA Form 21–0958, *Notice of Disagreement*) from the AOJ, the claimant could not initiate an appeal by returning a different form developed for the purpose of initiating appeals of AOJ decisions relating to a home loan guaranty.

In § 20.201(a)(2) of this final rule, VA has made clear that it may ''provide'' the form to the claimant electronically or in paper format. VA has provided that if a claimant has an online benefits account such as eBenefits, notifications within the system that provide a link to a standard appeal form would be considered sufficient for the AOJ to have ''provided'' the form to the claimant and trigger the applicability of § 20.201(a). Similarly, if a claimant has

provided VA with an email address for the purpose of receiving communications from VA, emailing either a copy of the form itself or a hyperlink where that form may be accessed is sufficient. The email should identify that the hyperlink is to a required VA appeal form. Some comments could be read to suggest that VA should provide the form in both electronic and paper format to all claimants. To the extent this was the commenters' intent, VA rejects this suggestion. Sending paper forms to claimants who have established an online benefits account or otherwise indicated an intent to receive communications from VA in electronic format, such as by providing VA with an email address for that purpose, would be duplicative, wasteful, and inconsistent with VA's goals to modernize the claims and appeals process.

Finally, if a claimant has chosen to interact with VA using paper, VA will provide a paper version of the standard form in connection with its decision. The specific piece of paper that is sent to the claimant need not be returned in order to constitute an NOD, but the same form must be returned. In other words, if a claimant is sent a copy of a particular form, he or she must return a completed copy of that form, but not necessarily the same piece of paper that was mailed to the claimant.

Several commenters expressed concern about VA's procedure for furnishing the standard form to claimants and inquired as to the procedure VA would take in order to obtain the correct VA form from the claimant if an alternate communication is received by VA. As we explain above, the requirement for an NOD to appear on a standard form is only triggered when VA provides a form for the purpose of initiating an appeal in connection with its benefits decision. Accordingly, the requirement to use a standard form necessarily only applies to claimants who have already received that form, and an explanation of how to appeal VA's decision. *See* 38 U.S.C. 5104 (notice of Secretary's decision ''shall include an explanation of the procedure for obtaining review of the decision''). In the event VA receives an incomplete standard NOD form, it will follow the procedures set forth in § 19.24(b)(1). VA will furnish the appropriate form or the standard NOD form to claimants in paper format with the decision notification letter as well as providing a hyperlink to the standard form in the decision notification letter.

One comment suggested that § 20.201(a)(2) be revised to state that VA

''must'' provide the appeal form in the applicable format, rather than ''may.'' This same comment asserts the rule ''assume[s] VA will provide that form in its decision letter.'' This comment is predicated on a misunderstanding of the rule. Again, the requirement to use the standard form is not triggered unless VA provides the form in connection with its decision. Inserting the term ''must'' into § 20.201(a)(2) would broaden the scope of claims for which use of a form would be mandatory.

One comment suggested that § 20.201(a)(2) should be revised to require that the form be provided to the claimant's representative, if any, in addition to the claimant. We have considered this suggestion and agree. A claimant's representative generally must receive the same decision notice that is sent to the claimant. 38 U.S.C. 5104(a). While this statutory principle does not necessarily imply that any representative must receive the form in order to trigger the requirement that the form be used to initiate an appeal, ensuring representatives receive the necessary form adds minimal additional administrative burden.

However, we do not believe any revisions are necessary in order to make this clear. The rule as proposed and as here confirmed as final provided that the requirement to use a standard form arises when the AOJ provides the standard form, ''in connection with its decision.'' Because the same statute governing content of VA decisions specifies that representatives are to receive the same notice that is sent to the claimant, this implies that any representative should also receive the form. We note that this reasoning implies that the presumption established in § 20.201(a)(3) will apply to the question of whether the form was provided to the representative. Additionally, this rule does not alter the scope of evidence or argument submission within the VA system. Therefore, if a representative is unsure whether the form was provided, particularly in a compensation claim, we see no readily apparent substantive reason why the representative would not simply use the form, which is and will remain widely available, to keep the veteran's claim moving as quickly as possible. We see no reason why a trained, accredited representative who is aware of VA forms would spend an inordinate amount of time attempting to protect an option to submit an NOD in a non-standard narrative format, rather than simply filling out a form and submitting argument on a separate document if necessary. Finally, we note the fact that the representative must

receive the form in order to trigger the requirement that the form be used does not imply that the representative must receive the form in the same format as the claimant. In particular, a representative with access to VA's Stakeholder Enterprise Portal, or who otherwise interacts with VA electronically, does not have to receive the form in paper merely because he or she represents a claimant that prefers to interact with VA through paper.

In § 20.201(a)(3), VA has provided that any indication whatsoever in the claimant's claims file or benefits account of provision of a form would be sufficient to presume the form was provided, triggering the applicability of § 20.201(a) rather than § 20.201(b). Under this rule, an indication as minimal as a statement in a decision notification letter such as "Attached: VA Form 21–0958" would be sufficient to trigger the presumption that the form was provided and § 20.201(a) governs. *See Butler,* 244 F.3d at 1339–41 (presumption of regularity applies to the administration of veterans benefits).

In § 20.201(a)(4), VA provides that, if a standard VA form requires some degree of specificity from the claimant as to which issues the claimant seeks to appeal, the claimant must indeed provide the information the form requests in order for the submission to constitute an NOD. For example, the current form provides claimants with a selection of separate boxes allowing claimants to identify broad categories of disagreement. VA believes it would be helpful to the process to have this requirement in the governing regulation.

Several commenters objected to the requirement that an appeal be initiated on a standard form. Many commenters advanced the position that VA does not have authority to require that NODs be on standard forms designed for the purpose of initiating an appeal, and provided to the claimant with an explanation that the form must be used to initiate an appeal. In particular, some commenters argued that governing statutes did not allow VA to mandate the use of a form and that whether a document is an NOD is a question of law for the Veterans Court to determine *de novo* under 38 U.S.C. 7261(a). Commenters also stated that requiring an NOD form violates the Court's interpretation and plain language of 38 U.S.C. 7105.

VA has clear authority to require that a claimant submit an NOD on a particular form, and accordingly does not agree with these comments. The Federal Circuit has explicitly held that 38 U.S.C. 7105 "does not express a complete and unambiguous meaning for

the statutory term 'notice of disagreement,' " and that VA's implementation of section 7105 accordingly must receive the significant deference due an agency's reasonable construction of a statute it administers. *Gallegos* v. *Principi,* 283 F.3d 1309, 1313 (Fed. Cir. 2002); see *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45 (1984). Additionally, Congress has specifically delegated authority to VA to issue rules concerning "the forms of application," 38 U.S.C. 501(a)(2), and has characterized a request for Board review as an "[a]pplication for review on appeal." 38 U.S.C. 7106, 7107, 7108. These explicit delegations of authority, coupled with the significant benefits that consistent use of the standard NOD form will have in improving the timeliness and accuracy in processing of veterans' appeals, make clear that our construction of section 7105 is reasonable.

It is irrelevant that the Veterans Court might analyze whether a particular document qualifies as an NOD as a question of law as opposed to a question of fact. If anything, this highlights the essentially interpretive nature of the current standard for an NOD. The Veterans Court's authority to review VA's determinations regarding whether a particular veteran filed a timely NOD under the legal standard applicable to that veteran's case does not have any bearing whatsoever on VA's authority to define, by regulation, the legal standard for an NOD, so long as VA's definition is consistent with the governing statute, and a reasonable interpretation of any statutory ambiguity.

Part of the rationale for requiring standard VA forms, particularly for the appeals of compensation claims, is that they enable VA to identify the substance of an appeal as early as possible in the process. Additionally, inputs from the claimant in a standardized format are much more easily turned into data that can be used in evaluating and processing a claim or appeal.

VA strives to maintain the veteran-friendly, pro-claimant nature of the appeals process by providing a format in the standard form that allows claimants to choose from pre-printed selections as well as ample space on the form for statements or comments in a narrative format.

Some commenters expressed concern that mandating the use of a standard form means VA will not provide its statutory duty of assisting claimants with developing their claims or providing notice to claimants. Some maintained that the duty to assist precludes VA from requiring appeals be

initiated on standard forms. The statutory duty to assist plainly does not require VA to accept NODs regardless of the format in which they are filed; rather, it governs what efforts VA must undertake to help a veteran secure evidence necessary to establish the elements of entitlement. 38 U.S.C. 5103A. That VA has a duty to gather evidence does not imply VA cannot issue reasonable regulations within its explicitly delegated statutory authority that are necessary to administer the claims process. Further, the Federal Circuit has held that what constitutes an NOD is ambiguous in 38 U.S.C. 7105, which, unlike 38 U.S.C. 5103A, applies specifically to the appellate process. VA's regulations implementing this statutory term accordingly receive *Chevron* deference. *Gallegos,* 283 F.3d at 1313.

VA disagrees with these comments, but offers one clarifying change. The plain language of § 19.24(a), both as proposed and as here confirmed as final, requires VA to identify and implement any necessary development or review action when a timely notice of disagreement is filed. As proposed, § 19.24(a) provided that the AOJ "may" reexamine the claim and determine what development or review action is warranted. The use of the term "may" in the proposed rule was consistent with the inherently discretionary nature of VA's development and review obligation specific to this phase of the process, and with the general scope of the duty to assist. *See* 38 U.S.C. 7105(d)(1) (AOJ must take "such development or review action as it deems proper"); see also 38 U.S.C. 5103A(a), (d) (Secretary must make reasonable efforts to assist in obtaining evidence "necessary" to substantiate the claim, and must provide a medical examination when one is "necessary to make a decision"). However, to make clear that the AOJ is required to review the claim in cases where a timely NOD is filed and make the threshold determination of whether any further development or review action is deemed necessary, we have changed "may" to "will" in this final rule. This rule does not alter VA's substantive duties in regard to the processing of NODs. VA is only requiring that claimants provide their expression of dissatisfaction or disagreement of an AOJ decision in a specified format, i.e., on a standard form. This does not alter the scope of VA's duty to take appropriate review and development action upon the filing of a notice of disagreement, or in any way affect VA's duty to assist claimants.

One commenter argued that AOJ personnel failing to recognize an NOD

under the current standard indicates a need for better training, not imposing a requirement on a veteran to complete a form. We disagree with the embedded premise of this comment that the current standard is the "correct" standard that must be maintained regardless of evidence and reasoning indicating that it harms veterans and VA's efforts to accurately and efficiently process appeals of benefits decisions. Furthermore, VA has rigorous training programs for AOJ personnel, and these will continue under the implementation of this rule. More fundamentally, the standard for what constitutes an NOD under the current rule is inherently subjective, meaning no amount of training can totally eliminate error in the identification of NODs. Even determinations that are not "erroneous" can be overturned by higher decisionmakers who simply take a different view of whether the subjective standard of what constitutes an NOD is met given the facts of the case.

Several commenters criticized the layout or content of the current standard NOD form. Some stated that the content of the current standard appeals form did not provide claimants with an option for claimants to select an AOJ's *de novo* appellate review. Other commenters expressed concern that the form is inadequate to appeal certain benefits. Other commenters suggested the form contains too many terms of art to be useful to veterans. Other commenters questioned the motive behind VA inquiring whether claimants would like direct communication with the AOJ regarding the appeal. Generally, VA is considering the comments regarding the content of the current standard appeals form and will update or revise the form based on these comments as necessary. Specifically, VA is considering whether the form should be revised to include an election of *de novo* AOJ review pursuant to 38 CFR 3.2600, as multiple commenters urged. One commenter expressed concern that the NOD form does not have any language or endorsement for the veteran to provide indicating that he or she desires to contest the result of the agency's decision. Similarly, another commenter even suggested that this omission could lead to VA determining its own form, even if completed, does not constitute an NOD, and disallow appeals due to deficiencies in a form it had mandated the use of. While VA can and will continue to revise forms based on experience in the administration of its programs, we note that the filing of the form itself provides the necessary indication that the veteran disagrees

with the original decision and desires to contest the result.

It is true the form contains terms of art specific to compensation claims. We address this issue in section II.D. below. In particular, however, we note that we have revised § 19.24(b)(2) to enumerate the information required to complete a standard NOD form with greater particularity. As we explain more fully in section II.D., the form will continue to solicit more detailed information from the veteran because this is useful in orderly and efficient processing, but in § 19.24(b)(2)(iii) we clarify that the form is considered complete if it enumerates the issues or conditions for which appellate review is sought. Although no changes to the standard NOD form were made, we did amend the instructions to the NOD form to provide notice to claimants of what is minimally necessary to constitute a complete NOD as well as the action VA will take when an incomplete NOD is received.

To the extent commenters object to the current form's focus on issues specific to compensation claims, rather than other benefit lines, we address this issue above—the requirement to use a form is only triggered when VA provides the claimant a form for the purpose of initiating an appeal in connection with its initial decision. This will enable VA to tailor the content of standard NOD forms to suit the substantive needs of VA's diverse benefit lines and operations. To the extent commenters object to the lack of a dedicated space on the current form to identify a claimant's belief that VA wrongly denied entitlement to an ancillary benefit related to a compensation claim, such as special monthly compensation, aid and attendance, or total disability by reason of individual unemployability, there are at least two spaces on the current form where it would be appropriate to identify these issues, to the extent a claimant is able to provide this degree of specificity. One, such information could be included on the section of the form asking the claimant to identify disagreement as to the evaluation assigned. While each of these ancillary benefits have their own specific criteria, they are all fundamentally amounts of increased compensation that are owed to the claimant based upon the circumstances, including severity of disability, like any other rating and as, discussed above, fall within the scope of a complete claim when entitlement is shown by evidence of record and stems from one or more enumerated issues in a claim. *See* 38 CFR 3.350, 4.16. Two, such information could be included in

the section on the form specifically designated for a narrative statement from the claimant. Additionally, though we view the election of AOJ de novo review as beyond the scope of a rulemaking requiring a standard form to initiate an appeal, we note that the claimant can also elect to utilize this procedure in this space on the current standard NOD form designed for a narrative statement. VA will consider whether the form should be revised to include a dedicated space for these types of information based on its ongoing experiences in administration of the standard NOD form process. The form includes a space to elect direct communication with the AOJ regarding the appeal because informal communications between AOJ personnel and veterans and their representatives are extremely valuable in clarifying and sometimes even resolving the issues in an appeal. Many claimants appreciate the availability of this direct and informal engagement from AOJ personnel. However, other claimants react negatively, and even feel that VA is harassing them if multiple attempts at phone contact are made. The election allows VA to target its limited AOJ personnel time to cases where it is likely to be useful.

In § 20.201(a)(5), VA states that the filing of an alternate form or other communication does not extend, toll, or otherwise delay the time limit for filing an NOD. In addition, VA clarifies that returning the incorrect VA form, including a form designed to appeal a different benefit, does not extend the deadline for filing an NOD. This policy is necessary to bring efficiency to appeals processing. Imposing a requirement that AOJ personnel, even in cases where a form pursuant to § 20.201(a)(5) was provided to the claimant, must scour non-standard claimant submissions in search of communications which might be reasonably construed as an expression of disagreement in order to make sure the claimant has not attempted to initiate an appeal in the incorrect format would require exactly the same time-intensive interpretive exercise that VA seeks to end by requiring use of a standard form. VA believes the one-year statutory period in which to file an NOD is ample time to fill out and return the standard NOD form. Some commenters requested that an alternate form or other communication toll the time limit for filing the correct form. For instance, one commenter urged the addition of new text in § 20.201(a)(5) essentially providing that if a communication that would qualify as an NOD under current

rules is received in a case governed by § 20.201(a), VA will provide another copy of the correct form and provide another 60 days (or the remainder of the one year statutory period in which to initiate an appeal, whichever is longer) for the claimant to return it. Other commenters suggested that the time limit not be tolled, but that VA still be required to identify statements indicating a claimant's disagreement not filed on the standard NOD form, notify the veteran of the deficiency, and re-send the NOD form.

VA makes no change based on these comments. The point of requiring appeals to be initiated on standard forms is to reduce the need for AOJ personnel to engage in the time-intensive interpretive review of non-standard narrative submissions. Requiring VA to identify that a particular submission can ''be construed as disagreement'' in a case otherwise governed by the requirement to use a standard form would destroy the predictability and efficiency that use of a form makes possible because it would require the same amount of ''by hand'' review as is required under the current system. Given that the requirement to use the correct form is only triggered when VA has provided the form to the claimant, we do not believe it is justified to create an exception requiring exactly the kind of interpretive review of narrative submissions, in such cases, that this rule seeks to end. However, we note that the fact we do not create an exception requiring AOJ personnel to engage in this type of review does not imply that this rule would prevent AOJ personnel from notifying a veteran who has clearly expressed disagreement in a narrative format that he or she must use the form. In many instances, AOJ personnel may even conclude that doing so serves the interest of both clarity and efficiency.

In § 20.201(c), VA clarifies that it does not require a standardized form for simultaneously contested claims, which are claims in which the award of benefits to one person may result in the disallowance or reduction of benefits to another person. 38 CFR 20.3(p). Such claims arise only rarely and, irrespective of the nature of the benefit sought, they commonly present unique issues involving marital or other relationships of different individuals claiming entitlement to the same or similar benefits based on their relationship to the same veteran. Further, in 38 U.S.C. 7105A, Congress has prescribed a 60-day time limit for filing NODs in simultaneously contested claims. In view of these claims' unique features, we do not alter those governing

standards. Moreover, because simultaneously contested claims constitute a very small portion of VA's appellate caseload, excluding those claims from the requirement to use standardized forms will not significantly affect the objectives of this rule. VA, therefore, states in paragraph (c) of § 20.201 that the provisions of § 20.201(b) apply to simultaneously contested claims. However, claimants in simultaneously contested claims could use a standard VA form, when feasible, even though they would not be required to do so.

*B. Procedures for NODs Received on Standard Form*

This final rule creates two new sections in part 19. New § 19.23 generally clarifies which procedures apply to appeals governed by § 20.201(a), and which apply to appeals governed by § 20.201(b). New § 19.23(b) specifies that current procedures in §§ 19.26 through 19.28 would continue to apply to appeals of benefits decisions governed by § 20.201(b), and new § 19.23(a) provides that these procedures would apply only to those cases. In other words, the provisions of §§ 19.26 through 19.28 apply only to appeals of AOJ decisions relating to cases in which no standard form was provided by the AOJ for the purpose of initiating an appeal. New § 19.23(a) also clarifies that the procedures in new § 19.24 apply to appeals of AOJ decisions for cases in which the AOJ provides a form for the purpose of initiating an appeal, which are governed by § 20.201(a). With this new clarifying section, VA hopes to eliminate any confusion potentially caused by the fact that §§ 19.26 through 19.28 will no longer provide governing procedures for the overwhelming majority of VA's appellate caseload, but must be retained for processing NODs relating to other benefits for which no standardized NOD form is provided.

One commenter stated that the standard form for a NOD primarily addresses compensation claims and not other types of claims such as pension or survivor benefits. Currently, the compensation-focused form is VA's only standard NOD form. VA has not yet designed appeal forms that meet the specific needs of all other VA benefit lines.

In paragraph (a) of new § 19.24, VA provides that its practice of reexamining a claim whenever an NOD is received and determining if additional review or development is warranted are also applied to NODs submitted on standardized forms.

One comment suggested that 38 CFR 19.27 be changed to include reference to § 19.24 in addition to its current reference to § 19.26. Section 19.27 specifies the procedures for situations when VA does not believe a document filed by a claimant expresses disagreement and a desire to appeal with adequate clarity to constitute an NOD. VA views § 19.27 and related § 19.28 as being necessary primarily due to the current amorphous standard for what constitutes an NOD, and believes that adopting standard forms will obviate the need for these procedures in the vast majority of cases. In cases governed by § 20.201(a) and accordingly by § 19.24, there should be no need for appellate consideration of the ''adequacy'' of the NOD—the correct form either was, or was not, filed within the applicable timeframe. VA accordingly declines to make § 19.27 applicable to the procedures in § 19.24.

However, in considering this comment, VA has concluded it is necessary for this final rule to include some mechanism for claimants to challenge VA's determination that the correct form was not timely filed. Even if there should be no issue as to whether an NOD was ''adequate'' in a case governed by § 20.201(a) and § 19.24, there is the possibility for technical errors or errors by AOJ personnel. We have therefore revised § 19.24 as proposed to include a new paragraph (d), which makes clear that VA's determination that no NOD was filed may be appealed. However, this paragraph also makes clear that appellate consideration is limited to the question of whether the correct form was timely filed. This limitation is necessary in order to prevent this avenue for challenging VA's determination that no form was filed from creating an open-ended exception to the otherwise valid requirement that an NOD must be on a standard form in cases governed by §§ 20.201(a) and 19.24. In the event a competent appellate review authority determines that a valid NOD was in fact filed, the AOJ would be required to process the appeal, to include providing a statement of the case relating to the substance of the appeal. We note that, unlike § 19.27, new paragraph 19.24(d) does not utilize the procedures for administrative appeals in 38 CFR 19.50–19.53. Those procedures are designed to accommodate disagreements among agency personnel that admit of a degree of subjective difference of opinion, such as whether an ''adequate'' notice of disagreement under the traditional standard has been filed. Our purpose in

making VA's determination that no NOD governed by §§ 20.201(a) and 19.24 was filed appealable is to provide claimants a way to appeal any administrative or technical errors by VA personnel in the determination of whether the correct form was timely filed, not to resolve disagreements among AOJ personnel in the resolution of subjective questions such as whether an ''adequate'' NOD has been filed.

Related to this issue, another comment asks whether VA believes it has authority to limit the Veterans Court's jurisdiction by rejecting an NOD that satisfies the requirements of 38 U.S.C. 7105. We respond to the embedded premise of this comment, that requiring an NOD be on a standard form is inconsistent with section 7105(d), in section II.A. However, we have provided explicitly for appellate review of whether a valid NOD has been filed even in cases where the requirement to utilize a standard form attaches, in part to ensure claimants have a means of obtaining factual review of VA's determinations as to whether the correct form was filed in a timely way (short of the drastic step of filing a petition for a writ of mandamus). VA has clear authority to define what constitutes an NOD, but claimants have a right to review of VA factual and legal determinations under any standard VA promulgates.

But the further suggestion that VA cannot establish any requirements pertaining to what constitutes an NOD because those requirements form a ''barrier'' to the Veterans Courts' review of the merits of a claim cannot be correct. This would imply that VA is prohibited, by virtue of the Veterans Court's mere existence, from exercising authority explicitly delegated by statute. Further, we note that it is well established that ''[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'' *Nat'l Cable & Telecomm Ass'n* v. *Brand X Internet Services,* 545 U.S. 967, 982 (2005); *see also Eurodif S.A.* v. *U.S,* 423 F.3d 1275, 1276–77 (Fed. Cir. 2005).

### C. Complete and Incomplete Appeals Forms

In response to comments, in paragraph (b) of new § 19.24, VA has revised this section for clarification purposes by distinguishing between incomplete and complete appeal forms. VA has

redesignated proposed paragraph (b) as ''Incomplete and Complete Appeal Forms'' and restructured this section to categorize ''incomplete appeal forms'' in subparagraph (b)(1) and ''complete appeal forms'' in subparagraph (b)(2). Section 19.24(b)(1) outlines the procedures for when a claimant submits the correct form timely but incomplete. VA believes that the authority to require a claimant to use a particular form necessarily implies the authority to require that the form be completed, to include identifying each specific issue on which review of the AOJ decision is desired. VA strongly believes that if veterans provide all information requested on the standardized VA form, this will lead to the fastest possible result for that individual veteran and the VA appellate system will work more efficiently for all veterans. Accordingly, if VA determines a form is incomplete, VA may require the claimant to timely file a completed version of the form.

### D. Completeness of the NOD Form

In revised § 19.24(b)(2), VA describes the standard by which it would determine whether or not a form to initiate an appeal is complete, both in general and for compensation claims in particular. In general, a claimant must provide the information to identify the claimant, the claim to which the form pertains, any information necessary to identify the broad category of the disagreement, and the claimant's signature in order for that form to be considered complete. However, we did not specifically enumerate the type of information necessary to identify the claimant in the rule text in order to provide VA with some flexibility to ascertain the identity of a claimant by using certain information or a combination of information which the claimant may provide. For example, there are many claimants with identical names to other claimants and a claimant's name alone may not necessarily identify a specific claimant with a particular claims file. If there is other information specific to a claimant such as a Social Security Number, then VA would be able to identify a claimant to his or her claims file even without the claimant's name. As opposed to allowing VA to use the information provided in a combination of ways to identify a claimant, we believe that enumerating the type of information required to identify a claimant with specificity would hinder both claimants and the VA processing NODs. If VA were to outline the exact requirements of what is necessary to identify claimants in its regulations, then a form which contained information that could

identify a particular claimant but did not contain other non-essential information could render the form incomplete. This would result in VA rejecting these forms for minor ministerial or formalistic deficiencies, thereby delaying the processing and adjudication of a claimant's appeal. By allowing VA to determine in its discretion what information is necessary in identifying a claimant without specific particularity in the regulations, the regulation will enable VA to process these notices of disagreement without rejecting such forms as incomplete if certain information was not provided, thereby eliminating or preventing prolonged administrative delays and speeding up completion of an appeal. For compensation claims being appealed, a form is considered incomplete if it does not enumerate the issues or conditions for which appellate review is sought. With respect to the nature of disagreement, the form directs claimants to indicate, for each appealed condition, whether they disagree with the AOJ's decision on the question of service connection, disability evaluation, effective date, and/or any other question. This information enables VA to more efficiently process appeals and avoid expending time and other resources on matters the claimant does not contest.

It is not VA's intention to be overly technical in determining whether claimants have completed a form. The purpose of this final rule is the orderly and efficient processing of veterans' claims and appeals, not the exclusion of legitimate appeals, and VA's decision to conclude that a form is incomplete and request completion will be guided by this principle. *See Robinson* v. *Shinseki,* 557 F.3d 1355, 1361 (Fed. Cir. 2009) (''[i]n direct appeals, all filings must be read 'in a liberal manner' whether or not the veteran is represented''). As with the consideration of claims meeting the standard of a complete claim, VA stresses that it does not intend to consider a form used to initiate an appeal to be incomplete and to request further completion unless that is a reasonable course of action to facilitate orderly processing of the appeal.

Several commenters stated that the requirement of a complete standard form for an expression of disagreement ''converts a legal notice into a substantive pleading by installing requirements in an undefined form'' that violates 38 U.S.C. 7105(a) and that the form requires a level of knowledge beyond the average veteran, especially one who is not represented by a VA-accredited representative. VA considers the requirements of a complete NOD

minimally burdensome to claimants. VA disagrees that providing basic information sufficient to identify which claim or issue the claimant seeks to appeal, such as identifying that an appeal pertains to a claim for a knee disability as opposed to a shoulder disability, is equivalent to requiring a substantive pleading sufficient to initiate a civil action. In order to provide claimants with clear indication of what constitutes a complete form as provided in § 19.24(b)(2), we have amended the instructions to the NOD form to provide the criteria for a complete NOD but we have not changed or altered the NOD form itself.

As we have explained, VA has intentionally drafted this rule to make it possible for VA to respond to evolving needs in the appellate workload, to include the possibility that benefit lines other than compensation may need a standardized form to facilitate orderly processing. However, this does not mean this rule would allow VA to impose unlimited requirements into an undefined form. First of all, alteration to any existing form, and creation of any new form, is governed by the Paperwork Reduction Act (see below), which in many cases requires public notice and comment before new collections of information are legally valid. More fundamentally, however, any requirement that VA "inserts" into a standard NOD form must be a reasonable exercise of VA's statutory authority. If VA were to add to a standard NOD form a requirement totally unrelated to providing notice that the claimant disagrees with a VA decision and obtaining information necessary to facilitate the orderly administrative action such a notice triggers, that requirement would be beyond the scope of the statutes that confer authority on VA to require the form in the first place.

Section 19.24(b)(2) responds to commenters' concerns regarding the level of specificity required for a form to be considered complete by making clear that a form "will," rather than "may," be considered complete if it meets the following criteria: Information to identify the claimant; information to identify the claim to which the form pertains, and information necessary to identify the specific nature of the disagreement, to include for compensation claims, the issues or conditions for which appellate review is sought; and the claimant's signature. In particular, we note that § 19.24(b)(2)(iii) as revised provides that, for compensation claims, a form will be considered complete if it enumerates the issues or conditions for which

appellate review is sought, or if it provides other more granular information required on the form to identify the nature of the disagreement (such as disagreement with disability rating, effective date or denial of service connection). This means that, at a minimum, VA would consider the identification of an issue, such as a "shoulder disability," sufficient for purposes of meeting this criterion for a complete appeal form, even if the form on its face requires additional information. While the current standard appeals form for compensation claims instructs claimants to list each specific issue of disagreement, it also provides selections for more detailed description in association with each issue. For each issue of disagreement, claimants can select an area of disagreement, e.g., service connection, effective date of an award, evaluation of disability, or other and claimants can also provide a percentage of the evaluation sought if applicable. However, VA would consider this form complete if the claimant provides biographical information, the specific issue(s), and the claimant's signature. It would not be necessary for a claimant to describe the area of disagreement or percentage of the evaluation sought for each issue in order for VA to consider the form complete. Once VA receives the complete NOD, it will make the appropriate readjudication determinations necessary for those specific issues listed such as determining whether the correct evaluation percentage or effective date was assigned or if other benefits should have been granted based on the evidence. However, we believe it is valuable for the form to solicit information pertaining to the specific nature of the disagreement, even if claimants can complete the form by providing less information. We note that claimants will facilitate the timely consideration of their appeals if they provide VA with as much information as possible regarding the nature of their disagreement as early in the process as possible.

