2015-7061

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

THE AMERICAN LEGION, AMVETS, THE MILITARY ORDER OF THE PURPLE HEART, VIETNAM VETERANS OF AMERICA, NATIONAL VETERANS LEGAL SERVICES PROGRAM,

Petitioners,

v.

ROBERT A. McDONALD, SECRETARY OF VETERANS AFFAIRS,

Respondent.

---

On petition for review pursuant to 38 U.S.C. § 502

CORRECTED BRIEF FOR RESPONDENT

---


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 408
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-0319

Attorneys for Respondent

OF COUNSEL:

DAVID J. BARRANS
Assistant General Counsel

BRIAN D. GRIFFIN
Deputy Assistant General Counsel
Department of Veterans Affairs
810 Vermont Ave., N.W.
Washington, D.C. 20420


June 17, 2015

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

STATEMENT OF RELATED CASES .......... x

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS .......... 1

I. Background And Prior Regulations .......... 2

II. The Proposed Rule .......... 3

III. Public Comments .......... 4

IV. The Final Rule .......... 4

SUMMARY OF THE ARGUMENT .......... 7

ARGUMENT .......... 9

I. Standard And Scope Of Review .......... 9

II. The Secretary Possesses The Authority To Issue The Regulations .......... 10

A. Petitioners Argument Is Contrary To The Plain Lanuage Of The United States Code .......... 10

B. Legislative Ratification Generally Does Not Preclude Agencies From Exercising Continuing Authority By Revising Regulation .......... 15

C. The Informal Claims Rule Is Not Statutory .......... 18

D. Section 5102(c) Is Not To The Contrary .......... 21

1. Section 5102(c) Is Not An Effective Date Statute .......... 21

2. 5102(c) Is Limited To Incomplete Applications .................25

III. *Chevron* "Step Two" .......................................................................26

A. The Final Rule Is Pro-Claimant ...............................................26

B. The Final Rule Is Rational .......................................................31

C. The Final Rule Is A Logical Outgrowth Of The Proposed .......................................................................37

D. VA's Claim Adjudication Responsibilities Have Not Been Altered By The Regulation...............................39

1. 38 U.S.C. § 5107(b) Is Not To The Contrary ......................42

2. The *Hodge / Roberson* Line Of Cases Is Not To The Contrary.............................................................................43

3. The Agency Is Entitled To *Chevron* Deference ..................53

4. Unclaimed Conditions .........................................................55

CONCLUSION ..............................................................................................57

## TABLE OF AUTHORITIES

**CASES**

*Adams v. Shinseki*,
568 F.3d 956 (Fed. Cir. 2009) ....................................................................34

*Am. Iron & Steel Inst. v. E.P.A.*,
886 F.2d 390 (D.C. Cir. 1989)......................................................................37

*Boggs v. Peake*,
520 F.3d 1330 (Fed. Cir. 2008) ....................................................................19

*Brannon v. West*,
12 Vet. App. 32 (1998)..................................................................................52

*Brokowski v. Shinseki*,
23 Vet. App. 79 (2009)........................................................................ 3, 29, 34

*Brown v. Gardner*,
513 U.S. 115 (1994) .......................................................................................28

*Califano v. Jobst*,
434 U.S. 47 (1977) .........................................................................................36

*Campbell v. Brown*,
245 F.2d 662 (5th Cir. 1957) .........................................................................17

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837, 104 S.Ct. 2778 (1984) ........................................................ 15, 27

*Clemons v. Shinseki*,
23 Vet. App. 1 (2009).....................................................................................52

*Comer v. Peake*,
552 F.3d 1362 (Fed. Cir. 2009) ............................................................... 30, 48

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) ................................................................................ 15, 37

*Criswell v. Nicholson*,
20 Vet. App. 501 (2006)..........52

*CSX Transp., Inc. v. Surface Transp. Bd.*
584 F.3d 1076 (D.C. Cir. 2009)..........38

*Deshotel v. Nicholson*,
457 F.3d 1258 (Fed. Cir. 2006)..........34

*Disabled American Veterans v. Sec'y of Veterans Affairs*,
419 F.3d 1317 (Fed. Cir. 2005)..........15

*Disabled American Veterans v. Gober*,
234 F.3d 682 (Fed. Cir. 2000).......... 9, 10, 29

*Dow Chemical Co v. Kavanagh*,
139 F.2d 42 (6th Cir. 1943)..........17

*Envtl. Integrity Project v. E.P.A.*,
425 F.3d 992 (D.C. Cir. 2005)..........37

*Eurodif S.A. v. U.S.*,
423 F.3d 1275 (Fed. Cir. 2005)..........54

*FDA v. Brown & Williamson Tobacco Corp*.
529 U.S. 120 (2000)..........17

*Fleshman v. West*,
138 F.3d 1429 (Fed. Cir. 1998).......... passim

*Gallegos v. Principi*,
283 F.3d 1309 (Fed. Cir. 2002), *cert. denied*, 537 U.S. 1071(2002)..........29

*Gilpin v. West*,
155 F.3d 1353 (Fed. Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999)..........29

*Haas v. Peake*,
525 F.3d 1168 (Fed. Cir. 2008)..........36

*Harris v. Shinseki*,
704 F.3d 946 (Fed. Cir. 2013) ........................................................................49

*Helvering v. R.J. Reynolds Tobacco Co*,
306 U.S. 110 (1939) .........................................................................................15

*Helvering v. Reynolds*,
313 U.S. 428 (1941) ................................................................................... 16, 21

*Helvering v. Wilshire Oil Co.*,
308 U.S. 90 (1939) ...........................................................................................16

*Hodge v. West*,
155 F.3d 1356 (Fed. Cir. 1998) ............................................................. 43, 45, 54

*Ingram v. Nicholson*,
21 Vet. App. 232 (2007)....................................................................................34

*Jones v. West*,
136 F.3d 1296 (Fed. Cir. 1998) ............................................................ 51, 52, 53

*Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158 (2007) .........................................................................................37

*MacPhee v. Nicholson*,
459 F.3d 1323 (Fed. Cir. 2006) ............................................................. 51, 52, 54

*Mansfield v. Peake*,
525 F.3d 1312 (Fed. Cir. 2008) ............................................................. 12, 50, 54

*Mathews v. Diaz*,
426 U.S. 67 (1976) ...........................................................................................35

*McCoy v. U.S.*,
802 F.2d 762 (4th Cir. 1986) ...........................................................................16

*McGee v. Peake*,
511 F.3d 1352 (Fed. Cir. 2008) ........................................................................56

*Mortg. Investors Corp. of Ohio v. Gober*,
220 F.3d 1375 (Fed. Cir. 2000) ....................................................................9

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*
463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d. 443 (1983) .........................................10

*N.L.R.B. v. Gullet Gin Co*,
340 U.S. 361 (1951) ......................................................................................15

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
260 F.3d 1365 (Fed. Cir. 2001) ....................................................................10

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
669 F.3d 1340 (Fed. Cir. 2012) ............................................................. 10, 22

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Services*,
545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d. 820 (2005) ....................................54

*Nyeholt v. Sec'y of Veterans Affairs*,
298 F.3d 1350 (Fed. Cir. 2002) ....................................................................9

*Paralyzed Veterans of America v. Sec'y of Veterans Affairs*,
345 F.3d 1334 (Fed. Cir. 2003) ............................................................. 23, 46

*Red Lion Broadcasting Co. v. F.C.C.*,
395 U.S. 367 (1969) ......................................................................................15

*Rice v. Shinseki*,
22 Vet. App. 447 (2009)......................................................................... 48, 49

*Roberson v. Principi*,
251 F.3d 1378 (Fed. Cir. 2001) ............................................................. passim

*Rodriguez v. West*,
189 F.3d 1351 (Fed. Cir. 1999) ............................................................... 3, 29

*Sears v. Principi*,
349 F.3d 1326 (Fed. Cir. 2003) ............................................................. 27, 28

*Szemraj v. Principi*,
357 F.3d 1370 (Fed. Cir. 2004) .................................................................. 43, 50

*Terry v. Principi*,
340 F.3d 1378 (Fed. Cir. 2003) .........................................................................43

*United States R.R. Retirement Bd. v. Fritz*,
449 U.S. 166 (1980) ......................................................................................35

*Weinberger v. Salfi*,
422 U.S. 749 (1975) ......................................................................................36

**STATUTES**

5 U.S.C § 553 ...............................................................................................37

5 U.S.C. §1131 .................................................................................................2

10 U.S.C. § 1218(a) ........................................................................................56

38 U.S.C. § 101 ................................................................................................11

38 U.S.C. § 501 .................................................................................. 12, 15, 26, 27

38 U.S.C. § 502 .............................................................................................2, 9

38 U.S.C. § 1110 ...............................................................................................2

38 U.S.C. § 1151 ....................................................................................... 13, 28

38 U.S.C. § 5101 ...................................................................................... passim

38 U.S.C. § 5102 ...................................................................................... passim

38 U.S.C. § 5103 ........................................................................... 23, 33, 45, 46

38 U.S.C. § 5103A ...................................................................................... 30, 45

38 U.S.C. § 5107 ........................................................................... 27, 30, 42, 43

38 U.S.C. § 5110 ........ passim

38 U.S.C. § 5121 ........ 14

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ........ 9

Honoring America'a Veterans And Caring For Camp Lejeune Families Act of 2012, Pub. L. No. 112-154 § 504, 126 Stat. 1165 (Aug. 6, 2012) ........ 46

Pub. L. No 85-56, § 101, 71 Stat. 83 (1957) ........ 11, 21

Veteran Claims Assistance Act of 2000, Pub. L. 106-475 § 3, 114 Stat. 2096 (2000) ........ 23

**REGULATIONS**

38 C.F.R. § 3.1 ........ 25

38 C.F.R. § 3.26 ........ 20

38 C.F.R. § 3.27 ........ 19, 20

38 C.F.R. § 3.103 ........ 42, 45

38 C.F.R. § 3.151 ........ 20

38 C.F.R. § 3.155 ........ passim

38 C.F.R. § 3.156 ........ 30

38 C.F.R. § 3.157 ........ 51

38 C.F.R. § 3.159 ........ passim

38 C.F.R. § 3.160 ........ passim

38 C.F.R. § 3.212 ........ 19

Standard Claims and Appeals Forms,
78 Fed. Reg. 65,490 (October 31, 2013) .................................................3

Standard Claims and Appeals Forms,
79 Fed. Reg. 57,660 (September 25, 2014) ...........................................2

**LEGISLATIVE HISTORY**

H.R. Rep. No. 85-279 (1957), *reprint*ed in 1957 U.S.C.C.A.N.1214 .................... 21

H.R. Rep. No. 100-963 (1988) , *reprinted in* 1988 U.S.C.C.A.N. 5782 .......... 43, 44

H.R. Rep. No. 112-241 (Oct. 6, 2011) ................................................... 47

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, respondent's counsel states that he is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title.

Counsel states that this case is related to the following four cases: The Court has determined that this case is a companion case to *Veterans Justice Group v. DVA*, No. 15-7021 and *NOVA v. DVA*, No. 15-7025, which concern the same regulation. The Court has determined that all three cases will be assigned to the same merits panel for oral argument.

Two additional petitions were filed regarding the same final rule: *Paralyzed Veterans of American v. DVA*, No. 15-7080; and *Disabled American Veterans v. DVA*, No. 15-7081. While those matters may be heard by a separate panel, this case is likely to have a significant precedential effect on those petitions.

CORRECTED BRIEF FOR RESPONDENT

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

2015-7061

---

THE AMERICAN LEGION, ET AL.,
Petitioners,
v.

SECRETARY OF VETERANS AFFAIRS,
Respondent.

---

STATEMENT OF THE ISSUES

Whether the Department of Veterans Affairs (VA or Secretary) regulations requiring that all claims originate on standard application forms, or on specified placeholder communications (that hold a claimant's effective date of benefits for up to one year until being perfected by the filing of a standard application form), are a reasonable exercise of the Secretary's authority and otherwise are not arbitrary, capricious, an abuse of discretion or inconsistent with law.