One commenter asked if a veteran indicates a particular effective date on a standard form, but the correct date is earlier, which date VA would grant. In the clean hypothetical situation posited by the commenter, the answer is that VA would grant the correct date. Again, the requirement to use a standard form to initiate the appeal, even a form that solicits particular information in order to facilitate accurate and efficient consideration of the claim, does not alter the scope of VA's "development

and review" action required by 38 U.S.C. 7105(d).

*E. Timeframe To Cure Incomplete NOD*

In revised and redesignated § 19.24(b)(3), VA states that incomplete forms must be completed within 60 days from the date of VA's request for clarification, or the remainder of the period in which to initiate an appeal of the AOJ decision, whichever is later. VA provides this 60-day grace period in order to protect the claimant's rights in the event the statutory deadline has passed when VA determines the claimant has filed an incomplete form. Given that submission of the correct form would clearly identify to AOJ personnel that a claimant wishes to pursue an appeal, VA would accept the incomplete form for purposes of determining whether a claimant has met the statutory deadline. However, the claimant must complete the form within the 60-day timeframe. This time requirement would correspond to the current 60-day period provided in 38 CFR 19.26(c) for clarification of an ambiguous NOD filed under the traditional process.

In § 19.24(b)(4), VA states that if no completed form is received within the timeframe established in paragraph (b)(3), the decision of the AOJ shall become final.

Some commenters stated that incomplete NODs that are not cured within 60 days would mean the veteran would forfeit the right to appeal. As proposed § 19.24(b)(2) clearly stated, "[i]f VA requests clarification of an incomplete form, a complete form must be received within 60 days from the date of the request, or the remainder of the period in which to initiate an appeal of the decision of the [AOJ], whichever is later." Accordingly, the veteran does not forfeit the right to appeal so long as a complete form is submitted within the statutory one-year period in which to submit an NOD, or within the 60-day "grace" period, whichever provides the veteran with more time to cure the deficiency. The regulatory language makes clear to provide that the issues or contentions enumerated in incomplete forms will become final if they are not cured within the 60-day period or within the statutory one-year period for submitting an NOD. In order to address commenters' concerns that VA will deem a form incomplete without providing any notice to the veteran, we have also revised § 19.24(b)(1) to make clear that the requirement to cure or correct the filing of an incomplete form by filing a completed version of the correct form does not arise unless VA informs the claimant or his or her

representative that the form is incomplete and requests clarification. VA will not spend its limited resources by undertaking this cycle of clarifying activity unless it is necessary to the orderly processing and adjudication of the appeal. We also note that § 19.24(b) as proposed referenced the ''verification'' of an incomplete form. We have replaced ''verification'' with ''clarification'' in the relevant portion of § 19.24(b)(1) as organized in this final rule.

In § 19.24(b)(5), VA provides that if the completed form arrives within the timeframe established in paragraph (b)(3), VA will treat the completed form as the NOD and will reexamine the claim to determine whether additional review or development is warranted. Furthermore, if no further review or development is required, VA will prepare a Statement of the Case pursuant to § 19.29 of this part unless the disagreement is resolved by a grant of the benefit(s) sought on appeal or the NOD is withdrawn by the claimant.

VA initially proposed in § 19.24(b)(5) that if a form is so incomplete that the claimant to whom it pertains is unidentifiable, VA would not take action on the basis of the submission of that form and the form would be discarded. Moreover, VA proposed that it would always attempt to identify the claimant to whom the form pertains based on any statements or other information provided before discarding the form. However, this proposed provision has been deleted as such instances are rare. Even though this scenario is so rare that VA does not view it as necessary to include in regulations, VA will always attempt to identify the claimant to whom any form pertains based on all available context and information.

In paragraph (c) of § 19.24 of this final rule, VA provides that if a form enumerates some, but not all, of the issues or conditions which were the subject of the AOJ decision, the form would be considered complete with respect to the issues on appeal. Furthermore, VA clarifies that any issues or medical conditions not enumerated would not be considered appealed on the basis of the filing of that form and that those unnamed issues would become final 1 year after the date of the mailing of the notice of the decision unless the claimant files a separate form addressing those issues or conditions within the timeframe set forth in paragraph (b)(3) of this section. This does not prevent the claimant from appealing those issues or contentions not named in the form or from filing a subsequent form initiating appeals of

other issues within the AOJ decision. VA has added this clarification to the final rule in this paragraph (c) as the proposed rule did not specifically state that a claimant would retain the ability to appeal other unnamed issues or contentions within the timeframe allowed by current § 19.26(c).

*F. Other Regulations*

To ensure other regulatory sections that discuss NODs are consistent with these changes, VA also adopts the minor revisions in this final rule to a few other sections. Specifically, VA revises § 3.2600, which discusses optional *de novo* review procedures at the AOJ after an NOD is filed, to cross reference the format and timeliness requirements of § 20.201, and either § 20.302(a) or § 20.501(a), as applicable, in the first sentence of paragraph (a). VA also revises § 20.3(c), which currently defines an appellant as ''a claimant who has initiated an appeal to the Board of Veterans' Appeals by filing a Notice of Disagreement pursuant to the provisions of 38 U.S.C. 7105.'' Since 38 U.S.C. 7105 only requires that an NOD be submitted in writing, VA revises 38 CFR 20.3(c) to cross reference the format requirements in § 20.201, and the timeliness requirements of either § 20.302(a) or § 20.501(a), as applicable. VA believes this revision would ensure that there is no confusion regarding what requirements a claimant must follow to submit a valid NOD. Similarly, § 20.200 currently provides, in part, that an appeal includes ''a timely filed Notice of Disagreement in writing.'' VA revises § 20.200 to replace ''in writing'' with cross references to § 20.201, and either § 20.302(a) or § 20.501(a), as applicable.

Effective Date of Final Rule

In order to accommodate the changes to VA's claims and appeals processes, VA estimates that it will need 6 months, or approximately 180 days, to prepare for and implement this final rule. This 180-day period provides time for VA to conduct outreach efforts to inform and educate veterans, claimants, their family members, authorized representatives, and other stakeholders, to train and educate VA staff on the more standardized process, and to implement changes to VA's internal, operational business programs. As such, this final rule will apply only with respect to claims and appeals filed 180 days after the date this rule is published in the **Federal Register** as a final rule. Claims and appeals pending under the current regulations as of that date would continue to be governed by the current regulations.

Paperwork Reduction Act

The Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)) requires that VA consider the impact of paperwork and other information collection burdens imposed on the public. According to the 1995 amendments to the Paperwork Reduction Act (5 CFR 1320.8(b)(2)(vi)), an agency may not collect or sponsor the collection of information, nor may it impose an information collection requirement, unless it displays a currently valid Office of Management and Budget (OMB) control number. This final rule includes provisions constituting collections of information under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 through 3521) that require approval by OMB.

*I. Changes to the Scope of Currently Approved OMB Information Collections*

As part of the proposed rule, RIN 2900–AO81, VA previously solicited comments on the collections of information contained in this section. As noted in the proposed rule, this final rule will impose amended information collection requirements in 38 CFR 3.154, 3.155, 3.812, and 20.201 which are described immediately following this paragraph, under their respective titles. As required by the Paperwork Reduction Act of 1995 (at 44 U.S.C. 3507(d)), VA has submitted these information collection amendments to OMB for its review. Notice of OMB approval for this information collection will be published in a future **Federal Register** document.

*Title:* Standard Claims and Appeals Forms.

*Summary of collection of information:* The Department of Veterans Affairs (VA) through its Veterans Benefits Administration (VBA) administers an integrated program of benefits and services, established by law, for veterans, service personnel, and their dependents and/or beneficiaries. Title 38 U.S.C. 5101(a) provides that a specific claim in the form provided by the Secretary must be filed in order for benefits to be paid to any individual under the laws administered by the Secretary. The amended collection of information in final 38 CFR 3.154, 3.155, 3.403, 3.660, 3.665, 3.666, 3.701, 3.812, and 20.201 would require claimants to submit VA prescribed applications in either paper or electronic submission of responses, where applicable, in order to initiate the claims or appeals process for all VA benefits, to include but not limited to: Entitlement under 38 U.S.C. 1151, which governs disability compensation and death benefits for a qualifying

disability or death of a veteran from VA treatment, examination or vocational rehabilitation; disability compensation; non-service connected pension; and dependency and indemnity compensation (DIC), death pension, and accrued benefits. In addition, under this rulemaking, we would require claimants to submit a standard form to initiate an appeal. Information is requested by this form under the authority of 38 U.S.C. 7105.

*Description of need for information and proposed use of information:* There is no substantive change in the need for information and proposed use of information collected for the following affected OMB-approved Control Numbers:

• 2900–0791 (VA Form 21–0958)— This form will be used by claimants to indicate a disagreement with a decision issued by a Regional Office to initiate an appeal.

• 2900–0001 (VA Form 21–526 and 21–526b)—These forms are used to gather the necessary information to determine a veteran's eligibility, dependency, and income, as applicable, for the compensation and/or pension benefit sought without which information would prevent a determination of entitlement;

• 2900–0743 (VA Form 21–526c)— This form is used to gather necessary information from service members filing claims under the Benefits Delivery at Discharge or Quick Start programs under Title 38 U.S.C. 5101(a) used in a joint effort between VA and Department of Defense (DoD) for the expeditious process of determining entitlement to compensation disability benefits;

• 2900–0002 (VA Form 21–527)— This form is used to gather the necessary information to determine a veteran's eligibility and dependency, as applicable, for disability pension sought without which information would prevent a determination of entitlement;

• 2900–0004 (VA Form 21–534)— This form is used to gather necessary information to determine the eligibility of surviving spouses and children for dependency and indemnity compensation (DIC), death pension, accrued benefits and death compensation;

• 2900–0004 (VA Form 21–534a)— This form is used to gather necessary information to determine the eligibility of surviving spouses and children of veterans who died while on active duty service for DIC, death pension, accrued benefits, and death compensation;

• 2900–0005 (VA Form 21–535)— This form is used to gather necessary information to determine a parent's eligibility, dependency and income, as applicable, for the death benefit sought; and

• 2900–0747 (VA Forms 21–526EZ, 21–527EZ, and 21–534EZ)—These forms are used to gather the necessary information to determine a veteran's eligibility, dependency, and income, as applicable, for the compensation and/or pension and disability pension and to determine the eligibility of surviving spouses, children and parents for dependency and indemnity compensation (DIC), death pension, accrued benefits and death compensation as well as other benefits.

• 2900–0572 (VA Form 21–0304)— This form is used to gather the necessary information to determine eligibility for the monetary allowance and the appropriate level of payment for a child with spina bifida who is the natural child of a veteran who served in the Republic of Vietnam during the Vietnam era and for a child with certain birth defects who is the natural child of a female veteran who served in the Republic of Vietnam during the Vietnam era.

• 2900–0721 (VA Form 21–2680)— This form is used to gather the necessary information to determine eligibility for the aid and attendance and/or household benefit.

• 2900–0067 (VA Form 21–4502)— This form is used to gather the necessary information to determine if a veteran or serviceperson is entitled to an automobile allowance and adaptive equipment.

• 2900–0390 (VA Form 21–8924)— This form is used to gather the necessary information to determine if the application meets the Restored Entitlement Program for Survivors (REPS) program which pays VA benefits to certain surviving spouses and children of veterans who died in service prior to August 13, 1981 or who died as a result of a service-connected disability incurred or aggravated prior to August 13, 1981.

• 2900–0404 (VA Form 21–8940)— This form is used to gather the necessary information to determine whether individual unemployability benefits may be paid to a veteran who has a service-connected disability(ies) which result in an inability to secure or follow substantially gainful occupation.

• 2900–0132 (VA Form 26–4555)— This form is used to gather the necessary information to determine the eligibility for the Specially Adapted Housing (SAH) or Special Housing Adaptations (SHA) benefits for disabled veterans or servicemembers.

*Description of likely respondents:* There is no substantive change in the description of likely respondents for the

following affected OMB-approved Control Numbers:

• 2900–0791 (VA Form 21–0958)— Veterans or claimants who indicate disagreement with a decision issued by a Regional Office (RO) will use VA Form 21–0958 in order to initiate the appeals process. The veteran or claimant may or may not continue with an appeal to the Board of Veterans Appeals (BVA). If the veteran or claimant opts to continue to BVA for an appeal, this form will be included in the claim folder as evidence.

• 2900–0001 (VA Form 21–526 and 21–526b)—Veterans or claimants who express an intent to file for disability compensation and/or pension benefit may continue to use VA Form 21–526. Veterans or claimants who express an intent to file for disability compensation for an increased evaluation, service connection for a new disability, reopening of a previously denied disability, or for a disability secondary to an existing service connected disability or for other ancillary benefits such as aid and attendance, automobile allowance, spousal aid and attendance, or other benefit may continue to use VA Form 21–526b.

• 2900–0743 (VA Form 21–526c)— Service members filing claims under the Benefits Delivery at Discharge or Quick Start programs under Title 38 U.S.C. 5101(a) may continue to use VA Form 21–526c for disability compensation benefits.

• 2900–0002 (VA Form 21–527)— Veterans who are reapplying for VA pension benefits or previously applied for VA compensation benefits and are now applying for VA pension benefits may continue to use VA Form 21–527.

• 2900–0004 (VA Form 21–534 and 21–534a)—Claimants such as surviving spouses and children filing for dependency and indemnity compensation (DIC), death pension, accrued benefits, and death compensation claims may continue to use VA Form 21–534. Military Casualty Assistance Officers who are assisting surviving spouses and children in filing claims for death benefits may continue to use VA Form 21–534a.

• 2900–0005 (VA Form 21–535)— Claimants who are filing for benefits subsequent to the death of the veteran may continue to use VA Form 21–535.

• 2900–0747 (VA Forms 21–526EZ, 21–527EZ, and 21–534EZ)—Veterans or claimants who are filing for disability compensation, pension, dependency and indemnity compensation, death pension, accrued benefits and death compensation claims and other benefits such an ancillary benefit claims and entitlement to 38 U.S.C. 1151 benefits

that filed for processing in both the traditional claims system or in the expedited claims processing system known as the Fully Developed Claims program may continue to use VA Form 21–526EZ for disability compensation; VA Form 21–527EZ for non-service connected pension benefits; and VA Form 21–534EZ for dependency and indemnity compensation, death pension, and/or accrued benefits.

• 2900–0572 (VA Form 21–0304)— Claimants who are filing for the monetary allowance and payment for a child with spina bifida who is the natural child of a veteran who served in the Republic of Vietnam during the Vietnam era and for a child with certain birth defects who is the natural child of a female veteran who served in the Republic of Vietnam during the Vietnam era may continue to use VA Form 21–0304.

• 2900–0721 (VA Form 21–2680)— Claimants who are filing for eligibility for the aid and attendance and/or household benefit may continue to use VA Form 21–2680.

• 2900–0067 (VA Form 21–4502)— Veterans or servicepersons who are filing for entitlement to an automobile allowance and adaptive equipment may continue to use VA Form 21–4502.

• 2900–0390 (VA Form 21–8924)— Certain surviving spouses and children of veterans who died in service prior to August 13, 1981 or who died as a result of a service-connected disability incurred or aggravated prior to August 13, 1981 under the Restored Entitlement Program for Survivors (REPS) program may continue to use VA Form 21–8924.

• 2900–0404 (VA Form 21–8940)— Claimants who file for individual unemployability benefits for service-connected disability(ies) which result in an inability to secure or follow substantially gainful occupation may continue to use VA Form 21–8940.

• 2900–0132 (VA Form 26–4555)— Disabled veterans or servicemembers who file for Specially Adapted Housing (SAH) or Special Housing Adaptations (SHA) benefits may continue to use VA Form 26–4555.

*Estimated frequency of responses:*

• 2900–0791 (VA Form 21–0958)— One time for most claimants; however, the frequency of responses is also dependent on the number of appeals submitted on this form by the claimant as VA does not limit the number of appeals that a claimant can submit.

• 2900–0001 (VA Form 21–526 and 21–526b)—One time for most beneficiaries; however, the frequency of responses is also dependent on the number of claims submitted on this form by the claimant as VA does not

limit the number of claims that a claimant can submit.

• 2900–0743 (VA Form 21–526c)— One time for most beneficiaries; however, the frequency of responses is also dependent on the number of claims submitted on this form by the claimant as VA does not limit the number of claims that a claimant can submit.

• 2900–0002 (VA Form 21–527)— One time for most beneficiaries; however, the frequency of responses is also dependent on the number of claims submitted on this form by the claimant as VA does not limit the number of claims that a claimant can submit.

• 2900–0004 (VA Form 21–534 and 21–534a)—One time for most beneficiaries.

• 2900–0005 (VA Form 21–535)— One time for most beneficiaries.

• 2900–0747 (VA Forms 21–526EZ, 21–527EZ, and 21–534EZ)—One time for most beneficiaries; however, the frequency of responses is also dependent on the number of claims submitted on this form by the claimant as VA does not limit the number of claims that a claimant can submit.

• 2900–0572 (VA Form 21–0304)— One time for most beneficiaries.

• 2900–0721 (VA Form 21–2680)— One time for most beneficiaries.

• 2900–0067 (VA Form 21–4502)— One time for most beneficiaries.

• 2900–0390 (VA Form 21–8924)— One time for most beneficiaries.

• 2900–0404 (VA Form 21–8940)— One time for most beneficiaries.

• 2900–0132 (VA Form 26–4555)— One time for most beneficiaries.

*Estimated average burden per response:* There is no substantive change in the estimated average burden per response for the following affected OMB-approved Control Numbers:

• 2900–0791 (VA Form 21–0958)—30 minutes.

• 2900–0001 (VA Form 21–526 and 21–526b)—VA Form 21–526—1 hour; and VA Form 21–526b—15 minutes; and VA Form 21–4142—5 minutes.

• 2900–0743 (VA Form 21–526c)—15 minutes.

• 2900–0002 (VA Form 21–527)—1 hour.

• 2900–0004 (VA Form 21–534 and 21–534a)—VA Form 21–534—1 hour and 15 minutes and VA Form 534a—15 minutes.

• 2900–0005 (VA Form 21–535)—1 hour and 12 minutes.

• 2900–0747 (VA Forms 21–526EZ, 21–527EZ, and 21–534EZ)—VA Form 21–526EZ—25 minutes; VA Form 21–527EZ—25 minutes; and VA Form 21–534EZ—25 minutes.

• 2900–0572 (VA Form 21–0304)—10 minutes.

• 2900–0721 (VA Form 21–2680)—30 minutes.

• 2900–0067 (VA Form 21–4502)—15 minutes.

• 2900–0390 (VA Form 21–8924)—20 minutes.

• 2900–0404 (VA Form 21–8940)—45 minutes.

• 2900–0132 (VA Form 26–4555)—10 minutes.

*Estimated number of respondents:* VA anticipates the annual estimated numbers of respondents for each of the OMB-approved forms as follows:

• 2900–0791 (VA Form 21–0958)— 144,000 per year as previously estimated in ICR Reference No. 201206– 2900–001 and as published in the **Federal Register**, 77 FR 42556 on July 19, 2012 and 77 FR 60027 on October 1, 2012.

• 2900–0001 (VA Form 21–526 and 21–526b)—304,325 per year, based on 5-year estimated average of formal and informal initial compensation and pension claims received annually at 83,855 and formal and informal new or reopened compensation claims received annually at 217,178, in addition to the historically reported annual estimated number of responses for VA Form 21– 4142 at 3,292.

• 2900–0743 (VA Form 21–526c)— 161,000 per year as previously estimated in ICR Reference No. 201209– 2900–010 and as published in the **Federal Register**, 77 FR 190, on October 1, 2012 and 77 FR 240 on December 13, 2012.

• 2900–0002 (VA Form 21–527)— 17,111 per year, based on a 5-year estimated average of 12,253 reopened pension claims received on VA Form 21–527 in addition to an estimated number of 4,858 expected to be received for informal reopened pension claims.

• 2900–0004 (VA Form 21–534 and 21–534a)—33,864 per year, based on a 5-year estimated average of 32,438 formal and informal death benefits claims filed by surviving spouses/child in addition to a 5-year estimated number of 1,426 formal and informal death benefits claims filed by surviving spouses/child for in-service death.

• 2900–0005 (VA Form 21–535)— 1,783 per year, based on a 5-year estimated average of 1,046 formal death benefits filed by parents in addition to an expected estimated number of informal death benefit claims at 737.

• 2900–0747 (VA Forms 21–526EZ, 21–527EZ, and 21–534EZ)—1,048,652 per year, based on: (a) An estimated number of both formal and informal— initial, new, reopened compensation claims at 835,910; plus (b) an estimated number of both formal and informal pension claims at 101,086; (c) an

estimated number of both formal and informal death benefit claims at 111,656, all of which total 1,048,652.

VA expanded a modified version of a pilot study, known as the Express Claim Program, for which VA Forms 21–526EZ and 21–527EZ were used. Therefore, the number of claimants expected to respond was estimated at 104,440. These EZ forms contain the section 5103 notification for disability, pension, and now death benefits in paper and electronic format. The electronic application uses the EZ form in its question prompts and generates this form upon completion of the interview process.

While this rule does not attach unique effective date consequences to utilizing the electronic claim process, as the proposed rule would have, VA still expects a substantial increase in the number of respondents for this particular Control Number. As one commenter pointed out, the fact that VA is able to decide a claim more quickly when the claimant files an electronic application form provides claimants an incentive to utilize the electronic process. Additionally, the intent to file a claim process that we establish in this final rule will greatly increase the role of standard application forms because VA will provide claimants with the required standard application form upon receiving an intent to file a claim. VA will typically provide EZ forms in this purpose. This intent to file a claim process will apply to types of claims for which no standard form of any kind is currently required, such as claims governed by current § 3.155(c).

• 2900–0572 (VA Form 21–0304)— 430 per year.

• 2900–0721 (VA Form 21–2680)— 14,000 per year.

• 2900–0067 (VA Form 21–4502)— 1,552 per year.

• 2900–0390 (VA Form 21–8924)— 1,800 per year.

• 2900–0404 (VA Form 21–8940)— 24,000 per year.

• 2900–0132 (VA Form 26–4555)— 4,158 per year.

OMB Control Numbers 2900–0572, 2900–0721, 2900–0067, 2900–0390, 2900–0404, and 2900–0132 are collections of information for particular benefits such as automobile allowance, housing adaptation, individual unemployability, etc., which are currently required by the VA in order for these claims to be processed and adjudicated. Since VA requires these forms to be submitted for filing of a particular benefit, VA does not expect an increase in the annual likely number of respondents. In addition, VA is not changing the substance of the collection of information on these OMB-approved collections of information nor is it increasing the respondent burden. We are including these collections of information in this rulemaking because it is relevant to the rulemaking but is not directly altered by it.

*Estimated total annual reporting and recordkeeping burden:*

• 2900–0791 (VA Form 21–0958)— Annual burden continues to be 72,000 hours. The total estimated cost to respondents continues to be $1,080,000 (72,000 hours x $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0001 (VA Form 21–526 and 21–526b)—For VA Form 21–526, the annual burden is 83,855 hours. The total estimated cost to respondents is $1,257,825 (83,855 hours × $15/hour). This submission does not involve any recordkeeping costs. For VA Form 21–526b, the annual burden is 54,295 hours. The total estimated cost to respondents is $81,443 (54,295 hours × $15/hour). This submission does not involve any recordkeeping costs. For VA Form 21–4142, the annual burden is 263 hours. The total estimated cost to respondents is $330 (263 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0743 (VA Form 21–526c)— Annual burden continues to be 40,250 hours. The total estimated cost to respondents continues to be $603,750 (40,250 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0002 (VA Form 21–527)— Annual burden is 17,111 hours. The total estimated cost to respondents is $256,665 (17,111 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0004 (VA Form 21–534 and 21–534a)—For VA Form 21–534, the annual burden is 40,548 hours. The total estimated cost to respondents is $608,220 (40,548 hours × $15/hour). This submission does not involve any recordkeeping costs. For VA Form 21–534a, the annual burden is 357 hours. The total estimated cost to respondents is $5,355 (3,57 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0005 (VA Form 21–535)— Annual burden is 2,140 hours. The total estimated cost to respondents is $32,100 (2,140 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0747 (VA Forms 21–526EZ, 21–527EZ, and 21–534EZ)—For VA Form 21–526EZ, the annual burden is 348,296 hours. The total estimated cost to respondents is $55,224,440 (348,296 hours × $15/hour). This submission does not involve any recordkeeping costs. For VA Form 21–527EZ, the annual burden is 42,119 hours. The total estimated cost to respondents is $631,785 (42,119 hours × $15/hour). This submission does not involve any recordkeeping costs. For VA Form 21–534EZ, the annual burden is 46,523 hours. The total estimated cost to respondents is $697,845 (46,523 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0572 (VA Form 21–0304)— Annual burden continues to be 72 hours. The total estimated cost to respondents continues to be $1,080 (72 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0721 (VA Form 21–2680)— Annual burden continues to be 7,000 hours. The total estimated cost to respondents continues to be $105,000 (7,000 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0067 (VA Form 21–4502)— Annual burden continues to be 388 hours. The total estimated cost to respondents continues to be $5,820 (388 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0390 (VA Form 21–8924)— Annual burden continues to be 600 hours. The total estimated cost to respondents to be $9,000 (600 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0404 (VA Form 21–8940)— Annual burden continues to be 18,000 hours. The total estimated cost to respondents continues to be $270,000 (18,000 hours × $15/hour). This submission does not involve any recordkeeping costs.

• 2900–0132 (VA Form 26–4555)— Annual burden continues to be 693 hours. The total estimated cost to respondents continues to be $10,395 (693 hours × $15/hour). This submission does not involve any recordkeeping costs.

This rulemaking is mandating the use of existing VA forms in the processing and adjudication of claims and appeals. These amendments to §§ 3.154, 3.155, 3.403, 3.660, 3.665, 3.666, 3.701, 3.812, and 20.201 affect the estimated annual number of respondents and consequently, the estimated total annual reporting and recordkeeping burden but do not otherwise affect the existing collections of information that have already been approved by the Office of Management and Budget (OMB). The use of information, description of likely respondents, estimated frequency of

responses, estimated average burden per response will remain unchanged for these forms. While there is no substantive change in the aforementioned collection of information for these amendments, VA foresees a change in the quantity of information collected and the total annual reporting for certain currently approved OMB control numbers on account of this rulemaking.

*VA's Collection of Data:*

Other than for original claims and certain ancillary benefits, VA historically and currently accepts claims for benefits in any format submitted, whether on a prescribed form or not. VA has never standardized the use of forms for claims or appeals processing[1]. VA maintains a record of the number of types of benefit claims received annually based on claim types such as original claims, claims for increase or to reopen a previously denied claim, claims for ancillary benefits, pension, and death benefits which have been submitted on the appropriate prescribed form. However, reliance on claim types based on the form submitted may not accurately capture the number of claims received. For instance, one claim type can be filed using more than one prescribed form and a claimant can file two types of claim such as a claim for increase and a claim to reopen on one prescribed VA form which will be categorized as one claim type received, i.e., recorded as either a claim for increase or a claim to reopen. For informal claims, VA has not quantified the number of informal claims received, but it quantifies the particular claim type filed in the informal claim such as original, increase, new, reopen, etc. As a result of this rulemaking requiring the use of prescribed forms for all claims for benefits, VA will be able to gather and collect the data quantifying the number of prescribed forms in the future which will provide VA with a more accurate account of how many respondents will respond on various VA prescribed forms.

*Electronic Claims:*

Due to the fact that there is no current data enumerating the total number of

different types of VA forms received annually, we have projected the annual number of respondents for the forms based on the estimated number of types of claims received annually over a 5-year period. We have also approximated the number of electronic claims received for compensation, pension, and death claims. Currently, VA's electronic claims processing system, i.e., eBenefits and Veterans Online Applications (VONAPP), uses VA Form 21–526EZ for disability compensation claims submitted electronically. VA is also in the process of adding other VA forms to VONAPP such as VA Form 21–527EZ and 21–534EZ (hereinafter "EZ forms" will be used to refer to VA Forms 21–526EZ, 21–527EZ, and 21–534EZ, collectively). VA also provides these EZ forms to claimants who wish to submit their claims on paper because these forms expedite the claims process by: (a) Offering the claimant a choice for either the expedited process of "Fully Developed Claims" or the traditional claims process; (b) listing more detailed questions for a variety of benefits sought in order to capture thoroughly the specifics of a claim; and (c) providing claimants with the required notice of VA's duty to assist the claimant pursuant to 38 U.S.C. 5103, which is issued at the time the claimant files a claim instead of when the VA receives the claim. The use of these EZ forms ultimately speeds up the claims process and ensures faster delivery of benefits to claimants; therefore, VA has encouraged, directed, and provided these EZ forms to claimants who wish to file benefit claims.