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS

The American Legion, AMVETS, The Military Order of the Purple Heart, Vietnam Veterans of America, and the National Veterans Legal Services Program (petitioners) seek review under 38 U.S.C. § 502 of VA's final rule making changes

to 38 C.F.R. parts 3, 19, and 20, with the effect of generally requiring all claims and appeals to originate on standard forms. VA Notice of Final Rulemaking, "Standard Claims and Appeals Forms," 79 Fed. Reg. 57660 (September 25, 2014) (the "final rule"); *see* Joint Appendix (JA)1-40. Petitioners confine their challenges to the portion of the final rule affecting initial claims.

I. Background And Prior Regulations[1]

Veterans are entitled to compensation for disabilities incurred in or aggravated by active military service. 38 U.S.C. § 1110, 1131. Benefits are paid on a monthly basis beginning on the claim's effective date which is generally the date of the receipt of the application. 38 U.S.C. § 5110(a).

In order for benefits to be paid or furnished under the laws administered by VA, "[a] specific claim in the form prescribed by the Secretary . . . must be filed." 38 U.S.C. § 5101(a)(1). Prior regulations implemented this authority by providing that "[a]ny communication or action indicating an intent to apply for benefits . . . may be considered an informal claim." 38 C.F.R. § 3.155(a) (2014). Under prior regulations, if an application form was not previously of record, but was filed within one year of the informal claim, VA would deem the application to have been filed as of the date of the informal claim. 38 C.F.R. § 3.155(a) (2014). If a claim in the form prescribed by the Secretary was already of record, any informal

[1] We refer to the regulations in effect prior to the effective date of the final rule as "prior" regulations. These regulations are referred to as "current" in the final rule.

request for increased compensation or to reopen a previously decided claim would be accepted as the claim, with no requirement to file a standard application form. 38 C.F.R. § 3.155(c) (2014); *see* "Standard Claims and Appeals Forms," 78 Fed. Reg. 65490, 65491-92 (Oct. 31, 2013) (the "proposed rule"). However, this Court's precedent clearly requires that an informal claim be in writing. *See Rodriguez v. West*, 189 F.3d 1351, 1353-54 (Fed. Cir. 1999). Additionally, in order for a communication to be an informal claim, the claimant was required to identify the nature of the disability for which he or she was seeking benefits, such as by describing a body system or symptoms of the disability. *Brokowski v. Shinseki*, 23 Vet. App. 79, 86-87 (2009).

II. <u>The Proposed Rule</u>

To increase the role of standard forms in the claims process, VA proposed to eliminate the concept of an "informal claim" and replace it with an "incomplete claim." JA364. Under the proposed rule, an incomplete claim could provide a similar effective date "placeholder" as an informal claim if perfected by the filing of a standard application form within one year, but only if received through a claims submission tool within a VA web-based electronic claims application system. JA364, 377. Claims would otherwise be considered received as of the date they were filed on a standard application form. *Id*. VA explained that it was proposing to make the liberal effective date structure previously available for

informal claims available only for claims submitted electronically because this structure would "incentivize electronic submissions over paper submissions." JA364.

## III. Public Comments

VA provided a 60-day public comment period, and received 53 public comments. JA3. Numerous commenters expressed concern with the elimination of an effective date "placeholder" for paper claims in the proposed rule. JA5-6. Commenters also objected to the idea that electronic and paper filings would receive different effective date treatment. JA6. However, some commenters expressed approval of VA's attempt to bring greater clarity and efficiency to the claim system. *See* JA105 ("I am pushing the electronic forms. They get the job done!!"); JA109 ("I think this is long overdue."); *Accord*, JA7, 102, 273.

## IV. The Final Rule

VA's final rule made liberalizing changes to the rule as proposed "in order to strike a balance between standardizing, modernizing, and streamlining the claim process and providing veterans, claimants, and their survivors with a process that remains veteran-friendly and informal." JA6. Rather than restrict liberal effective date treatment previously available under the informal claims process to electronic claims, the final rule makes this available to both paper and electronic claims. JA6-11. The final rule accomplishes this by replacing the informal claims process

with the "intent to file" process, which allows claimants to establish an effective date of benefits using one of three standardized inputs.

First, new 38 C.F.R. § 3.155(b)(1)(i) provides that saving an electronic application within a VA web-based electronic claims application system prior to submitting the electronic application for actual processing constitutes an intent to file.[2] JA8, 37. Second, new 38 C.F.R. § 3.155(b)(ii) provides that the submission of a written intent to file a claim on a form prescribed by the Secretary for that purpose will be accepted as an intent to file a claim. *Id*. Third, new 38 C.F.R. § 3.155(b)(iii) allows an intent to file a claim be submitted through oral communication with certain designated VA personnel, "typically in one of VA's call centers." *Id*.[3] So long as a standard application form prescribed by the Secretary is filed within one year of the "intent to file" submission, VA will deem the application to have been filed as of the date the "intent to file" submission was received. JA6-9, 37-38.

The substantive information required in an intent to file is minimal, and indeed *less* extensive than the substantive information required to establish an effective date under the prior informal claim rule. JA7. An intent to file must

---

[2] This is essentially the effective date "placeholder" envisioned by the "incomplete claim" concept in the proposed rule. *See* JA59.

[3] While a telephone call or conversation in a public contact center may not on its face seem like a standard form, the final rule explains that designated personnel solicit the necessary data elements and essentially fill out the form on the veteran's behalf. JA8.

provide sufficient identifiable or biographical information to identify the claimant, and must identify the general benefit sought (e.g., compensation). JA7, 37. But a claimant does not have to identify medical issues, symptoms, or conditions on which the claim will be based in order to establish an effective date. *Id*.

In addition to an intent to file, new 38 C.F.R. § 3.155(c) also provides that an incomplete application will hold the claimant's effective date of benefits for up to one year. JA9, 38. In the event an intent to file and an incomplete application are received regarding the same claim, the final rule makes clear at new 38 C.F.R. § 3.155(d) that, if a complete application form is ultimately filed, VA will consider it filed as of the date of receipt of whichever was filed first, but in no event more than one year prior to the date of receipt of the complete claim. JA9, 38.

New § 3.155(d)(1) also provides that a complete claim is required for all types of claims. JA11, 38. New 38 C.F.R. § 3.160(a), in turn, defines a complete claim as a "submission of an application form prescribed by the Secretary, whether paper or electronic" that meets certain minimum requirements. JA11-14, 38. A complete claim must provide basic identifying information such as a name, relationship to the veteran (if applicable), sufficient service information for VA to verify the claimed military service, and a signature. A complete claim must identify the benefit sought, and a complete *compensation* claim must include "[a] description of any symptom(s) or medical conditions on which the benefit is

based."[4] JA12-14, 38; *see* new 38 C.F.R. § 3.160(a)(3)–(a)(4). No further data, contention, or supporting evidence is required. *Id*. The final rule makes clear that the criteria for a complete claim were intentionally modeled on the criteria for a "substantially complete application" in 38 C.F.R. § 3.159(a)(3).

## SUMMARY OF THE ARGUMENT

The core question in this case is whether VA can require a claimant to fill out a standard application form in order to initiate a claim for benefits. Section 5101 of Title 38, United States Code, answers that question as it provides that "[a] specific claim in the form prescribed by the Secretary . . . must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary."

Petitioners' argument that Congress ratified the informal claims rule thereby restricting the Secretary's authority to issue the regulations is contrary to the United States Code. No statute defines "claim" or "application" for veterans' benefits purposes and Section 5101 vests the definitional authority with the Secretary. The fact that Congress has passed laws dealing with veterans benefits while the informal claims rule has been in effect does not alter this conclusion. Rather, the Supreme Court has made clear that the doctrine of legislative

[4] For nonservice-connected disability or death pension and parents dependency and indemnity compensation claims, a statement of income must be provided. JA38, *see* new 38 C.F.R. § 3.160(a)(5).

ratification is an aid in statutory construction, and does not obviate an otherwise valid exercise of the agency's rulemaking power.

The final rule also is consistent with 38 U.S.C. § 5102(c). Section 5102(c) permits VA to pay benefits as of the date of an incomplete application, but does not require it. Even if the Court disagrees, section 5102(c) is limited to incomplete applications, and does not extend to informal filings. Petitioners argument that VA is required to accept any and all claimant filings as incomplete applications under section 5102(c) is flatly contrary to VA's explicit authority to prescribe regulations concerning the "forms of application[.]"

Petitioners' argument that the final rule is not pro-claimant fares no better. The question of whether or not a rule is consistent with the statutory framework cannot be reduced to the single-factor test of whether it is uniformly "pro-claimant." In fact, the final rule is more claimant friendly than the informal claims rule in that it allows claimants to hold an effective date of benefits with a phone call, requiring less substantive information than prior regulations in order to do so.

Nor did the final rule alter the legal scope of VA's duty to adjudicate claims reasonably raised by the evidence of record. Regulations related to the duty to assist and adjudicate remain in place. The statutory and regulatory structure clearly envisions that the claims process begins with the filing of a "claim," and nothing in these authorities establish that VA's duty to sympathetically construe all

claimant filings operates to *create claims*. Nor could it, as this would have the functional effect of overruling 38 U.S.C. § 5101(a)(1). Even if the Court disagrees and perceives some tension between the final rule and this Court's precedents regarding VA's duty to adjudicate claims reasonably raised by the record, the final rule nevertheless remains entitled to *Chevron* deference.

The final rule will significantly improve the operation of the veterans' benefits system by introducing numerous processing efficiencies that will enhance VA's ability to monitor the procedural and substantive status of a claimant's entire file, thereby benefitting individual veterans and the veteran community as a whole.

## ARGUMENT

### I. Standard And Scope Of Review

Section 502 of title 38, United States Code, grants this Court exclusive jurisdiction to review certain rulemaking actions by the Secretary of Veterans Affairs. This Court reviews petitions under section 502 in accordance with the standard set forth in the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. *See Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1355 (Fed. Cir. 2002) (citing *DAV*, 234 F.3d at 691). This Court will "hold unlawful and set aside agency action" that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see Mortg. Investors Corp. of Ohio v. Gober*, 220 F.3d 1375, 1378 (Fed. Cir. 2000). "This review is 'highly

deferential' to the actions of the agency." *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1372 (Fed. Cir. 2001) (citing *DAV*, 234 F.3d at 691). A regulation is not arbitrary and capricious if there is a "rational connection between the facts found and the choice made." *NOVA*, 669 F.3d at 1348; *quoting Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d. 443 (1983).

## II. The Secretary Possesses The Authority To Issue The Regulations

Petitioners argue that Congress has codified VA's pre-1957 regulations, elevating the "full scope of those regulations" to the statutory level. Pet. Br. 27. Petitioners, therefore, argue that the informal claims rule itself is effectively statutory, and that Congress has essentially ratified both the informal claims rule and VA's understanding of the term "application" as it existed in 1957. This transparent attempt to turn uncodified regulations into statutes must be rejected.

### A. Petitioners Argument Is Contrary To The Plain Language Of The United States Code

The most fundamental problem with petitioners' argument is it leads to a result contrary to the plain language of current statute, and this Court's precedent, providing the Secretary the authority to specify requirements for the initiation of claims for benefits.

Despite petitioners' suggestion to the contrary, Pet. Br. 29, Congress did not codify everything vis-à-vis the VA claims process, rather some terms and

procedures remain undefined at the statutory level and within the Secretary's discretion to define. Section 101 of Title 38, United States Code, contains definitions applicable to Title 38; however, neither section 101, nor any other statute, defines the terms "claim," or "application" for veterans' benefits purposes.[5] Congress made clear that it intended the Secretary to fill this statutory gap by requiring claimants to file "a specific claim in the form prescribed by the Secretary." 38 U.S.C. § 5101(a)(1). The final rule effects a change in what kind of submission will meet this standard. Applicable statutes and this Court's precedents make clear that the Secretary has authority to designate how claims for VA benefits must originate, and that this authority necessarily implies that there may be substantive consequences in the event that a claimant does not file "a specific claim in the form prescribed by the Secretary[.]" 38 U.S.C. § 5101(a)(1).

The Secretary has authority to specify how a claimant must initiate a claim for benefits. Section 501(a)(2) confers authority to "prescribe all rules and regulations" governing "the forms of application by claimants" under the laws administered by VA. Furthermore, the plain language of the statute specifically dealing with the establishment of claims is consistent with this broad delegation of authority because it makes clear that the Secretary is vested with considerable discretion in determining how claimants must initiate claims for benefits. 38

[5] Nor were these terms defined in the 1957 Act. *See* Pub. L. 85-56, § 101, 71 Stat. 83, 88-90 (1957) (codified as amended at 38 U.S.C. § 101).