With the ease and efficiency of completing and filing electronic claims through VA's Web-based electronic claims application system, VA expects the number of electronic claims to increase. Additionally, VA expects the number of EZ forms to increase even in cases where the claimant opts not to use the electronic process, because VA will typically provide an EZ form in response to an intent to file a claim. Because eBenefits and VONAPP uses (and will continue to use) the EZ forms, we anticipate that the total number of annual responses received on the EZ forms electronically for all benefits will increase by at least 29 percent while the total number of annual response received on VA Forms 21–526, 21–526b, 21–527, 21–534, 21–534a, and 21–535 ("traditional forms") will decrease. Based on data from Fiscal Year (FY) October 2010 through September 2011, the number of compensation disability claims received electronically was 142,899 and the number of total

compensation disability and dependency claims received electronically was 496,851. Thus, the percentage of compensation disability electronic claims received was 29 percent. With VA's outreach and efforts to promote the electronic claims processing system and with future implementation of pension, death, and appeals electronic claims processing, VA estimates an increase of the submission of electronic claims by at least 29 percent based upon the FY 2010 through 2011 data. Since the trend is to direct claimants to submit claims on EZ forms both electronically and on paper, we approximate that 70 percent of claims will be submitted on the EZ form while 30 percent will be submitted on the traditional forms.

*Informal Claims:*

The data used in formulating the estimated number of annual responses to the various affected prescribed forms was extrapolated from data recorded for the number of types of claims received annually for FY April 2009 through April 2013. This data is not sufficiently granular to provide the number of informal claims received given that the data only depicts the number of initial, new or reopened compensation and pension claims received and the number of initial death benefit claims received. Since informal claims may or may not be submitted on a prescribed form, there is no method for accurately recording or quantifying the total number of informal claims received or inferred annually. Therefore, we approximate that for compensation, pension, and death benefits, 50 percent of each of these benefits are informal claims. Thus, based on the data of an average of claims received over a 5-year period, we expect that the total number of informal claims for compensation, pension, and death benefits that will be submitted on a prescribed form will increase by at least 50 percent.

*Notices of Disagreement:*

Previously, VA estimated that the annual number of respondents submitting the currently approved collection instrument, VA Form 21–0958, *Notice of Disagreement,* (OMB Control Number 2900–0791) would be 144,000, based on VA historically receiving 12 Notices of Disagreement per 100 completed VBA decisions, with more than 1.2 million VBA decisions in FY 2012. According to data for FY 2009 to FY 2012, the average number of Notices of Disagreement received annually was 129,539. For FY 2013, it is projected that VA will receive 126,735 Notices of Disagreement. The estimate associated with the currently approved collection was based upon the

---

[1] Currently, VA accepts any claim filed subsequent to the original, initial compensation/pension claim that is submitted in any form, i.e., informal claim to initiate the claims process. For example, a claim for increase or reopen, which currently is not required to be submitted on a prescribed form, can be established using different VA forms such as VA Form 21–526 *Veteran's Application for Compensation and/or Pension;* VA Form 21–526EZ, *Application for Disability Compensation or Related Compensation;* VA Form 21–526b, *Veteran's Supplemental Claim for Compensation;* or VA Form 21–4138, *Statement in Support of Claim.*

assumption that all notices of disagreement would be submitted on this collection instrument, though that is not necessarily the case under current rules. As a result of this rulemaking, however, the overwhelming majority of notices of disagreement would in fact be submitted on this collection instrument, since this rulemaking is requiring that all notices of disagreement be submitted on VA Form 21–0958 in cases where that form is provided. Accordingly, while VA does expect to receive many more completed Forms 21–0958, there is no expected increase in the annual number of respondents nor an increased burden on respondents from that reflected in currently approved collections.

In addition, VA is amending the instructions which accompany VA Form 21–0958 to alter the current language from ''not mandatory'' to provide that VA Form 21–0958 will be required to initiate an appeal from a decision on compensation claims. We have also provided notification to claimants that only the issues listed on VA Form 21–0958 will be considered on appeal but that the claimant retains the right to appeal unnamed issues or contentions within 1 year from the date of the decision notification letter. Moreover, we have added a separate section in the instructions to provide claimants with the criteria for a complete NOD form which conforms with the final regulatory language in § 19.24(b)(2) which enumerates the requirements for a complete NOD, namely that the form must contain: information to identify the claimant; information to identify the specific nature of the disagreement; and claimant's signature. In order to further assist claimants in submitting a complete NOD, we have provided samples for clarification of what is minimally necessary to identify the specific nature of the disagreement. We note that one of the public commenters questioned VA's motive behind inquiring whether claimants would like direct communication with the AOJ regarding the appeal. In response, we have amended the instructions to provide that claimants would have the option of being contacted by telephone in order for VA to request clarification from claimants if there was any ambiguous information which may hinder expeditious processing of the NOD. While we have amended the instructions to VA Form 21–0958 to conform to the final rule and to give notice to claimants of the requirements of the amended appeals regulations, we did not change, amend, or alter VA Form 21–0958. Therefore, we do not foresee any additional burden to the claimant in completing this form.

*Methodology for Estimated Annual Number of Respondents for Affected Forms:*

We have formulated the estimated total of annual responses for compensation, pension, and death benefit claims by increasing the expected number of total claims submitted on paper by 50 percent from data extrapolated for claims received annually over a 5-year period. We project that 30 percent of compensation, pension, and death benefit claims will be submitted on traditional forms whereas 70 percent will be submitted on EZ forms. Accordingly, VA expects a decrease in the total estimated number of annual responses for VA Forms 21–526, 21–527, 21–534, 21–534a, and 21–535 whereas the total estimated number of annual responses for VA Forms 21–526EZ, 21–527EZ, and 21–534EZ have increased substantially. The projected numbers for each affected form are provided in further detail in the above section, ''Estimated number of respondents,'' according to each OMB Control Number.

## II. New Information Collection

The information collection described in this section was not previously discussed in the proposed rule. Comments on the collection of information contained in this section should be submitted to the Office of Management and Budget, Attention: Desk Officer for the Department of Veterans Affairs, Office of Information and Regulatory Affairs, Washington, DC 20503 or emailed to *OIRA_Submission@ omb.eop.gov,* with copies sent by mail or hand delivery to the Director, Regulations Management (02REG), Department of Veterans Affairs, 810 Vermont Avenue NW., Room 1068, Washington, DC 20420; fax to (202) 273–9026; or submitted through *www.Regulations.gov.* Comments should indicate that they are submitted in response to ''RIN 2900–AO81— Standard Claims and Appeals Forms.'' Notice of OMB approval for this information collection will be published in a future **Federal Register** document.

The Department considers comments by the public on proposed collections of information in:

• Evaluation whether the proposed collections of information are necessary for the proper performance of the functions of the Department, including whether the information will have practical utility;

• Evaluating the accuracy of the Department's estimate of the burden of the proposed collections of information, including the validity of the methodology and assumptions used;

• Enhancing the quality, usefulness, and clarity of the information to be collected; and

• Minimizing the burden of the collections of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

This final rule will impose the following new information collection requirements in standardizing the current informal claim process in 38 CFR 3.155 by requiring a standard form to be used to establish a claimant's intention to file a claim for VA benefits. As required by the Paperwork Reduction Act of 1995 (44 U.S.C. 3507(d)), VA has submitted this information amendment to OMB for its review and for approval 180-days after the date this rule is published in the **Federal Register** as a final rule. On October 31, 2013, VA published in the **Federal Register** (78 FR 65490) a proposed rule to amend its adjudication regulations and rules of practice of the Board of Veterans' Appeals (Board) to standardize the claims and appeals process by requiring the use of VA forms to file a claim and to initiate an appeal. The proposed rule attempted to address the issue that current non-standard submissions from claimants including submission requiring VA to take action are not received in a standard format. Non-standard submissions from claimants meant increased time spent determining whether a claim has been filed, identifying the benefit claimed, sending letters to the claimant and awaiting a response, and requesting and awaiting a response, and requesting and awaiting receipt of evidence. These steps all significantly delay the adjudication and delivery of benefits to veterans and their families. By standardizing the claims process through the use of standard forms, VA would be able to more easily identify issues and contentions associated with claims that are filed, resulting in greater accuracy, efficiency, and speed in the processing and adjudication of claims. Therefore, the proposed rule proposed to amend VA's current adjudication regulations to standardize the claims process by eliminating the informal claim, i.e., the non-standard submission of a claimant's claim or intent to file a claim, by requiring claimants to submit a VA-prescribed form or application to apply for benefits.

While the current informal claim establishes a date of claim (in the case of an original claim, a complete application that is submitted on a standard form must be filed within 1 year of the filing of the informal claim), the proposed rule eliminated the informal claim process and established that a complete claim submitted in the standard paper form would establish the date of claim. However, for electronic claims, VA would establish the date of claim based on the date when the claimant saved an incomplete electronic application without submitting it for processing. Claimants would have 1 year to submit the completed electronic application in order to preserve the date claimant saved the application as the date of claim. The result of the proposed rule would have allowed a favorable effective date treatment for electronic claims only. The purpose of the distinction between electronic and non-electronic claim submission with regard to effective date treatment was to incentivize claimants to file electronic claims, which are processed by VA more efficiently and result in more expeditious delivery of benefits to claimants.

Based upon the concerns and issues raised by the public commenters on the proposed rule, particularly, regarding the dissimilar treatment of effective dates for electronic and non-electronic claims submissions and its impact on claimants, VA determined that modernization and standardization of the claims process could also be achieved by formalizing and standardizing the current informal claims process while retaining favorable effective date treatment for claimants filing in paper form. In response, VA revised the proposed regulation of § 3.155 in this final rule to replace the concept and term ''informal claim'' with the concept and term ''intent to file a claim for benefits.'' In revised final § 3.155, claimants can submit an intent to file a claim for benefits on the prescribed VA form designated for this purpose to establish a date of claim if the claimant files a complete claim within 1 year of submitting the intent to file a claim. VA considers the concept of the intent to file a claim for benefits in revised § 3.155 to be a logical outgrowth of VA's goal of standardizing the claims process through the use of forms as outlined in the published proposed rule. Moreover, this concept provides the most optimal solution to the concerns regarding the proposed rule that were raised by the commenters while still standardizing and modernizing the VA claims process.

In order to implement this intent to file a claim process, VA created a new form, VA Form 21–0966, *Intent to File a Claim for Compensation and/or Pension, Survivors Pension, or Other Benefits,* to be used for this purpose. This process is a reconciliation of VA's need for claims to originate on standard forms and commenters' desire for ways to establish an effective date while a complete claim on an application form is completed. Accordingly, it did not exist at the time of the publication of the proposed rule and as the new intent to file process is being codified in this final rule, VA is submitting this new collection of information specifically used for the intent to file process for OMB approval and for public comment in this final rule.

The new VA Form 21–0966 will be used to establish a date of claim if a complete claim is filed within 1 year of receipt of this form for all claims whether initial or supplemental. VA notes that a claimant can also submit an intent to file a claim for benefits by contacting VA personnel in field offices by telephone or in person. VA personnel will document the intent to file on VA Form 21–0966. A filled out form will be uploaded into VA's internal business and operational programs so that VA personnel will be able to refer to this document in order assign the appropriate effective date for any award granted. Therefore, this newly proposed VA Form 21–0966, will enable VA to document a claimant's intent to file a claim which will greatly enhance VA's standardization of the claims process through the use of VA-prescribed forms.

Claimants can also submit an intent to file a claim via electronically in VA's claims submission tool within its Web-based electronic claims application system by entering biographical data and saving the electronic application without submitting it for processing. Therefore, there is no separate electronic ''intent to file a claim'' form; the act of entering information and saving the electronic application will serve as the intent to file a claim for benefits.

*Title:* Intent to File a Claim

*Summary of collection of information:* The Department of Veterans Affairs (VA) through its Veterans Benefits Administration (VBA) administers an integrated program of benefits and services, established by law, for veterans, service personnel, and their dependents and/or beneficiaries. Title 38 U.S.C. 5101(a) provides that a specific claim in the form provided by the Secretary must be filed in order for benefits to be paid to any individual

under the laws administered by the Secretary. The amended collection of information in the final rule 38 CFR 3.155 would require claimants and/or their authorized representatives to submit a VA-prescribed form in either paper or electronic submission, where applicable, to express a claimant's intent to file a claim for benefits in order to establish an effective date placeholder for any award granted if the claimant files a complete claim within 1 year of receipt of the intent to file a claim. VA proposes to create a new form, VA Form 21–0966, *Intent to File a Claim for Compensation and/or Pension, Survivors Pension, or Other Benefits.* Claimants and their representatives can submit their intent to file a claim in three ways: (1) On paper using VA's newly created, proposed VA Form 21–0966, *Intent to File a Claim for Compensation and/or Pension, Survivors Pension, or Other Benefits;* (2) electronically through a claims submission tool within a VA Web-based electronic claims application system; or, (3) by telephone contact with designated VA personnel who will record the intent to file a claim on the proposed VA Form 21–0966, *Intent to File a Claim for Compensation and/or Pension, Survivors Pension, or Other Benefits.*

*Description of need for information and proposed use of information:* This form will be used by claimants and/or their authorized representatives to indicate an intent to file a claim for compensation and/or disability benefits to establish an effective date for an award granted in association with a complete claim filed within 1 year of such form. This form collects biographical information of the claimant such as name; Social Security Number; service number, if applicable; date of birth; gender; VA claim number, if applicable; current mailing address; forwarding address; telephone number(s); email address(es); and signature. The collection of information also requests claimants to indicate what type of claim for benefits, i.e., compensation and/or pension, the claimant intends to file. VA will use this form to identify claimants in its internal business operational systems to record the date of receipt of this document for the purposes of establishing a date of claim for a complete claim that is filed within 1 year. VA also uses the information to furnish the claimant with the appropriate VA form or application for compensation and pension benefits.

*Description of likely respondents:* Veterans, claimants, and/or authorized representatives who indicate an intent

to file a claim for disability compensation and/or pension benefits.

*Estimated frequency of responses:* One time for most beneficiaries; however, the frequency of responses is also dependent on the number of intents to file a claim submitted by the claimant. VA does not limit the number of submissions of the intent to file a claim for benefits, except that VA will accept only one intent to file a claim per complete claim filed.

*Estimated average burden per response:* VA estimates an average of 15 minutes to gather information and complete the new, proposed VA Form 21–0966, *Intent to File a Claim for Compensation, and/or Pension, Survivors Pension, or Other Benefits.*

*Estimated number of respondents:* VA anticipates the annual estimated number of respondents to be 724,561 per year, the sum of which is based on 5-year estimated average of: 41,928 formal and informal initial compensation and pension claims received annually and 108,589 formal and informal new or reopened compensation claims received annually; 6,127 formal reopened pension claims received annually and 2,429 informal reopened pension claims expected to be received annually; 16,219 formal and informal death benefits claimed filed by surviving spouses/child received annually and 713 formal and informal death benefits claims filed by surviving spouses/child for in-service death received annually; 523 formal death benefits filed by parents received annually and 737 expected informal death benefits claims filed by parents received annually; 417,955 formal and informal, initial, new, reopened compensation claims received annually plus 50,543 formal and informal pension claims received annually plus 55,828 formal and informal death benefits claims received annually; 215 claims for monetary allowance and payment for a child with spina bifida who is a natural child of a veteran having served in the Republic of Vietnam during the Vietnam era; 7,000 claims for aid and attendance and/or household benefits; 776 claims for automobile and adaptive equipment allowance; 900 claims for benefits under the Restored Entitlement Program for Survivors program; 12,000 claims for individual unemployability benefits; and 2,079 claims for Specially Adapted Housing or Special Housing Adaptation benefits.

*Estimated total annual reporting and recordkeeping burden:* The annual burden is 181,140 hours. The total estimated cost to respondents is $2,717,100 (181,140 hours × $15/hour).

This submission does not involve any recordkeeping costs.

*Methodology for Estimated Annual Number of Respondents for Proposed Collection of Information on VA Form 21–0966, Intent to File a Claim for Compensation and/or Pension Benefits:*

Using the data as reported in the proposed rule, we estimate that at least 50 percent of all claims, which would have been filed informally, will be filed in conjunction with the intent to file a claim form. Therefore, we have multiplied the expected number of total claims submitted on paper by 50 percent from data extrapolated for claims received annually over a 5-year period to calculate the estimated number of intent to claim form. An itemization of the projected numbers for an intent to file a claim form in association with each approved OMB form is provided in further detail in the above section, "Estimated number of respondents."

*VA's Collection of Data:*

Other than for original claims and certain ancillary benefits, VA historically and currently accepts claims for benefits in any format submitted, whether on a prescribed form or not. VA has never standardized the use of forms for claims or appeals processing[2]. VA maintains a record of the number of types of benefit claims received annually based on claim types such as original claims, claims for increase or to reopen a previously denied claim, claims for ancillary benefits, pension, and death benefits which have been submitted on the appropriate prescribed form. However, reliance on claim types based on the form submitted may not accurately capture the number of claims received. For instance, one claim type can be filed using more than one prescribed form and a claimant can file two types of claim such as a claim for increase and a claim to reopen on one prescribed VA form which will be categorized as one claim type received, i.e., recorded as either a claim for increase or a claim to reopen. For informal claims, VA has not quantified the number of informal claims received, but it quantifies the particular claim

[2] Currently, VA accepts any claim filed subsequent to the original, initial compensation/pension claim that is submitted in any form, i.e., informal claim to initiate the claims process. For example, a claim for increase or reopen, which currently is not required to be submitted on a prescribed form, can be established using different VA forms such as VA Form 21–526 *Veteran's Application for Compensation and/or Pension;* VA Form 21–526EZ, *Application for Disability Compensation or Related Compensation;* VA Form 21–526b, *Veteran's Supplemental Claim for Compensation;* or VA Form 21–4138, *Statement in Support of Claim.*

type filed in the informal claim such as original, increase, new, reopen, etc. As a result of this rulemaking requiring the use of prescribed forms for all claims for benefits, VA will be able to gather and collect the data quantifying the number of prescribed forms in the future which will provide VA with a more accurate account of how many respondents will respond on various VA prescribed forms.

VA is replacing "informal claims" with "intent to file a claim" and is requiring the submission of complete claim in revised § 3.155 as a placeholder for a potential earlier effective date. Since eBenefits and VONAPP uses (and will continue to use) the EZ forms, we anticipate that the total number of annual responses received on the EZ forms electronically for all benefits will increase by at least 29 percent while the total number of annual response received on VA Forms 21–526, 21–526b, 21–527, 21–534, 21–534a, and 21–535 ("traditional forms") will decrease. Based on data from Fiscal Year (FY) October 2010 through September 2011, the number of compensation disability claims received electronically was 142,899 and the number of total compensation disability and dependency claims received electronically was 496,851. Thus, the percentage of compensation disability electronic claims received was 29 percent. With VA's outreach and efforts to promote the electronic claims processing system and with future implementation of pension, death, and appeals electronic claims processing, VA estimates an increase of the submission of electronic claims by at least 29 percent based upon the FY 2010 through 2011 data. Since the trend is to direct claimants to submit claims on EZ forms both electronically and on paper, we approximate that 70 percent of claims will be submitted on the EZ form while 30 percent will be submitted on the traditional forms.

The data used in formulating the estimated number of annual responses to the various affected prescribed forms was extrapolated from data recorded for the number of types of claims received annually for FY April 2009 through April 2013. This data is not sufficiently granular to provide the number of informal claims received given that the data only depicts the number of initial, new or reopened compensation and pension claims received and the number of initial death benefit claims received. Since informal claims may or may not be submitted on a prescribed form, there is no method for accurately recording or quantifying the total number of informal claims received or inferred annually.

Therefore, we approximate that for compensation, pension, and death benefits, 50 percent of each of these benefits are informal claims. Thus, based on the data of an average of claims received over a 5-year period, we expect that the total number of informal claims for compensation, pension, and death benefits that will be submitted on a prescribed form will increase by at least 50 percent. This estimate is used to calculate the estimated expected number of intent to file a claim forms.

### Regulatory Flexibility Act

The Secretary hereby certifies that these regulatory amendments would not have a significant economic impact on a substantial number of small entities as they are defined in the Regulatory Flexibility Act, 5 U.S.C. 601–612. These amendments would not directly affect any small entities. Only VA beneficiaries and their survivors could be directly affected. Therefore, pursuant to 5 U.S.C. 605(b), these amendments are exempt from the initial and final regulatory flexibility analysis requirements of sections 603 and 604.

### Executive Orders 12866 and 13563

Executive Orders 12866 and 13563 direct agencies to assess the costs and benefits of available regulatory alternatives and, when regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, and other advantages; distributive impacts; and equity). Executive Order 13563 (Improving Regulation and Regulatory Review) emphasizes the importance of quantifying both costs and benefits, reducing costs, harmonizing rules, and promoting flexibility. Executive Order 12866 (Regulatory Planning and Review) defines a ''significant regulatory action,'' which requires review by OMB, as ''any regulatory action that is likely to result in a rule that may: (1) Have an annual effect on the economy of $100 million or more or adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities; (2) Create a serious inconsistency or otherwise interfere with an action taken or planned by another agency; (3) Materially alter the budgetary impact of entitlements, grants, user fees, or loan programs or the rights and obligations of recipients thereof; or (4) Raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in this Executive Order.''

The economic, interagency, budgetary, legal, and policy implications of this regulatory action have been examined, and it has been determined to be a significant regulatory action under Executive Order 12866.

VA's impact analysis can be found as a supporting document at *http://www.regulations.gov,* usually within 48 hours after the rulemaking document is published. Additionally, a copy of the rulemaking and its impact analysis are available on VA's Web site at *http://www1.va.gov/orpm/,* by following the link for ''VA Regulations Published.''

### Unfunded Mandates

The Unfunded Mandates Reform Act of 1995 requires, at 2 U.S.C. 1532, that agencies prepare an assessment of anticipated costs and benefits before issuing any rule that may result in an expenditure by State, local, and tribal governments, in the aggregate, or by the private sector of $100 million or more (adjusted annually for inflation) in any given year. This rule would have no such effect on State, local, and tribal governments, or on the private sector.

### Catalog of Federal Domestic Assistance Numbers and Titles

The Catalog of Federal Domestic Assistance program numbers and titles for this rule are 64.100, Automobiles and Adaptive Equipment for Certain Disabled Veterans and Members of the Armed Forces; 64.101, Burial Expenses Allowance for Veterans; 64.102, Compensation for Service-Connected Deaths for Veterans' Dependents; 64.103, Life Insurance for Veterans; 64.104, Pension for Non-Service-Connected Disability for Veterans; 64.105, Pension to Veterans Surviving Spouses, and Children; 64.106, Specially Adapted Housing for Disabled Veterans; 64.109, Veterans Compensation for Service-Connected Disability; 64.110, Veterans Dependency and Indemnity Compensation for Service-Connected Death; 64.114, Veterans Housing—Guaranteed and Insured Loans; 64.115, Veterans Information and Assistance; 64.116,Vocational Rehabilitation for Disabled Veterans; 64.117, Survivors and Dependents Educational Assistance; 64.118, Veterans Housing—Direct Loans for Certain Disabled Veterans; 64.119, Veterans Housing—Manufactured Home Loans; 64.120, Post-Vietnam Era Veterans' Educational Assistance; 64.124, All-Volunteer Force Educational Assistance; 64.125, Vocational and Educational Counseling for Servicemembers and Veterans; 64.126, Native American Veteran Direct Loan Program; 64.127, Monthly Allowance for Children of Vietnam Veterans Born with Spina Bifida; and 64.128, Vocational Training and Rehabilitation for Vietnam Veterans' Children with Spina Bifida or Other Covered Birth Defects.

### Signing Authority

The Acting Secretary of Veterans Affairs, or designee, approved this document and authorized the undersigned to sign and submit the document to the Office of the Federal Register for publication electronically as an official document of the Department of Veterans Affairs. Sloan D. Gibson, Acting Secretary, Department of Veterans Affairs, approved this document on July 30, 2014, for publication.

### List of Subjects

*38 CFR Part 3*

Administrative practice and procedure, Claims, Disability benefits, Health care, Pensions, Radioactive materials, Veterans, Vietnam.

*38 CFR Parts 19 and 20*

Administrative practice and procedure, Claims, Veterans.

Dated: September 18, 2014.

**William F. Russo,**

*Acting Director, Office of Regulation Policy & Management, Office of the General Counsel, Department of Veterans Affairs.*

For the reasons set forth in the preamble, VA amends 38 CFR parts 3, 19, and 20 as follows:

### PART 3—ADJUDICATION

### Subpart A—Pension, Compensation, and Dependency and Indemnity Compensation

■ 1. The authority citation for part 3, subpart A continues to read as follows:

**Authority:** 38 U.S.C. 501(a), unless otherwise noted.

■ 2. Revise § 3.1(p) to read as follows:

### § 3.1 Definitions.

\* \* \* \* \*

(p) *Claim* means a written communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by the Department of Veterans Affairs submitted on an application form prescribed by the Secretary.

\* \* \* \* \*

## § 3.108 [Amended]

■ 3. Amend § 3.108 by removing "formal or informal claim" and adding in its place "complete claim as set forth in § 3.160(a) or an intent to file a claim as set forth in § 3.155(b)".

■ 4. Amend § 3.109, paragraph (a)(2) by revising the first sentence to read as follows:

## § 3.109 Time limit.

\* \* \* \* \*

(a) \* \* \*

(2) The provisions of this paragraph are applicable to original initial applications, to applications for increased benefits by reason of increased disability, age, or the existence of a dependent, and to applications for reopening or resumption of payments. \* \* \*

\* \* \* \* \*

## § 3.150 [Amended]

■ 5. Amend § 3.150 by removing paragraph (c).

## § 3.151 [Amended]

■ 6. Amend § 3.151, Cross Reference, by removing "Informal claims." and adding in its place "Intent to file a claim.".

■ 7. Revise § 3.154 to read as follows:

## § 3.154 Injury due to hospital treatment, etc.

Claimants must file a complete claim on the appropriate application form prescribed by the Secretary when applying for benefits under 38 U.S.C. 1151 and 38 CFR 3.361. See §§ 3.151, 3.160(a), and 3.400(i) concerning effective dates of awards; see § 3.155(b) regarding intent to file the appropriate application form.

(Authority: 38 U.S.C. 501 and 1151.)

CROSS REFERENCE: Effective Dates. See § 3.400(i). Disability or death due to hospitalization, etc. See §§ 3.358, 3.361 and 3.800.

■ 8. Revise § 3.155 to read as follows:

## § 3.155 How to file a claim.

The following paragraphs describe the manner and methods in which a claim can be initiated and filed. The provisions of this section are applicable to all claims governed by part 3.

(a) *Request for an application for benefits.* A claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not of full age or capacity, who indicates a desire to file for benefits under the laws administered by VA, by a communication or action, to include an electronic mail that is transmitted through VA's electronic portal or otherwise, that does not meet the standards of a complete claim is considered a request for an application form for benefits under § 3.150(a). Upon receipt of such a communication or action, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the application form or form prescribed by the Secretary.

(b) *Intent to file a claim.* A claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of claimant who is not of full age or capacity may indicate a claimant's desire to file a claim for benefits by submitting an intent to file a claim to VA. An intent to file a claim must provide sufficient identifiable or biographical information to identify the claimant. Upon receipt of the intent to file a claim, VA will furnish the claimant with the appropriate application form prescribed by the Secretary. If VA receives a complete application form prescribed by the Secretary, as defined in paragraph (a) of § 3.160, appropriate to the benefit sought within 1 year of receipt of the intent to file a claim, VA will consider the complete claim filed as of the date the intent to file a claim was received.

(1) An intent to file a claim can be submitted in one of the following three ways:

(i) Saved electronic application. When an application otherwise meeting the requirements of this paragraph (b) is electronically initiated and saved in a claims-submission tool within a VA web-based electronic claims application system prior to filing of a complete claim, VA will consider that application to be an intent to file a claim.

(ii) Written intent on prescribed intent to file a claim form. The submission to an agency of original jurisdiction of a signed and dated intent to file a claim, on the form prescribed by the Secretary for that purpose, will be accepted as an intent to file a claim.

(iii) Oral intent communicated to designated VA personnel and recorded in writing. An oral statement of intent to file a claim will be accepted if it is directed to a VA employee designated to receive such a communication, the VA employee receiving this information follows the provisions set forth in § 3.217(b), and the VA employee documents the date VA received the claimant's intent to file a claim in the claimant's records.

(2) An intent to file a claim must identify the general benefit (e.g., compensation, pension), but need not identify the specific benefit claimed or any medical condition(s) on which the claim is based. To the extent a claimant provides this or other extraneous information on the designated form referenced in paragraph (b)(1)(ii) of this section that the form does not solicit, the provision of such information is of no effect other than that it is added to the file for appropriate consideration as evidence in support of a complete claim if filed. In particular, if a claimant identifies specific medical condition(s) on which the claim is based in an intent to file a claim, this extraneous information does not convert the intent to file a claim into a complete claim or a substantially complete application. Extraneous information provided in an oral communication under paragraph (b)(1)(iii) of this section is of no effect and generally will not be recorded in the record of the claimant's intent to file.