U.S.C. § 5101(a)(1) ("[a] *specific* claim in the form prescribed by the Secretary . . . *must* be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary.") (emphasis added).

Taken together, sections 501(a)(2) and section 5101(a)(1) do more than permit the Secretary to design application forms, or require that they be used. Rather, they permit the Secretary to designate what information must be provided to initiate a claim, and in what format, as this Court has already held.

In *Mansfield v. Peake*, 525 F.3d 1312, 1317 (Fed. Cir. 2008), this Court found that "Congress has provided the VA with authority to establish the requirements for 'claims' for veterans' benefits." This authority extends to determining what kind of filing will constitute "form prescribed by the Secretary" for the filing of an "application" under section 5110. Congress contemplated the possibility that there would be monetary implications for a claimant who does not file a "specific claim in the form prescribed by the Secretary" because failure to do so would mean that no benefits could be "paid or furnished." 38 U.S.C. § 5101(a)(1).

Regulations promulgated pursuant to section 501(a)(2) that require all claims to originate on standard VA forms are therefore well within VA's delegated statutory authority, and are in accord with the applicable statute. Indeed, this Court in *Mansfield* made clear that section 5101(a) provides VA with authority to

establish substantive requirements that must be met in order for a given submission to constitute a claim. *See Id.* (rule allowing "any statement" to initiate a claim for benefits under 38 U.S.C. § 1151, but requiring that the statement show "an intent" to file such a claim was promulgated "in accordance with" section 5101(a)).

In *Fleshman*, this Court held that the failure to file a specific claim in the form prescribed by the Secretary means that a veteran has not filed a claim, with the effect that no benefits can be paid. *Fleshman v. West*, 138 F.3d 1429, 1431-32 (Fed. Cir. 1998). In *Fleshman*, a veteran sought compensation for a back disability, but "did not fill out the second page of the two-page form." *Id*. at 1430. After entitlement was later established, this Court affirmed the Veterans Court's denial of an earlier effective date predicated on the incomplete application:

> *In order to receive benefits* from [VA], an applicant must file a claim 'in the form prescribed by the Secretary.' . . . Mr. Fleshman contends the statute and regulation merely require a person claiming veterans' benefits to file a claim on an application form provided by the Secretary. We disagree. That result would be compelled only if the provision used language such as 'on the form' or 'using the form.' . . . We agree with the government's contention that section 5101(a) requires applicants to submit a claim in a particular format, containing specified information, and signed by the claimant, as called for by the blocks on the application form.

*Id*. at 1431-32 (emphasis added). This Court, in *Fleshman*, recognized not only that a specific claim in the form prescribed by the Secretary is required before benefits may be paid, but recognized that the Secretary can designate substantive information that, if sufficiently fundamental to the claim process, must be provided

before this standard is met.[6] *Id.* (application missing critical information is not in the form prescribed by the Secretary).

Similarly, this Court has held that section 5101(a) is a provision of "general applicability" and requires that a claim must be filed for "any type of benefit to accrue or be paid." *See Jones v. West*, 136 F.3d 1296, 1299 (Fed. Cir. 1998). In *Jones*, this Court held that even when certain terms of 38 U.S.C. § 5121(a) appeared to condition entitlement only on the presence of evidence in the file, section 5101(a) imposed a "restriction" that "limited" section 5121(a) by requiring a specific claim be filed. *Id*. at 1298-1300.

At the same time, no statute requires VA to accept "any communication or action" as an application. VA's policy of accepting "any communication or action" as the "specific claim in the form prescribed by the Secretary" provided it met the requirements of prior 38 C.F.R. § 3.155 was only ever a feature of VA's regulations.

Accordingly, Congress has "directly spoken to the precise question at issue" by providing that the Secretary may prescribe rules concerning the "forms of application," and requiring in statute that a claimant *must* file "a specific claim in

[6] We note that while a submission such as Mr. Fleshman's would no longer constitute an informal claim under the final rule, the incomplete application itself would hold his effective date for up to one year pursuant to new 38 C.F.R. § 3.155(c). JA38.

the form prescribed by the Secretary" before receiving any benefits. *Chevron*, 467 U.S. at 842-43; 38 U.S.C. §§ 501(a)(2), 5101(a)(1).

### B. Legislative Ratification Generally Does Not Preclude Agencies From Exercising Continuing Authority By Revising Regulations

The principle of legislative ratification provides that when Congress re-enacts a provision without any applicable modification, it accepts judicial and administrative constructions of that provision. *See e.g., N.L.R.B. v. Gullet Gin Co*, 340 U.S. 361, 366 (1951); *Helvering v. R.J. Reynolds Tobacco Co*, 306 U.S. 110, 115 (1939). There are examples of this doctrine being applied to hold that Congress acquiesced in the agency's explicit construction of a particular statutory term, or in the agency's view of the scope of its own authority. *See e.g., Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 380-81 (1969); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986). And certainly, if Congress does not overrule a longstanding agency practice that it is aware of, that strongly implies the practice is acceptable. *See Disabled American Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317, 1322 (Fed. Cir. 2005). But we have found no case that would be analogous to the result petitioners urge here: the agency *silently loses* explicitly delegated authority that it has never disclaimed by taking a *more liberal* approach than it was required to take, because Congress in the meantime has enacted legislation elevating agency regulations dealing with related but distinct matters to the statutory level.

That is likely because the Supreme Court has made clear that is not how legislative ratification works:

> The oft-repeated statement that administrative construction receives legislative approval by reenactment of a statutory provision, without material change . . . covers the situation where the validity of administrative action standing by itself may be dubious . . . It does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers . . . [t]he contrary conclusion would . . . drastically curtail the scope and materially impair the flexibility of administrative action[.]

*Helvering v. Wilshire Oil Co.*, 308 U.S. 90, 100 (1939). The Supreme Court later elaborated that the doctrine of legislative ratification "is no more than an aid in statutory construction . . . it does not mean that the prior construction has become so embedded in the law that only Congress can effect a change . . . [i]t gives way before changes in the prior rule or practice through exercise by the administrative agency of its continuing rule-making power." *Helvering v. Reynolds*, 313 U.S. 428, 432 (1941).

The Fourth Circuit accordingly rejected an argument almost identical to petitioners' current one, albeit in a different context. *McCoy v. U.S.*, 802 F.2d 762, 764 (4th Cir. 1986). In *McCoy*, appellants argued that they were entitled to tax deductions disallowed under the contemporaneous Treasury Department regulation, but allowed under a prior one, and that Congress' subsequent reenactment of the provisions of the tax code the relevant regulations interpreted

precluded the Treasury Department from revising its regulations. *Id*. The court recognized that "[w]hile . . . regulations thus approved by Congress may acquire the force of law," that does not imply "the corollary . . . that such a 'reenacted' regulatory interpretation may be changed only by Congress." *Id*. at 765; *citing Dow Chemical Co v. Kavanagh*, 139 F.2d 42, 44-45 (6th Cir. 1943); *accord Campbell v. Brown*, 245 F.2d 662, 666 (5th Cir. 1957).

We acknowledge that Congress can ratify an agency's conclusion regarding limitations on its own authority. *FDA v. Brown & Williamson Tobacco Corp*. 529 U.S. 120 (2000). That has not occurred here. In *Brown & Williamson*, the Supreme Court held that the FDA lacked authority to regulate tobacco on the grounds that nicotine is a "drug" in part because the agency had "repeated[ly]" declared it lacked such authority, and Congress had repeatedly declined to extend it. 529 U.S. at 144, 156. VA's adoption of a regulation containing a liberal effective date rule does not mean it has disclaimed its explicit authority to regulate the "forms of application[.]"

In *GPX*, this Court held that Congress legislatively ratified explicit administrative and judicial interpretations that Government payments are not "subsidies" in a nonmarket economy context, with the effect that countervailing duties cannot be imposed. Congress later revised relevant statutes without substantively altering countervailing duty law. 666 F.3d at 738. Accordingly, the

Government was prohibited from reversing its position that the law did not authorize countervailing duties. *Id*. at 739-40. Put differently, in *GPX*, Congress revisited but did not substantively change law in spite of an agency and judicial understanding that the law *did not permit* the Government to do something, with the implication that any Government discretion had been subsumed by the later act of Congress. *Id*. This case presents a very different scenario – the fact that VA has heretofore maintained the informal claims rule suggests that it is acceptable, but does not establish that it has been understood to be to be unambiguously required by statute. The fact that Congress has revisited the effective date statutes without either codifying or disturbing the informal claims rule does not imply that the informal claims rule is now *required*.

Further, we note VA is not attempting a binary reversal of position, comparable to *Brown & Williamson* or *GPX*, but is adjusting the scope of a liberalizing agency practice. The final rule continues to allow claimants to lock in an effective date in the event benefits are granted with a simpler communication than is required to complete a standard application form. JA7-9.

C. The Informal Claims Rule Is Not Statutory

Even putting aside that the legislative ratification principle is inapplicable under Supreme Court precedent, petitioners' argument would treat prior VA regulations as constructive statutes, even where Congress codified some

regulations and not others. Congress clearly did model the effective date provisions now found in 38 U.S.C. § 5110 on VA regulations. *Compare* Pub. L. No 85-86 § 910(a)-(b), 71 Stat. 83, 119 (1957) with 38 C.F.R. § 3.212 (1956) (incorporating Veterans Regulation No. 2, part I, para. 1(a) (1933) as amended). The key feature of these provisions is that they generally tie effective dates to receipt of the "application." *Id*. But no statute mentions "informal claims," or contains the operative language of the informal claim regulation: that a claim is "effective" or "considered filed" as of the date of "[a]ny communication or action" seeking to initiate it, rather than the date of the application itself.[7] The 1957 Act did not codify 38 C.F.R. § 3.27, the contemporaneous regulation dealing with informal claims. If Congress truly desired to codify the concept of informal claims, it could have simply done so. The natural inference is that when Congress elevated some regulations and practices dealing with effective dates to the statutory level, but not others, it intended certain matters to remain flexible at the regulatory level.

The meaning of the operative statutory term, "application," in 1956 regulations strengthens this conclusion. The last edition of the Code of Federal Regulations to publish before the 1957 Act clearly understood an "application" as

[7] *Boggs v. Peake*, 520 F.3d 1330, 1334-35 (Fed. Cir. 2008) is therefore distinguishable because it dealt with a term in a 1956 regulation that was actually codified.

a standard VA application form. 38 C.F.R. § 3.26(a) (1956) ("[a] properly completed and executed VA Form 8-526, upon receipt by [VA], constitutes an application for benefits." Accordingly, accepting petitioners' argument in this regard leads to exactly the opposite conclusion they wish this Court to draw, *i.e.*, that a completed VA standard form constitutes an application.

VA Regulation 1026(A), which is identical to section 3.26(a) (1956), was revised to become 38 C.F.R. § 3.151, requiring "a specific claim in the form prescribed by the Administrator[.]"[8] The informal claims rule was always maintained as a related but separate provision from this baseline requirement to file an application. 38 C.F.R. § 3.27 (1956); 38 C.F.R. § 3.155 (2014). Both in 1956 and in 2014, the informal claims rule referenced the formal "application" form as a separate filing from "any communication or action." *Id*. The contention that by elevating one term ("application") to statute, Congress in effect elevated another ("informal claim") when the two have always existed side-by-side as related but separate concepts is unjustified.

The conclusion that Congress did not make the informal claims rule statutory, whether by ratifying any single meaning of the term "application" or otherwise, is strengthened by the fact that Congress considered, and adjusted, VA's

[8] *See* Addendum6-7. VA Transmittal Sheet 192, issued May 29, 1959, explains that "Paragraph 1151" of VA regulations was a "[r]estatement of VA Regulation 1026." Paragraph 1151 became section 3.151. *See* Addendum8.

regulatory authority in the 1957 Act, but retained provisions explicitly providing authority to regulate the "forms of application." The House Report explained the 1957 Act was intended in part to "repeal those provisions of law which are obsolete[.]" Yet Congress retained VA's authority to prescribe regulations concerning the "forms of application[,]" while removing a superfluous provision that could have been read to limit the Administrator's authority. *See* H.R. Rep. 85-279 (1957), *reprinted at* 1957 U.S.C.C.A.N. *1214, *1230; Pub. L. 85-56, § 210(c), 71 Stat. 83, 92 (1957). In other words, VA retained "continuing rulemaking power." *See Reynolds*, 313 U.S. at 432. That Congress retained the scope of the administrator's authority to regulate the "forms of application" shows that Congress concluded this authority was still a crucial piece of the statutory framework regarding claim initiation, notwithstanding its codification of some regulatory provisions. Petitioners' argument would remove the flexibility Congress deliberately left in place.