(3) Upon receipt of an intent to file a claim, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the appropriate application form prescribed by the Secretary.

(4) If an intent to file a claim is not submitted in the form required by paragraph (b)(1) of this section or a complete claim is not filed within 1 year of the receipt of the intent to file a claim, VA will not take further action unless a new claim or a new intent to file a claim is received.

(5) An intent to file a claim received from a service organization, an attorney, or agent indicating a represented claimant's intent to file a claim may not be accepted if a power of attorney was not executed at the time the communication was written. VA will only accept an oral intent to file from a service organization, an attorney, or agent if a power of attorney is of record at the time the oral communication is received by the designated VA employee.

(6) VA will not recognize more than one intent to file concurrently for the same benefit (e.g., compensation, pension). If an intent to file has not been followed by a complete claim, a subsequent intent to file regarding the same benefit received within 1 year of the prior intent to file will have no effect. If, however, VA receives an intent to file followed by a complete claim and later another intent to file for the same benefit is submitted within 1 year of the previous intent to file, VA will recognize the subsequent intent to file to establish an effective date for any award granted for the next complete claim, provided it is received within 1 year of the subsequent intent to file.

(c) *Incomplete application form.* Upon receipt of a communication indicating a belief in entitlement to benefits that is submitted on a paper application form prescribed by the Secretary that is not complete as defined in § 3.160(a) of this section, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the application form prescribed by the Secretary. If a complete claim is submitted within 1 year of receipt of such incomplete application form prescribed by the Secretary, VA will consider it as filed as of the date VA received the incomplete application form prescribed by the Secretary that did not meet the standards of a complete claim. See § 3.160(a) for Complete Claim.

(d) *Claims.* (1) *Requirement for complete claim and date of claim.* A complete claim is required for all types of claims, and will generally be considered filed as of the date it was received by VA for an evaluation or award of benefits under the laws administered by the Department of Veterans Affairs. If VA receives a complete claim within 1 year of the filing of an intent to file a claim that meets the requirements of paragraph (b) of this section, it will be considered filed as of the date of receipt of the intent to file a claim. Only one complete claim for a benefit (e.g., compensation, pension) may be associated with each intent to file a claim for that benefit, though multiple issues may be contained within a complete claim. In the event multiple complete claims for a benefit are filed within 1 year of an intent to file a claim for that benefit, only the first claim filed will be associated with the intent to file a claim. In the event that VA receives both an intent to file a claim and an incomplete application form before the complete claim as defined in § 3.160(a) is filed, the complete claim will be considered filed as of the date of receipt of whichever was filed first provided it is perfected within the necessary timeframe, but in no event will the complete claim be considered filed more than one year prior to the date of receipt of the complete claim.

(2) *Scope of claim.* Once VA receives a complete claim, VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of the adjudication decision (e.g., entitlement to 38 U.S.C. Chapter 35 Dependents' Educational Assistance benefits, entitlement to special monthly compensation under 38 CFR 3.350, entitlement to adaptive automobile allowance, etc.). The claimant may, but need not, assert entitlement to ancillary benefits at the time the complete claim is filed. VA will also consider all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits for complications of the claimed condition, including those identified by the rating criteria for that condition in 38 CFR Part 4, VA Schedule for Rating Disabilities. VA's decision on an issue within a claim implies that VA has determined that evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues addressed in that decision. VA's decision that addresses all outstanding issues enumerated in the complete claim implies that VA has determined evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues enumerated in the complete claim.

CROSS REFERENCE: Complete claim. See § 3.160(a). Effective dates. See § 3.400.

### § 3.157 [Removed]

■ 9. Remove § 3.157.

■ 10. Amend § 3.160 by removing the introductory text and revising paragraphs (a) through (e) to read as follows:

### § 3.160 Types of claims.

(a) *Complete claim.* A submission of an application form prescribed by the Secretary, whether paper or electronic, that meets the following requirements:

(1) A complete claim must provide the name of the claimant; the relationship to the veteran, if applicable; and sufficient service information for VA to verify the claimed service, if applicable.

(2) A complete claim must be signed by the claimant or a person legally authorized to sign for the claimant.

(3) A complete claim must identify the benefit sought.

(4) A description of any symptom(s) or medical condition(s) on which the benefit is based must be provided to the extent the form prescribed by the Secretary so requires; and

(5) For nonservice-connected disability or death pension and parents' dependency and indemnity compensation claims, a statement of income must be provided to the extent the form prescribed by the Secretary so requires.

(b) *Original claim.* The initial complete claim for one or more benefits on an application form prescribed by the Secretary.

(c) *Pending claim.* A claim which has not been finally adjudicated.

(d) *Finally adjudicated claim.* A claim that is adjudicated by the Department of Veterans Affairs as either allowed or disallowed is considered finally adjudicated by whichever of the following occurs first:

(1) The expiration of the period in which to file a notice of disagreement, pursuant to the provisions of § 20.302(a) or § 20.501(a) of this chapter, as applicable; or,

(2) Disposition on appellate review.

(e) *Reopened claim.* An application for a benefit received after final disallowance of an earlier claim that is subject to readjudication on the merits based on receipt of new and material evidence related to the finally adjudicated claim, or any claim based on additional evidence or a request for a personal hearing submitted more than 90 days following notification to the appellant of the certification of an appeal and transfer of applicable records to the Board of Veterans' Appeals which was not considered by the Board in its decision and was referred to the agency of original jurisdiction for consideration as provided in § 20.1304(b)(1) of this chapter.

(Authority: 38 U.S.C. 501)

\* \* \* \* \*

■ 11. Amend § 3.400 by:
■ a. Revising paragraph (o)(2); and
■ b. Adding an authority citation at the end of paragraph (o)(2).

The revision and addition to read as follows:

### § 3.400 General.

\* \* \* \* \*

(o) \* \* \*

(2) *Disability compensation.* Earliest date as of which it is factually ascertainable based on all evidence of record that an increase in disability had occurred if a complete claim or intent to file a claim is received within 1 year from such date, otherwise, date of receipt of claim. When medical records indicate an increase in a disability, receipt of such medical records may be used to establish effective date(s) for retroactive benefits based on facts found of an increase in a disability only if a complete claim or intent to file a claim for an increase is received within 1 year of the date of the report of examination, hospitalization, or medical treatment. The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established.

(Authority: 38 U.S.C. 501, 5101)

\* \* \* \* \*

### § 3.403 [Amended]

■ 12. Amend § 3.403 in paragraph (a)(3) by removing ''notice of the expected or actual birth meeting the requirements of an informal claim,'' and adding in its place ''a claim or an intent to file a claim as set forth in § 3.155(b),''.

### § 3.660 [Amended]

■ 13. Amend § 3.660 in paragraph (c) by removing ''notice constituting an informal claim'' and adding in its place ''a claim or an intent to file a claim as set forth in § 3.155(b)''.

### § 3.665 [Amended]

■ 14. Amend § 3.665 in paragraph (f) by:
■ a. Removing ''an informal claim'' and adding in its place ''a claim or intent to file a claim as set forth in § 3.155(b)''; and
■ b. Removing ''new informal claim.'' and adding in its place ''new claim or intent to file a claim as set forth in § 3.155(b).''.

### § 3.666 [Amended]

■ 15. Amend § 3.666 by:
■ a. In paragraph (a)(4), removing ''an informal claim'' and adding in its place ''a claim or intent to file a claim as set forth in § 3.155(b)'';
■ b. In paragraph (a)(4), removing ''new informal claim.'' and adding in its place ''new claim or intent to file a claim as set forth in § 3.155(b).'';
■ c. In paragraph (b)(3), removing ''an informal claim.'' and adding in its place ''a claim or intent to file a claim as set forth in § 3.155(b).''; and
■ d. In paragraph (c), removing ''(which constitutes an informal claim)''.
■ 16. Amend § 3.701 by revising paragraph (b) to read as follows:

### § 3.701 Elections of pension or compensation.

\* \* \* \* \*

(b) *Form of election.* An election must be in writing and must specify the benefit the person wishes to receive.

\* \* \* \* \*

■ 17. Amend § 3.812 by:
■ a. Revising paragraph (e).
■ b. Amending paragraph (f) in the second sentence by removing ''claim'' and adding in its place ''complete claim''.
The revision to read as follows:

### § 3.812 Special allowance payable under section 156 of Pub. L. 97–377.

\* \* \* \* \*

(e) *Claims.* Claimants must file or submit a complete claim on a paper or electronic form prescribed by the Secretary in order for VA to pay this special allowance. When VA receives an intent to file a claim or inquiries as to eligibility, VA will follow the procedures outlined in § 3.155. Otherwise, the date of receipt of the complete claim will be accepted as the date of claim for this special allowance. See §§ 3.150, 3.151, 3.155, 3.400.

\* \* \* \* \*

### Subpart D—Universal Adjudication Rules That Apply to Benefit Claims Governed by Part 3 of This Title

■ 18. The authority citation for part 3, subpart D continues to read as follows:

(Authority: 38 U.S.C. 501(a), unless otherwise noted.)

■ 19. Amend § 3.2600(a) by revising the first sentence to read as follows:

### § 3.2600 Review of benefit claims decisions.

(a) A claimant who has filed a Notice of Disagreement submitted in accordance with the provisions of § 20.201 of this chapter, and either § 20.302(a) or § 20.501(a) of this chapter, as applicable, with a decision of an agency of original jurisdiction on a benefit claim has a right to a review of that decision under this section. \* \* \*

\* \* \* \* \*

### PART 19—BOARD OF VETERANS' APPEALS: APPEALS REGULATIONS

### Subpart B—Appeals Processing by Agency of Original Jurisdiction

■ 20. The authority citation for part 19 continues to read as follows:

**Authority:** 38 U.S.C. 501(a), unless otherwise noted.

■ 21. Add new §§ 19.23 and 19.24 to subpart B to read as follows:

### § 19.23 Applicability of provisions concerning Notice of Disagreement.

(a) Appeals governed by § 20.201(a) of this chapter shall be processed in accordance with § 19.24. Sections 19.26, 19.27 and 19.28 shall not apply to appeals governed by § 20.201(a) of this chapter.

(b) Appeals governed by § 20.201(b) of this chapter shall be processed in accordance with §§ 19.26, 19.27, and 19.28.

### § 19.24 Action by agency of original jurisdiction on Notice of Disagreement required to be filed on a standardized form.

(a) *Initial action.* When a timely Notice of Disagreement in accordance with the requirements of § 20.201(a) of this chapter is filed, the agency of original jurisdiction will reexamine the claim and determine whether additional review or development is warranted.

(b) *Incomplete and complete appeal forms*—(1) *Incomplete appeal forms.* In cases governed by paragraph (a) of § 20.201 of this chapter, if VA determines a form filed by the claimant is incomplete and requests clarification, the claimant must timely file a completed version of the correct form in order to initiate an appeal. A claimant is not required to cure or correct the filing of an incomplete form by filing a completed version of the correct form unless VA informs the claimant or his or her representative that the form is incomplete and requests clarification.

(2) *Complete appeal forms.* In general, a form will be considered complete if the following information is provided:

(i) Information to identify the claimant;

(ii) The claim to which the form pertains;

(iii) Any information necessary to identify the specific nature of the disagreement if the form so requires. For compensation claims, this criterion will be met if the form enumerates the issues or conditions for which appellate review is sought, or if it provides other information required on the form to identify the claimant and the nature of the disagreement (such as disagreement with disability rating, effective date, or denial of service connection); and

(iv) The claimant's signature.

(3) *Timeframe to complete correct form.* In general, a claimant who wishes to initiate an appeal must provide a complete form within the timeframe established by § 20.302(a) of this chapter. When VA requests clarification of an incomplete form, the claimant must provide a complete form in response to VA's request for clarification within the later of the following dates:

(i) 60 days from the date of the request; or

(ii) 1 year from the date of mailing of the notice of the decision of the agency of original jurisdiction.

(4) *Failure to respond.* If the claimant fails to provide a completed form within the timeframe set forth in paragraph (b)(3) of this section, the decision of the agency of original jurisdiction will become final.

(5) *Form timely completed.* If a completed form is received within the timeframe set forth in paragraph (b)(3) of this section, VA will treat the completed form as the Notice of Disagreement and VA will reexamine the claim and determine whether additional review or development is warranted. If no further review or development is required, or after

necessary review or development is completed, VA will prepare a Statement of the Case pursuant to § 19.29 unless the disagreement is resolved by a grant of the benefit(s) sought on appeal or the NOD is withdrawn by the claimant.

(c) *Issues under appellate review.* If a form enumerates some but not all of the issues or conditions which were the subject of the decision of the agency of original jurisdiction, the form will be considered complete with respect to the issues for which appellate review is sought and identified by the claimant. Any issues or conditions not enumerated will not be considered appealed on the basis of the filing of that form and will become final unless the claimant timely files a separate form for those issues or conditions within the applicable timeframe set forth in paragraph (b)(3) of this section.

(d) *Disagreement concerning whether Notice of Disagreement has been filed.* Whether or not a claimant has timely filed a Notice of Disagreement is an appealable issue, but in such a case, appellate consideration shall be limited to the question of whether the correct form was timely filed.

## PART 20—BOARD OF VETERANS' APPEALS: RULES OF PRACTICE

■ 22. The authority citation for part 20 continues to read as follows:

**Authority:** 38 U.S.C. 501(a) and as noted in specific sections.

## Subpart A—General

■ 23. Revise § 20.3(c) to read as follows:

### § 20.3   Rule 3. Definitions.

\*     \*     \*     \*     \*

(c) *Appellant* means a claimant who has initiated an appeal to the Board of Veterans' Appeals by filing a timely Notice of Disagreement pursuant to the provisions of § 20.201, and either § 20.302(a) or § 20.501(a), as applicable.

\*     \*     \*     \*     \*

## Subpart C—Commencement and Perfection of Appeal

■ 24. Revise § 20.200 to read as follows:

### § 20.200   Rule 200. What constitutes an appeal.

An appeal consists of a timely filed Notice of Disagreement submitted in accordance with the provisions of § 20.201, and either § 20.302(a) or § 20.501(a), as applicable and, after a Statement of the Case has been furnished, a timely filed Substantive Appeal.

(Authority: 38 U.S.C. 7105)

■ 25. Revise § 20.201 to read as follows:

### § 20.201   Rule 201. Notice of Disagreement.

(a) Cases in which a form is provided by the agency of original jurisdiction for the purpose of initiating an appeal.

(1) *Format.* For every case in which the agency of original jurisdiction (AOJ) provides, in connection with its decision, a form for the purpose of initiating an appeal, a Notice of Disagreement consists of a completed and timely submitted copy of that form. VA will not accept as a notice of disagreement an expression of dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result that is submitted in any other format, including on a different VA form.

(2) *Provision of form to the claimant.* If a claimant has established an online benefits account with VA, or has designated an email address for the purpose of receiving communications from VA, VA may provide an appeal form pursuant to paragraph (a)(1) of this section electronically, whether by email, hyperlink, or other direction to the appropriate form within the claimant's online benefits account. VA may also provide a form pursuant to paragraph (a)(1) of this section in paper format.

(3) *Presumption form was provided.* This paragraph (a) applies if there is any indication whatsoever in the claimant's file or electronic account that a form was sent pursuant to paragraph (a)(1) of this section.

(4) *Specificity required by form.* If the agency of original jurisdiction gave notice that adjudicative determinations were made on several issues at the same time, the specific determinations with which the claimant disagrees must be identified to the extent a form provided pursuant to paragraph (a)(1) of this section so requires. If the claimant wishes to appeal all of the issues decided by the agency of original jurisdiction, the form must clearly indicate that intent. Issues not identified on the form will not be considered appealed.

(5) *Alternate form or other communication.* The filing of an alternate form or other communication will not extend, toll, or otherwise delay the time limit for filing a Notice of Disagreement, as provided in § 20.302(a). In particular, returning the incorrect VA form, including a form designed to appeal a different benefit does not extend, toll, or otherwise delay the time limit for filing the correct form.

(b) *Cases in which no form is provided by the agency of original jurisdiction for purpose of initiating an appeal.* A written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result will constitute a Notice of Disagreement relating to a claim for benefits in any case in which the agency of original jurisdiction does not provide a form identified as being for the purpose of initiating an appeal. The Notice of Disagreement must be in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review. If the agency of original jurisdiction gave notice that adjudicative determinations were made on several issues at the same time, the specific determinations with which the claimant disagrees must be identified.

(c) *Simultaneously contested claims.* The provisions of paragraph (b) of this section shall apply to appeals in simultaneously contested claims under §§ 20.500 and 20.501, regardless of whether a standardized form was provided with the decision of the agency of original jurisdiction.

(Authority: 38 U.S.C. 7105)

[FR Doc. 2014–22633 Filed 9–24–14; 8:45 am]

**BILLING CODE 8320–01–P**

# STATUTORY ADDENDUM
# TABLE OF CONTENTS

Page

38 U.S.C. § 5102 .............................................................................. A-1

38 U.S.C. § 5107 .............................................................................. A-2

38 U.S.C. § 5110 .............................................................................. A-4

38 C.F.R. § 2.1027 (1938) ................................................................ A-7

38 C.F.R. § 3.27 (1949) .................................................................... A-9

38 C.F.R. § 3.27 (1956) .................................................................... A-10

38 C.F.R. § 3.103 .............................................................................. A-12

38 C.F.R. § 3.1 (2014) ...................................................................... A-15

38 C.F.R. § 3.155 (2014) .................................................................. A-19

38 C.F.R. § 3.160 (2014) .................................................................. A-20

38 C.F.R. § 3.400 (2014) .................................................................. A-21

38 C.F.R. § 3.1 (2015) ...................................................................... A-25

38 C.F.R. § 3.155 (2015) .................................................................. A-30

38 C.F.R. § 3.160 (2015) .................................................................. A-33

38 C.F.R. § 3.400 (2015) .................................................................. A-35



of the authority provided in subsection (a). The Secretary shall include in the report an assessment of the effect of examinations under that authority on the cost, timeliness, and thoroughness of examinations with respect to the medical disabilities of applicants for benefits under laws administered by the Secretary.''

### PILOT PROGRAM FOR USE OF CONTRACT PHYSICIANS FOR DISABILITY EXAMINATIONS

Pub. L. 104–275, title V, § 504, Oct. 9, 1996, 110 Stat. 3341, provided that:

''(a) AUTHORITY.—The Secretary of Veterans Affairs, acting through the Under Secretary for Benefits, may conduct a pilot program under this section under which examinations with respect to medical disability of applicants for benefits under laws administered by the Secretary that are carried out through the Under Secretary for Benefits may be made by persons other than employees of the Department of Veterans Affairs. Any such examination shall be performed pursuant to contracts entered into by the Under Secretary for Benefits with those persons.

''(b) LIMITATION.—The Secretary may carry out the pilot program under this section through not more than 10 regional offices of the Department of Veterans Affairs.

''(c) SOURCE OF FUNDS.—Payments for contracts under the pilot program under this section shall be made from amounts available to the Secretary of Veterans Affairs for payment of compensation and pensions.

''(d) REPORT TO CONGRESS.—Not later than three years after the date of the enactment of this Act [Oct. 9, 1996], the Secretary shall submit to the Congress a report on the effect of the use of the authority provided by subsection (a) on the cost, timeliness, and thoroughness of medical disability examinations.''

### EXPEDITED TREATMENT OF REMANDED CLAIMS

Pub. L. 103–446, title III, § 302, Nov. 2, 1994, 108 Stat. 4658, as amended by Pub. L. 105–368, title V, § 512(c), Nov. 11, 1998, 112 Stat. 3342, provided that Secretary of Veterans Affairs was to take necessary actions to provide for expeditious treatment, by the Board of Veterans' Appeals and by regional offices of the Veterans Benefits Administration, of any claim that had been remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action, prior to repeal by Pub. L. 108–183, title VII, § 707(c), Dec. 16, 2003, 117 Stat. 2673.

### VETERANS' CLAIMS ADJUDICATION COMMISSION

Pub. L. 103–446, title IV, Nov. 2, 1994, 108 Stat. 4659, as amended by Pub. L. 104–275, title V, § 503(a), Oct. 9, 1996, 110 Stat. 3341, established Veterans' Claims Adjudication Commission which was directed to conduct comprehensive evaluation and assessment of Department of Veterans Affairs system for disposition of claims for veterans benefits and of system for delivery of such benefits, together with any related issues determined to be relevant to study, for purpose of determining means of increasing efficiency of system, means of reducing number of claims under system for which final disposition is pending, and means of enhancing ability of Department of Veterans Affairs to achieve final determination regarding claims under system in prompt and appropriate manner, and further provided for membership and powers of Commission, personnel matters, definitions and funding, and for submission of preliminary report to Secretary of Veterans Affairs and Congress not later than one year after Nov. 2, 1994, submission of final report not later than Dec. 31, 1996, and for termination of Commission 90 days after submission of final report.

## § 5102. Application forms furnished upon request; notice to claimants of incomplete applications

(a) FURNISHING FORMS.—Upon request made by any person claiming or applying for, or expressing an intent to claim or apply for, a benefit under the laws administered by the Secretary, the Secretary shall furnish such person, free of all expense, all instructions and forms necessary to apply for that benefit.

(b) INCOMPLETE APPLICATIONS.—If a claimant's application for a benefit under the laws administered by the Secretary is incomplete, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the application.

(c) TIME LIMITATION.—(1) If information that a claimant and the claimant's representative, if any, are notified under subsection (b) is necessary to complete an application is not received by the Secretary within one year from the date such notice is sent, no benefit may be paid or furnished by reason of the claimant's application.

(2) This subsection shall not apply to any application or claim for Government life insurance benefits.

(Added Pub. L. 106–475, § 3(a), Nov. 9, 2000, 114 Stat. 2096; amended Pub. L. 108–183, title VII, § 701(a), Dec. 16, 2003, 117 Stat. 2670.)

### PRIOR PROVISIONS

A prior section 5102, Pub. L. 85–857, Sept. 2, 1958, 72 Stat. 1225, § 3002; renumbered § 5102, Pub. L. 102–40, title IV, § 402(b)(1), May 7, 1991, 105 Stat. 238; Pub. L. 102–83, § 4(a)(1), (b)(1), (2)(E), Aug. 6, 1991, 105 Stat. 403–405, related to application forms, prior to repeal by Pub. L. 106–475, § 3(a), Nov. 9, 2000, 114 Stat. 2096.

Another prior section 5102 was renumbered section 8302 of this title.

### AMENDMENTS

2003—Subsec. (c). Pub. L. 108–183 added subsec. (c).

### EFFECTIVE DATE OF 2003 AMENDMENT

Pub. L. 108–183, title VII, § 701(c), Dec. 16, 2003, 117 Stat. 2670, provided that: ''The amendments made by this section [amending this section and section 5103 of this title] shall take effect as if enacted on November 9, 2000, immediately after the enactment of the Veterans Claims Assistance Act of 2000 (Public Law 106–475; 114 Stat. 2096).''

## § 5103. Notice to claimants of required information and evidence

(a) REQUIRED INFORMATION AND EVIDENCE.—(1) The Secretary shall provide to the claimant and the claimant's representative, if any, by the most effective means available, including electronic communication or notification in writing, notice of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

(2)(A) The Secretary shall prescribe in regulations requirements relating to the contents of notice to be provided under this subsection.

**A-1**

be an application for benefits under both chapter 13 of this title and title II of the Social Security Act (42 U.S.C. 401 et seq.). A copy of each such application filed with either the Secretary or the Commissioner, together with any additional information and supporting documents (or certifications thereof) which may have been received by the Secretary or the Commissioner with such application, and which may be needed by the other official in connection therewith, shall be transmitted by the Secretary or the Commissioner receiving the application to the other official. The preceding sentence shall not prevent the Secretary and the Commissioner of Social Security from requesting the applicant, or any other individual, to furnish such additional information as may be necessary for purposes of chapter 13 of this title and title II of the Social Security Act (42 U.S.C. 401 et seq.), respectively.

(Pub. L. 85–857, Sept. 2, 1958, 72 Stat. 1226, § 3005; Pub. L. 97–295, § 4(95)(A), Oct. 12, 1982, 96 Stat. 1313; Pub. L. 98–160, title VII, § 702(16), Nov. 21, 1983, 97 Stat. 1010; renumbered § 5105, Pub. L. 102–40, title IV, § 402(b)(1), May 7, 1991, 105 Stat. 238; Pub. L. 102–83, § 4(b)(9), Aug. 6, 1991, 105 Stat. 405; Pub. L. 103–296, title I, § 108(k), Aug. 15, 1994, 108 Stat. 1488; Pub. L. 112–154, title V, § 503, Aug. 6, 2012, 126 Stat. 1191.)

REFERENCES IN TEXT

The Social Security Act, referred to in text, is act Aug. 14, 1935, ch. 531, 49 Stat. 620, as amended. Title II of the Social Security Act is classified generally to subchapter II (§ 401 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see section 1305 of Title 42 and Tables.

PRIOR PROVISIONS

Prior section 5105 was renumbered section 8305 of this title.

AMENDMENTS

2012—Subsec. (a). Pub. L. 112–154, § 503(1), substituted ''may jointly'' for ''shall jointly'' and ''Such forms'' for ''Each such form''.

Subsec. (b). Pub. L. 112–154, § 503(2), substituted ''on any document indicating an intent to apply for survivor benefits'' for ''on such a form''.

1994—Subsec. (a). Pub. L. 103–296, § 108(k)(1), substituted ''Commissioner of Social Security'' for ''Secretary of Health and Human Services''.

Subsec. (b). Pub. L. 103–296, § 108(k), substituted ''Commissioner of Social Security'' for ''Secretary of Health and Human Services'' in two places and amended second sentence generally. Prior to amendment, second sentence read as follows: ''A copy of each such application filed with either Secretary, together with any additional information and supporting documents (or certifications thereof) which may have been received by that Secretary with such application, and which may be needed by the other Secretary in connection therewith, shall be transmitted by the Secretary receiving the application to the other Secretary.''

1991—Pub. L. 102–40, § 402(b)(1), renumbered section 3005 of this title as this section.

Subsec. (a). Pub. L. 102–83, § 4(b)(9)(A)–(C), substituted ''(a) The Secretary'' for ''The Administrator'' at the beginning of text and substituted ''401 et seq.).'' for ''401 et seq.); and'' in second sentence.

Subsec. (b). Pub. L. 102–83, § 4(b)(9)(D)–(J), substituted ''(b) When an application on such a form is filed with either the Secretary'' for ''when an application on such form has been filed with either the Administrator'', ''filed with either Secretary'' for ''filed with the Ad-

ministrator'', ''received by that Secretary'' for ''received by the Administrator'', ''needed by the other Secretary'' for ''needed by the Secretary'', and ''by the Secretary receiving the application to the other Secretary.'' for ''by the Administrator to the Secretary;'', struck out ''and a copy of each such application filed with the Secretary, together with any additional information and supporting documents (or certifications thereof) which may have been received by the Secretary with such form, and which may be needed by the Administrator in connection therewith, shall be transmitted by the Secretary to the Administrator.'' before ''The preceding sentence'', and substituted ''the Secretary and the Secretary of Health and Human Services'' for ''the Secretary and the Administrator''.

1983—Pub. L. 98–160 substituted ''title II of the Social Security Act (42 U.S.C. 401 et seq.)'' for ''subchapter II of chapter 7 of title 42'' wherever appearing.

1982—Pub. L. 97–295 substituted ''Health and Human Services'' for ''Health, Education, and Welfare'' wherever appearing.

EFFECTIVE DATE OF 1994 AMENDMENT

Amendment by Pub. L. 103–296 effective Mar. 31, 1995, see section 110(a) of Pub. L. 103–296, set out as a note under section 401 of Title 42, The Public Health and Welfare.

## § 5106. Furnishing of information by other agencies

The head of any Federal department or agency shall provide such information to the Secretary as the Secretary may request for purposes of determining eligibility for or amount of benefits, or verifying other information with respect thereto. The cost of providing information to the Secretary under this section shall be borne by the department or agency providing the information.

(Added Pub. L. 94–432, title IV, § 403(2), Sept. 30, 1976, 90 Stat. 1372, § 3006; amended Pub. L. 99–576, title VII, § 701(62), Oct. 28, 1986, 100 Stat. 3296; renumbered § 5106, Pub. L. 102–40, title IV, § 402(b)(1), May 7, 1991, 105 Stat. 238; Pub. L. 102–83, § 4(b)(1), (2)(E), Aug. 6, 1991, 105 Stat. 404, 405; Pub. L. 106–475, § 5, Nov. 9, 2000, 114 Stat. 2099.)

AMENDMENTS

2000—Pub. L. 106–475 inserted at end ''The cost of providing information to the Secretary under this section shall be borne by the department or agency providing the information.''

1991—Pub. L. 102–40 renumbered section 3006 of this title as this section.

Pub. L. 102–83 substituted ''Secretary'' for ''Administrator'' in two places.