D. <u>Section 5102(c) Is Not To The Contrary</u>

1. <u>Section 5102(c) Is Not An Effective Date Statute</u>

Petitioners argue that 38 U.S.C. § 5102(c) requires VA to hold a claimant's effective date by reason of an incomplete application. On its face, section 5102(c) provides that if VA notifies a claimant that her application is incomplete pursuant to 38 U.S.C. § 5102(b), the claimant has one year from the date of notification to

complete the application. The statute does not state that an incomplete application must hold a claimant's effective date of benefits. It says nothing about effective dates, or what information is necessary to complete the application. These matters are explicitly addressed in 38 U.S.C. §§ 5101 and 5110, respectively. The only thing section 5102(c) makes clear about whether benefits are payable for a given period is that "no benefit may be paid or furnished by reason of the claimant's application" if it is not completed within one year.

Section 5102(c) is not an effective date statute, and certainly does not displace the broad authority conferred by section 5101. Rather, section 5110 provides that awards are generally effective as of the "date of receipt of application therefor" and does not specify whether this requirement is met by the filing of an incomplete application, or a duly completed one. Section 5102(c), in turn, suggests that VA "may" pay or furnish benefits by reason of the incomplete application provided that it is completed within one year of the date VA's notice under section 5102(b) is sent, but plainly does not require it. "The key word in the statute is 'may.'" *See National Organization of Veterans Advocates, Inc. v. Secretary of Veterans Affairs*, 669 F.3d 1340, 1346 (Fed. Cir. 2012) (statute providing VA "may" accept a private physician's report did not mean VA was required to accept such a report).

Petitioners rejoin that this Court rejected a similar argument in *PVA*, 345 F.3d at 1345. Pet Br. 32. That decision dealt with the time to submit evidence required to substantiate ultimate entitlement to benefits under 38 U.S.C. § 5103 (2000) after a claim has been filed, not with the prior step of initiating a claim. The "may" construction in Section 5103(b)(1) at the time of *PVA* made clear that a claim would be initially denied if evidence to substantiate entitlement was not received within one year. *See* VETERANS CLAIMS ASSISTANCE ACT OF 2000, Pub. L. 106-475 § 3, 114 Stat 2096 (2000). While acknowledging its reading was not compelled by the plain language of the statute, the Court reasoned that VA's construction potentially foreclosed the opportunity to submit evidence before the period in which to do so had run.[9] 345 F.3d at 1345-46. VA's construction of 5102(c) does not foreclose anything clearly allowed by the statute, which on its face only *prevents* VA from extending placeholders in excess of one year.

This conclusion is strengthened by the structure of 38 U.S.C. Ch. 51. Chapter 51 is broken into three subchapters. Sections 5101 and 5102 are in subchapter I, "claims." Section 5110 is in subchapter II, "effective dates." It is doubtful Congress would have silently embedded the broad statutory effective date rule petitioners now discern outside the section and subchapter of the United States Code explicitly dealing with that subject.

[9] As petitioners acknowledge, the statute now explicitly allows this. 38 U.S.C. § 5103(b)(3).

Any ambiguity on the question of the statutorily required effective date treatment of an incomplete application is resolved by deferring to VA's view, for two reasons. The first is that any ambiguity between section 5102(c) and section 5110 must be evaluated in light of section 5101(a)(1) and section 501(a)(2). Section 501(a)(2) provides VA authority to designate, by regulation, the form any application must take. Further, as established above, section 5101 provides VA clear authority to require a claimant to submit not just a completed application form but "a specific claim in the form prescribed by the Secretary[.]" Section 5102(c) does not establish that a submission must be treated as a claim before that requirement is met. *See Fleshman*, 138 F.3d at 1432 ("the applicant will not have satisfied the 'in the form prescribed by the Secretary' requirement of section 5101(a) until he submits the requested information.").

The second reason is *Chevron* deference. VA's interpretation of section 5102(c) is reasonable. By interpreting section 5102(c) as permitting, but not requiring, VA to hold a claimant's effective date of benefits by reason of an incomplete application, VA's reading gives the term "may" its natural effect. Additionally, this reading avoids any tension with section 501(a)(2), and with section 5101(a)(1), which makes clear that the submission of a "specific claim in the form prescribed by the Secretary" is antecedent to the payment of benefits.

2. 5102(c) Is Limited To Incomplete Applications

Even if the Court disagrees, and finds that that section 5102(c) establishes a statutory requirement that VA hold a claimant's effective date of benefits for an incomplete application, the import is minimal. Section 5102(c) only refers to incomplete applications under section 5102(b), not to "any communication or action" or some other construction of similar breadth to the prior informal claims regulation. It therefore does not establish that all communications must hold a claimant's effective date of benefits, and the intent to file structure created by the final rule is not inconsistent with it. In addition to the intent to file system in 38 C.F.R. § 3.155(b), the final rule largely moots the issue by holding a claimant's effective date for up to one year from the date of receipt of the incomplete application form. JA38, 38 C.F.R. § 3.155(c).

Petitioners argue that because VA had defined "application" to mean "a formal or informal communication" seeking a benefit, Congress adopted this understanding in 5102(c). Pet. Br. 31; *see* 38 C.F.R. § 3.1(p) (2003). This argument shares the same faulty doctrinal underpinnings as petitioners' legislative ratification argument as discussed above. Putting that aside, this argument leads to a result flatly contrary to section 501(a)(2). Prior section 3.1(p) cannot bear such weight.

The United States Code does not define "application", or "claim", or specify what communications constitute an "incomplete application." The obvious conclusion is that VA may designate what communications do and do not constitute "incomplete applications" for purposes of 5102(c) pursuant to its explicit authority to specify, by regulation, the "forms of application[.]" 38 U.S.C. § 501(a)(2). VA plainly retains authority to specify procedures through which it will recognize and administratively control an "incomplete application." VA has done so by specifying the mechanisms claimants may use to hold an effective date of benefits prior to filing a complete standard application form. Petitioners' argument that VA *must* accept any informal communication (essentially, *anything*) as an incomplete application, and accordingly has zero flexibility to control the scope or structure of effective date placeholders, is contrary to this authority, and this argument therefore lacks merit on its face.

## III. *Chevron* "Step Two"

### A. The Final Rule Is Pro-Claimant

Petitioners seem to believe that if they can demonstrate that the final rule is not pro-claimant, that the Court must invalidate the entire rule as beyond the Secretary's authority. Pet. Br. 34-38. That is not the law. Rather, the question is whether Congress has "directly spoken to the *precise* question at issue," not whether a regulation contravenes a general Congressional policy gleaned from

multiple sources. *Chevron*, 467 U.S. at 842-43 (emphasis added). If Congress has not addressed the precise question at issue, the Court asks whether the regulation is based on a "permissible" construction of the applicable statute. *Id*. VA's regulations must be reasonable, and obviously must be consistent with the "statutory framework." *Sears v. Principi*, 349 F.3d 1326, 1330 (Fed. Cir. 2003) *cert. denied* 541 U.S. 960 (2004). Consistency with the "statutory framework" plainly cannot be reduced to the single-factor test of whether the regulation is uniformly "pro-claimant."

The "statutory framework" is established primarily by the actual content and structure of the statutes themselves, not solely by broad statements of policies reflected in the statutory scheme. As relevant to this rule, the statutory framework expressly authorizes VA to establish requirements for applications and other matters. *See* 38 U.S.C. §§ 501, 5101(a). Congress unquestionably understood and intended that such requirements necessarily may impose some degree of responsibility on claimants. *E.g*., 38 U.S.C. § 5107(a) ("a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary."). Petitioners articulate no basis whatsoever to conclude that the regulation is not based on a permissible construction of 38 U.S.C. § 5101(a)(1). Nor could they, since the regulation is consistent with the plain language of section 5101(a)(1) and this Court's holdings. *See Fleshman*, 138 F.3d at 1431-32.

Petitioners suggest that this is a *Chevron* "step one" issue because *Brown v. Gardner*, 513 U.S. 115, 117-118 (1994) has been referred to as articulating a "canon." Pet. Br. 35. In *Brown*, the Supreme Court struck down a VA regulation requiring a showing of fault on the part of the VA in claims under 38 U.S.C. § 1151. In addressing the Secretary's contention that fault inheres in the concept of injury, the Court explained that at most, this would imply a statutory ambiguity to be resolved regarding the fault requirement, and expressed doubt that this hypothetical ambiguity would be resolved in the Government's favor given the rule that "interpretive doubt is to be resolved in the veteran's favor[.]" 513 U.S. at 117. But the Court explained this was not the basis for its holding, because the statutory context made unambiguously clear that no fault requirement was possible. *Id*. at 117-118.

Accordingly, *Brown* did not hold that VA is functionally stripped of its explicitly delegated rulemaking authority, or that VA is the only agency that does not receive *Chevron* deference when filling a statutory gap. Petitioners do not meaningfully develop this argument, perhaps recognizing this Court's precedents are uniformly in accord. *Sears*, 349 F.3d 1331-32 (rejecting argument that "pro-claimant policy underlying the veterans' benefits scheme overrides *Chevron* deference" and recognizing that "we must take care not to invalidate otherwise reasonable agency regulations simply because they do not provide for a pro-

claimant outcome in every imaginable case."); *accord Gallegos v. Principi*, 283 F.3d 1309, 1314 (Fed. Cir. 2002), *cert. denied* 537 U.S. 1071 (2002); *Gilpin v. West*, 155 F.3d 1353, 1356 n.2 (Fed. Cir. 1998), *cert. denied*, 526 U.S. 1144 (1999); *see also Disabled American Veterans*, 234 F.3d 682, 692 (Fed. Cir. 2000) ("generous spirit" of veterans benefits laws does not override "clear meaning of a particular provision.") (internal quotations and citations omitted).

In any event, petitioners are wrong. The final rule is *more claimant friendly* than the informal claim rule that preceded it in two crucial ways. First, an informal claim had to be received in writing. *Rodriguez*, 189 F.3d at 1353-54. But under the final rule, an intent to file a claim may be submitted with as little as a phone call. JA37. Second, the informal claim regulation required the claimant to "identify the benefit sought." 38 C.F.R. § 3.155(a) (2014). Case law is clear that this meant a veteran was required to specify the nature of the disability for which he or she was seeking benefits in order to hold an effective date of benefits through an informal claim. *Brokowski*, 23 Vet. App. at 86-87. In the final rule, VA made clear that "[a]n intent to file a claim need not contain this level of specificity." JA7. "An intent to file a claim must identify the general benefit (e.g., compensation, pension), but need not identify the specific benefit claimed or any medical condition(s) on which the claim is based." JA37; 38 C.F.R. § 3.155(b)(2). VA adopted this "substantive liberalization of the information necessary to

establish an effective date" because it will "align claimant incentives with the interests of efficient and accurate claims processing." JA7. A system allowing claimants to hold an effective date with as little as a phone call that provides *zero* substantive information specific to the claim is hardly a "trap for the unwary." Pet. Br. 36 (*citing Comer v. Peake,* 552 F.3d 1362, 1369 (Fed. Cir. 2009)).

It is also worth noting what the final rule does not (and in some cases, could not) change. Claimants retain the right for VA to assist them in developing evidence and information necessary to substantiate their claims. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159. VA must consider "all information and lay and medical evidence of record" when making a decision, and whenever there is an approximate balance of positive and negative evidence on any issue relevant to the claimant's entitlement, must resolve any reasonable doubt in the veteran's favor. 38 U.S.C. § 5107(b); JA38; *see* 38 C.F.R. § 3.155(d)(2). The appellate system is generally administered on an open-record basis, and new evidence submitted following VA's initial decision that leads to a grant of benefits generally relates back to the effective date of the original claim. 38 C.F.R. §§ 3.156(b), 19.37, 20.1304. The fact that this process begins by filing a standard application form, or a placeholder communication later perfected by the filing of a standard application form, does not convert the process into an adversarial one.