1986—Pub. L. 99–576 substituted ''the Administrator'' for ''he'' before ''may request''.

EFFECTIVE DATE

Section effective Sept. 30, 1976, see section 405(a) of Pub. L. 94–432, set out as an Effective Date of 1976 Amendment note under section 1521 of this title.

## § 5107. Claimant responsibility; benefit of the doubt

(a) CLAIMANT RESPONSIBILITY.—Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary.

(b) BENEFIT OF THE DOUBT.—The Secretary shall consider all information and lay and medi-

cal evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

(Added Pub. L. 100–687, div. A, title I, § 103(a)(1), Nov. 18, 1988, 102 Stat. 4106, § 3007; renumbered § 5107 and amended Pub. L. 102–40, title IV, § 402(b)(1), (d)(1), May 7, 1991, 105 Stat. 238, 239; Pub. L. 102–83, § 4(a)(1), (3), (4), (b)(1), (2)(E), Aug. 6, 1991, 105 Stat. 403–405; Pub. L. 106–398, § 1 [[div. A], title XVI, § 1611(a)], Oct. 30, 2000, 114 Stat. 1654, 1654A–359; Pub. L. 106–419, title I, § 104(c)(2), Nov. 1, 2000, 114 Stat. 1828; Pub. L. 106–475, § 4, Nov. 9, 2000, 114 Stat. 2098.)

### AMENDMENTS

2000—Pub. L. 106–475 substituted "Claimant responsibility; benefit of the doubt" for "Burden of proof; benefit of the doubt" in section catchline and amended text generally. Prior to amendment, text read as follows:

"(a) Except when otherwise provided by the Secretary in accordance with the provisions of this title, a person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The Secretary shall assist such a claimant in developing the facts pertinent to the claim. Such assistance shall include requesting information as described in section 5106 of this title.

"(b) When, after consideration of all evidence and material of record in a case before the Department with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. Nothing in this subsection shall be construed as shifting from the claimant to the Secretary the burden specified in subsection (a) of this section."

Pub. L. 106–398, § 1 [[div. A], title XVI, § 1611(a)], directed the general amendment of the section catchline and text. Pub. L. 106–419, § 104(c)(2), provided that, as of the enactment of Pub. L. 106–419, the amendment made by Pub. L. 106–398, § 1 [[div. A], title XVI, § 1611(a)], was deemed for all purposes not to have taken effect and that Pub. L. 106–398, § 1 [[div. A], title XVI, § 1611(a)], ceased to be in effect.

1991—Pub. L. 102–40, § 402(b)(1), renumbered section 3007 of this title as this section.

Subsec. (a). Pub. L. 102–83, § 4(b)(1), (2)(E), substituted "Secretary" for "Administrator" in two places.

Pub. L. 102–83, § 4(a)(1), substituted "administered by the Secretary" for "administered by the Veterans' Administration".

Pub. L. 102–40, § 402(d)(1), substituted "5106" for "3006".

Subsec. (b). Pub. L. 102–83, § 4(b)(1), (2)(E), substituted "Secretary" for "Administrator" before "the burden".

Pub. L. 102–83, § 4(a)(3), (4), substituted "Department" for "Veterans' Administration".

Pub. L. 102–83, § 4(a)(1), substituted "administered by the Secretary" for "administered by the Veterans' Administration".

### EFFECTIVE DATE OF 2000 AMENDMENT

Pub. L. 106–475, § 7, Nov. 9, 2000, 114 Stat. 2099, provided that:

"(a) IN GENERAL.—Except as specifically provided otherwise, the provisions of section 5107 of title 38, United States Code, as amended by section 4 of this Act, apply to any claim—

"(1) filed on or after the date of the enactment of this Act [Nov. 9, 2000]; or

"(2) filed before the date of the enactment of this Act and not final as of that date.

"(b) RULE FOR CLAIMS THE DENIAL OF WHICH BECAME FINAL AFTER THE COURT OF APPEALS FOR VETERANS CLAIMS DECISION IN THE MORTON CASE.—(1) In the case of a claim for benefits denied or dismissed as described in paragraph (2), the Secretary of Veterans Affairs shall, upon the request of the claimant or on the Secretary's own motion, order the claim readjudicated under chapter 51 of such title, as amended by this Act, as if the denial or dismissal had not been made.

"(2) A denial or dismissal described in this paragraph is a denial or dismissal of a claim for a benefit under the laws administered by the Secretary of Veterans Affairs that—

"(A) became final during the period beginning on July 14, 1999, and ending on the date of the enactment of this Act; and

"(B) was issued by the Secretary of Veterans Affairs or a court because the claim was not well grounded (as that term was used in section 5107(a) of title 38, United States Code, as in effect during that period).

"(3) A claim may not be readjudicated under this subsection unless a request for readjudication is filed by the claimant, or a motion is made by the Secretary, not later than 2 years after the date of the enactment of this Act.

"(4) In the absence of a timely request of a claimant under paragraph (3), nothing in this Act [see Short Title of 2000 Amendments note set out under section 101 of this title] shall be construed as establishing a duty on the part of the Secretary of Veterans Affairs to locate and readjudicate a claim described in this subsection."

### EFFECTIVE DATE

Section effective Sept. 1, 1989, see section 401(a) of Pub. L. 100–687, set out as a note under section 7251 of this title.

## § 5108. Reopening disallowed claims

If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

(Added Pub. L. 100–687, div. A, title I, § 103(a)(1), Nov. 18, 1988, 102 Stat. 4107, § 3008; renumbered § 5108, Pub. L. 102–40, title IV, § 402(b)(1), May 7, 1991, 105 Stat. 238; Pub. L. 102–83, § 4(b)(1), (2)(E), Aug. 6, 1991, 105 Stat. 404, 405.)

### AMENDMENTS

1991—Pub. L. 102–40 renumbered section 3008 of this title as this section.

Pub. L. 102–83 substituted "Secretary" for "Administrator".

### EFFECTIVE DATE

Section effective Sept. 1, 1989, see section 401(a) of Pub. L. 100–687, set out as a note under section 7251 of this title.

## § 5109. Independent medical opinions

(a) When, in the judgment of the Secretary, expert medical opinion, in addition to that available within the Department, is warranted by the medical complexity or controversy involved in a case being considered by the Department, the Secretary may secure an advisory medical opinion from one or more independent medical experts who are not employees of the Department.

(b) The Secretary shall make necessary arrangements with recognized medical schools,



universities, or clinics to furnish such advisory medical opinions. Any such arrangement shall provide that the actual selection of the expert or experts to give the advisory opinion in an individual case shall be made by an appropriate official of such institution.

(c) The Secretary shall furnish a claimant with notice that an advisory medical opinion has been requested under this section with respect to the claimant's case and shall furnish the claimant with a copy of such opinion when it is received by the Secretary.

(Added Pub. L. 100–687, div. A, title I, §103(a)(1), Nov. 18, 1988, 102 Stat. 4107, §3009; renumbered §5109, Pub. L. 102–40, title IV, §402(b)(1), May 7, 1991, 105 Stat. 238; Pub. L. 102–83, §4(a)(3), (4), (b)(1), (2)(E), Aug. 6, 1991, 105 Stat. 404, 405.)

### AMENDMENTS

1991—Pub. L. 102–40 renumbered section 3009 of this title as this section.

Subsec. (a). Pub. L. 102–83, §4(b)(1), (2)(E), substituted ''Secretary'' for ''Administrator'' in two places.

Pub. L. 102–83, §4(a)(3), (4), substituted ''Department'' for ''Veterans' Administration'' wherever appearing.

Subsecs. (b), (c). Pub. L. 102–83, §4(b)(1), (2)(E), substituted ''Secretary'' for ''Administrator'' wherever appearing.

### EFFECTIVE DATE

Section effective Sept. 1, 1989, see section 401(a) of Pub. L. 100–687, set out as a note under section 7251 of this title.

## § 5109A. Revision of decisions on grounds of clear and unmistakable error

(a) A decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised.

(b) For the purposes of authorizing benefits, a rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision.

(c) Review to determine whether clear and unmistakable error exists in a case may be instituted by the Secretary on the Secretary's own motion or upon request of the claimant.

(d) A request for revision of a decision of the Secretary based on clear and unmistakable error may be made at any time after that decision is made.

(e) Such a request shall be submitted to the Secretary and shall be decided in the same manner as any other claim.

(Added Pub. L. 105–111, §1(a)(1), Nov. 21, 1997, 111 Stat. 2271.)

### EFFECTIVE DATE

Pub. L. 105–111, §1(c)(1), Nov. 21, 1997, 111 Stat. 2272, provided that: ''Sections 5109A and 7111 of title 38, United States Code, as added by this section, apply to any determination made before, on, or after the date of the enactment of this Act [Nov. 21, 1997].''

## § 5109B. Expedited treatment of remanded claims

The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the appropriate regional office of the Veterans Benefits Administration of any claim that is remanded to a regional office of the Veterans Benefits Administration by the Board of Veterans' Appeals.

(Added Pub. L. 108–183, title VII, §707(a)(1), Dec. 16, 2003, 117 Stat. 2672.)

### SUBCHAPTER II—EFFECTIVE DATES

## § 5110. Effective dates of awards

(a) Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

(b)(1) The effective date of an award of disability compensation to a veteran shall be the day following the date of the veteran's discharge or release if application therefor is received within one year from such date of discharge or release.

(2)(A) The effective date of an award of disability compensation to a veteran who submits an application therefor that sets forth an original claim that is fully-developed (as determined by the Secretary) as of the date of submittal shall be fixed in accordance with the facts found, but shall not be earlier than the date that is one year before the date of receipt of the application.

(B) For purposes of this paragraph, an original claim is an initial claim filed by a veteran for disability compensation.

(C) This paragraph shall take effect on the date that is one year after the date of the enactment of the Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012 and shall not apply with respect to claims filed after the date that is three years after the date of the enactment of such Act.

(3) The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date.

(4)(A) The effective date of an award of disability pension to a veteran described in subparagraph (B) of this paragraph shall be the date of application or the date on which the veteran became permanently and totally disabled, if the veteran applies for a retroactive award within one year from such date, whichever is to the advantage of the veteran.

(B) A veteran referred to in subparagraph (A) of this paragraph is a veteran who is permanently and totally disabled and who is prevented by a disability from applying for disability pension for a period of at least 30 days beginning on the date on which the veteran became permanently and totally disabled.

(c) The effective date of an award of disability compensation by reason of section 1151 of this title shall be the date such injury or aggravation was suffered if an application therefor is received within one year from such date.

(d) The effective date of an award of death compensation, dependency and indemnity com-

pensation, or death pension for which application is received within one year from the date of death shall be the first day of the month in which the death occurred.

(e)(1) Except as provided in paragraph (2) of this subsection, the effective date of an award of dependency and indemnity compensation to a child shall be the first day of the month in which the child's entitlement arose if application therefor is received within one year from such date.

(2) In the case of a child who is eighteen years of age or over and who immediately before becoming eighteen years of age was counted under section 1311(b) of this title in determining the amount of the dependency and indemnity compensation of a surviving spouse, the effective date of an award of dependency and indemnity compensation to such child shall be the date the child attains the age of eighteen years if application therefor is received within one year from such date.

(f) An award of additional compensation on account of dependents based on the establishment of a disability rating in the percentage evaluation specified by law for the purpose shall be payable from the effective date of such rating; but only if proof of dependents is received within one year from the date of notification of such rating action.

(g) Subject to the provisions of section 5101 of this title, where compensation, dependency and indemnity compensation, or pension is awarded or increased pursuant to any Act or administrative issue, the effective date of such award or increase shall be fixed in accordance with the facts found but shall not be earlier than the effective date of the Act or administrative issue. In no event shall such award or increase be retroactive for more than one year from the date of application therefor or the date of administrative determination of entitlement, whichever is earlier.

(h) Where an award of pension has been deferred or pension has been awarded at a rate based on anticipated income for a year and the claimant later establishes that income for that year was at a rate warranting entitlement or increased entitlement, the effective date of such entitlement or increase shall be fixed in accordance with the facts found if satisfactory evidence is received before the expiration of the next calendar year.

(i) Whenever any disallowed claim is reopened and thereafter allowed on the basis of new and material evidence resulting from the correction of the military records of the proper service department under section 1552 of title 10, or the change, correction, or modification of a discharge or dismissal under section 1553 of title 10, or from other corrective action by competent authority, the effective date of commencement of the benefits so awarded shall be the date on which an application was filed for correction of the military record or for the change, modification, or correction of a discharge or dismissal, as the case may be, or the date such disallowed claim was filed, whichever date is the later, but in no event shall such award of benefits be retroactive for more than one year from the date of reopening of such disallowed claim. This sub-

section shall not apply to any application or claim for Government life insurance benefits.

(j) Where a report or a finding of death of any person in the active military, naval, or air service has been made by the Secretary concerned, the effective date of an award of death compensation, dependency and indemnity compensation, or death pension, as applicable, shall be the first day of the month fixed by that Secretary as the month of death in such report or finding, if application therefor is received within one year from the date such report or finding has been made; however, such benefits shall not be payable to any person for any period for which such person has received, or was entitled to receive, an allowance, allotment, or service pay of the deceased.

(k) The effective date of the award of benefits to a surviving spouse or of an award or increase of benefits based on recognition of a child, upon annulment of a marriage shall be the date the judicial decree of annulment becomes final if a claim therefor is filed within one year from the date the judicial decree of annulment becomes final; in all other cases the effective date shall be the date the claim is filed.

(*l*) The effective date of an award of benefits to a surviving spouse based upon a termination of a remarriage by death or divorce, or of an award or increase of benefits based on recognition of a child upon termination of the child's marriage by death or divorce, shall be the date of death or the date the judicial decree or divorce becomes final, if an application therefor is received within one year from such termination.

[(m) Repealed. Pub. L. 103–446, title XII, § 1201(i)(8), Nov. 2, 1994, 108 Stat. 4688.]

(n) The effective date of the award of any benefit or any increase therein by reason of marriage or the birth or adoption of a child shall be the date of such event if proof of such event is received by the Secretary within one year from the date of the marriage, birth, or adoption.

(Pub. L. 85–857, Sept. 2, 1958, 72 Stat. 1226, § 3010; Pub. L. 87–674, § 3, Sept. 19, 1962, 76 Stat. 558; Pub. L. 87–825, § 1, Oct. 15, 1962, 76 Stat. 948; Pub. L. 91–376, § 7, Aug. 12, 1970, 84 Stat. 790; Pub. L. 91–584, § 13, Dec. 24, 1970, 84 Stat. 1578; Pub. L. 93–177, § 6(a), Dec. 6, 1973, 87 Stat. 696; Pub. L. 93–527, § 9(b), Dec. 21, 1974, 88 Stat. 1705; Pub. L. 94–71, title I, § 104, Aug. 5, 1975, 89 Stat. 396; Pub. L. 97–66, title II, § 204(b), Oct. 17, 1981, 95 Stat. 1029; Pub. L. 98–160, title VII, § 703(1), Nov. 21, 1983, 97 Stat. 1010; Pub. L. 98–223, title II, § 213(3), Mar. 2, 1984, 98 Stat. 46; Pub. L. 98–369, div. B, title V, § 2501(a), July 18, 1984, 98 Stat. 1116; Pub. L. 99–576, title VII, § 701(63), Oct. 28, 1986, 100 Stat. 3296; renumbered § 5110 and amended Pub. L. 102–40, title IV, § 402(b)(1), (d)(1), May 7, 1991, 105 Stat. 238, 239; Pub. L. 102–83, §§ 4(a)(2)(A)(vi), (b)(4)(B), 5(c)(1), Aug. 6, 1991, 105 Stat. 403, 405, 406; Pub. L. 103–446, title XII, § 1201(i)(8), Nov. 2, 1994, 108 Stat. 4688; Pub. L. 108–454, title III, § 305, Dec. 10, 2004, 118 Stat. 3611; Pub. L. 112–154, title V, § 506, Aug. 6, 2012, 126 Stat. 1193.)

REFERENCES IN TEXT

The date of the enactment of the Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, referred to in subsec. (b)(2)(C), is the date of enactment of Pub. L. 112–154, which was approved Aug. 6, 2012.

### AMENDMENTS

2012—Subsec. (b)(2) to (4). Pub. L. 112–154 added par. (2) and redesignated former pars. (2) and (3) as (3) and (4), respectively.

2004—Subsec. (d). Pub. L. 108–454 struck out par. (1) designation after subsec. (d) designation, substituted ''death compensation, dependency and indemnity compensation, or death pension'' for ''death compensation or dependency and indemnity compensation'', and struck out par.(2) which read as follows: ''The effective date of an award of death pension for which application is received within 45 days from the date of death shall be the first day of the month in which the death occurred.''

1994—Subsec. (m). Pub. L. 103–446 struck out subsec. (m) which read as follows: ''The effective date of an award of benefits to a surviving spouse based upon termination of actions described in section 103(d)(3) of this title shall not be earlier than the date of receipt of application therefor filed after termination of such actions and after December 31, 1970.''

1991—Pub. L. 102–40, § 402(b)(1), renumbered section 3010 of this title as this section.

Subsec. (c). Pub. L. 102–83, § 5(c)(1), substituted ''1151'' for ''351''.

Subsec. (e)(2). Pub. L. 102–83, § 5(c)(1), substituted ''1311(b)'' for ''411(b)''.

Subsec. (g). Pub. L. 102–40, § 402(d)(1), substituted ''5101'' for ''3001''.

Subsec. (j). Pub. L. 102–83, § 4(b)(4)(B), substituted ''that Secretary'' for ''the Secretary'' after ''month fixed by''.

Subsec. (n). Pub. L. 102–83, § 4(a)(2)(A)(vi), substituted ''Secretary'' for ''Veterans' Administration''.

1986—Subsec. (b)(1). Pub. L. 99–576 substituted ''the veteran's'' for ''his''.

1984—Subsec. (b)(3)(A). Pub. L. 98–369, § 2501(a)(1), designated existing provisions as subpar. (A), inserted ''described in subparagraph (B) of this paragraph'' after ''to a veteran'', substituted ''the veteran applies for a retroactive award'' for ''an application therefor is received'', and added subpar. (B).

Subsec. (d). Pub. L. 98–369, § 2501(a)(2), designated existing provisions as par. (1), substituted ''dependency and indemnity compensation for which application is received'' for '', dependency and indemnity compensation, or death pension, where application is received'', and added par. (2).

Subsec. (m). Pub. L. 98–223 substituted ''section'' for ''subsection''.

1983—Subsecs. (k) to (m). Pub. L. 98–160 substituted ''surviving spouse'' for ''widow'' wherever appearing.

1981—Subsec. (e). Pub. L. 97–66 designated existing provisions as par. (1), substituted ''Except as provided in paragraph (2) of this subsection, the'' for ''The'', and added par. (2).

1975—Subsec. (b)(2), (3). Pub. L. 94–71 added par. (2) and redesignated former par. (2) as (3).

1974—Subsec. (l). Pub. L. 93–527 inserted provisions relating to an award or increase of benefits based on recognition of a child upon termination of the child's marriage by death or divorce.

1973—Subsec. (b). Pub. L. 93–177 designated existing provisions as par. (1) and added par. (2).

1970—Subsecs. (l), (m). Pub. L. 91–376 added subsecs. (l) and (m).

Subsec. (n). Pub. L. 91–584 added subsec. (n).

1962—Subsec. (a). Pub. L. 87–825 inserted ''based on an original claim, a claim reopened after final adjudication, or a claim for increase''.

Subsec. (c). Pub. L. 87–825 added subsec. (c). Former subsec. (c) redesignated (d).

Subsec. (d). Pub. L. 87–825 redesignated former subsec. (c) as (d) and substituted first day of month in which the death occurred, for the day after the day of death, as the effective date. Former subsec. (d) redesignated (e).

Subsec. (e). Pub. L. 87–825 redesignated former subsec. (d) as (e), substituted ''first day of the month'' for ''date'', and struck out ''the entitlement arose'' after ''from such date.'' Former subsec. (e) redesignated (j).

Subsec. (f). Pub. L. 87–825 added subsec. (f). A prior subsec. (f) added by Pub. L. 87–674 was redesignated (k) by Pub. L. 87–825.

Subsecs. (g) to (i). Pub. L. 87–825 added subsecs. (g) to (i).

Subsec. (j). Pub. L. 87–825 redesignated former subsec. (e) as (j), and substituted ''first day of the month'' for ''day after the date'', and ''month of death'' for ''date of death''.

Subsec. (k). Pub. L. 87–825 redesignated former subsec. (f), added by Pub. L. 87–674, as (k).

#### EFFECTIVE DATE OF 1984 AMENDMENT

Pub. L. 98–369, div. B, title V, § 2501(b), July 18, 1984, 98 Stat. 1117, provided that: ''The amendments made by subsection (a)(1) [amending this section] and the provisions of paragraph (2) of section 3010(d) [now 5110(d)] of title 38, United States Code, as added by subsection (a)(2), shall take effect with respect to applications that are first received after September 30, 1984, for benefits under chapter 15 of title 38, United States Code.''

#### EFFECTIVE DATE OF 1981 AMENDMENT

Amendment by Pub. L. 97–66 effective Oct. 1, 1981, see section 701(a) of Pub. L. 97–66, set out as a note under section 1114 of this title.

#### EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–71 effective Aug. 1, 1975, see section 301 of Pub. L. 94–71, set out as a note under section 1114 of this title.

#### EFFECTIVE DATE OF 1974 AMENDMENT

Amendment by Pub. L. 93–527 effective Jan. 1, 1975, see section 10 of Pub. L. 93–527, set out as a note under section 1521 of this title.

#### EFFECTIVE DATE OF 1973 AMENDMENT

Pub. L. 93–177, § 6(b), Dec. 6, 1973, 87 Stat. 696, provided that: ''Subsection (a) of this section [amending this section] shall apply to applications filed after its effective date [Jan. 1, 1974], but in no event shall an award made thereunder be effective prior to such effective date.''

#### EFFECTIVE DATE OF 1970 AMENDMENT

Amendment by Pub. L. 91–376 effective Jan. 1, 1971, see section 9 of Pub. L. 91–376, set out as a note under section 1114 of this title.

#### EFFECTIVE DATE OF 1962 AMENDMENT

Amendment by Pub. L. 87–825 effective first day of second calendar month which begins after Oct. 15, 1962, see section 7 of Pub. L. 87–825, set out as a note under section 110 of this title.

## § 5111. Commencement of period of payment

(a)(1) Notwithstanding section 5110 of this title or any other provision of law and except as provided in paragraph (2) and subsection (c), payment of monetary benefits based on an award or an increased award of compensation, dependency and indemnity compensation, or pension may not be made to an individual for any period before the first day of the calendar month following the month in which the award or increased award became effective as provided under section 5110 of this title or such other provision of law.

(2)(A) In the case of a veteran who is retired or separated from the active military, naval, or air service for a catastrophic disability or disabilities, payment of monetary benefits based on an

meaning of the term as used in currently approved regulations and procedure.*†

CROSS REFERENCE: For adjudication: veterans' claims, central office section, see Part 4.

**2.1023  Jurisdiction in death claims.**  Jurisdiction in the claims of veterans who die, lies exclusively in the dependents' claims service, central office.  On receipt of information of the death of a veteran any monetary benefits payable will be suspended and the file transferred immediately to the central office.*†

CROSS REFERENCE: For adjudication: dependents' claims, see Part 5.

FILING OF CLAIMS AND SUPPORTING EVIDENCE

**2.1026  Application for benefits.**  (a) A properly completed and executed Form 526, Revised May, 1935, upon receipt by the Veterans' Administration will be considered an application for all disability compensation or disability pension benefits for which the veteran may be eligible by reason of active service subsequent to April 20, 1898, and will be adjudicated under the applicable laws.

(b) A properly completed and executed Form 526 (a), Revised October, 1934, upon receipt by the Veterans' Administration will be considered an application for compensation or pension under section 31, Public, No. 141, 73d Congress (48 Stat. 526; 38 U.S.C. 501a).

(c) Applications for compensation, pension, or burial allowance shall be sworn to before a court of record, or some officer thereof having custody of its seal, or before some officer who has authority to administer oaths for general purposes, or employees of the Veterans' Administration to whom authority to administer oaths has been properly delegated, or, if the person is in the active service at the time of making application, before an officer duly authorized by the Army, Navy, Marine Corps, or Coast Guard to administer oaths for the purposes of military or naval administration.*†

CROSS REFERENCES: For execution of papers in a foreign country, see § 2.1032. For award action under section 31, Public, No. 141, 73d Congress, see § 2.1121.

**2.1027  Informal claims.**  Any communication from or action by a claimant or his duly authorized representative, which clearly indicates an intent to apply for benefits under Public, No. 2, No. 141, or No. 484, 73d Congress (48 Stat. 8, 518ff, 1281), as amended by Public, No. 844, 74th Congress (49 Stat. 2031), may be considered an informal claim for compensation or pension, or an informal claim under section 31, Public, No. 141, 73d Congress.  The formal application in such instances, if submitted within a reasonable time will be considered filed as of the date of receipt of the informal claim by the Veterans' Administration.  However, a communication received from a service organization, pension attorney, or pension agent may not be accepted as an informal claim, if a power of attorney was not executed at the time the communication was written.  In cases not covered by this section, where the probability of an informal claim appears to be indicated, but the facts are too obscure or complicated for determination, the file will be referred

to the director of the service concerned for decision upon the facts in the particular case.*†

**2.1028  Abandoned claims.**  In an original claim or a claim for increase in which no response has been made within 1 year after the request for the evidence or order for physical examination by the Veterans' Administration, the claimant's failure or disregard will constitute abandonment of the claim and sufficient grounds for its rejection.  After the expiration of 1 year, further action may not be taken unless a new application is received.  Should the claim be finally established, pension or compensation shall commence from the date of filing the new application.*†  (Sec. 9, 48 Stat. 10; 38 U.S.C. 709)

REQUIREMENTS FOR SUBMISSION OF EVIDENCE

**2.1030  Written and oral testimony to be under oath; administration of oaths by employees.**  (a) All written testimony, whether lay or medical, submitted by or in behalf of a claimant in support of service connection, as proof that the claimant is entitled to such benefits will be submitted under oath.  Claimants, their legal representatives and witnesses in their behalf, appearing before any rating or appellate body for the purpose of presenting oral testimony, will be duly sworn.

(b) Employees detailed in accordance with § 35.10 (t), may administer the oaths when their services are available without extra cost to the Government.*†

**2.1031  Physicians' statements and lay affidavits.**  (a) Statements are sometimes submitted to the Veterans' Administration which show that a physician has rendered professional care and treatment to a claimant but fail adequately to diagnose the disease or injury involved, the period and nature of the treatment rendered, or other facts necessary to enable the Veterans' Administration to determine whether the care and treatment is associated with the alleged service incurred disease or injury.  It would be unfair to the claimant arbitrarily to dismiss these statements as inconclusive without first undertaking to obtain from the physician or other person additional information, if possible.  It is to the mutual interest of the claimant and of the Veterans' Administration to clarify any indefinite, inconclusive or incomplete statement through correspondence, and whenever necessary through personal contact, with the physician or other person submitting the statement.

(b) The adjudication personnel responsible for evaluating evidence will request amplification, clarification, or explanation of the evidence presented to them, if such action is considered necessary to an intelligent and equitable adjudication of the claim, that it is not intended that physicians' or laymen's statements will be routinely subjected to investigation.

(c) Full credence shall be given to the evidence submitted in proper form in support of claims for disability compensation, unless there is sound basis for doubt as to the conditions set forth in the physician's or layman's statement, by reason of other conflicting evi-

Under Executive Order 6017, February 7, 1933, and section 1500, Public Law 346, 78th Congress, as amended, diplomatic and consular officers of the Department of State are authorized to act as agents of the Veterans' Administration, and therefore a formal claim filed in a foreign country will be considered as filed in the Veterans' Administration as of the date of receipt by the State Department representative.

(b) Applications for compensation, pension, or burial allowance, other than claims for pension under the general law, predicated on service prior to April 21, 1898, need not be sworn to but shall be acceptable on the claimant's own certification, shown to have been made with knowledge of the penalties provided by law for false or fraudulent claims, statements, etc.

§ 3.27 *Informal claims.* Any communication from or action by a claimant or his duly authorized representative, or some person acting as next friend of a claimant who is not sui juris, which clearly indicates an intent to apply for disability or death compensation or pension may be considered an informal claim. To constitute an informal claim, the communication must specifically refer to and identify the particular benefit sought. When an informal claim is received and a formal application is forwarded for execution by the claimant, such application shall be considered as evidence necessary to complete the initial application, and, unless a formal application is received within 1 year from the date it was transmitted for execution by the claimant, no award shall be made by virtue of such informal claim. If received within 1 year in such instances, it will be considered filed as of the date of receipt of the informal claim by the Veterans' Administration. However, a communication received from a service organization, pension attorney, or pension agent may not be accepted as an informal claim, if a power of attorney was not executed at the time the communication was written. In cases not covered by this rule, where the probability of an informal claim appears to be indicated but the facts are too obscure or complicated for determination, the file will be referred to the director, claims service, in branch office cases, or the director of the service concerned in central office cases, for decision upon the facts in the particular case. When ben-

efits are being resumed under § 3.299 and an informal claim has been filed for a disability incurred or aggravated in the second period of service, the requirements of the third and fourth sentences of this paragraph are not for application. Under Executive Order 6017, February 7, 1933, and section 1500, Public Law 346, 78th Congress, as amended, diplomatic and consular officers of the Department of State are authorized to act as agents of the Veterans' Administration, and therefore an informal claim filed in a foreign country will be considered as filed in the Veterans' Administration as of the date of receipt by the State Department representative.