B. The Final Rule Is Rational

Petitioners invite this Court to participate in an exercise in manufactured doubt to somehow arrive at the conclusion that standardized claim initiation would not increase the accuracy and efficiency of the system, and over time, dramatically expedite the delivery of benefits to veterans. First, the agency will always be in the best position to determine what efficiencies will improve the provision of benefits to the veteran community vice the petitioners. More fundamentally, the regulations will improve the system – many of the benefits of requiring standard forms, such as ease of identification and repeatability, are obvious. The specific bases the petitioners offer for finding the rule arbitrary and capricious do not withstand scrutiny.

Petitioners first argue that VA's justification as to why the standard forms should not be optional, *i.e.*, such would not achieve standardization and predictability, does not hold up. Pet. Br. 41; *see* JA20. Petitioners suggest that requiring standard forms does not obviate VA's duty to review the incoming submission, and to send the correct form pursuant to section 5102(a) if necessary, and therefore the final rule will create no efficiency.

First, the fact that VA must review all submissions in order to comply with section 5102(a), or for their evidentiary value, does not mean that no administrative work is saved by requiring standard forms for claim initiation. If

only certain filings hold effective dates, the process of setting an effective date following an award of benefits is simplified. Setting an effective date will be a much simpler matter of checking the date of the standard application form, and whether and when an intent to file was received. At minimum, informal submissions would not need to be reviewed again and interpreted to determine whether they constituted an informal claim, and for which disability. This alone is a rational basis for the rule.

But petitioners are missing a more fundamental point. This is not just about eliminating some personnel-intensive review steps. Requiring standard forms means that claims *always* originate in one place, with the same data pattern. If forms are optional rather than required, a number of their benefits cannot be realized.

Even if received in paper, standard forms "can more easily be scanned and turned into data for purposes of processing a claim within VA's own business applications." JA363. In other words, the essential data for the claim can be automatically extracted from the form and controlled without a claims processor having to do so by hand in the vast majority of cases. This is not possible if the form is optional because rather than always appearing the same way, claims can originate anywhere in the file, with any data pattern. Unless the form is required,

the question of whether a claim has been filed is one of interpretation, not procedure.

Second, being able to rely on the idea that "it's not a claim unless it is on the form" clarifies the substance and procedural status of the entire claims file. Under the final rule, rather than VA personnel having to interpret the correct procedural identity of every claimant submission -- is it a claim; is it evidence in one or more different claims already pending or not yet filed; is it a notice of disagreement, or all three at once -- the answers to these questions will be clear. By controlling the possibility that any document might contain an overlooked claim, adjudicators can focus on developing and deciding the claims before them. Again, this only works if the form is required.

Third, VA's most commonly used standard application forms now contain the notice required by 38 U.S.C. § 5103(a). The final rule allows VA to virtually automate the process of providing notice under section 5103(a) in the vast majority of cases. JA364-65.

And the intent to file structure leads to efficiencies of its own. VA deliberately liberalized the amount of substantive information needed to hold an effective date in order to "align claimant incentives with the interests of efficient and accurate claims processing." JA7. Under the informal claims regulations and therefore under *Brokowski*, claimants were required to specify the nature of the

disability for which they were seeking benefits in order to hold a date. 23 Vet. App. at 86-87. This gave claimants an incentive to send an informal communication specific to each disability as soon as they became aware of potential entitlement. Under the final rule, a claimant's incentive is to file one intent to file, and one standard application form, not successive non-standard submissions.

Informal claims were not just retrospective effective date largesse. *Contra* Pet. Br. 43. Petitioners ignore that prior regulations treated an informal request to increase or reopen a prior decision as the completed claim with no further requirement to file a standard application form. Section 3.155(c) (2014). Further, even in the context of original claims, "VA is required to identify and act on informal claims for benefits[.]" *Brokowski*, 23 Vet. App. at 85 (citing prior section 3.155(a)). Under prior regulations, an informal claim which had not been identified or adjudicated constituted a "pending claim." *Id*. at 86; *see* 38 C.F.R. § 3.160(c) (2014); *see also Adams v. Shinseki*, 568 F.3d 956, 960 (Fed. Cir. 2009). The implicit denial rule provided some measure of repose whenever a claim that VA missed was reasonably related to a claim it did adjudicate. *See Deshotel v. Nicholson*, 457 F.3d 1258, 1261 (Fed. Cir. 2006); *Ingram v. Nicholson*, 21 Vet. App. 232, 248-250 (2007); *Adams*, 568 F.3d at 963. But the implicit denial rule

requires the premise that the informal submission itself was an actionable and pending claim.

Petitioners also argue that the final rule does not account for potential impact on elderly or vulnerable veterans, and that the rule should have equitable exceptions built in. Pet. Br. 38, 44-46. The intent to file structure is itself an equitable exception to the requirement to file a standard application form, and allows claimants to secure an effective date with a phone call. JA6-8. Petitioners argue that this is not a generous enough exception because some claimants may not be aware it is an option, or that it might be challenging for some with severe disabilities. Pet. Br. 44. Essentially, petitioners object to there being any mechanical barrier at all to the establishment of an effective date. But informal letters present the same issues, *e.g.*, obtaining the address; mailing.

But more fundamentally, the fact that VA did not design around the least common denominator does not render the final rule arbitrary and capricious. As the Supreme Court has noted, "[t]he 'task of classifying persons for . . . benefits . . . inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line.'" *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 179 (1980) (quoting *Mathews v. Diaz,* 426 U.S. 67, 83-84 (1976)). Provided there is a legitimate basis for the general classification established by Congress or the agency, it is not arbitrary or

capricious simply because it may be overinclusive or underinclusive on some applications. *Weinberger v. Salfi*, 422 U.S. 749, 776 (1975); *see Califano v. Jobst*, 434 U.S. 47, 53 (1977) ("[g]eneral rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases"); *Haas v. Peake*, 525 F.3d 1168, 1193 (Fed. Cir. 2008). No rule can make the process of establishing an effective date happen instantaneously once the veteran decides to file. It is perfectly rational for VA to conclude that a rule allowing any writing to constitute a claim adds to delay and confusion when applied to a large adjudicative system (which affects *all* veterans, JA362), and that requiring standardized filings would alleviate this issue while placing minimal burden on claimants.

We note that veterans submitting claims, or an intent to file, within one year of a triggering event potentially creating entitlement, such as an increase in disability or discharge from military service, will generally receive the triggering event as their effective date. JA10-11; *see* 38 U.S.C. § 5110(b). Accordingly, an elderly veteran who files a claim for increase, or a severely disabled veteran who files his first claim following discharge, will not lose any effective date coverage so long as an intent to file or a claim is submitted within one year. *Id*.

C. <u>The Final Rule Is A Logical Outgrowth Of The Proposed</u>

Having argued VA didn't make enough changes to accommodate individual circumstances, Pet. Br. 44-46, petitioners next argue that VA made too many changes. Pet. Br. 46-48.

"The APA requires an agency conducting notice-and-comment rulemaking to publish in its notice of proposed rulemaking 'either the terms or substance of the proposed rule or a description of the subjects and issues involved.'" *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007); *quoting* 5 U.S.C § 553(b)(3). This is generally understood to mean the final rule must be a "logical outgrowth" of the proposed. 551 U.S. at 174 ("[T]he object, in short, is one of fair notice."). To fail this test, the final rule must find "no root" in the proposal, amounting to a "surprise switcheroo on regulated entities." *Envtl. Integrity Project v. E.P.A.*, 425 F.3d 992, 996 (D.C. Cir. 2005).

The agency has not "switched" direction from the "substance" of the proposed rule, but has declined to go as far as originally proposed, following consideration of the public comments. *See Am. Iron & Steel Inst. V. E.P.A.*, 886 F.2d 390, 400 (D.C. Cir. 1989 ("One logical outgrowth of a proposal is surely . . . to refrain from taking the proposed step."); *see also Schor*, 478 U.S. at 845 ("tax[ing] an agency with 'inconsistency'" for circulating a proposal it has not decided to completely enact is antithetical to purpose of notice and comment). VA

proposed to require all claims to originate on standard forms while simultaneously incentivizing electronic submissions by eliminating all effective date placeholders for paper claims. JA364, 377. The final rule requires *less* from veterans in order to hold an effective date. The fact that VA did not go as far as it originally proposed, and restructured the rules to execute its concession, does not mean that the public was not given "fair notice."

Petitioners suggest that VA has "bootstrap[ped] notice" of this liberalizing change from comments. Pet. Br. 48, n25. A final rule qualifies as a logical outgrowth if interested parties "should have anticipated that the change was possible" and thus were given a meaningful opportunity to comment. *CSX Transp., Inc. v. Surface Transp. Bd.* 584 F.3d 1076, 1079-1081 (D.C. Cir. 2009) (quotations and citations omitted). Of course, two commenters did exactly that. *See* JA7, 102, 282. That VA might decline to totally eliminate effective date placeholders for paper claims is a potential result of the proposed rule, as is the possibility that VA would attempt to reconcile this policy with its need for standard inputs. The final rule uses different terminology and structure, but effects a policy urged to reconcile these issues. The fact that this policy grows out of public comments is evidence that it was within the "fair notice" provided by the proposed rule, not that VA pulled a "switcheroo".

D. VA's Claim Adjudication Responsibilities Have Not Been Altered By The Regulation

On its face, new 38 C.F.R. § 3.160(a)(4) is not arbitrary and capricious. Paragraph (a)(4) requires only that a veteran provide a description of "any symptom(s) or medical condition(s) on which the benefit is based[.]" VA found that the sheer volume of claims not initiated on standard forms was hampering its ability to timely and efficiently process veterans' claims for benefits because such submissions "increase[] time spent determining whether a claim has been filed, identifying the benefit claimed, sending letters to the claimant and awaiting a response[.]" JA362-363. At the same time, VA was cognizant of the need to maintain the pro-claimant, non-adversarial character of the veterans benefits system. JA363. Accordingly, VA determined that it would broadly and sympathetically construe the scope of all claims for benefits, but still require a basic identification on a standard form of the substance of the claim being presented for adjudication. JA14-15. In terms of the specific amount of substantive information required, VA chose a standard already reflected in its regulations governing the activation of the duty to assist. *Compare* 38 C.F.R. §§ 3.159(a)(3) with new 38 C.F.R. § 3.160(a)(4). VA's resolution of these issues reflects a rational connection between the facts found and the choice made, and a consideration of all relevant factors, and is not contrary to law. Petitioners fail to establish otherwise.

Petitioners insist that new 38 C.F.R. § 3.160(a)(4) is arbitrary and capricious because VA has upended the veterans benefits system by renouncing its duty to adjudicate claims reasonably raised by the evidence of record. The final rule is explicitly to the contrary. JA14-16, 38. The final rule did not change the amount of issue identification that was legally required before the rule went into effect. The only change in this area caused by the final rule is the requirement that the claim begin on a standard application form. The final rule does not alter the substantive scope of VA's obligations in developing and adjudicating a claim.

Just as VA's regulations implementing the duty to assist require claimants to identify "the benefit claimed and any medical condition(s) on which it is based" before VA's duty to assist is triggered, the final rule requires claimants to provide "[a] description of any symptom(s) or medical condition(s) on which the benefit is based" in the event the designated form so requires in order for a submission to be a complete claim. JA38; *see* 38 C.F.R. § 3.159(a)(3). In response to comments expressing concern that a rule requiring all claims to originate on standard forms implied that VA would no longer grant benefits based on claims reasonably raised by the evidence of record, VA explained that this practice would continue. JA14-16, 38; 38 C.F.R. § 3.155(d)(2).

> This rule does not alter VA's general practice of identifying and adjudicating issues and claims that logically relate to and arise in connection with a claim pending before VA. Although the rule requires claimants to specify the symptoms or conditions on which

> their claims are based and the benefits they seek, it generally would not preclude VA from identifying, addressing, and adjudicating related matters that are reasonably raised by the evidence of record which the claimant may not have anticipated or claimed, but which logically should be addressed in relation to the claim filed. Rather, such matters generally may be viewed as being within the scope of the claim filed, as sympathetically interpreted in light of the record.

JA14.