§ 3.28 *Abandoned claims.* In an original claim or a claim for increase in which no response has been made within 1 year after the request for the evidence or order for physical examination by the Veterans' Administration, the claimant's failure or disregard will constitute abandonment of the claim and sufficient grounds for its rejection. After the expiration of 1 year, further action may not be taken unless a new application is received. Should the claim be finally established, pension or compensation shall commence from the date of filing the new application.

(Sec. 9, 48 Stat. 10; 38 U. S. C. 709, Reg. 2, 38 U. S. C. ch. 12 note)

REQUIREMENTS FOR SUBMISSION OF EVIDENCE

§ 3.30 *Written and oral testimony to be under oath; administration of oaths by employees.* (a) All written testimony, whether lay or medical, submitted by or in behalf of a claimant in support of service-connection as proof that the claimant is entitled to such benefits will be submitted under oath. Claimants, their legal representatives, and witnesses in their behalf, appearing before any rating or appellate body for the purpose of presenting oral testimony, will be duly sworn.

(b) Employees detailed in accordance with section 300, Public No. 844, 74th Congress, may administer the oaths when their services are available without extra cost to the Government.

(Sec. 300, 49 Stat. 2033; 38 U. S. C. 131)

§ 3.31 *Physicians' statements and lay affidavits.* (a) Statements are sometimes submitted to the Veterans' Administration which show that a physician has rendered professional care and

eran will be promptly notified in writing at the time that such award action and approval are processed that the reduction or discontinuance will be effective as provided above, without further notice, if additional evidence is not submitted within the sixty-day period. If the veteran submits additional evidence within the sixty-day period, the rating and all award or approval action processed in accordance with the foregoing shall be reconsidered and confirmed, modified or canceled as required. The rating sheet will bear the following notation: "Veterans Administration Regulation 1009 (E), as amended."

[13 F. R. 7009, Nov. 27, 1948, as amended at 14 F. R. 6175, Oct. 12, 1949; 20 F. R. 2378, Apr. 12, 1955; 20 F. R. 6731, Sept. 14, 1955; 20 F. R. 9180, Dec. 10, 1955]

§ 3.10 *Adjudication of applications.* Applications for disability compensation or pension will be adjudicated in the appropriate regional office when the applicant's entire military or naval service was subsequent to July 15, 1903, or Coast Guard service subsequent to January 27, 1915, except when jurisdiction is otherwise vested in the Veterans Benefits Office, D. C. under § 3.1025.

[19 F. R. 6915, Oct. 28, 1954]

FILING OF CLAIMS AND SUPPORTING EVIDENCE

§ 3.26 *Application for benefits.* (a) A properly completed and executed VA Form 8–526, upon receipt by the Veterans Administration, constitutes an application for benefits indicated below and will be adjudicated under the applicable laws:

VA Form 8–526, Veteran's Application for Compensation or Pension: VA Form 8–526 is designated as an application for either compensation or pension, or both. It constitutes a formal claim for both benefits, and it is not necessary that the veteran subsequently file a separate claim for either. It is not required that the claim be processed or adjudicated for compensation and pension routinely and in all instances. Depending upon the manner of execution, that is, the items of information recorded on the form, it should be readily apparent whether the veteran is claiming either compensation or pension, or both benefits. If items 23, 24, and 25 are used, item 36 checked "No," and items 37 through 49 not used, the claim is for compensation and will be so adjudicated. If items 23, 24, and 25 are used, item 36 checked "Yes," and items 37 through 45 are used, the claim is also only for compensation but with an allegation of total disability. However, all disabilities, both

service connected and nonservice connected, will be evaluated and the greater benefit awarded. If items 23, 24, and 25 are used, item 36 checked "Yes," and items 37 through 49 used, the claim is for both compensation and pension. If items 23, 24, and 25 are not used, item 36 is checked "Yes," and items 37 through 49 used, the claim is for pension. Any statement on VA Form 8–526, or in a separate communication, showing an intent to file a claim for additional disability resulting from training, hospitalization, medical or surgical treatment, or examination, filed within 2 years after the injury or aggravation was suffered, may be accepted as a claim under section 31, Public Law 141, 73d Congress; section 12, Public Law 866, 76th Congress; section 2 (par. 4, pt. VII), Public Law 16, 78th Congress, or Public Law 894, 81st Congress.

Under Executive Order 6017, February 7, 1933, and section 1500, Public Law 346, 78th Congress, as amended, diplomatic and consular officers of the Department of State are authorized to act as agents of the Veterans Administration and therefore a formal claim filed in a foreign country will be considered as filed in the Veterans Administration as of the date of receipt by the State Department representative.

(b) Applications for compensation, pension, or burial allowance, other than claims for pension under the general law, predicated on service prior to April 21, 1898, need not be sworn to but shall be acceptable on the claimant's own certification, shown to have been made with knowledge of the penalties provided by law for false or fraudulent claims, statements, etc.

[13 F. R. 7011, Nov. 27, 1948, as amended at 21 F. R. 6274, Aug. 21, 1956]

§ 3.27 *Informal claims.* Any communication from or action by a claimant or his duly authorized representative, or some person acting as next friend of a claimant who is not sui juris, which clearly indicates an intent to apply for disability or death compensation or pension, may be considered an informal claim. To constitute an informal claim, the communication must specifically refer to and identify the particular benefit sought. When such informal claim is received and a formal application is forwarded for execution by the claimant, such application shall be considered as evidence necessary to complete the initial application, and, unless a formal application is received within 1 year from the date it was transmitted for execution by the claimant, no award

shall be made by virtue of such informal claim. If received within 1 year in such instances, it will be considered filed as of the date of receipt of the informal claim by the Veterans' Administration. However, a communication received from a service organization, pension attorney, or pension agent may not be accepted as an informal claim if a power of attorney was not executed at the time the communication was written. When benefits are being resumed under §3.299 and an informal claim has been filed for a disability incurred or aggravated in the second period of service, the requirements of the third and fourth sentences of this section are not for application. Under Executive Order 6017, February 7, 1933, and section 1500, Public Law 346, 78th Congress, as amended, diplomatic and consular officers of the Department of State are authorized to act as agents of the Veterans' Administration, and therefore an informal claim filed in a foreign country will be considered as filed in the Veterans' Administration as of the date of receipt by the State Department representative.

[19 F. R. 6915, Oct. 28, 1954]

§ 3.28  *Abandoned claims.* (a) In an original claim or a claim for increase in which no response has been made within 1 year after the request for the evidence or order for physical examination by the Veterans' Administration, the claimant's failure or disregard will constitute abandonment of the claim and sufficient grounds for its rejection. After the expiration of 1 year, further action may not be taken unless a new application is received. Should the claim be finally established, pension or compensation shall commence from the date of filing the new application.

(b) Where payments of disability or death compensation or pension have been suspended on or after July 1, 1933, because a veteran's or payee's whereabouts is unknown for a period of 1 year or more, payments will be resumed effective the date the evidence showing the payee's present whereabouts is received in the Veterans Administration, if otherwise in order.

(Par. II (a), (b), Part I, Vet. Reg. 2 (a), as amended; 38 U. S. C. ch. 12A)  [19 F. R. 6916, Oct. 28, 1954, as amended at 20 F. R. 4539, June 28, 1955]

§ 3.29  *Computation of time limit for filing claims or evidence or within which an act is required to be done.* In com-

puting the time limit specified by the applicable laws for the filing of claims or evidence requested by the Veterans' Administration in support of claims, the anniversary date will be included in the computation. In other words the first day of the period will be excluded and the last included. This rule will be applicable in cases in which the time limit expires on a workday. Where, under this rule of computation, the time limit would expire on a non-workday, the workday next succeeding a Saturday, Sunday, or other holiday will be included in the computation.

[14 F. R. 569, Feb. 9, 1949]

REQUIREMENTS FOR SUBMISSION OF EVIDENCE

§ 3.30  *Written testimony to be certified and oral testimony to be under oath; administration of oaths by employees.* (a) All written testimony, whether lay or medical, submitted by or in behalf of a claimant in support of service-connection as proof that the claimant is entitled to such benefits, will be duly certified. For the purpose of establishing service - connection, the physical examination reports, clinical records, and transcript of records received from State, county, municipal, and recognized private institutions and contract hospitals, referred to in § 3.216 (c), must also be certified by the responsible officials of such institutions. This requirement of certification prevails whether the report, record, or transcript is submitted at the instance of the claimant or in his behalf or pursuant to Veterans' Administration request. Claimants, their legal representatives, and witnesses in their behalf, appearing before any rating or appellate body for the purpose of presenting oral testimony, will be duly sworn.

(b) Employees detailed in accordance with section 300, Public No. 844, 74th Congress, may administer the oaths when their services are available without extra cost to the Government.

(Sec. 300, 49 Stat. 2033; 38 U. S. C. 131)  [13 F. R. 7011, Nov. 27, 1948, as amended at 19 F. R. 6916, Oct. 28, 1954]

§ 3.31  *Physicians' and lay statements.* (a) Full credence shall be given to the evidence submitted in proper form in support of claims for disability compensation, unless there is sound basis for doubt as to the conditions set forth in the physician's or layman's statement,


stood in the relationship of a parent to a veteran at any time before his or her entry into active service.

(b) Foster relationship must have begun prior to the veteran's 21st birthday. Not more than one father and one mother, as defined, will be recognized in any case. If two persons stood in the relationship of father or mother for 1 year or more, the person who last stood in such relationship before the veteran's last entry into active service will be recognized as the *parent*.

(Authority: 38 U.S.C. 101(5))

[26 FR 1568, Feb. 24, 1961, as amended at 44 FR 45935, Aug. 6, 1979]

### § 3.60   Definition of "living with".

For the purposes of determining entitlement to pension under 38 U.S.C. 1521, a person shall be considered as living with his or her spouse even though they reside apart unless they are estranged.

(Authority: 38 U.S.C. 1521(h)(2))

[44 FR 45935, Aug. 6, 1979]

### ADMINISTRATIVE

### § 3.100   Delegations of authority.

(a) Authority is delegated to the Under Secretary for Benefits and to supervisory or adjudicative personnel within the jurisdiction of the Veterans Benefits Administration designated by the Under Secretary to make findings and decisions under the applicable laws, regulations, precedents, and instructions, as to entitlement of claimants to benefits under all laws administered by the Department of Veterans Affairs governing the payment of monetary benefits to veterans and their dependents, within the jurisdiction of the Compensation Service or the Pension and Fiduciary Service.

(b) Authority is delegated to the Director, Compensation Service, and the Director, Pension and Fiduciary Service, and to personnel of each service designated by its Director to determine whether a claimant or payee has forfeited the right to gratuitious benefits or to remit a prior forfeiture pursuant

to the provisions of 38 U.S.C. 6103 or 6104. See § 3.905.

(Authority: 38 U.S.C. 512(a))

[29 FR 7547, June 12, 1964, as amended at 31 FR 14455, Nov. 10, 1966; 37 FR 10442, May 23, 1972; 53 FR 3207, Feb. 4, 1988; 60 FR 18355, Apr. 11, 1995; 61 FR 20727, May 8, 1996; 78 FR 2100, Jan. 13, 2014]

### § 3.102   Reasonable doubt.

It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

(Authority: 38 U.S.C. 501)

[50 FR 34458, Aug. 26, 1985, as amended at 66 FR 45630, Aug. 29, 2001]

### § 3.103   Procedural due process and appellate rights.

(a) *Statement of policy*. Every claimant has the right to written notice of the decision made on his or her claim, the right to a hearing, and the right of representation. Proceedings before VA

188

are ex parte in nature, and it is the obligation of VA to assist a claimant in developing the facts pertinent to the claim and to render a decision which grants every benefit that can be supported in law while protecting the interests of the Government. The provisions of this section apply to all claims for benefits and relief, and decisions thereon, within the purview of this part 3.

(b) *The right to notice*—(1) *General.* Claimants and their representatives are entitled to notice of any decision made by VA affecting the payment of benefits or the granting of relief. Such notice shall clearly set forth the decision made, any applicable effective date, the reason(s) for the decision, the right to a hearing on any issue involved in the claim, the right of representation and the right, as well as the necessary procedures and time limits, to initiate an appeal of the decision.

(2) *Advance notice and opportunity for hearing.* Except as otherwise provided in paragraph (b)(3) of this section, no award of compensation, pension or dependency and indemnity compensation shall be terminated, reduced or otherwise adversely affected unless the beneficiary has been notified of such adverse action and has been provided a period of 60 days in which to submit evidence for the purpose of showing that the adverse action should not be taken.

(3) *Exceptions.* In lieu of advance notice and opportunity for a hearing, VA will send a written notice to the beneficiary or his or her fiduciary at the same time it takes an adverse action under the following circumstances:

(i) An adverse action based solely on factual and unambiguous information or statements as to income, net worth, or dependency or marital status that the beneficiary or his or her fiduciary provided to VA in writing or orally (under the procedures set forth in §3.217(b)), with knowledge or notice that such information would be used to calculate benefit amounts.

(ii) An adverse action based upon the beneficiary's or fiduciary's failure to return a required eligibility verification report.

(iii) Evidence reasonably indicates that a beneficiary is deceased. However, in the event that VA has received a death certificate, a terminal hospital report verifying the death of a beneficiary or a claim for VA burial benefits, no notice of termination (contemporaneous or otherwise) will be required.

(iv) An adverse action based upon a written and signed statement provided by the beneficiary to VA renouncing VA benefits (see §3.106 on renouncement).

(v) An adverse action based upon a written statement provided to VA by a veteran indicating that he or she has returned to active service, the nature of that service, and the date of reentry into service, with the knowledge or notice that receipt of active service pay precludes concurrent receipt of VA compensation or pension (see §3.654 regarding active service pay).

(vi) An adverse action based upon a garnishment order issued under 42 U.S.C. 659(a).

(Authority: 38 U.S.C. 501(a))

(4) *Restoration of benefits.* VA will restore retroactively benefits that were reduced, terminated, or otherwise adversely affected based on oral information or statements if within 30 days of the date on which VA issues the notification of adverse action the beneficiary or his or her fiduciary asserts that the adverse action was based upon information or statements that were inaccurate or upon information that was not provided by the beneficiary or his or her fiduciary. This will not preclude VA from taking subsequent action that adversely affects benefits.

(c) *The right to a hearing.* (1) Upon request, a claimant is entitled to a hearing at any time on any issue involved in a claim within the purview of part 3 of this chapter, subject to the limitations described in §20.1304 of this chapter with respect to hearings in claims which have been certified to the Board of Veterans' Appeals for appellate review. VA will provide the place of hearing in the VA office having original jurisdiction over the claim or at the VA office nearest the claimant's home having adjudicative functions, or, subject to available resources and solely at the

189

option of VA, at any other VA facility or federal building at which suitable hearing facilities are available. VA will provide one or more employees who have original determinative authority of such issues to conduct the hearing and be responsible for establishment and preservation of the hearing record. Hearings in connection with proposed adverse actions and appeals shall be held before one or more VA employees having original determinative authority who did not participate in the proposed action or the decision being appealed. All expenses incurred by the claimant in connection with the hearing are the responsibility of the claimant.

(2) The purpose of a hearing is to permit the claimant to introduce into the record, *in person*, any available evidence which he or she considers material and any arguments or contentions with respect to the facts and applicable law which he or she may consider pertinent. All testimony will be under oath or affirmation. The claimant is entitled to produce witnesses, but the claimant and witnesses are expected to be present. The Veterans Benefits Administration will not normally schedule a hearing for the sole purpose of receiving argument from a representative. It is the responsibility of the VA employee or employees conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position. To assure clarity and completeness of the hearing record, questions which are directed to the claimant and to witnesses are to be framed to explore fully the basis for claimed entitlement rather than with an intent to refute evidence or to discredit testimony. In cases in which the nature, origin, or degree of disability is in issue, the claimant may request visual examination by a physician designated by VA and the physician's observations will be read into the record.

(Authority: 38 U.S.C. 501)

(d) *Submission of evidence.* Any evidence whether documentary, testimonial, or in other form, offered by the claimant in support of a claim and any issue a claimant may raise and any contention or argument a claimant may offer with respect thereto are to be included in the records.

(e) *The right to representation.* Subject to the provisions of §§ 14.626 through 14.637 of this title, claimants are entitled to representation of their choice at every stage in the prosecution of a claim.

(f) *Notification of decisions.* The claimant or beneficiary and his or her representative will be notified in writing of decisions affecting the payment of benefits or granting relief. All notifications will advise the claimant of the reason for the decision; the date the decision will be effective; the right to a hearing subject to paragraph (c) of this section; the right to initiate an appeal by filing a Notice of Disagreement which will entitle the individual to a Statement of the Case for assistance in perfecting an appeal; and the periods in which an appeal must be initiated and perfected (See part 20 of this chapter, on appeals). Further, any notice that VA has denied a benefit sought will include a summary of the evidence considered.

(Authority:38 U.S.C. 501, 1115, 1506, 5104)

[55 FR 13527, Apr. 11, 1990; 55 FR 17530, Apr. 25, 1990, as amended at 55 FR 20148, May 15, 1990; 55 FR 25308, June 21, 1990; 57 FR 56993, Dec. 2, 1992; 58 FR 16360, Mar. 26, 1993; 58 FR 59366, Nov. 9, 1993; 59 FR 6218, Feb. 10, 1994; 59 FR 6901, Feb. 14, 1994; 66 FR 56613, Nov. 9, 2001; 76 FR 52574, Aug. 23, 2011; 77 FR 23129, Apr. 18, 2012]

## § 3.104  Finality of decisions.

(a) A decision of a duly constituted rating agency or other agency of original jurisdiction shall be final and binding on all field offices of the Department of Veterans Affairs as to conclusions based on the evidence on file at the time VA issues written notification in accordance with 38 U.S.C. 5104. A final and binding agency decision shall not be subject to revision on the same factual basis except by duly constituted appellate authorities or except as provided in § 3.105 and § 3.2600 of this part.

(b) Current determinations of line of duty, character of discharge, relationship, dependency, domestic relations questions, homicide, and findings of

190

3.1008  Accrued benefits payable to foreign beneficiaries.
3.1009  Personal funds of patients.

### Subpart B—Burial Benefits

3.1600  Payment of burial expenses of deceased veterans.
3.1601  Claims and evidence.
3.1602  Special conditions governing payments.
3.1603  Authority for burial of certain unclaimed bodies.
3.1604  Payments from non-Department of Veterans Affairs sources.
3.1605  Death while traveling under prior authorization or while hospitalized by the Department of Veterans Affairs.
3.1606  Transportation items.
3.1607  Cost of flags.
3.1608  Nonallowable expenses.
3.1609  Forfeiture.
3.1610  Burial in national cemeteries; burial of unclaimed bodies.
3.1611  Official Department of Veterans Affairs representation at funeral.
3.1612  Monetary allowance in lieu of a Government-furnished headstone or marker.

### Subpart C [Reserved]

### Subpart D—Universal Adjudication Rules That Apply to Benefit Claims Governed by Part 3 of This Title

GENERAL

3.2100  Scope of Applicability.
3.2130  Will VA accept a signature by mark or thumbprint?

REVISIONS

3.2600  Review of benefit claims decisions.

EDITORIAL NOTE: Nomenclature changes to part 3 appear at 61 FR 7216, Feb. 27, 1996; 62 FR 35970, July 3, 1997; 62 FR 47532, Sept. 9, 1997; and 67 FR 46868, July 17, 2002.

## Subpart A—Pension, Compensation, and Dependency and Indemnity Compensation

AUTHORITY: 38 U.S.C. 501(a), unless otherwise noted.

GENERAL

### § 3.1  Definitions.

(a) *Armed Forces* means the United States Army, Navy, Marine Corps, Air Force, and Coast Guard, including their Reserve components.

(b) *Reserve component* means the Army, Naval, Marine Corps, Air Force, and Coast Guard Reserves and the National and Air National Guard of the United States.

(c) *Reserves* means members of a Reserve component of one of the Armed Forces.

(d) *Veteran* means a person who served in the active military, naval, or air service and who was discharged or released under conditions other than dishonorable.

(1) For compensation and dependency and indemnity compensation the term *veteran* includes a person who died in active service and whose death was not due to willful misconduct.

(2) For death pension the term *veteran* includes a person who died in active service under conditions which preclude payment of service-connected death benefits, provided such person had completed at least 2 years honorable military, naval or air service, as certified by the Secretary concerned. (See §§ 3.3(b)(3)(i) and 3.3(b)(4)(i))

(Authority: 38 U.S.C. 501)

(e) *Veteran of any war* means any veteran who served in the active military, naval or air service during a period of war as set forth in § 3.2.

(f) *Period of war* means the periods described in § 3.2.

(g) *Secretary concerned* means:

(1) The Secretary of the Army, with respect to matters concerning the Army;

(2) The Secretary of the Navy, with respect to matters concerning the Navy or the Marine Corps;

(3) The Secretary of the Air Force, with respect to matters concerning the Air Force;

(4) The Secretary of Homeland Security, with respect to matters concerning the Coast Guard;

(5) The Secretary of Health and Human Services, with respect to matters concerning the Public Health Service; and

(6) The Secretary of Commerce, with respect to matters concerning the Coast and Geodetic Survey, the Environmental Science Services Administration, and the National Oceanic and Atmospheric Administration.

(h) *Discharge or release* includes retirement from the active military, naval, or air service.

(i) *State* means each of the several States, Territories and possessions of the United States, the District of Columbia, and Commonwealth of Puerto Rico.

(j) *Marriage* means a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued.

(Authority: 38 U.S.C. 103(c))

(k) *Service-connected* means, with respect to disability or death, that such disability was incurred or aggravated, or that the death resulted from a disability incurred or aggravated, in line of duty in the active military, naval, or air service.

(l) *Nonservice-connected* means, with respect to disability or death, that such disability was not incurred or aggravated, or that the death did not result from a disability incurred or aggravated, in line of duty in the active military, naval, or air service.

(m) *In line of duty* means an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran's own willful misconduct or, for claims filed after October 31, 1990, was a result of his or her abuse of alcohol or drugs. A service department finding that injury, disease or death occurred in line of duty will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the requirements of laws administered by the Department of Veterans Affairs. Requirements as to line of duty are not met if at the time the injury was suffered or disease contracted the veteran was:

(1) Avoiding duty by desertion, or was absent without leave which materially interfered with the performance of military duty.

(2) Confined under a sentence of court-martial involving an unremitted dishonorable discharge.

(3) Confined under sentence of a civil court for a felony as determined under the laws of the jurisdiction where the person was convicted by such court.

(Authority: 38 U.S.C. 105)

NOTE: See § 3.1(y)(2)(iii) for applicability of *in line of duty* in determining former prisoner of war status.

(n) *Willful misconduct* means an act involving conscious wrongdoing or known prohibited action. A service department finding that injury, disease or death was not due to misconduct will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the facts and the requirements of laws administered by the Department of Veterans Affairs.

(1) It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences.

(2) Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct.

(3) Willful misconduct will not be determinative unless it is the proximate cause of injury, disease or death. (See §§ 3.301, 3.302.)

(o) *Political subdivision of the United States* includes the jurisdiction defined as a State in paragraph (i) of this section, and the counties, cities or municipalities of each.

(p) *Claim—Application* means a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement, to a benefit.

(q) *Notice* means written notice sent to a claimant or payee at his or her latest address of record.

(r) *Date of receipt* means the date on which a claim, information or evidence was received in the Department of Veterans Affairs, except as to specific provisions for claims or evidence received in the State Department (§ 3.108), or in the Social Security Administration (§§ 3.153, 3.201), or Department of Defense as to initial claims filed at or prior to separation. However, the Under Secretary for Benefits may establish, by notice published in the FEDERAL REGISTER, exceptions to this rule, using factors such as postmark or the date the claimant signed the correspondence, when he or she determines that a natural or man-made interference with the normal channels through which the Veterans Benefits Administration ordinarily receives correspondence has resulted in one or more Veterans Benefits Administration

150

**A-16**

offices experiencing extended delays in receipt of claims, information, or evidence from claimants served by the affected office or offices to an extent that, if not addressed, would adversely affect such claimants through no fault of their own.

(Authority: 38 U.S.C. 501(a), 512(a), 5110)

(s) *On the borders thereof* means, with regard to service during the Mexican border period, the States of Arizona, California, New Mexico, and Texas, and the nations of Guatemala and British Honduras.

(Authority: 38 U.S.C. 101(30))

(t) *In the waters adjacent thereto* means, with regard to service during the Mexican border period, the waters (including the islands therein) which are within 750 nautical miles (863 statute miles) of the coast of the mainland of Mexico.

(Authority: 38 U.S.C. 101(30)

(u) *Section 306 pension* means those disability and death pension programs in effect on December 31, 1978, which arose out of Pub. L. 86–211; 73 Stat. 432.

(v) *Old-Law pension* means the disability and death pension programs that were in effect on June 30, 1960. Also known as protected pension, *i.e.*, protected under section 9(b) of the Veteran's Pension Act of 1959 (Pub. L. 86–211; 73 Stat. 432).

(w) *Improved pension* means the disability and death pension programs becoming effective January 1, 1979, under authority of Pub. L. 95–588; 92 Stat. 2497.

(x) *Service pension* is the name given to Spanish-American War pension. It is referred to as a service pension because entitlement is based solely on service without regard to nonservice-connected disability, income and net worth.

(Authority: 38 U.S.C. 1512, 1536)

(y) *Former prisoner of war*. The term *former prisoner of war* means a person who, while serving in the active military, naval or air service, was forcibly detained or interned in the line of duty by an enemy or foreign government, the agents of either, or a hostile force.

(1) *Decisions based on service department findings*. The Department of Veterans Affairs shall accept the findings of the appropriate service department that a person was a prisoner of war during a period of war unless a reasonable basis exists for questioning it. Such findings shall be accepted only when detention or internment is by an enemy government or its agents.

(2) *Other decisions*. In all other situations, including those in which the Department of Veterans Affairs cannot accept the service department findings, the following factors shall be used to determine prisoner of war status:

(i) *Circumstances of detention or internment*. To be considered a former prisoner of war, a serviceperson must have been forcibly detained or interned under circumstances comparable to those under which persons generally have been forcibly detained or interned by enemy governments during periods of war. Such circumstances include, but are not limited to, physical hardships or abuse, psychological hardships or abuse, malnutrition, and unsanitary conditions. Each individual member of a particular group of detainees or internees shall, in the absence of evidence to the contrary, be considered to have experienced the same circumstances as those experienced by the group.

(ii) *Reason for detainment or internment*. The reason for which a serviceperson was detained or interned is immaterial in determining POW status, except that a serviceperson who is detained or interned by a foreign government for an alleged violation of its laws is not entitled to be considered a former POW on the basis of that period of detention or internment, unless the charges are a sham intended to legitimize the period of detention or internment.

(3) *Central Office approval*. The Director of the Compensation Service, VA Central Office, shall approve all VA regional office determinations establishing or denying POW status, with the exception of those service department determinations accepted under paragraph (y)(1) of this section.

(4) *In line of duty*. The Department of Veterans Affairs shall consider that a serviceperson was forcibly detained or

**A-17**

interned in line of duty unless the evidence of record discloses that forcible detainment or internment was the proximate result of the serviceperson's own willful misconduct.

(5) *Hostile force.* The term *hostile force* means any entity other than an enemy or foreign government or the agents of either whose actions are taken to further or enhance anti-American military, political or economic objectives or views, or to attempt to embarrass the United States.

(Authority: 38 U.S.C. 101(32))

(z) *Nursing home* means

(1) Any extended care facility which is licensed by a State to provide skilled or intermediate-level nursing care,

(2) A nursing home care unit in a State veterans' home which is approved for payment under 38 U.S.C. 1742, or

(3) A Department of Veterans Affairs Nursing Home Care Unit.

(aa) *Fraud:*

(1) As used in 38 U.S.C. 103 and implementing regulations, fraud means an intentional misrepresentation of fact, or the intentional failure to disclose pertinent facts, for the purpose of obtaining, or assisting an individual to obtain an annulment or divorce, with knowledge that the misrepresentation or failure to disclose may result in the erroneous granting of an annulment or divorce; and

(Authority: 38 U.S.C. 501)

(2) As used in 38 U.S.C. 110 and 1159 and implementing regulations, fraud means an intentional misrepresentation of fact, or the intentional failure to disclose pertinent facts, for the purpose of obtaining or retaining, or assisting an individual to obtain or retain, eligibility for Department of Veterans Affairs benefits, with knowledge that the misrepresentation or failure to disclose may result in the erroneous award or retention of such benefits.