VA further explained that this principle implied that whenever it receives a claim, a number of analyses would be triggered regardless of whether or not the claimant specifically raised them. First, VA would broadly construe the scope of all symptoms or conditions identified on the application form. JA14-15. For example, a claim for the "right knee" can be sympathetically read to encompass claims for arthritis, ankyloses of the knee, knee "locking," etc., or a claim for "heart condition" would lead VA to consider potential entitlement to both endocarditis and rheumatic heart disease, depending on the evidence of record. *Id*. Second, VA would also consider possible entitlement to benefits based on secondary service connection or service connection based on aggravation of an already service-connected disability. JA15, 38. Third, VA would consider entitlement to special ratings such as total disability based on individual unemployability (TDIU). *Id*. Fourth, VA would consider potential entitlement to ancillary benefits that arise as a result of the adjudication decision, such as adaptive automobile allowance. *Id*. Fifth, VA would be required to identify and

adjudicate "any other issues that are reasonably within the scope of the issues enumerated in the complete claim." *Id*.

Therefore, under the final rule, only an issue that has no factual, medical, or causal relationship to any of the symptoms or conditions identified on the standard form would not be considered part of the claim. In other words, only an issue flatly unrelated to the claim presented to VA for consideration would be outside the scope of the claim. As we demonstrate more fully below, this was the state of the law before the final rule, and the rule is accordingly not the renunciation that petitioners insist.

1. <u>38 U.S.C. § 5107(b) Is Not To The Contrary</u>

In arguing that VA is required to identify and adjudicate issues flatly unrelated to those presented to it for adjudication, petitioners point to no statute other than 38 U.S.C. § 5107(b), which provides in pertinent part that VA must "consider all information and lay and medical evidence of record in a case before the Secretary." Pet. Br. 52-53, n26. Nothing in the final rule alters VA's statutory obligation to consider all evidence of record. 38 C.F.R. § 3.103(a), which provides that VA must "render a decision which grants every benefit that can be supported in law while protecting the interests of the Government" was not amended. The final rule requires VA to consider "all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as

entitlement to any additional benefits for complications of the claimed condition[.]" JA38, 38 C.F.R. § 3.155(d)(2). The question is not whether VA will consider the entire record, but whether a piece of evidence relating to a symptom that was not presented to VA for adjudication, and bears no factual, causal, medical or other relationship to the issues that *were* presented for adjudication, *itself constitutes a claim for benefits* for that symptom or condition. Section 5107(b) simply does not address this question. Further, it is a fundamental rule of statutory construction that the meaning and effect of statutes is to be determined with reference to other statutes. *Terry v. Principi*, 340 F.3d 1378, 1385 (Fed. Cir. 2003). Section 5107(b) must therefore be read in concert with the explicit terms of section 5101(a)(1), not read so broadly as to contradict it.

2. The *Hodge / Roberson* Line Of Cases Is Not To The Contrary

In arguing that the final rule constitutes a sea change, petitioners primarily rely on cases citing the legislative history of the Veterans Judicial Review Act (VJRA) for the proposition that VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." Pet. Br. 51-55; *see* H.R. Rep. No. 100-963 at *13 (1988) *reprinted in* 1988 U.S.C.C.A.N. 5782, 5794-95; *see Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998); *see also Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001); *see also Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004). Petitioners construe this statement

as establishing that VA must consider, and treat as freestanding "claims," symptoms and conditions that were never presented to VA for adjudication. That is not the law.

First, this statement from legislative history still requires a "claim." The very house report which formed the genesis of this line of cases expresses the understanding that the VA adjudicative process begins "[a]fter a claim is filed" which then causes the agency to help the claimant "compile evidence to support his or her claim." H.R. Rep. No. 100-963 at *13. This statement does not define what does and does not constitute a "claim," and does not unambiguously require VA to identify and adjudicate issues and claims that are unrelated to the claim(s) presented to VA on a standard application form. *See* JA14-15. Rather, it recognizes that the scope of required evidence gathering is informed by the "claim" presented to VA for adjudication. H.R. Rep. No. 100-963 at *13. This statement from legislative history also is a general summary of the pro-claimant principles animating the system, offered in the context of discussing the competing principles at work in Congress' decision to add judicial review to the system. It is not an explanation offered to illuminate the meaning of any particular statute. *Id*.

This reasoning is consistent with the statutory structure, and regulations in place before the final rule was enacted. The statutory structure requires a "specific claim" in order to support a benefit award, and to establish a date on which

entitlement to an award may be effective. 38 U.S.C. §§ 5101(a)(1), 5110(a). 38 C.F.R. § 3.103(a) specifies that every claimant has the right to written notice of the decision made regarding "his or her claim" and that VA will assist in developing "the facts pertinent to the claim." Those provisions contemplate adjudicating matters that are reasonably within the scope of the claim filed by the claimant, but do not create a duty to adjudicate matters unrelated to the claim filed.

Similarly, the idea that evidence of a symptom that is factually, medically, and causally unrelated to the claim presented to VA itself constitutes a claim for benefits is not just incompatible with new section 3.160(a)(4), but with section 3.159(a)(3). As the final rule explained, the requirement to specify the "symptom(s) or medical condition(s) on which the benefit is based" in section 3.160(a)(4) was meant to be satisfied whenever the requirement to specify "the benefit claim and any medical condition(s) on which it is based" in section 3.159(a)(3) is satisfied. This information is a central requirement for the submission of a "substantially complete application." If the requirement in new section 3.160(a)(4) to specify the symptom or condition on which the benefit is based is inconsistent with the VJRA legislative history and accordingly with *Hodge*, 3.159(a)(3) would have suffered the same flaw. Yet this Court has explicitly recognized that the duty to assist is not triggered until a "substantially complete application" is filed, and that because 38 U.S.C. §§ 5103 and 5103A did

not define this term, it was reasonable for VA to define it "so it could determine whether the duty has been triggered." *See PVA*, 345 F.3d at 1360. By the same token, this Court implicitly recognized that the filing of a claim is antecedent to the duty to assist, not the other way around.

We note that Public Law 112-154 amended 38 U.S.C. § 5103(a)(1) as it existed at the time of *PVA* by striking "[u]pon receipt of a complete or substantially complete application, the." HONORING AMERICA'S VETERANS AND CARING FOR CAMP LEJEUNE FAMILIES ACT OF 2012, Pub. L. 112-154 § 504, 126 Stat. *1165, at *1191 (Aug. 6, 2012). The first sentence of 38 U.S.C. § 5103 now reads: "[t]he Secretary shall provide to the claimant and the claimant's representative, if any, by the most effective means available, including electronic communication or notification in writing, notice of any information, and any medical or lay evidence not previously provided to the Secretary that is necessary to substantiate the claim." Obviously, this language still envisions the filing of a "claim" by a "claimant." While the specific statutory language that formed the predicate of this Court's decision in *PVA* has been changed, the need to define a key undefined statutory term ("claim") in order to specify when the duty to provide notice and assistance arises is just as salient here as it was in *PVA*. *See* 345 F.3d at 1360.

Further, Congress' purpose in removing the term "substantially complete application" from section 5103 was not to untether the duties to notify and assist from the filing of a claim for benefits. Congress desired to streamline the notice process through increased use of standard forms. A House Report accompanying Public Law 112-154 explained that the intent was to remove the requirement that notice be sent only after the claim was filed in order to allow VA to increase the use of standard forms in providing notice. H.R. Rep. 112-241 at *9 (Oct. 6, 2011) (amendment will allow "VA to put notice on new claims forms, as is currently done with the Department's 526-EZ form for Fully Developed Claims (FDC)."). *See also* JA364-65. The implicit recognition in *PVA* that the filing of a claim is antecedent to the activation of the duties to notify and assist is consonant with this Court's precedents more specifically dealing with the origination of claims, such as *Fleshman* and *Mansfield*. The statement in the VJRA legislative history, and *Hodge* and its progeny does not establish that the duty to develop the veteran's claim to its optimum transcends the antecedent requirement that there must first be a claim.

*Roberson* does not establish otherwise. In *Roberson*, this Court held that when a veteran "submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the 'identify the benefit sought' requirement of [prior] 3.155(a) is met and the VA

must consider TDIU." *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001). This Court explained that this was because the duty to develop a veteran's claim to its optimum required VA to "determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled as a claim for TDIU."

The final rule is consistent with *Roberson*. First of all, if this Court applied the final rule to the facts of *Roberson*, the result would be the same. The proposed rule explained that "it is VA's intent that a request for an increase accompanied by evidence of unemployability continue to constitute a claim for TDIU, but the claim for increase itself must be filed on a standard form. VA believes this would simplify and clarify the processing of TDIU claims, without affecting the substantive law governing TDIU." JA367. Similarly, the final rule clearly requires VA to consider potential entitlement to TDIU whenever that issue is reasonably raised by the evidence of record. JA15-16, 38. This is consistent with VA's explanation that TDIU, in and of itself, "is not a 'claim' but a rating that is provided in light of an individual's disabilities." JA15; *citing Rice v. Shinseki*, 22 Vet. App. 447, 452-54 (2009) ("[o]ur cases have been less than precise by simply adopting the term 'claim for TDIU'"); *accord Comer*, 552 F.3d at 1367 ("under *Roberson*, a claim to TDIU benefits is not a free-standing claim that must be pled

with specificity….”).[10] Under the final rule, VA must consider TDIU whenever it is raised by the evidence of record regardless of whether the claimant specifically requests it, just as it must consider a numerical disability.[11]

Second, nothing in *Roberson* or its progeny establishes that symptoms or conditions totally unrelated to the claim presented to VA for processing and adjudication constitute separate claims. *Roberson* does not establish that a claim for a knee disability must be treated as a claim for a hand disability when only the knee is identified by the claimant and there is no reasonable relationship between the two. The claimant in *Roberson* had filed a specific claim for psychiatric problems. 251 F.3d at 1380-81. The issue was not whether this claim should have been construed to encompass entirely separate medical conditions, but whether VA was obligated to consider a potential rating of TDIU for the disability identified when the evidence of record established potential entitlement for such a rating.

---

[10] Indeed, the Veterans Court in *Rice* articulated an understanding of the term “claim” consistent with the one we advance here, namely that each “claim” begins with a minimal identification of the symptom or condition for which compensation is sought. 22 Vet. App. at 452.

[11] Petitioners cite *Harris* for the proposition that *Roberson* is not limited to TDIU. Pet. Br. 54; *Harris v. Shinseki*, 704 F.3d 946, 948-49 (Fed. Cir. 2013). *Harris* held that the Board erred by not considering whether an agent orange registry exam constituted an informal claim, but doesn’t address whether VA must develop and adjudicate conditions flatly unrelated to the claim presented. *Id*. We acknowledge the principle best articulated in *Roberson* is about more than just TDIU: VA must consider the entire reasonable scope of the claim filed as informed by the evidence of record. The final rule is in accord.

Third, *Roberson* does not directly deal with the requirements applicable to initiation of a claim for benefits. Reading *Roberson* so broadly as to overcome any substantive or procedural requirements applicable to the initiation of a claim for benefits would have the effect of functionally overruling section 5101(a) which *Roberson* does not discuss or even cite. Such a reading would also imply that *Roberson* had the effect of silently overruling *Fleshman*, and would create at minimum a significant tension with *Mansfield* and *Jones*. *Fleshman*, 138 F.3d at 1431-32; *Mansfield*, 525 F.3d at 1317; *Jones*, 136 F.3d at 1299-1300. Despite the breadth of the statement, "all potential claims raised by the evidence," it is clear the *Roberson* Court did not understand itself to be articulating a rule that would categorically trump every other source of law in Title 38. Rather, the *Roberson* Court understood that the questions of whether a claim has been filed and what ratings a veteran might be eligible for are informed by the application of "all relevant laws and regulations." *Roberson*, 251 F.3d at 1384. *Szemraj* likewise supports the idea that the liberal construction of claims does not operate independently of the veteran identifying, at a high level of generality, an issue for VA to develop, consider, and adjudicate. *See Szemraj*, 357 F.3d at 1376 ("*Roberson* does not change the legal standard for determining whether the VA correctly applied its regulations to a veteran's claims. All *Roberson* requires is that the VA give a sympathetic reading *to the veteran's filings* to determine all claims

for recovery supported by a liberal construction *of those allegations*.") (emphasis added).