(Authority: 38 U.S.C. 501)

CROSS REFERENCES: Pension. See § 3.3. Compensation. See § 3.4. Dependency and indemnity compensation. See § 3.5. Preservation of disability ratings. See § 3.951. Service-connection. See § 3.957.

[26 FR 1563, Feb. 24, 1961]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting § 3.1, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and at *www.fdsys.gov.*

§ 3.2  Periods of war.

This section sets forth the beginning and ending dates of each war period beginning with the Indian wars. Note that the term *period of war* in reference to pension entitlement under 38 U.S.C. 1521, 1541 and 1542 means all of the war periods listed in this section except the Indian wars and the Spanish-American War. See § 3.3(a)(3) and (b)(4)(i).

(a) *Indian wars.* January 1, 1817, through December 31, 1898, inclusive. Service must have been rendered with the United States military forces against Indian tribes or nations.

(b) *Spanish-American War.* April 21, 1898, through July 4, 1902, inclusive. If the veteran served with the United States military forces engaged in hostilities in the Moro Province, the ending date is July 15, 1903. The Philippine Insurrection and the Boxer Rebellion are included.

(c) *World War I.* April 6, 1917, through November 11, 1918, inclusive. If the veteran served with the United States military forces in Russia, the ending date is April 1, 1920. Service after November 11, 1918 and before July 2, 1921 is considered World War I service if the veteran served in the active military, naval, or air service after April 5, 1917 and before November 12, 1918.

(d) *World War II.* December 7, 1941, through December 31, 1946, inclusive. If the veteran was in service on December 31, 1946, continuous service before July 26, 1947, is considered World War II service.

(e) *Korean conflict.* June 27, 1950, through January 31, 1955, inclusive.

(f) *Vietnam era.* The period beginning on February 28, 1961, and ending on May 7, 1975, inclusive, in the case of a veteran who served in the Republic of Vietnam during that period. The period beginning on August 5, 1964, and ending on May 7, 1975, inclusive, in all other cases.

(Authority: 38 U.S.C. 101(29))

(g) *Future dates.* The period beginning on the date of any future declaration of

152

**A–18**



communication in writing indicating an intent to file a claim for disability compensation or dependency and indemnity compensation under the laws governing entitlement to veterans' benefits for disability or death due to VA hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy program, whether such communication is contained in a formal claim for pension, compensation, or dependency and indemnity compensation or in any other document.

(Authority: 38 U.S.C. 1151)

CROSS REFERENCES: Effective dates. See § 3.400(i). Disability or death due to hospitalization, etc. See §§ 3.358, 3.361 and 3.800.

[69 FR 46432, Aug. 3, 2004]

### § 3.155  Informal claims.

(a) Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by the Department of Veterans Affairs, from a claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. If received within 1 year from the date it was sent to the claimant, it will be considered filed as of the date of receipt of the informal claim.

(b) A communication received from a service organization, an attorney, or agent may not be accepted as an informal claim if a power of attorney was not executed at the time the communication was written.

(c) When a claim has been filed which meets the requirements of § 3.151 or § 3.152, an informal request for increase or reopening will be accepted as a claim.

CROSS REFERENCES: State Department as agent of VA. See § 3.108. Report of examination or hospitalization—as claim for increase or to reopen. See § 3.157.

[26 FR 1570, Feb. 24, 1961, as amended at 52 FR 27340, July 21, 1987]

### § 3.156  New and material evidence.

(a) *General.* A claimant may reopen a finally adjudicated claim by submitting new and material evidence. New evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim.

(Authority: 38 U.S.C. 501, 5103A(f), 5108)

(b) *Pending claim.* New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed (including evidence received prior to an appellate decision and referred to the agency of original jurisdiction by the Board of Veterans Appeals without consideration in that decision in accordance with the provisions of § 20.1304(b)(1) of this chapter), will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

(Authority: 38 U.S.C. 501)

(c) *Service department records.* (1) Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim, notwithstanding paragraph (a) of this section. Such records include, but are not limited to:

(i) Service records that are related to a claimed in-service event, injury, or disease, regardless of whether such records mention the veteran by name, as long as the other requirements of paragraph (c) of this section are met;

(ii) Additional service records forwarded by the Department of Defense or the service department to VA any



(g) The authority recognized in subsection (g) of 38 U.S.C. 5103A is reserved to the sole discretion of the Secretary and will be implemented, when deemed appropriate by the Secretary, through the promulgation of regulations.

(Authority: 38 U.S.C. 5103A(g))

[66 FR 45630, Aug. 29, 2001, as amended at 73 FR 23356, Apr. 30, 2008]

### § 3.160 Status of claims.

The following definitions are applicable to claims for pension, compensation, and dependency and indemnity compensation.

(a) *Informal claim.* See § 3.155.

(b) *Original claim.* An initial formal application on a form prescribed by the Secretary. (See §§ 3.151, 3.152).

(c) *Pending claim.* An application, formal or informal, which has not been finally adjudicated.

(d) *Finally adjudicated claim.* An application, formal or informal, which has been allowed or disallowed by the agency of original jurisdiction, the action having become final by the expiration of 1 year after the date of notice of an award or disallowance, or by denial on appellate review, whichever is the earlier. (See §§ 20.1103 and 20.1104 of this chapter.)

(e) *Reopened claim.* Any application for a benefit received after final disallowance of an earlier claim, or any application based on additional evidence or a request for a personal hearing submitted more than 90 days following notification to the appellant of the certification of an appeal and transfer of applicable records to the Board of Veterans Appeals which was not considered by the Board in its decision and was referred to the agency of original jurisdiction for consideration as provided in § 20.1304(b)(1) of this chapter.

(Authority: 38 U.S.C. 501)

(f) *Claim for increase.* Any application for an increase in rate of a benefit being paid under a current award, or for resumption of payments previously discontinued.

[27 FR 11887, Dec. 1, 1962, as amended at 31 FR 12056, Sept. 15, 1966; 55 FR 20148, May 15, 1990; 58 FR 32445, June 10, 1993]

### § 3.161 Expedited Claims Adjudication Initiative—Pilot Program.

Rules pertaining to the Expedited Claims Adjudication Initiative Pilot Program are set forth in part 20, subpart P, of this chapter.

(Authority: 38 U.S.C. 501(a))

[73 FR 65732, Nov. 5, 2008]

EVIDENCE REQUIREMENTS

### § 3.200 Testimony certified or under oath.

(a) All oral testimony presented by claimants and witnesses on their behalf before any rating or authorization body will be under oath or affirmation. (See § 3.103(c).)

(b) All written testimony submitted by the claimant or in his or her behalf for the purpose of establishing a claim for service connection will be certified or under oath or affirmation. This includes records, examination reports, and transcripts material to the issue received by the Department of Veterans Affairs at the instance of the claimant or in his or her behalf or requested by the Department of Veterans Affairs from State, county, municipal, recognized private institutions, and contract hospitals.

[40 FR 36329, Aug. 20, 1975]

### § 3.201 Exchange of evidence; Social Security and Department of Veterans Affairs.

(a) A claimant for dependency and indemnity compensation may elect to furnish to the Department of Veterans Affairs in support of that claim copies of evidence which was previously furnished to the Social Security Administration or to have the Department of Veterans Affairs obtain such evidence from the Social Security Administration. For the purpose of determining the earliest effective date for payment of dependency and indemnity compensation, such evidence will be deemed to have been received by the Department of Veterans Affairs on the date it was received by the Social Security Administration.

(b) A copy or certification of evidence filed in the Department of Veterans Affairs in support of a claim for

204

**A-20**

(i) Substance-Induced Psychotic Disorder.

(Authority: 38 U.S.C. 501(a), 1101, 1112(a) and (b))

[71 FR 42760, July 28, 2006]

### § 3.385 Disability due to impaired hearing.

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent.

[59 FR 60560, Nov. 25, 1994]

EFFECTIVE DATES

### § 3.400 General.

Except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later.

(Authority: 38 U.S.C. 5110(a))

(a) *Unless specifically provided.* On basis of facts found.

(b) *Disability benefits*—(1) *Disability pension (§3.3).* An award of disability pension may not be effective prior to the date entitlement arose.

(i) *Claims received prior to October 1, 1984.* Date of receipt of claim or date on which the veteran became permanently and totally disabled, if claim is filed within one year from such date, whichever is to the advantage of the veteran.

(ii) *Claims received on or after October 1, 1984.* (A) Except as provided in paragraph (b)(1)(ii)(B) of this section, date of receipt of claim.

(B) If, within one year from the date on which the veteran became permanently and totally disabled, the veteran files a claim for a retroactive award and establishes that a physical or mental disability, which was not the result of the veteran's own willful misconduct, was so incapacitating that it prevented him or her from filing a disability pension claim for at least the first 30 days immediately following the date on which the veteran became permanently and totally disabled, the disability pension award may be effective from the date of receipt of claim or the date on which the veteran became permanently and totally disabled, whichever is to the advantage of the veteran. While rating board judgment must be applied to the facts and circumstances of each case, extensive hospitalization will generally qualify as sufficiently incapacitating to have prevented the filing of a claim. For the purposes of this subparagraph, the presumptive provisions of §3.342(a) do not apply.

(2) *Disability compensation*—(i) *Direct service connection (§3.4(b)).* Day following separation from active service or date entitlement arose if claim is received within 1 year after separation from service; otherwise, date of receipt of claim, or date entitlement arose, whichever is later. Separation from service means separation under conditions other than dishonorable from continuous active service which extended from the date the disability was incurred or aggravated.

(ii) *Presumptive service connection (§§3.307, 3.308, 3.309).* Date entitlement arose, if claim is received within 1 year after separation from active duty; otherwise date of receipt of claim, or date entitlement arose, whichever is later. Where the requirements for service connection are met during service, the effective date will be the day following separation from service if there was continuous active service following the period of service on which the presumption is based and a claim is received within 1 year after separation from active duty.

(c) *Death benefits*—(1) *Death in service (38 U.S.C. 5110(j), Pub. L. 87–825) (§§3.4(c), 3.5(b)).* First day of the month fixed by the Secretary concerned as the date of actual or presumed death, if claim is received with 1 year after the date the initial report of actual death or finding of presumed death was made; however benefits based on a report of actual death are not payable for any

291

period for which the claimant has received, or is entitled to receive an allowance, allotment, or service pay of the veteran.

(2) *Service-connected death after separation from service (38 U.S.C. 5110(d), Pub. L. 87–825) (§§ 3.4(c), 3.5(b))*. First day of the month in which the veteran's death occurred if claim is received within 1 year after the date of death; otherwise, date of receipt of claim.

(3) *Nonservice-connected death after separation from service.* (i) For awards based on claims received prior to October 1, 1984, or on or after December 10, 2004, first day of the month in which the veteran's death occurred if claim is received within one year after the date of death; otherwise, date of receipt of claim.

(ii) For awards based on claims received between October 1, 1984, and December 9, 2004, first day of the month in which the veteran's death occurred if claim is received within 45 days after the date of death; otherwise, date of receipt of claim.

(Authority: 38 U.S.C. 5110(d))

(4) *Dependency and indemnity compensation—*(i) *Deaths prior to January 1, 1957 (§ 3.702)*. Date of receipt of election.

(ii) *Child (38 U.S.C. 5110(e), Pub. L. 87–835)*. First day of the month in which entitlement arose if claim is received within 1 year after the date of entitlement; otherwise, date of receipt of claim.

(iii) *Deaths on or after May 1, 1957 (in-service waiver cases) (§§ 3.5(b)(3) and 3.702)*. Date of receipt of election. (See § 3.114(a)).

(d) [Reserved]

(e) *Apportionment (§§ 3.450 through 3.461, 3.551)*. On original claims, in accordance with the facts found. On other than original claims from the first day of the month following the month in which:

(1) Claim is received for apportionment of a veteran's award, except that where payments to him (her) have been interrupted, apportionment will be effective the day following date of last payment if a claim for apportionment is received within 1 year after that date;

(2) Notice is received that a child included in the surviving spouse's award is not in the surviving spouse's custody, except that where payments to the surviving spouse have been interrupted, apportionment will be effective the day following date of last payment if such notice is received within 1 year after that date.

(f) *Federal employees' compensation cases (§ 3.708)*. Date authorized by applicable law, subject to any payments made by the Office of Workers' Compensation Programs under the Federal Employees' Compensation Act over the same period of time.

(g) *Correction of military records (38 U.S.C. 5110(i); Pub. L. 87–825)*. Where entitlement is established because of the correction, change or modification of a military record, or of a discharge or dismissal, by a Board established under 10 U.S.C. 1552 or 1553, or because of other corrective action by competent military naval, or air authority, the award will be effective from the latest of these dates:

(1) Date application for change, correction, or modification was filed with the service department, in either an original or a disallowed claim;

(2) Date of receipt of claim if claim was disallowed; or

(3) One year prior to date of reopening of disallowed claim.

(h) *Difference of opinion (§ 3.105)*. (1) As to decisions not final prior to receipt of an application for reconsideration or to reopen, or prior to reconsideration on Department of Veterans Affairs initiative, the date from which benefits would have been payable if the former decision had been favorable.

(2) As to decisions which have become final (by appellate decision or failure to timely initiate and perfect an appeal) prior to receipt of an application for reconsideration or to reopen, the date of receipt of such application or the date entitlement arose, whichever is later.

(3) As to decisions which have become final (by appellate decision or failure to timely initiate and perfect an appeal) and reconsideration is undertaken solely on Department of Veterans Affairs initiative, the date of Central Office approval authorizing a

favorable decision or the date of the favorable Board of Veterans Appeals decision.

(4) Where the initial determination for the purpose of death benefits is favorable, the commencing date will be determined without regard to the fact that the action may reverse, on a difference of opinion, an unfavorable decision for disability purposes by an adjudicative agency other than the Board of Veterans Appeals, which was in effect at the date of the veteran's death.

(i) *Disability or death due to hospitalization, etc.* (38 U.S.C. 5110(c), (d); Public Law 87–825; §§ 3.358, 3.361, and 3.800.) (1) *Disability*. Date injury or aggravation was suffered if claim is received within 1 year after that date; otherwise, date of receipt of claim.

(2) *Death*. First day of month in which the veteran's death occurred if a claim is received within 1 year following the date of death; otherwise, date of receipt of claim.

(j) *Election of Department of Veterans Affairs benefits* (§ 3.700 series). (1) Unless otherwise provided, the date of receipt of election, subject to prior payments.

(2) July 1, 1960, as to pension payable under Pub. L. 86–211, where pension is payable for June 30, 1960, under the law in effect on that date, including an award approved after that date, if the election is filed within (generally) 120 days from date of notice of the award. The award will be subject to prior payments over the same period of time.

(3) January 1, 1965, as to pension payable under Pub. L. 86–211 (73 Stat. 432) as amended by Pub. L. 88–664 if there was basic eligibility for pension on June 30, 1960, under the law in effect on that date and an election if filed prior to May 1, 1965.

(4) January 1, 1965, as to pension payable under Pub. L. 86–211 (73 Stat. 432) as amended by Pub. L. 88–664 if there was basic eligibility on that date for pension on the basis of service in the Indian wars or Spanish-American War and an election is filed prior to May 1, 1965.

(5) January 1, 1969, as to pension payable under Pub. L. 86–211 (73 Stat. 432), as amended by Pub. L. 90–275 (82 Stat. 64), if there was basic eligibility for pension on June 30, 1960, under the law

in effect on that date and an election is filed prior to May 1, 1969.

(6) August 1, 1972, as to pension payable under Pub. L. (73 Stat. 432) as amended by Pub. L. 92–328 (86 Stat. 393) if there was basic eligibility on that date based on death of a veteran of the Spanish-American War and an election is filed prior to December 1, 1972.

(k) *Error* (§ 3.105). Date from which benefits would have been payable if the corrected decision had been made on the date of the reversed decision.

(l) *Foreign residence*. (See § 3.653).

(m) *Forfeiture* (§§ 3.901, 3.902). Day following date of last payment on award to payee who forfeited.

(n) *Guardian*. Day following date of last payment to prior payee or fiduciary.

NOTE: Award to guardian shall include amounts withheld for possible apportionments as well as money in Personal Funds of Patients.

(o) *Increases* (38 U.S.C. 5110(a) and 5110(b)(2), Pub. L. 94–71, 89 Stat. 395; §§ 3.109, 3.156, 3.157)—(1) *General*. Except as provided in paragraph (o)(2) of this section and § 3.401(b), date of receipt of claim or date entitlement arose, whichever is later. A retroactive increase or additional benefit will not be awarded after basic entitlement has been terminated, such as by severance of service connection.

(2) *Disability compensation*. Earliest date as of which it is factually ascertainable that an increase in disability had occurred if claim is received within 1 year from such date otherwise, date of receipt of claim.

(p) *Liberalizing laws and Department of Veterans Affairs issues*. See § 3.114.

(q) *New and material evidence (§ 3.156) other than service department records*—(1) *Received within appeal period or prior to appellate decision*. The effective date will be as though the former decision had not been rendered. See §§ 20.1103, 20.1104 and 20.1304(b)(1) of this chapter.

(2) *Received after final disallowance*. Date of receipt of new claim or date entitlement arose, whichever is later.

(r) *Reopened claims*. (§§ 3.109, 3.156, 3.157, 3.160(e)) Date of receipt of claim or date entitlement arose, whichever is

293

**A-23**

later, except as provided in §20.1304(b)(1) of this chapter.

(Authority: 38 U.S.C. 501)

(s) *Renouncement* (*§ 3.106*). Except as provided in §3.106(c), date of receipt of new claim.

(t) *Whereabouts now known.* (See §3.158(c).)

(u) *Void, annulled or terminated marriage of a child* (*38 U.S.C. 5110* (*a*), (*k*), (*l*); *Pub. L. 93–527, 88 Stat. 1702; § 3.55*)—(1) *Void.* Date the parties ceased to cohabit or date of receipt of claim, whichever is later.

(2) *Annulled.* Date the decree of annulment became final if claim is filed within 1 year after that date; otherwise date of receipt of claim.

(3) *Death.* Date of death if claim is filed within 1 year after that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of §3.55(b) of this part are met.

(4) *Divorce.* Date the decree became final if claim is filed within 1 year of that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of §3.55(b) of this part are met.

(v) *Termination of remarriage of surviving spouse (38 U.S.C. 5110(a), (k); 38 U.S.C. 103(d) and 3010(l) effective January 1, 1971; § 3.55*)—(1) *Void.* Date the parties ceased to cohabit or date of receipt of claim, whichever is the later.

(2) *Annulled.* Date the decree of annulment became final if claim is filed within 1 year after that date; otherwise date of receipt of claim.

(3) *Death.* Date of death if claim is filed within 1 year after that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of §3.55(a) of this part are met.

(4) *Divorce.* Date the decree became final if claim is filed within 1 year after that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of §3.55(a) of this part are met.

(w) *Termination of relationship or conduct resulting in restriction on payment of benefits (38 U.S.C. 5110(m), effective January 1, 1971; §§ 3.50(b)(2) and 3.55).* Date of receipt of application filed after termination of relationship and after December 31, 1970. Benefits are not payable

unless the provisions of §3.55(a), as applicable, are met.

(x) *Effective date of determination of incompetency (§ 3.353).* Date of rating of incompetency. (Not applicable to an incompetency determination made for insurance purposes under 38 U.S.C. 1922).

(y) *Effective date of determination restoring competency (§ 3.353).* Date shown by evidence of record that competency was regained.

(z) *Claims based on service in the Women's Air Forces Service Pilots (WASP), or on service in a similarly situated group (Pub. L. 95–202).* (1) Original claim: Date of receipt of claim or date entitlement arose, whichever is later, or as otherwise provided under this section (e.g., paragraph (b)(1) of this section) except that no benefits shall be awarded for any period prior to November 23, 1977.

(2) Reopened claim: Latest of the following dates:

(i) November 23, 1977.

(ii) Date entitlement arose.

(iii) One year prior to date of receipt of reopened claim.

[26 FR 1593, Feb. 24, 1961]

EDITORIAL NOTE: For FEDERAL REGISTER citations affecting §3.400, see the List of CFR Sections Affected, which appears in the Finding Aids section of the printed volume and at *www.fdsys.gov.*

§ 3.401  Veterans.

Awards of pension or compensation payable to or for a veteran will be effective as follows:

(a) *Aid and attendance and housebound benefits.* (1) Except as provided in §3.400(o)(2), the date of receipt of claim or date entitlement arose, whichever is later. However, when an award of pension or compensation based on an original or reopened claim is effective for a period prior to the date of receipt of the claim, any additional pension or compensation payable by reason of need for aid and attendance or housebound status shall also be awarded for any part of the award's retroactive period for which entitlement to the additional benefit is established.

(Authority: 38 U.S.C. 501; 5110(b)(1), (3))

294



**Effective: March 24, 2015**

Code of Federal Regulations Currentness
  Title 38. Pensions, Bonuses, and Veterans' Relief
    Chapter I. Department of Veterans Affairs (Refs & Annos)
      Part 3. Adjudication (Refs & Annos)
        ⬑▤ Subpart A. Pension, Compensation, and Dependency and Indemnity Compensation (Refs & Annos)
          ⬑▤ General
            ➡ **§ 3.1 Definitions.**

(a) Armed Forces means the United States Army, Navy, Marine Corps, Air Force, and Coast Guard, including their Reserve components.


(b) Reserve component means the Army, Naval, Marine Corps, Air Force, and Coast Guard Reserves and the National and Air National Guard of the United States.


(c) Reserves means members of a Reserve component of one of the Armed Forces.


(d) Veteran means a person who served in the active military, naval, or air service and who was discharged or released under conditions other than dishonorable.


  (1) For compensation and dependency and indemnity compensation the term veteran includes a person who died in active service and whose death was not due to willful misconduct.


  (2) For death pension the term veteran includes a person who died in active service under conditions which preclude payment of service-connected death benefits, provided such person had completed at least 2 years honorable military, naval or air service, as certified by the Secretary concerned. (See §§ 3.3(b)(3)(i) and 3.3(b)(4)(i)).


  (Authority: 38 U.S.C. 501)


(e) Veteran of any war means any veteran who served in the active military, naval or air service during a period of war as set forth in § 3.2.


(f) Period of war means the periods described in § 3.2.


(g) Secretary concerned means:


  (1) The Secretary of the Army, with respect to matters concerning the Army;


  (2) The Secretary of the Navy, with respect to matters concerning the Navy or the Marine Corps;


  (3) The Secretary of the Air Force, with respect to matters concerning the Air Force;


  (4) The Secretary of Homeland Security, with respect to matters concerning the Coast Guard;


  (5) The Secretary of Health and Human Services, with respect to matters concerning the Public Health Service; and


  (6) The Secretary of Commerce, with respect to matters concerning the Coast and Geodetic Survey, the Environmental Science Services Administration, and the National Oceanic and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Atmospheric Administration.

(h) Discharge or release includes retirement from the active military, naval, or air service.

(i) State means each of the several States, Territories and possessions of the United States, the District of Columbia, and Commonwealth of Puerto Rico.

(j) Marriage means a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued.

(Authority: 38 U.S.C. 103(c))

(k) Service-connected means, with respect to disability or death, that such disability was incurred or aggravated, or that the death resulted from a disability incurred or aggravated, in line of duty in the active military, naval, or air service.

(l) Non-service-connected means, with respect to disability or death, that such disability was not incurred or aggravated, or that the death did not result from a disability incurred or aggravated, in line of duty in the active military, naval, or air service.

(m) In line of duty means an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran's own willful misconduct or, for claims filed after October 31, 1990, was a result of his or her abuse of alcohol or drugs. A service department finding that injury, disease or death occurred in line of duty will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the requirements of laws administered by the Department of Veterans Affairs. Requirements as to line of duty are not met if at the

time the injury was suffered or disease contracted the veteran was:

(1) Avoiding duty by desertion, or was absent without leave which materially interfered with the performance of military duty.

(2) Confined under a sentence of court-martial involving an unremitted dishonorable discharge.

(3) Confined under sentence of a civil court for a felony as determined under the laws of the jurisdiction where the person was convicted by such court.

(Authority: 38 U.S.C. 105)

Note: See § 3.1(y)(2)(iii) for applicability of in line of duty in determining former prisoner of war status.

(n) Willful misconduct means an act involving conscious wrongdoing or known prohibited action. A service department finding that injury, disease or death was not due to misconduct will be binding on the Department of Veterans Affairs unless it is patently inconsistent with the facts and the requirements of laws administered by the Department of Veterans Affairs.

(1) It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences.

(2) Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct.

(3) Willful misconduct will not be determinat-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

ive unless it is the proximate cause of injury, disease or death. (See §§ 3.301, 3.302.)

(o) Political subdivision of the United States includes the jurisdiction defined as a State in paragraph (i) of this section, and the counties, cities or municipalities of each.

(p) Claim means a written communication requesting a determination of entitlement or evidencing a belief in entitlement, to a specific benefit under the laws administered by the Department of Veterans Affairs submitted on an application form prescribed by the Secretary.

(q) Notice means written notice sent to a claimant or payee at his or her latest address of record.

(r) Date of receipt means the date on which a claim, information or evidence was received in the Department of Veterans Affairs, except as to specific provisions for claims or evidence received in the State Department (§ 3.108), or in the Social Security Administration (§ 3.153, § 3.201), or Department of Defense as to initial claims filed at or prior to separation. However, the Under Secretary for Benefits may establish, by notice published in the Federal Register, exceptions to this rule, using factors such as postmark or the date the claimant signed the correspondence, when he or she determines that a natural or man-made interference with the normal channels through which the Veterans Benefits Administration ordinarily receives correspondence has resulted in one or more Veterans Benefits Administration offices experiencing extended delays in receipt of claims, information, or evidence from claimants served by the affected office or offices to an extent that, if not addressed, would adversely affect such claimants through no fault of their own.

(s) On the borders thereof means, with regard to service during the Mexican border period, the

States of Arizona, California, New Mexico, and Texas, and the nations of Guatemala and British Honduras.

(Authority: 38 U.S.C. 101(30))

(t) In the waters adjacent thereto means, with regard to service during the Mexican border period, the waters (including the islands therein) which are within 750 nautical miles (863 statute miles) of the coast of the mainland of Mexico.

(Authority: 38 U.S.C. 101(30))

(u) Section 306 pension means those disability and death pension programs in effect on December 31, 1978, which arose out of Pub.L. 86–211; 73 Stat. 432.

(v) Old–Law pension means the disability and death pension programs that were in effect on June 30, 1960. Also known as protected pension, i.e. protected under section 9(b) of the Veteran's Pension Act of 1959 (Pub.L. 86–211; 73 Stat. 432).

(w) Improved pension means the disability and death pension programs becoming effective January 1, 1979, under authority of Pub.L. 95–588; 92 Stat. 2497.

(x) Service pension is the name given to Spanish–American War pension. It is referred to as a service pension because entitlement is based solely on service without regard to nonservice-connected disability, income and net worth.

(Authority: 38 U.S.C. 1512, 1536)

(y) Former prisoner of war. The term former prisoner of war means a person who, while serving in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

the active military, naval or air service, was forcibly detained or interned in the line of duty by an enemy or foreign government, the agents of either, or a hostile force.

(1) Decisions based on service department findings. The Department of Veterans Affairs shall accept the findings of the appropriate service department that a person was a prisoner of war during a period of war unless a reasonable basis exists for questioning it. Such findings shall be accepted only when detention or internment is by an enemy government or its agents.

(2) Other decisions. In all other situations, including those in which the Department of Veterans Affairs cannot accept the service department findings, the following factors shall be used to determine prisoner of war status:

(i) Circumstances of detention or internment. To be considered a former prisoner of war, a serviceperson must have been forcibly detained or interned under circumstances comparable to those under which persons generally have been forcibly detained or interned by enemy governments during periods of war. Such circumstances include, but are not limited to, physical hardships or abuse, psychological hardships or abuse, malnutrition, and unsanitary conditions. Each individual member of a particular group of detainees or internees shall, in the absence of evidence to the contrary, be considered to have experienced the same circumstances as those experienced by the group.

(ii) Reason for detainment or internment. The reason for which a serviceperson was detained or interned is immaterial in determining POW status, except that a serviceperson who is detained or interned by a foreign government for an alleged violation of its laws is not entitled to

be considered a former POW on the basis of that period of detention or internment, unless the charges are a sham intended to legitimize the period of detention or internment.

(3) Central Office approval. The Director of the Compensation Service, VA Central Office, shall approve all VA regional office determinations establishing or denying POW status, with the exception of those service department determinations accepted under paragraph (y)(1) of this section.

(4) In line of duty. The Department of Veterans Affairs shall consider that a serviceperson was forcibly detained or interned in line of duty unless the evidence of record discloses that forcible detainment or internment was the proximate result of the serviceperson's own willful misconduct.

(5) Hostile force. The term hostile force means any entity other than an enemy or foreign government or the agents of either whose actions are taken to further or enhance anti-American military, political or economic objectives or views, or to attempt to embarrass the United States.

(Authority: 38 U.S.C. 101(32))

(z) Nursing home means

(1) Any extended care facility which is licensed by a State to provide skilled or intermediate-level nursing care,

(2) A nursing home care unit in a State veterans' home which is approved for payment under 38 U.S.C. 1742, or

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(3) A Department of Veterans Affairs Nursing Home Care Unit.