Fourth, while petitioner suggests that *Roberson* establishes that VA cannot require a veteran to specify, at a general level, the symptoms or conditions for which he is seeking compensation benefits, a wealth of case law establishing precisely the opposite makes clear *Roberson* cannot bear such weight. In *MacPhee v. Nicholson*, 459 F.3d 1323, 1326 (Fed. Cir. 2006), this Court considered whether medical records under (prior) 38 C.F.R. § 3.157(b)(1) effectively constitute informal claims. *Id*. at 1326. The appellant in *MacPhee* argued that medical records themselves can be an informal claim without first claiming service connection and benefits for the disability in question. *Id*. This Court determined that position was contrary to the plain language of the regulation, which made clear that a medical examination report only constituted an informal claim for an increase when service connection had already been established for that disability. *Id.* at 1326-27.

If medical evidence itself constitutes a freestanding claim for benefits for any disability potentially disclosed by the record, the position now urged by petitioner, then the *MacPhee* holding imposing a condition upon when medical records may constitute claims would have been contrary to law. Indeed, in *MacPhee,* the Court does not cite *Hodge* or *Roberson*, notwithstanding that

Mr. MacPhee had argued that "VA must give a sympathetic reading to a veteran's claim by determining all potential claims raised by the evidence[.]" *MacPhee*, 459 F.3d at 1327-28. *MacPhee* stands for the proposition that statutes and regulations specifically governing what kind of submission does and does not constitute a claim are not invalidated by VA's general duty to determine all potential claims, and construe a veteran's claims sympathetically. *Id*. VA's general duty to sympathetically construe a Veteran's claim and consider all evidence of record does not, in and of itself, *create claims*.[12] *Accord*, *v. Nicholson*, 20 Vet. App. 501, 503-504 (2006) ("mere existence of medical records generally cannot be construed as an informal claim; rather, there must be some intent by the claimant to apply for a benefit."); *Clemons v. Shinseki*, 23 Vet. App. 1, 7 (2009) ("[A] different result is reached when the evidence supports the service connection of a disability, but there is no indication the claimant was seeking benefits for that disability or the symptoms he was experiencing that are associated with that disability.").

While not directly on point, this Court's decision in *Jones* is strongly in accord. *Jones*, 136 F.3d at 1299-1300. In *Jones*, the Veterans Court found a valid claim based not upon an existing claim, but evidence in the claims file. This Court

[12] In *MacPhee*, the Court cited with approval *Brannon v. West*, 12 Vet. App. 32, 33 (1998), in which the Veterans Court held that the veteran had not raised a claim for the psychiatric condition because "the mere presence of medical evidence does not establish an intent on the part of the veteran to seek service connection for the psychiatric condition." *Id*. at 35. "The Board is not required to conjure up issues that were not raised by the [veteran]." *Id*.

reversed, holding that section 5121(a) had to be read in conjunction with section 5101(a), which "is a clause of general applicability and mandates that a claim must be filed in order for any type of benefit to accrue or be paid." *Jones*, 136 F.3d at 1299. This Court explicitly rejected the Veterans Court's view that requiring a claim would "impose a restriction on the statutory provision that accrued benefits may be based on evidence in the file at the date of the veteran's death." *Id*. at 1299-1300 (internal quotation marks omitted). In a footnote, the Court made clear that it reached this result without resort to *Chevron* deference, "given the plain meaning of the statutory provisions at issue." *Id*. at 1299-1300, n2.

3. The Agency Is Entitled To *Chevron* Deference

As the discussion above makes clear, the final rule does not alter the substantive scope of VA's duty to sympathetically construe a veteran's claim, and consider all issues reasonably raised by the evidence of record. The only change is that a claim triggering these duties must begin on a standard application form. However, in the event this Court disagrees, it should nevertheless deny the petition.

The Supreme Court has made clear that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for

agency discretion." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d. 820 (2005); *see also Eurodif S.A. v. U.S.*, F.3d 1275, 1276-77 (Fed. Cir. 2005). "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." 545 U.S. at 982-83. *Hodge* and *Roberson* do not hold that any statute unambiguously requires VA to consider and adjudicate evidence of symptoms totally unrelated to the claim presented to VA. *Hodge*, 155 F.3d at 1362-63; *Roberson*, 251 F.3d at 1384. As demonstrated above, *Hodge* and *Roberson* do not construe the text of any particular statute, but find their genesis in a statement from legislative history summarizing the general character of the system. On its face, *Roberson* is not *Chevron* step one authority, but this Court's holding in *Fleshman* and subsequent holdings in *Mansfield* and *MacPhee* even more clearly demonstrate that *Roberson* does not control the question of what constitutes a "claim" at *Chevron* step one. *Fleshman*, 138 F.3d at 1431-32; *Mansfield*, 525 F.3d at 1317; *MacPhee*, 459 F.3d at 1327-28.

Therefore, even in the event the Court finds some tension with *Roberson*, the final rule remains entitled to *Chevron* deference. The final rule establishes VA's interpretation of the undefined statutory term "claim," and establishes procedures for initiating a "claim," including what kind of submission is necessary to establish

a "claim." No statute directly addresses these issues, and *Roberson* and its progeny do not hold otherwise. The final rule reflects VA's interpretation, and implementation, of the relevant statutes. It also reflects VA's considered reconciliation of the sometimes competing fundamental interests in providing veterans with an accessible, informal, sympathetic and pro-claimant claims process, on the one hand, and efficiently producing an enormous volume of timely and accurate benefits decisions on the other. JA6.

4. Unclaimed Conditions

Attempting to establish that the requirement to identify the symptoms or conditions on which the benefit is based will lead to unjust results in individual cases, petitioners offer a hypothetical: a veteran files a claim for PTSD, but does not mention that he is a double amputee. *See* Pet. Br. at 18, 52. First, this hypothetical, as well as petitioners' entire approach to this rulemaking challenge, reveals a fundamental misunderstanding of the compensation claims system. Veterans do not approach the Veterans Benefits Administration (the VA entity that processes compensation claims) for any and every condition they may experience as they might their personal physician, but only for those disabilities that have a detrimental effect upon their employment. Accordingly, Congress has recognized that a veteran must file a claim for a disability in order to receive compensation.

In any event, as we have already established, the law has always required claimants to begin a claim by identifying the disability at a high level of generality before the final rule became effective. Accordingly, the potential for troublesome hypothetical fact patterns is, at minimum, no greater under the final rule than it was under prior regulations.

Second, the law makes it all but impossible for a service member with a clear disability of the type posited in this hypothetical to be discharged from service without either filing a claim for that disability, or deliberately choosing not to. 10 U.S.C. § 1218(a) provides:

> A member of an armed force may not be discharged or released from active duty because of physical disability until he – (1) has made a claim for compensation, pension, or hospitalization, to be filed with the Department of Veterans Affairs, or has refused to make such a claim; or (2) has signed a statement that his right to make such a claim has been explained to him, or has refused to sign such a statement.

This Court has held that this statute is a relevant provision of law that the board must consider in determining whether VA has obtained all pertinent records. *See McGee v. Peake*, 511 F.3d 1352, 1358 (Fed. Cir. 2008).

We note that section 1218(a) is consonant with our arguments above in that it plainly contemplates that the veteran or service member must file a claim for the disability in question before that disability will entitle the veteran to compensation. Even though section 1218(a) is primarily concerned with preventing a scenario where a disability with clear entitlement is not compensated due to the failure to

file a claim, it still plainly envisions that a claim must be filed. Congress easily could have provided that a claim is automatically established by operation of law whenever a service member is discharged because of physical disability. Instead, Congress recognized that filing a claim is an act of deliberate intent, and wrote a statute ensuring that the service member would either file a claim, or knowingly choose not to.

Third, the final rule requires VA adjudicators to consider all issues "reasonably within the scope" of the enumerated symptoms or conditions. While we expect this standard will be developed over time through judicial review of individual cases, it is far from obvious that a double amputation is factually and medically unrelated to a claim for PTSD.

Fourth, the fact that an unclaimed condition is not part of the claim presented to VA does not mean that entitlement is extinguished, to the extent otherwise available. Not only can the veteran file a new claim at any time, nothing in the final rule prohibits VA from soliciting claims from the veteran.

## CONCLUSION

For these reasons, we respectfully request that the Court deny the petition.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy
Assistant Attorney General

/s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 408
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0319
Fax: (202) 514-8624

Attorneys for Respondent

OF COUNSEL:

DAVID J. BARRANS
Assistant General Counsel

BRIAN D. GRIFFIN
Deputy Assistant
General Counsel
Department of Veterans Affairs
810 Vermont Ave., N.W.
Washington, D.C. 20420

June 17, 2015

# ADDENDUM

Index To Addendum

Department of Veterans Affairs Regulatory History
For 38 C.F.R. § 3.151 (1956), (1959) ……………………………1-8

38 CFR 3.151(a)

SL, Par 2
7/11/35

R&PR 1026
1/25/36

R&PR 1026(A)&(B)
revised 10/7/38

R&PR 1026(A)
revised 2/21/44

R&PR 1026(A)
revised 11/26/45

R&PR 1026(A)
revised 5/13/47

TB 8-207, Pars 1-4
4/15/52

VAR 1026(A)
revised 8/28/52

VAR 1026(A)
revised 8/21/56

38 CFR 3.151
revised 5/29/59 (TS 192)

38 CFR 3.151(a)
revised 5/29/59 (TS 733)

Veterans Administration
Washington 25, D. C.

VAR 1026 (A)

Eff. August 21, 1956

VA REGULATIONS

COMPENSATION AND PENSION--Transmittal Sheet 142

| Remove pages | Insert pages |
|---|---|
| 5-13R and 6-13R | 5-14R and 6-14R |
| 7-14R and 8-14R | 7-15R and 8-15R |
| | 8-15Ra |
| 97-10R and 98-10R | 97-11R and 98-11R |
| 151-2R and 152-2R | 151-3R and 152-3R |
| 155-R and 156-R | 155-2R and 156-2R |
| 157-3R and 158-3R | 157-4R and 158-4R |
| 158a-2R | [158a-3R] 159-4R and 160-4R |
| 159-3R and 160-3R | |
| 161-2R and 162-R | 161-3R and 162-2R |
| | 163 |

| Paragraphs revised | Paragraphs added | Paragraphs canceled |
|---|---|---|
| 1024 (B) | None | None |
| 1026 (A) | | |
| 2500 (B) | | |
| 2900 (A) | | |
| 2904 | | |
| 2905 (C), (D) | | |
| 2906 (A) | | |
| 2907 (A) | | |
| 2908 | | |
| 2909 (A) | | |
| 2910 (A), (B), (C), (E) | | |
| 2911 | | |
| 2913 | | |

## EXPLANATION

The purpose of the following comments on the changes included in these amendments to VA Regulations is to inform all concerned why these changes are being made. These comments are not regulatory.

The primary purpose of the amendments to VA Regulations 2900 through 2913 intermittently, is to provide that decisions of forfeiture rendered by the Central Committee on Waivers and Forfeitures in cases involving section 4, Public Law 144, 78th Congress, shall be subject to approval of the

VAR 1026 (A)

8-21-56



Director, Compensation and Pension Service, and the General Counsel, and that payments of compensation or pension shall not be suspended or discontinued prior to the date of decision of forfeiture. In addition, the designation "Alternate Chairman" is being changed to "Section Chairman."

1024 (B). The sole purpose of this amendment is to change the designation "Alternate Chairman" to "Section Chairman" and "Alternate Chairmen" to "Section Chairmen," consistent with the changes made in VA Regulations 2910 (A), (C), 2911 and 2913 (B)(1).

1026 (A). This paragraph is being amended to eliminate the requirement that a specific claim on VA Form 8-526a be filed for benefits under the laws enumerated. Par. 4 TB 8-123

2500 (B)(3). This paragraph is being amended to eliminate the requirement that specific claim on VA Form 8-577 be filed for benefits under the laws enumerated.

2900 (A). The change in this paragraph is editorial.

2904 and 2910 (B). These paragraphs are being amended by deletion of the words "and adjudicate," inasmuch as the adjudication function is not vested in the Committee on Waivers and Forfeitures.

2905 (C) and (D), 2913 (A), (B)(1) and (1)(c). These paragraphs are being revised to reflect current organizational nomenclature.

2906 (A), 2907 (A) and 2908. These paragraphs are being amended to provide that there shall be no suspension of payments in an active case involving section 4, Public Law 144, 78th Congress, until after a declaration of forfeiture.

2909 (A) and 2910 (E). These paragraphs are being revised to require the approval or disapproval by the Director, Compensation and Pension Service, and the General Counsel, of a declaration of forfeiture in cases considered under section 4, Public Law 144, 78th Congress.