(aa) Fraud:

(1) As used in 38 U.S.C. 103 and implementing regulations, fraud means an intentional misrepresentation of fact, or the intentional failure to disclose pertinent facts, for the purpose of obtaining, or assisting an individual to obtain an annulment or divorce, with knowledge that the misrepresentation or failure to disclose may result in the erroneous granting of an annulment or divorce; and

(Authority: 38 U.S.C. 501)

(2) As used in 38 U.S.C. 110 and 1159 and implementing regulations, fraud means an intentional misrepresentation of fact, or the intentional failure to disclose pertinent facts, for the purpose of obtaining or retaining, or assisting an individual to obtain or retain, eligibility for Department of Veterans Affairs benefits, with knowledge that the misrepresentation or failure to disclose may result in the erroneous award or retention of such benefits.

(Authority: 38 U.S.C. 501)

[26 FR 1563, Feb. 24, 1961, as amended at 27 FR 4023, April 27, 1962; 27 FR 11886, Dec. 1, 1962; 28 FR 320, Jan. 11, 1963; 32 FR 6840, May 4, 1967; 36 FR 5341, March 20, 1971; 36 FR 8445, May 6, 1971; 40 FR 16064, March 3, 1975; 44 FR 45931, Aug. 6, 1979; 47 FR 38122, Aug. 30, 1982; 48 FR 38821, Aug. 26, 1983; 54 FR 31828, Aug. 2, 1989; 54 FR 34981, Aug. 23, 1989; 55 FR 8141, March 7, 1990; 56 FR 19579, April 29, 1991; 60 FR 27408, May 24, 1995; 61 FR 56627, Nov. 4, 1996; 69 FR 42880, July 19, 2004; 70 FR 51590, Aug. 31, 2005; 71 FR 44918, Aug. 8, 2006; 79 FR 2100, Jan. 13, 2014; 79 FR 57694, Sept. 25, 2014]

Cross–References: Pension. See § 3.3. Compensation. See § 3.4. Dependency and indemnity compensation. See § 3.5. Preservation of disability ratings. See § 3.951. Service-connection. See § 3.957.

SOURCE: 54 FR 34978, 34981, Aug. 23, 1989; 56 FR 65846, 65847, 65849, 65851, 65853, Dec. 19, 1991; 57 FR 8268, March 9, 1992; 57 FR 10425, March 26, 1992; 57 FR 31007, 31012, July 13, 1992; 57 FR 38610, Aug. 26, 1992; 57 FR 59296, Dec. 15, 1992, unless otherwise noted.

AUTHORITY: 38 U.S.C. 501(a).

38 C. F. R. § 3.1, 38 CFR § 3.1

Current through May 7, 2015; 80 FR 26430

© 2015 Thomson Reuters.
END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.


**C**

**Effective: March 24, 2015**

Code of Federal Regulations Currentness
  Title 38. Pensions, Bonuses, and Veterans' Relief
    Chapter I. Department of Veterans Affairs (Refs & Annos)
      Part 3. Adjudication (Refs & Annos)
        ↳ Subpart A. Pension, Compensation, and Dependency and Indemnity Compensation (Refs & Annos)
          ↳ Claims
            ➜ **§ 3.155 How to file a claim.**

The following paragraphs describe the manner and methods in which a claim can be initiated and filed. The provisions of this section are applicable to all claims governed by part 3.

(a) Request for an application for benefits. A claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of a claimant who is not of full age or capacity, who indicates a desire to file for benefits under the laws administered by VA, by a communication or action, to include an electronic mail that is transmitted through VA's electronic portal or otherwise, that does not meet the standards of a complete claim is considered a request for an application form for benefits under § 3.150(a). Upon receipt of such a communication or action, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the application form or form prescribed by the Secretary.

(b) Intent to file a claim. A claimant, his or her duly authorized representative, a Member of Congress, or some person acting as next friend of claimant who is not of full age or capacity may indicate a claimant's desire to file a claim for benefits by sub-mitting an intent to file a claim to VA. An intent to file a claim must provide sufficient identifiable or biographical information to identify the claimant. Upon receipt of the intent to file a claim, VA will furnish the claimant with the appropriate application form prescribed by the Secretary. If VA receives a complete application form prescribed by the Secretary, as defined in paragraph (a) of § 3.160, appropriate to the benefit sought within 1 year of receipt of the intent to file a claim, VA will consider the complete claim filed as of the date the intent to file a claim was received.

(1) An intent to file a claim can be submitted in one of the following three ways:

(i) Saved electronic application. When an application otherwise meeting the requirements of this paragraph (b) is electronically initiated and saved in a claims-submission tool within a VA web-based electronic claims application system prior to filing of a complete claim, VA will consider that application to be an intent to file a claim.

(ii) Written intent on prescribed intent to file a claim form. The submission to an agency of original jurisdiction of a signed and dated intent to file a claim, on the form prescribed by the Secretary for that purpose, will be accepted as an intent to file a claim.

(iii) Oral intent communicated to designated VA personnel and recorded in writing. An oral statement of intent to file a claim will be accepted if it is directed to a VA employee designated to receive such a communication, the VA employee receiving this information follows the provisions set forth in § 3.217(b), and the VA employee documents the date VA received the claimant's intent to file a claim in the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

claimant's records.

(2) An intent to file a claim must identify the general benefit (e.g., compensation, pension), but need not identify the specific benefit claimed or any medical condition(s) on which the claim is based. To the extent a claimant provides this or other extraneous information on the designated form referenced in paragraph (b)(1)(ii) of this section that the form does not solicit, the provision of such information is of no effect other than that it is added to the file for appropriate consideration as evidence in support of a complete claim if filed. In particular, if a claimant identifies specific medical condition(s) on which the claim is based in an intent to file a claim, this extraneous information does not convert the intent to file a claim into a complete claim or a substantially complete application. Extraneous information provided in an oral communication under paragraph (b)(1)(iii) of this section is of no effect and generally will not be recorded in the record of the claimant's intent to file.

(3) Upon receipt of an intent to file a claim, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the appropriate application form prescribed by the Secretary.

(4) If an intent to file a claim is not submitted in the form required by paragraph (b)(1) of this section or a complete claim is not filed within 1 year of the receipt of the intent to file a claim, VA will not take further action unless a new claim or a new intent to file a claim is received.

(5) An intent to file a claim received from a service organization, an attorney, or agent indicating a represented claimant's intent to file a claim may not be accepted if a power of attorney was not executed at the time the commu-

nication was written. VA will only accept an oral intent to file from a service organization, an attorney, or agent if a power of attorney is of record at the time the oral communication is received by the designated VA employee.

(6) VA will not recognize more than one intent to file concurrently for the same benefit (e.g., compensation, pension). If an intent to file has not been followed by a complete claim, a subsequent intent to file regarding the same benefit received within 1 year of the prior intent to file will have no effect. If, however, VA receives an intent to file followed by a complete claim and later another intent to file for the same benefit is submitted within 1 year of the previous intent to file, VA will recognize the subsequent intent to file to establish an effective date for any award granted for the next complete claim, provided it is received within 1 year of the subsequent intent to file.

(c) Incomplete application form. Upon receipt of a communication indicating a belief in entitlement to benefits that is submitted on a paper application form prescribed by the Secretary that is not complete as defined in § 3.160(a) of this section, the Secretary shall notify the claimant and the claimant's representative, if any, of the information necessary to complete the application form prescribed by the Secretary. If a complete claim is submitted within 1 year of receipt of such incomplete application form prescribed by the Secretary, VA will consider it as filed as of the date VA received the incomplete application form prescribed by the Secretary that did not meet the standards of a complete claim. See § 3.160(a) for Complete Claim.

(d) Claims.

(1) Requirement for complete claim and date of claim. A complete claim is required for all types of claims, and will generally be con-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

sidered filed as of the date it was received by VA for an evaluation or award of benefits under the laws administered by the Department of Veterans Affairs. If VA receives a complete claim within 1 year of the filing of an intent to file a claim that meets the requirements of paragraph (b) of this section, it will be considered filed as of the date of receipt of the intent to file a claim. Only one complete claim for a benefit (e.g., compensation, pension) may be associated with each intent to file a claim for that benefit, though multiple issues may be contained within a complete claim. In the event multiple complete claims for a benefit are filed within 1 year of an intent to file a claim for that benefit, only the first claim filed will be associated with the intent to file a claim. In the event that VA receives both an intent to file a claim and an incomplete application form before the complete claim as defined in § 3.160(a) is filed, the complete claim will be considered filed as of the date of receipt of whichever was filed first provided it is perfected within the necessary timeframe, but in no event will the complete claim be considered filed more than one year prior to the date of receipt of the complete claim.

(2) Scope of claim. Once VA receives a complete claim, VA will adjudicate as part of the claim entitlement to any ancillary benefits that arise as a result of the adjudication decision (e.g., entitlement to 38 U.S.C. Chapter 35 Dependents' Educational Assistance benefits, entitlement to special monthly compensation under 38 CFR 3.350, entitlement to adaptive automobile allowance, etc.). The claimant may, but need not, assert entitlement to ancillary benefits at the time the complete claim is filed. VA will also consider all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits for complications of the claimed condition, including

those identified by the rating criteria for that condition in 38 CFR Part 4, VA Schedule for Rating Disabilities. VA's decision on an issue within a claim implies that VA has determined that evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues addressed in that decision. VA's decision that addresses all outstanding issues enumerated in the complete claim implies that VA has determined evidence of record does not support entitlement for any other issues that are reasonably within the scope of the issues enumerated in the complete claim.

[26 FR 1570, Feb. 24, 1961; 52 FR 27340, July 21, 1987; 54 FR 34981, Aug. 23, 1989; 79 FR 57695, Sept. 25, 2014]

Cross References: Complete claim. See § 3.160(a). Effective dates. See § 3.400.

SOURCE: 54 FR 34978, 34981, Aug. 23, 1989; 56 FR 65846, 65847, 65849, 65851, 65853, Dec. 19, 1991; 57 FR 8268, March 9, 1992; 57 FR 10425, March 26, 1992; 57 FR 31007, 31012, July 13, 1992; 57 FR 38610, Aug. 26, 1992; 57 FR 59296, Dec. 15, 1992, unless otherwise noted.

AUTHORITY: 38 U.S.C. 501(a).

38 C. F. R. § 3.155, 38 CFR § 3.155

Current through May 7, 2015; 80 FR 26430

© 2015 Thomson Reuters.
END OF DOCUMENT



**c**

**Effective: March 24, 2015**

Code of Federal Regulations Currentness
  Title 38. Pensions, Bonuses, and Veterans' Relief
    Chapter I. Department of Veterans Affairs (Refs & Annos)
      Part 3. Adjudication (Refs & Annos)
        ↰▤ Subpart A. Pension, Compensation, and Dependency and Indemnity Compensation (Refs & Annos)
          ↰▤ Claims
            → **§ 3.160 Status of claims.**

(a) Complete claim. A submission of an application form prescribed by the Secretary, whether paper or electronic, that meets the following requirements:

(1) A complete claim must provide the name of the claimant; the relationship to the veteran, if applicable; and sufficient service information for VA to verify the claimed service, if applicable.

(2) A complete claim must be signed by the claimant or a person legally authorized to sign for the claimant.

(3) A complete claim must identify the benefit sought.

(4) A description of any symptom(s) or medical condition(s) on which the benefit is based must be provided to the extent the form prescribed by the Secretary so requires; and

(5) For nonservice-connected disability or death pension and parents' dependency and indemnity compensation claims, a statement of income must be provided to the extent the form prescribed by the Secretary so requires.

(b) Original claim. The initial complete claim for one or more benefits on an application form prescribed by the Secretary.

(c) Pending claim. A claim which has not been finally adjudicated.

(d) Finally adjudicated claim. A claim that is adjudicated by the Department of Veterans Affairs as either allowed or disallowed is considered finally adjudicated by whichever of the following occurs first:

(1) The expiration of the period in which to file a notice of disagreement, pursuant to the provisions of § 20.302(a) or § 20.501(a) of this chapter, as applicable; or,

(2) Disposition on appellate review.

(e) Reopened claim. An application for a benefit received after final disallowance of an earlier claim that is subject to readjudication on the merits based on receipt of new and material evidence related to the finally adjudicated claim, or any claim based on additional evidence or a request for a personal hearing submitted more than 90 days following notification to the appellant of the certification of an appeal and transfer of applicable records to the Board of Veterans' Appeals which was not considered by the Board in its decision and was referred to the agency of original jurisdiction for consideration as provided in § 20.1304(b)(1) of this chapter.

(Authority: 38 U.S.C. 501)

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(f) Claim for increase. Any application for an increase in rate of a benefit being paid under a current award, or for resumption of payments previously discontinued.

[27 FR 11887, Dec. 1, 1962, as amended at 31 FR 12056, Sept. 15, 1966; 55 FR 20148, May 15, 1990; 58 FR 32443, June 10, 1993; 79 FR 57696, Sept. 25, 2014]

SOURCE: 54 FR 34978, 34981, Aug. 23, 1989; 56 FR 65846, 65847, 65849, 65851, 65853, Dec. 19, 1991; 57 FR 8268, March 9, 1992; 57 FR 10425, March 26, 1992; 57 FR 31007, 31012, July 13, 1992; 57 FR 38610, Aug. 26, 1992; 57 FR 59296, Dec. 15, 1992, unless otherwise noted.

AUTHORITY: 38 U.S.C. 501(a).

38 C. F. R. § 3.160, 38 CFR § 3.160

Current through May 7, 2015; 80 FR 26430

© 2015 Thomson Reuters.
END OF DOCUMENT

**A-34**


**Effective: March 24, 2015**

Code of Federal Regulations Currentness
  Title 38. Pensions, Bonuses, and Veterans' Relief
    Chapter I. Department of Veterans Affairs (Refs & Annos)
      Part 3. Adjudication (Refs & Annos)
        ⬑▤ Subpart A. Pension, Compensation, and Dependency and Indemnity Compensation (Refs & Annos)
          ⬑▤ Effective Dates
            ➡ **§ 3.400 General.**

Except as otherwise provided, the effective date of an evaluation and award of pension, compensation or dependency and indemnity compensation based on an original claim, a claim reopened after final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later.

(Authority: 38 U.S.C. 5110(a))

(a) Unless specifically provided. On basis of facts found.

(b) Disability benefits—

(1) Disability pension (§ 3.3). An award of disability pension may not be effective prior to the date entitlement arose.

(i) Claims received prior to October 1, 1984. Date of receipt of claim or date on which the veteran became permanently and totally disabled, if claim is filed within one year from such date, whichever is to the advantage of the veteran.

(ii) Claims received on or after October 1, 1984.

(A) Except as provided in paragraph (b)(1)(ii)(B) of this section, date of receipt of claim.

(B) If, within one year from the date on which the veteran became permanently and totally disabled, the veteran files a claim for a retroactive award and establishes that a physical or mental disability, which was not the result of the veteran's own willful misconduct, was so incapacitating that it prevented him or her from filing a disability pension claim for at least the first 30 days immediately following the date on which the veteran became permanently and totally disabled, the disability pension award may be effective from the date of receipt of claim or the date on which the veteran became permanently and totally disabled, whichever is to the advantage of the veteran. While rating board judgment must be applied to the facts and circumstances of each case, extensive hospitalization will generally qualify as sufficiently incapacitating to have prevented the filing of a claim. For the purposes of this subparagraph, the presumptive provisions of § 3.342(a) do not apply.

(2) Disability compensation—

(i) Direct service connection (§ 3.4(b)). Day following separation from active service or date entitlement arose if claim is received within 1 year after separation from service; otherwise, date of receipt of claim, or date entitlement arose, whichever is later. Separation from service means separation under conditions oth-

**A-35**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

er than dishonorable from continuous active service which extended from the date the disability was incurred or aggravated.

(ii) Presumptive service connection (§§ 3.307, 3.308, 3.309). Date entitlement arose, if claim is received within 1 year after separation from active duty; otherwise date of receipt of claim, or date entitlement arose, whichever is later. Where the requirements for service connection are met during service, the effective date will be the day following separation from service if there was continuous active service following the period of service on which the presumption is based and a claim is received within 1 year after separation from active duty.

(c) Death benefits—

(1) Death in service (38 U.S.C. 5110(j), Pub.L. 87–825) (§§ 3.4(c), 3.5(b)). First day of the month fixed by the Secretary concerned as the date of actual or presumed death, if claim is received within 1 year after the date the initial report of actual death or finding of presumed death was made; however benefits based on a report of actual death are not payable for any period for which the claimant has received, or is entitled to receive an allowance, allotment, or service pay of the veteran.

(2) Service-connected death after separation from service (38 U.S.C. 5110(d), Pub.L. 87–825) (§§ 3.4(c), 3.5(b)). First day of the month in which the veteran's death occurred if claim is received within 1 year after the date of death; otherwise, date of receipt of claim.

(3) Nonservice-connected death after separation from service.

(i) For awards based on claims received prior to October 1, 1984 or on or after December 10, 2004, first day of the month in which the veteran's death occurred if claim is received within one year after the date of death; otherwise, date of receipt of claim.

(ii) For awards based on claims received between October 1, 1984, and December 9, 2004, first day of the month in which the veteran's death occurred if claim is received within 45 days after the date of death; otherwise, date of receipt of claim.

(Authority: 38 U.S.C. 5110(d))

(4) Dependency and indemnity compensation—

(i) Deaths prior to January 1, 1957 (§ 3.702). Date of receipt of election.

(ii) Child (38 U.S.C. 5110(e), Pub.L. 87–835). First day of the month in which entitlement arose if claim is received within 1 year after the date of entitlement; otherwise, date of receipt of claim.

(iii) Deaths on or after May 1, 1957 (in-service waiver cases) (§§ 3.5(b)(3) and 3.702). Date of receipt of election. (See § 3.114(a)).

(d) [Reserved]

(e) Apportionment (§§ 3.450 through 3.461, 3.551). On original claims, in accordance with the facts found. On other than original claims from the first day of the month following the month in which:

(1) Claim is received for apportionment of a veteran's award, except that where payments to him (her) have been interrupted, apportionment

will be effective the day following date of last payment if a claim for apportionment is received within 1 year after that date;

(2) Notice is received that a child included in the surviving spouse's award is not in the surviving spouse's custody, except that where payments to the surviving spouse have been interrupted, apportionment will be effective the day following date of last payment if such notice is received within 1 year after that date.

(f) Federal employees' compensation cases (§ 3.708). Date authorized by applicable law, subject to any payments made by the Office of Workers' Compensation Programs under the Federal Employees' Compensation Act over the same period of time.

(g) Correction of military records (38 U.S.C. 5110(i); Pub.L. 87–825). Where entitlement is established because of the correction, change or modification of a military record, or of a discharge or dismissal, by a Board established under 10 U.S.C. 1552 or 1553, or because of other corrective action by competent military naval, or air authority, the award will be effective from the latest of these dates:

(1) Date application for change, correction, or modification was filed with the service department, in either an original or a disallowed claim;

(2) Date of receipt of claim if claim was disallowed; or

(3) One year prior to date of reopening of disallowed claim.

(h) Difference of opinion (§ 3.105).

(1) As to decisions not final prior to receipt of an application for reconsideration or to reopen, or prior to reconsideration on Department of Veterans Affairs initiative, the date from which benefits would have been payable if the former decision had been favorable.

(2) As to decisions which have become final (by appellate decision or failure to timely initiate and perfect an appeal) prior to receipt of an application for reconsideration or to reopen, the date of receipt of such application or the date entitlement arose, whichever is later.

(3) As to decisions which have become final (by appellate decision or failure to timely initiate and perfect an appeal) and reconsideration is undertaken solely on Department of Veterans Affairs initiative, the date of Central Office approval authorizing a favorable decision or the date of the favorable Board of Veterans Appeals decision.

(4) Where the initial determination for the purpose of death benefits is favorable, the commencing date will be determined without regard to the fact that the action may reverse, on a difference of opinion, an unfavorable decision for disability purposes by an adjudicative agency other than the Board of Veterans Appeals, which was in effect at the date of the veteran's death.

(i) Disability or death due to hospitalization, etc. (38 U.S.C. 5110(c), (d); Public Law 87–825; §§ 3.358, 3.361, and 3.800.)

(1) Disability. Date injury or aggravation was suffered if claim is received within 1 year after that date; otherwise, date of receipt of claim.

(2) Death. First day of month in which the vet-

**A-37**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

eran's death occurred if a claim is received within 1 year following the date of death; otherwise, date of receipt of claim.

(j) Election of Department of Veterans Affairs benefits (§ 3.700 series).

(1) Unless otherwise provided, the date of receipt of election, subject to prior payments.

(2) July 1, 1960, as to pension payable under Pub.L. 86–211, where pension is payable for June 30, 1960, under the law in effect on that date, including an award approved after that date, if the election is filed within (generally) 120 days from date of notice of the award. The award will be subject to prior payments over the same period of time.

(3) January 1, 1965, as to pension payable under Pub.L. 86–211 (73 Stat. 432) as amended by Pub.L. 88–664 if there was basic eligibility for pension on June 30, 1960, under the law in effect on that date and an election if filed prior to May 1, 1965.

(4) January 1, 1965, as to pension payable under Pub.L. 86–211 (73 Stat. 432) as amended by Pub.L. 88–664 if there was basic eligibility on that date for pension on the basis of service in the Indian wars or Spanish–American War and an election is filed prior to May 1, 1965.

(5) January 1, 1969, as to pension payable under Pub.L. 86–211 (73 Stat. 432), as amended by Pub.L. 90–275 (82 Stat. 64), if there was basic eligibility for pension on June 30, 1960, under the law in effect on that date and an election is filed prior to May 1, 1969.

(6) August 1, 1972, as to pension payable under Pub.L. (73 Stat. 432) as amended by Pub.L. 92–328 (86 Stat. 393) if there was basic eligibility on that date based on death of a veteran of the Spanish–American War and an election is filed prior to December 1, 1972.

(k) Error (§ 3.105). Date from which benefits would have been payable if the corrected decision had been made on the date of the reversed decision.

(l) Foreign residence. (See § 3.653).

(m) Forfeiture (§§ 3.901, 3.902). Day following date of last payment on award to payee who forfeited.

(n) Guardian. Day following date of last payment to prior payee or fiduciary.

Note: Award to guardian shall include amounts withheld for possible apportionments as well as money in Personal Funds of Patients.

(o) Increases (38 U.S.C. 5110(a) and 3010(b)(2), Pub.L. 94–71, 89 Stat. 395; §§ 3.109, 3.156, 3.157)—

(1) General. Except as provided in paragraph (o)(2) of this section and § 3.401(b), date of receipt of claim or date entitlement arose, whichever is later. A retroactive increase or additional benefit will not be awarded after basic entitlement has been terminated, such as by severance of service connection.

(2) Disability compensation. Earliest date as of which it is factually ascertainable based on all evidence of record that an increase in disability had occurred if a complete claim or intent to file a claim is received within 1 year from such date, otherwise, date of receipt of claim. When

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

medical records indicate an increase in a disability, receipt of such medical records may be used to establish effective date(s) for retroactive benefits based on facts found of an increase in a disability only if a complete claim or intent to file a claim for an increase is received within 1 year of the date of the report of examination, hospitalization, or medical treatment. The provisions of this paragraph apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established.

(Authority: 38 U.S.C. 501, 5101)

(p) Liberalizing laws and Department of Veterans Affairs issues. See § 3.114.

(q) New and material evidence (§ 3.156) other than service department records.

(1) Received within appeal period or prior to appellate decision. The effective date will be as though the former decision had not been rendered. See §§ 20.1103, 20.1104 and 20.1304(b)(1) of this chapter.

(2) Received after final disallowance. Date of receipt of new claim or date entitlement arose, whichever is later.

(r) Reopened claims. (§§ 3.109, 3.156, 3.157, 3.160(e)) Date of receipt of claim or date entitlement arose, whichever is later, except as provided in § 20.1304(b)(1) of this chapter.

(Authority: 38 U.S.C. 501)

(s) Renouncement (§ 3.106). Except as provided in § 3.106(c), date of receipt of new claim.

(t) Whereabouts now known. (See § 3.158(c).)

(u) Void, annulled or terminated marriage of a child (38 U.S.C. 5110 (a), (k), (l); Pub.L. 93–527, 88 Stat. 1702; § 3.55)—

(1) Void. Date the parties ceased to cohabit or date of receipt of claim, whichever is later.

(2) Annulled. Date the decree of annulment became final if claim is filed within 1 year after that date; otherwise date of receipt of claim.

(3) Death. Date of death if claim is filed within 1 year after that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of § 3.55(b) of this part are met.

(4) Divorce. Date the decree became final if claim is filed within 1 year of that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of § 3.55(b) of this part are met.

(v) Termination of remarriage of surviving spouse (38 U.S.C. 5110(a), (k); 38 U.S.C. 103(d) and 3010(l) effective January 1, 1971; § 3.55)—

(1) Void. Date the parties ceased to cohabit or date of receipt of claim, whichever is the later.

(2) Annulled. Date the decree of annulment became final if claim is filed within 1 year after that date; otherwise date of receipt of claim.

(3) Death. Date of death if claim is filed within 1 year after that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of § 3.55(a) of this part are met.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) Divorce. Date the decree became final if claim is filed within 1 year after that date; otherwise date of receipt of claim. Benefits are not payable unless the provisions of § 3.55(a) of this part are met.

(w) Termination of relationship or conduct resulting in restriction on payment of benefits (38 U.S.C. 5110(m), effective January 1, 1971; §§ 3.50(b)(2) and 3.55).

Date of receipt of application filed after termination of relationship and after December 31, 1970. Benefits are not payable unless the provisions of § 3.55 (a), as applicable, are met.

(x) Effective date of determination of incompetency (§ 3.353). Date of rating of incompetency. (Not applicable to an incompetency determination made for insurance purposes under 38 U.S.C. 1922).

(y) Effective date of determination restoring competency (§ 3.353). Date shown by evidence of record that competency was regained.

(z) Claims based on service in the Women's Air Forces Service Pilots (WASP), or on service in a similarly situated group (Pub.L. 95–202).

(1) Original claim: Date of receipt of claim or date entitlement arose, whichever is later, or as otherwise provided under this section (e.g., paragraph (b)(1) of this section) except that no benefits shall be awarded for any period prior to November 23, 1977.

(2) Reopened claim: Latest of the following dates:

(i) November 23, 1977.

(ii) Date entitlement arose.

(iii) One year prior to date of receipt of reopened claim.

[26 FR 1593, Feb. 24, 1961, as amended at 27 FR 6878, July 20, 1962; 27 FR 11888, Dec. 1, 1962; 28 FR 13489, Dec. 13, 1963; 29 FR 7769, June 18, 1964; 29 FR 15207, Nov. 11, 1964; 33 FR 12002, Aug. 23, 1968; 34 FR 8703, June 3, 1969; 37 FR 19133, Sept. 19, 1972; 39 FR 20204, June 7, 1974; 39 FR 32988, Sept. 13, 1974; 40 FR 16066, April 9, 1975; 40 FR 54246, Nov. 21, 1975; 41 FR 17387, April 26, 1976; 41 FR 20407, May 18, 1976; 43 FR 11703, March 21, 1978; 44 FR 18971, March 30, 1979; 45 FR 34886, May 23, 1980; 50 FR 25981, June 24, 1985; 55 FR 20149, May 15, 1990; 56 FR 25044, June 3, 1991; 57 FR 10426, March 26, 1992; 58 FR 32443, June 10, 1993; 60 FR 18356, April 11, 1995; 60 FR 52863, Oct. 11, 1995; 61 FR 67950, Dec. 26, 1996; 62 FR 5529, Feb. 6, 1997; 68 FR 34542, June 10, 2003; 69 FR 46434, Aug. 3, 2004; 71 FR 44919, Aug. 8, 2006; 71 FR 52457, Sept. 6, 2006; 79 FR 57696, Sept. 25, 2014]

SOURCE: 54 FR 34978, 34981, Aug. 23, 1989; 56 FR 65846, 65847, 65849, 65851, 65853, Dec. 19, 1991; 57 FR 8268, March 9, 1992; 57 FR 10425, March 26, 1992; 57 FR 31007, 31012, July 13, 1992; 57 FR 38610, Aug. 26, 1992; 57 FR 59296, Dec. 15, 1992, unless otherwise noted.

AUTHORITY: 38 U.S.C. 501(a).

38 C. F. R. § 3.400, 38 CFR § 3.400

Current through May 7, 2015; 80 FR 26430

© 2015 Thomson Reuters.
END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

# CERTIFICATE OF SERVICE

I certify that on May 14, 2015, I filed the foregoing with the United States Court of Appeals for the Federal Circuit via the Court's CM/ECF system, which will send notice of the filing to all registered CM/ECF users.

/s/ Francesco Valentini
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com

**CERTIFICATE OF COMPLIANCE**

Counsel for Petitioners hereby certifies that:

1.     The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, exclusive of the exempted portions, it contains 13,450 words as counted by the word processing program used to prepare the brief; and

2.     The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2010 in proportionally spaced typeface:  Times New Roman, font size 14.

May 14, 2015

/s/ Francesco Valentini
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com