2909 (A). This paragraph is being further amended to provide that where forfeiture has been properly declared, payments shall be suspended as of the date of the commission of the offense or, in section 4, Public Law 144, 78th Congress cases, as of the date of the decision of forfeiture or, where appropriate, date of last payment.

2910 (A). This paragraph is being amended by deletion of the word "administratively" so that the Central Committee on Waivers and Forfeitures will be a component part of the Compensation and Pension Service and not under the jurisdiction thereof solel for administrative purposes.

VAR 1026 (A) 8-21-56



1010. ADJUDICATION OF APPLICATIONS.--Applications for disability compensation or pension will be adjudicated in the appropriate regional office when the applicant's entire military or naval service was subsequent to July 15, 1903, or Coast Guard Service subsequent to January 27, 1915, except when jurisdiction is otherwise vested in the Veterans Benefits Office, D. C., under VA Regulation 2025. (Oct. 28, 1954)

## DELEGATION OF AUTHORITY

1024. DELEGATION OF AUTHORITY TO CERTAIN EMPLOYEES

(A) All Adjudication Officers, Assistant Adjudication Officers, Authorization Officers, employees designated to act as Authorization Officers, attorney reviewers, employees designated to act as attorney reviewers, and claims reimbursement authorizers, are hereby delegated authority to make findings and decisions thereon under the applicable laws, regulations, precedents, and instructions, as to rights of claimants to benefits under all laws administered by the VA governing the payment of monetary benefits to veterans and their dependents. (May 13, 1947)

(B) The Chairman, Central Committee on Waivers and Forfeitures, [Section] Chairman, Central Committee on Waivers and Forfeitures, Chairmen and [Section] Chairmen, Committee on Waivers, are hereby delegated authority to take final action in the waiver of the recovery of payments from any person pursuant to the provisions of title 38, sectio 3, 453, 507a, and 809, U. S. Code, as amended, subject to any limitations mposed by current regulations and instructions. (Aug. 21, 1956) 6/24/49

(C) The authority delegated by subparagraphs (A) and (B) of this paragraph, also the authority heretofore delegated to the designated employees individually, will terminate upon separation from service or change to a position not designated in subparagraphs (A) and (B) of this paragraph. (Oct. 28, 1954)

## FILING OF CLAIMS AND SUPPORTING EVIDENCE

1026. APPLICATION FOR BENEFITS

Became 1151, 1154

(A) A properly completed and executed VA Form 8-526, [ ] upon receipt by the VA, constitutes an application for benefits indicated below and will be adjudicated under the applicable laws:

VA Form 8-526, Veteran's Application for Compensation or Pension:

VA Form 8-526 is designated as an application for either compensation or pension, or both. It constitutes a formal claim for both benefits, and it is not necessary that the veteran

Par. 3, A.D.-. 8-16-55;

Par. 4, IB 8-123

subsequently file a separate claim for either. It is not required that the claim be processed or adjudicated for compensation and pension routinely and in all instances. Depending upon the manner of execution, that is, the items of information recorded on the form, it should be readily apparent whether the veteran is claiming either compensation or pension, or both benefits. If items 23, 24, and 25 are used, item 36 checked "No," and items 37 through 49 not used, the claim is for compensation and will be so adjudicated. If items 23, 24, and 25 are used, item 36 checked "Yes," and items 37 through 45 are used, the claim is also only for compensation but with an allegation of total disability. However, all disabilities, both service connected and nonservice connected will be evaluated and the greater benefit awarded. If items 23, 24 and 25 are used, item 36 checked "Yes," and items 37 through 49 used, the claim is for both compensation and pension. If items 23, 24, and 25 are not used, item 36 is checked "Yes," and items 37 through 49 used, the claim is for pension. [Any statement on VA Form 8-526, or in a separate communication, showing an intent to file a claim for additional disability resulting from training, hospitalization, medical or surgical treatment, or examination, filed within 2 years after the injury or aggravation was suffered, may be accepted as a claim] under section 31, Public Law 141, 73d Congress; section 12, Public Law 866, 76th Congress; section 2 (par. 4, pt. VII), Public Law 16, 78th Congress, [or Public Law 894, 81st Congress.] VAR 1121(B)

(Became 1151, 1154) See note on T.S. 142.

Under Executive Order 6017, February 7, 1933, and section 1500, Public Law 346, 78th Congress, as amended, diplomatic and consular officers of the Department of State are authorized to act as agents of the VA and therefore a formal claim filed in a foreign country will be considered as filed in the VA as of the date of receipt by the State Department representative. (Aug. 21, 1956) Revised as of 5-29-59 - Par. 4a, Inst. 1, ~~38 U.S.~~ Chs. 1, 11, 1?, 1?, ?, ?, ?1, ?, 61, ?1 Became VAR 1105 PL 83.857

(B) Applications for compensation, pension, or burial allowance, other than claims for pension under the General Law, predicated on service prior to April 21, 1898, need not be sworn to but shall be acceptable on the claimant's own certification, shown to have been made with knowledge of the penalties provided by law for false or fradulent claims, statements, etc. (Nov. 26, 1945) S.O. 4-23-46 (WHEAT)

1027. INFORMAL CLAIMS.--Any communication from or action by a claimant or his duly authorized representative, or some person acting as next friend of a claimant who is not sui juris, which clearly indicates an intent to apply for disability or death compensation or pension, may be considered an informal claim. To constitute an informal claim, the communication must specifically refer to and identify the particular benefit sought.

 3-13-51, 6-?-51, ?-?-51, 11-27-51, 12-16-52.

D-11; S.O. 3-28-40, 7-22-49, 11-9-49, 6-20-50; recorded decision 9-12-50; MF 511 (10-16-50); S.O. 4-9-51; G.C. 12-2-54, G.C. 6-11-59 - 12/4/? +9-12-61

Lt. 7/31/59, 3/3/?, 1-14-51 3-18-55, 6/20/58.

Veterans Administration
Washington 25, D.C.

38 CFR 3.151 Eff.: May 29, 1959

VA REGULATIONS

COMPENSATION AND PENSION--Transmittal Sheet 192

| Remove pages | Insert pages |
| --- | --- |
| See explanation on Compensation and Pension Transmittal Sheet 189. | 45-i<br>45 and 46<br>47 and 48<br>49 and 50, 51, 52, 53, 54 |

| Paragraphs revised | Paragraphs added | Paragraphs canceled |
| --- | --- | --- |
| None | 1150 (See Explanation on<br>1151 Transmittal Sheet<br>1152 189.)<br>1153<br>1154<br>1155<br>1156<br>1157<br>1158 | None |

## EXPLANATION

The purpose of the following comment on the changes included in this amendment of VA Regulations is to inform all concerned why these changes are being made. These comments are not regulatory.

Paragraph 1150. Restatement of VA Regulations 2500.1(B) and 2931(E) as to the obligation of the VA in respect to all forms. The enumeration of the various forms and the procedure thereto will be contained in VA Manual M21-1. VA Regulation 2500.1(B)(2) has been deleted because it is no longer applicable. VA Regulation 2931(E)(3) is now located under VA Regulation 1150(D) and procedural material thereon will be contained in M21-1. VA Regulations 2500.1(B)(3) and 2931(E)(2) are now located under VA Regulation 1150(C).

38 CFR 3-151 5-29-59



Paragraph 1151. Restatement of VA Regulation 1026. Procedural material relative to forms and procedure for rating claims has been deleted. It will be contained in M21-1. Subparagraph (A) as it pertains to disability resulting from treatment, etc., has been deleted here and is contained in VA Regulation 1154. Same has been amended to include "death." Subparagraph (A) pertaining to Executive Order No. 6017, etc., will now be found in VA Regulation 1108. Subparagraph (B) has been deleted because it is no longer applicable.

Paragraph 1152. Restatement of VA Regulations 2500.1(A) (1), (2), and (3) and 2931(D) (1), (2), and (3). Procedural material has been deleted.

Paragraph 1153. Restatement of VA Regulations 2500.1(A)(1) and 2931(C) insofar as they pertain only to this heading.

Paragraph 1154. Restatement of the next to the last sentence of VA Regulation 1026(A) and VA Regulation 2500.1(B)(3).

Paragraph 1155. Restatement of VA Regulation 1027; last sentence as it pertains to Executive Order No. 6017, etc., will be contained in VA Regulation 1108; restatement of VA Regulations 2500.1(C) and 2931(B).

Paragraph 1156. Restatement of VA Regulations 1201, 1205, and 2500.1(D) except reference to effective dates transferred to "Effective Dates" (VA Regulation 1400 series).

Paragraph 1157. Restatement of VA Regulations 1149 et 1213 and 1216 to combine the rules for pension and compensation. When a veteran files a formal claim for pension or compensation and one or the other is allowed, the receipt of any report from the VA, private physician, or State hospital, etc., will constitute an informal claim for increase. The same will hold true where the compensation claim has been given a 0 percent rating. The latter is a definite departure from the prohibition contained in VA Regulation 1213.

In all other cases the receipt of such reports will not operate as an informal claim unless a pension claim had been rated previously and either allowed or denied.

VA Regulation 1157 now includes Government hospitals other than VA and reports received therefrom will be accorded the same treatment as reports received from State hospitals, etc. In all cases for increase or to reopen, payment of benefits will depend upon the date of receipt of the evidence or the date entitlement arose, whichever is the later. The provisions of the former VA Regulation 1213 are to be followed no longer.

38 CFR 3.151 5-29-59



[CLAIMS]

[1150 (§ 3.150). FORMS TO BE FURNISHED 10c1(P)

G.C. 2-24-58; P. 105, Adj. Off. Conf., 1956

(A) Upon request made in person or in writing by any person applying for benefits under the laws administered by the VA, the appropriate application form will be furnished. (38 U.S.C. 3002)] (May 29, 1959)

[(B) Upon receipt of notice of death of a veteran, the appropriate application form will be forwarded for execution by or on behalf of any dependent who has apparent entitlement to pension, compensation, or dependency and indemnity compensation. If it is not indicated that any person would be entitled to such benefits, but there is payable an accrued benefit not paid during the veteran's lifetime, the appropriate application form will be forwarded to the preferred dependent. Notice of the time limit will be included in letters forwarding applications for benefits.] (May 29, 1959)

[(C) When disability or death is due to VA hospital treatment, training, medical or surgical treatment, or examination, a specific application for benefits will not be initiated.] (May 29, 1959)

[(D) When it is apparent that any child of record may be entitled to dependency and indemnity compensation in its own right due to termination of the widow's entitlement (e.g., by reason of death or marriage), any written statement showing intent to claim in behalf of such child will constitute sufficient application. In the absence of a written statement constituting a claim, the appropriate application form will be forwarded.] (May 29, 1959)

(Formerly VAR 2500.1(B) + 2931(E))

[Cross-Reference: VA Regulation 1109(B), FAILURE TO FURNISH CLAIM FORM OR NOTICE OF TIME LIMIT]

[1151 (§ 3.151). CLAIMS FOR DISABILITY BENEFITS.--A specific claim in the form prescribed by the Administrator must be filed in order for benefits to be paid to any individual under the laws administered by the VA. (38 U.S.C. 3001(a)) A claim by a veteran for compensation may be considered to be a claim for pension; and a claim by a veteran for pension may be considered to be a claim for compensation. The greater benefit will be awarded, unless the claimant specifically elects the lesser benefit.] (May 29, 1959)

(Formerly 1026)

[Cross-Reference: VA Regulation 1155(B), INFORMAL CLAIMS]

CERTIFICATION OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(B), I certify that the forgoing brief contains 13,941 words, excluding the parts of the brief exempted by the rule. The brief complies with the typeface requirements and type style requirements of FRAP 32(a)(5) and has been prepared using Times New Roman 14 point font, proportionally spaced typeface.

/s/ Martin F. Hockey, Jr.
Martin F. Hockey, Jr.
Counsel for Respondent

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 17th day of June, 2015, a copy of the foregoing Corrected Brief For Respondent was filed electronically.

☑ This filing was served electronically to all parties by operation of the Court's electronic filing system.

/s/ Martin F. Hockey, Jr.

☐ A copy of this filing was served via:

- ☐ hand delivery
- ☐ mail
- ☐ third-party commercial carrier for delivery within 3 days
- ☐ electronic means, with the written consent of the party being served

To the following address:

______________________________