**No. 15-7061**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

THE AMERICAN LEGION, AMVETS, THE MILITARY ORDER OF THE PURPLE HEART, VIETNAM VETERANS OF AMERICA, AND NATIONAL VETERANS LEGAL SERVICES PROGRAM,

*Petitioners*,

*v*.

ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,

*Respondent.*

On Petition For Review
Pursuant To 38 U.S.C. § 502

**REPLY BRIEF FOR PETITIONERS THE AMERICAN LEGION, AMVETS, THE MILITARY ORDER OF THE PURPLE HEART, VIETNAM VETERANS OF AMERICA, AND NATIONAL VETERANS LEGAL SERVICES PROGRAM**

BARTON F. STICHMAN
NATIONAL VETERANS LEGAL SERVICES PROGRAM
1600 K Street, N.W.
Suite 500
Washington, D.C. 20006
(202) 621-5677

CARL J. NICHOLS
FRANCESCO VALENTINI
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000

June 25, 2015

## CERTIFICATE OF INTEREST

Counsel for Petitioners The American Legion, AMVETS, The Military Order of the Purple Heart, Vietnam Veterans of America, and National Veterans Legal Services Program certifies:

1. The full name of every party or amicus represented by us is:

   The American Legion;
   AMVETS (American Veterans);
   The Military Order of the Purple Heart of the United States, Inc.;
   Vietnam Veterans of America, Inc.; and
   National Veterans Legal Services Program.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

   Not applicable

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

   None

4. The names of all law firms and the partners or associates who appeared for the party or amicus now represented by us in the trial court or agency or have or are expected to appear in this Court are:

   WILMER CUTLER PICKERING HALE AND DORR LLP: Carl J. Nichols and Francesco Valentini;

   NATIONAL VETERANS LEGAL SERVICES PROGRAM: Barton F. Stichman.

Dated: June 25, 2015

/s/ Francesco Valentini
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................ i

TABLE OF AUTHORITIES ........................................................ iv

INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 3

I. THE FINAL RULE'S EFFECTIVE-DATE REQUIREMENTS ARE CONTRARY TO STATUTE ........................................................ 3

A. Neither § 5101(a) Nor § 501(a)(2) Support The Final Rule ........................................................ 4

B. The 1957 Act Codified VA's Then-Existing Effective-Date Regulations ........................................................ 6

C. Section 5102 Forecloses The Final Rule ........................................................ 11

D. The Final Rule Also Fails At *Chevron* Step-One Because It Is Contrary To Congress' Legislative Purpose ........................................................ 13

II. THE FINAL RULE'S NEW EFFECTIVE-DATE REQUIREMENTS ARE ARBITRARY AND CAPRICIOUS ........................................................ 17

III. THE FINAL RULE'S NEW EFFECTIVE-DATE REQUIREMENTS ARE NOT A LOGICAL OUTGROWTH OF THE PROPOSED REGULATION ........................................................ 21

IV. THE FINAL RULE'S RESTRICTIONS ON POTENTIAL CLAIMS RAISED BY RECORD EVIDENCE IS CONTRARY TO LAW ........................................................ 23

CONCLUSION ........................................................ 30

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*American Iron & Steel Institute v. EPA*,
886 F.2d 390 (D.C. Cir. 1989)....................22

*Association of Private Sector Colleges & Universities v. Duncan*,
681 F.3d 427 (D.C. Cir. 2012)....................22

*Boggs v. Peake*,
520 F.3d 1330 (Fed. Cir. 2008)....................3, 4, 9, 10, 13

*Brown v. Gardner*,
513 U.S. 115 (1994)....................14, 15, 24

*Califano v. Jobst*,
434 U.S. 47 (1977)....................20

*Commissioner v. Engle*,
464 U.S. 206 (1984)....................8

*Comer v. Peake*,
552 F.3d 1362 (Fed. Cir. 2009)....................16, 24

*Commodity Futures Trading Commision v. Schor*,
478 U.S. 833 (1986)....................22

*CSX Transportation, Inc. v. Surface Transportation Board*,
584 F.3d 1076 (D.C. Cir. 2009)....................22

*DaimlerChrysler Corp. v. United States*,
361 F.3d 1378 (Fed. Cir. 2004)....................15

*Disabled American Veterans v. Gober ("DAV I")*,
234 F.3d 682 (Fed. Cir. 2000)....................14, 15

*Disabled American Veterans v. Secretary of Veterans Affairs*
*("DAV II")*, 327 F.3d 1339 (Fed. Cir. 2003)....................11, 14, 15

*Environmental Integrity Project v. EPA*,
425 F.3d 992 (D.C. Cir. 2005)....................................................................21

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)..........................................................................7, 9

*Fertilizer Institute v. EPA*,
935 F.2d 1303 (D.C. Cir. 1991)..................................................................22

*Fleshman v. West*,
138 F.3d 1429 (Fed. Cir. 1998) .........................................................5, 6, 27, 28

*GPX International Tire Corp. v. United States*,
666 F.3d 732 (Fed. Cir. 2011), *superseded by statute and reh'g granted*, 678 F.3d 1308 (Fed. Cir. 2012).........................................................7

*Haas v. Peake*,
525 F.3d 1168 (Fed. Cir. 2008) ........................................................14, 20, 21

*Harris v. Shinseki*,
704 F.3d 946 (Fed. Cir. 2013) ..............................................3, 25, 26, 27, 28

*Heino v. Shinseki*,
683 F.3d 1372 (Fed. Cir. 2012) ...............................................................14

*Helvering v. Reynolds*,
313 U.S. 428 (1941)..................................................................................9

*Helvering v. Wilshire Oil Co.*,
308 U.S. 90 (1939).....................................................................................8

*Henderson v. Shinseki*,
562 U.S. 428 (2011)...................................................8, 13, 14, 15, 25

*Hodge v. West*,
155 F.3d 1356 (Fed. Cir. 1998) ...........................................................20, 24

*International Union, United Mine Workers of America v. Mine Safety & Health Administration*, 626 F.3d 84 (D.C. Cir. 2010) ...............................21

*Jones v. West*,
136 F.3d 1296 (Fed. Cir. 1998) ....................................................6, 27, 28

*King v. Burwell*,
No. 14-114, __ S. Ct. __ (U.S. June 25, 2015).........................................5

*MacPhee v. Nicholson*,
459 F.3d 1323 (Fed. Cir. 2006) ........................................................27, 28

*Mansfield v. Peake*,
525 F.3d 1312 (Fed. Cir. 2008) ....................................................5, 27, 28

*Mathews v. Diaz*,
426 U.S. 67 (1976).......................................................................20

*McGee v. Shinseki*,
No. 10-0626, 2011 WL 2192624 (Vet. App. June 7, 2011)..........................29

*Moody v. Principi*,
360 F.3d 1306 (Fed. Cir. 2004) ..............................................................24

*Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983) .....................................17, 20

*National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs ("NOVA I")*, 260 F.3d 1365 (Fed. Cir. 2001)..........6, 14, 15

*National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs ("NOVA II")*, 669 F.3d 1340 (Fed. Cir. 2012)...................12

*Paralyzed Veterans of America v. Secretary of Veterans Affairs ("PVA II")*, 345 F.3d 1334 (Fed. Cir. 2003)...................................11, 12, 19

*Roberson v. Principi*,
251 F.3d 1378 (Fed. Cir. 2001) ..........................................23, 25, 26, 27, 28

*Sears v. Principi*,
349 F.3d 1326 (Fed. Cir. 2003) ..............................................................15

*Shinseki v. Sanders*,
556 U.S. 396 (2009)..............................................................16, 30

*Szemraj v. Principi*,
357 F.3d 1370 (Fed. Cir. 2004) ....................24, 25, 26

*United States Railroad Retirement Board v. Fritz*,
449 U.S. 166 (1980)....................20

*Weinberger v. Salfi*,
422 U.S. 749 (1975)....................20

**STATUTES AND REGULATIONS**

10 U.S.C. § 1218....................29

38 U.S.C
§ 501 ....................1, 4, 5, 11, 12, 13
§ 5101 ....................1, 4, 5, 6, 25
§ 5102 .................... 1, 2, 11, 12, 13, 17, 18, 19
§ 5103 ....................11, 12, 19, 26
§ 5103A....................17
§ 5107 ....................17, 29
§ 5121 ....................6

Pub. L. No. 85-56, 71 Stat. 83 (1957)....................9, 13

38 C.F.R.
§ 3.26 (1956)....................10
§ 3.27 (1956)....................10
§ 3.155 ....................13, 24
§ 3.157 ....................28
§ 3.212(a) (1956) ....................13

Standard Claims and Appeal Forms,
79 Fed. Reg. 57,660 (Sept. 25, 2014)....................21, 23, 24

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 85-279 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1214 ....................3, 7, 9

H.R. Rep. No. 100-963 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782 ....................25

## OTHER AUTHORITIES

Partrick, Robert, *More Than 1,800 Vets' Records Intentionally Destroyed or Misfiled by 2 Clerks*, Stars and Stripes (Jan. 30, 2014), *available at* http://www.stripes.com/news/veterans/more-than-1-800-vets-records-intentionally-destroyed-or-misfiled-by-2-clerks-1.264849 ....................................................................29

# INTRODUCTION

For over 80 years, Congress has developed the veterans benefit system against the bedrock understanding that veterans will not be deprived of their earned benefits simply because their initial request to the Department of Veterans Affairs ("VA")—often submitted without assistance—was not printed on a standard form. Congress codified that effective-date framework in the Veterans' Benefits Act of 1957 and then implicitly ratified it many times in the following decades. Congress' enactment of 38 U.S.C. § 5102, which treats any incomplete application as an effective-date placeholder, confirms this critical aspect of the veterans benefit system. And if there were any doubt about Congress' intent, it would be dispelled by Congress' steadfast adherence to the principle that the veterans system must remain as informal as possible.

VA's Final Rule is thus nothing more than an attempt to overrule Congress by administrative fiat, and VA's efforts to defend the Final Rule here lack merit. For example, VA attempts to rely on 38 U.S.C. §§ 5101(a) and 501(a)(2), but those provisions merely authorize VA to design "forms of application," § 501(a)(2), and require them as prerequisites before benefits are ultimately "paid," § 5101(a). They say or imply nothing about effective dates. Nor does VA provide any basis to disregard Congress' clear intent to codify VA's pre-1957 administrative practice in this important respect.

VA's brief also confirms that the Final Rule is arbitrary and capricious. VA's attempts to defend the Final Rule reduce largely to one point: If non-standard submissions preserve effective dates, VA will have to determine whether such submissions contain a request for a "specific" benefit. But there is no dispute that, under the statute, VA is independently required to review such submissions and determine whether they reflect an intent to apply for benefits. 38 U.S.C. § 5102(a). The extra step of determining whether the request is for a "specific" benefit is of VA's own making: Nothing in the statute requires VA to engage in that inquiry in determining effective dates. Indeed, VA's new intent-to-file form does not require applicants to provide that information. The Final Rule thus promotes "efficiency" only in one narrow and irrelevant sense: It improves only VA's *accounting* of its "backlog" by decreasing the number of "claims" considered pending. That is not a permissible consideration under the statute—much less one that can justify the Final Rule's significant burdens on the most vulnerable veterans, the elderly and the disabled.

Finally, VA fails entirely to justify the Final Rule's severe restrictions on the types of claims the agency will discern and develop when presented with a request for benefits. VA identifies no plausible basis to reconcile those restrictions with this Court's repeated holdings that VA "must generously construe a *pro se*

veteran's filing to discern *all possible claims* raised by the evidence." *E.g.*, *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013) (emphasis added).

## ARGUMENT

### I. THE FINAL RULE'S EFFECTIVE-DATE REQUIREMENTS ARE CONTRARY TO STATUTE

For over 80 years, the veterans benefit system has been built on the foundation that, while a veteran can be required to file a formal application as part of the process to obtain benefits, he[1] will not be deprived of his earned benefits simply because he initiated his claim through an informal (i.e., non-standardized) submission. Opening Brief ("OB") 23-24. VA does not dispute that this principle was well-established by the time Congress enacted the relevant effective-date provisions in the Veterans' Benefits Act of 1957. Nor does it deny that the 1957 Act was intended to "consolidate into one act all the administrative provisions relating to [veterans] benefits," including VA's then-existing effective-date regulations. *E.g.*, H.R. Rep. No. 85-279, at 2 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1214, 1214-1215. Further, VA does not dispute that informal placeholders have continued to govern effective-date determinations through at least a dozen amendments and reenactments between 1957 and 2014. OB 29-30 & n.9. Under this Court's precedent in *Boggs v. Peake*, this history establishes that

---

[1] This brief uses the pronoun "he" in referring to a veteran for simplicity. Petitioners salute the honorable service of countless women in our military.

Congress intended to codify VA's pre-1957 effective-date practice. 520 F.3d 1330, 1334-1335 (Fed. Cir. 2008) (rejecting VA's interpretation of a statutory provision, first codified in 1957, that was contrary to VA's pre-1957 construction). OB 25-28. None of VA's contrary arguments have merit.

### A. Neither § 5101(a) Nor § 501(a)(2) Support The Final Rule

VA contends that the "plain language" of §§ 5101(a) and 501(a)(2) authorizes VA to "specify requirements for the initiation of claims for benefits." Respondent Br. ("RB") 10. This is clearly wrong. The plain language of those provisions makes clear that they are irrelevant to the only issue presented: the effective-date implications of non-standard submissions.

Section 5101(a) states that "[a] specific claim in the form prescribed by the Secretary … must be filed in order for benefits to be *paid or furnished*." (Emphasis added). And § 501(a)(2) authorizes the Secretary to "prescribe … the forms of application by claimants." These provisions thus authorize VA to design application forms, § 501(a)(2), and to impose them as a prerequisite to benefits ultimately being "paid or furnished," § 5101(a), but say (or indeed imply) nothing about effective dates. VA has no response to this straightforward reading. Instead, VA asserts (at 12) that, when "[t]aken together," § 5101(a) and § 501(a)(2) somehow govern effective-date determinations. But VA provides no explanation for this counterintuitive contention. Whether "[t]aken together" or taken in

isolation, § 5101(a) and § 501(a)(2) merely permit VA to "prescribe … the forms of application," § 501(a)(2), and to impose them as prerequisites to benefits being "paid or furnished," § 5101(a).[2]

VA's reading of this Court's case law (at 12-14) is just as flawed. VA relies heavily on *Mansfield v. Peake*, 525 F.3d 1312 (Fed. Cir. 2008), but that case merely confirms that VA has authority under § 5101(a) to establish the requirements to perfect a compensable "claim." *Id.* at 1317 ("Congress has provided the VA with authority to establish the requirements for 'claims[.]'"). Petitioners do not contest that VA has such authority, but it has nothing to do with the *effective-date* question presented here: Whether the application is deemed "recei[ved]" under § 5110 when a non-standard submission is received, regardless of what is ultimately required to perfect a "claim."

VA next cites *Fleshman v. West*, 138 F.3d 1429 (Fed. Cir. 1998), but *Fleshman* confirms Petitioners' construction of § 5101(a). There, this Court held that a veteran who had omitted critical information from an application form *and then failed to perfect his application within one year as instructed* was not entitled to benefits. *Id.* at 1430-1432. That holding is entirely consistent with Petitioners' position that § 5101(a) addresses the requirements for eventual compensation—not

---

[2] Given the centrality of effective dates to the statutory scheme, "if Congress had wished to assign that question to [the] agency, it surely would have done so expressly." *King v. Burwell*, No. 14-114, Slip. op. 8 (U.S. June 25, 2015).

for preserving effective dates. Indeed, the *Fleshman* court carefully stated that the applicant must file a perfected claim "[i]n order to *receive benefits*"—without mentioning effective dates. *Id.* at 1431 (emphasis added). And, even at that late stage, VA cannot require "letter perfect" compliance. *Id.* at 1432.

Finally, VA's reliance (at 14) on *Jones v. West*, 136 F.3d 1296 (Fed. Cir. 1998), is even more misplaced. *Jones* held that a veteran's benefits are not considered "'due and unpaid'" at the time of his death—as required to qualify as "accrued benefits," 38 U.S.C. § 5121(a)—unless, by that time, the veteran has submitted a payable claim. 136 F.3d at 1299-1300. At most, *Jones* supports the notion that, absent compliance with VA's formal requirements under § 5101(a), benefits are not ready for payment. *But see National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs ("NOVA I")*, 260 F.3d 1365, 1377 n.12 (Fed. Cir. 2001) (limiting *Jones* and holding that § 5101(a) does not mean that a veteran must have a pending claim to be considered "entitled to receive" benefits under 38 U.S.C. § 1318(b)). *Jones* says nothing about when a claim *that is ultimately perfected* must be deemed to have been "recei[ved]" under § 5110.

### B. The 1957 Act Codified VA's Then-Existing Effective-Date Regulations

VA next invites this Court (at 15-18) to disregard 80-plus years of veterans benefit history as irrelevant in construing § 5110's effective-date provisions. In VA's view, it is irrelevant that VA has consistently given effect to informal

effective-date placeholders since at least the 1930s. OB 22-23. VA also dismisses the fact that Congress expressly elevated "all the administrative provisions" relating to veterans' benefits to statutory law in 1957[3] and then ratified VA's effective-date practice by leaving it unaltered through at least a dozen amendments and reenactments. OB 26-30. These arguments reflect a fundamental misapprehension of this Court's ratification doctrine.

1. There is no merit to VA's contention (at 15-18) that Congress can be held to have elevated an agency's practice to statutory law *only* when the agency is declaring itself without authority to act—regardless how longstanding the practice is and how many times Congress has reenacted the relevant provisions. Neither *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000), nor *GPX International Tire Corp. v. United States*, 666 F.3d 732 (Fed. Cir. 2011)—both decisions in which Congress was held to have codified the agency's position, as VA concedes (at 17-18)—mentioned the distinction VA now urges. Indeed, VA cannot cite a single case that endorses such a distinction.

This absence of support is not surprising. It makes no difference to Congress whether an agency takes a given position because it subjectively believes that it is *required*—as opposed to *permitted*—to do so. Congress will either agree with the agency's position (in which case it will leave it unaltered or codify it) or it

---

[3] H.R. Rep. No. 85-279 at 2, *reprinted in* 1957 U.S.C.C.A.N. at 1214-1215.

will disagree (in which case, over time, it can be expected to step in and abrogate it). VA's distinction, moreover, is inherently unworkable in the many instances in which an agency's views on whether a practice is required are unstated. That is especially true in veterans cases, where "'provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'" *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011). Here, there is no indication that, prior to this rulemaking, VA ever claimed authority to abrogate informal placeholders. The logical inference would be that, for decades, VA itself viewed them as *required*.

VA's reliance on *Helvering v. Wilshire Oil Co.*, 308 U.S. 90 (1939), is misplaced. To begin with, nothing in *Wilshire* supports VA's proposed distinction. More fundamentally, *Wilshire* simply confirms that "a regulation interpreting a provision of one act" does not "become[] frozen into another act *merely* by reenactment of that provision." *Id.* at 100 (emphasis added). The key qualifier is "merely," as the facts of *Wilshire* make clear. There, the respondent had invoked the congressional-ratification doctrine based on a regulation that had been effective for less than eight years before Congress' reenactment—as opposed to more than eight decades, as is the case here. *Id.* at 95-96.[4] Moreover, *Wilshire* turned largely on concerns unique to the tax laws at issue in that case. *Id.* at 101 (emphasizing

4 *Accord Commissioner v. Engle*, 464 U.S. 206, 224-225 (1984) (agency's interpretation foreclosed by "50 years" of judicial interpretations and reenactment).

the need to adjust to "changes in business practices and new conditions" in tax "statutory scheme"). Tellingly, in *Brown & Williamson*, the Supreme Court applied the ratification doctrine without reference to *Wilshire*.[5]

2. In any event, VA's theory cannot apply here because this case is not about *silent* ratification. In the 1957 Act, Congress made clear that it was codifying "all the administrative provisions relating to [veterans] benefits." H.R. Rep. No. 85-279 at 2, *reprinted in* 1957 U.S.C.C.A.N. at 1214-1215; *see* OB 8-11, 26-27. Congress' express statement—coupled with evidence of its meticulous attention to the Act's effective-date provisions, OB 27-29—makes this case indistinguishable from *Boggs*. 520 F.3d 1330. There, as here, this Court was interpreting a statutory provision initially codified in the 1957 Act. *Compare id.* at 1334, *with* OB 8-11, 26-27. There, as here, the 1957 Act made textual reference to the relevant agency practice but did not spell out the details of VA's construction at the time. *Compare Boggs*, 520 F.3d at 1334 ("same factual basis"), *with* Pub. L. No. 85-56, § 910(a)-(b), 71 Stat. 83, 119 (1957) (38 U.S.C. § 5110(a)-(b)(1)) ("date of receipt of application"). And there, as here, Congress subsequently left the relevant language unaltered for decades, even as it repeatedly reenacted and amended the relevant provisions in other respects. *Compare Boggs*, 520 F.3d at

5 *Helvering v. Reynolds*, 313 U.S. 428 (1941)—another tax case—involved a pattern similar to *Wilshire* and is distinguishable for the same reasons. *Id.* at 430-432.

1334-1335, *with* OB 29-30. This Court concluded—as it must here—that Congress had elevated the agency's pre-codification construction to statutory law.[6]

3. VA next speculates (at 19-21) that Congress must not have intended to codify VA's effective-date placeholder framework because the provisions in § 5110 reference "application[s]" but not "informal claims" and, in 1957, "informal claims" and "application[s]" were the subject of adjacent but separate regulations, 38 C.F.R. §§ 3.26, 3.27 (1956).[7]

This argument fails for a simple reason: It mistakenly assumes that the relevant statutory term in § 5110 is simply "application." In fact, the linchpin of effective-date determinations under § 5110 is the date of "*receipt of* application." *Id.* § 5110(a) (emphasis added); *see also id.* § 5110(b)(1) ("application … is received"). And both § 3.26 and § 3.27 were critical to the determination of when the application was deemed "recei[ved]." 38 U.S.C. § 5110(a)-(b); OB 28 (Congress' attention to seemingly slight difference between "application" and

---

[6] In a footnote, VA attempts to distinguish *Boggs* because, there, the statute used the same phrase as the pre-1957 regulation. RB 19 n.7. But, here, too, the pre-1957 regulations, 38 C.F.R. § 3.27 (1956), clearly construed the relevant phrase ("date of receipt of application"), which was codified in § 5110. OB 23-24. VA cites no case suggesting that, to codify existing agency practice, Congress must quote "magic words" contained in each relevant regulation.

[7] Sections § 3.26 and 3.27 were both part of the same subchapter ("Filing of Claims and Supporting Evidence"). OB Addendum A10-A11.

"receipt of application" in § 5110).[8] Thus, by enacting § 5110, Congress necessarily codified the agency's effective-date practice with respect to both formal and informal submissions.

### C. Section 5102 Forecloses The Final Rule

As Petitioners have explained, Congress' enactment of 38 U.S.C. § 5102—which accords applicants one year to perfect any "incomplete applications"—independently forecloses the Final Rule's elimination of informal effective-date placeholders. OB 30-34. None of VA's attempts to reconcile its position with § 5102 withstands scrutiny.

VA argues (at 21-22) that § 5102(c) should be interpreted as imposing only a negative prohibition on awarding benefits—not as reflecting Congress' intent to accord a one-year grace period to perfect applications. But this Court has already rejected VA's identical argument in the context of an analogously phrased provision of former § 5103. *Paralyzed Veterans of Am. v. Secretary of Veterans Affairs* ("*PVA II*"), 345 F.3d 1334, 1345 (Fed. Cir. 2003) (dismissing VA's "technical argument" and holding that former § 5103 was "clearly intended to provide claimants with one year to submit the requested evidence"); *see also Disabled Am. Veterans v. Secretary of Veterans Affairs* ("*DAV II*"), 327 F.3d 1339,

---

[8] Nor is there merit to VA's reliance (at 20-21) on the fact that, in 1957, Congress retained the provision now found in § 501(a)(2). As already explained, § 501(a)(2) does not say or imply anything about effective-date determinations.

1348 (Fed. Cir. 2003) (same); OB 32.[9] That Congress reenacted indistinguishable language in § 5102(c) after—and partially in response to—*PVA II* confirms the correctness of this Court's interpretation in that case. OB 33.

VA attempts to dismiss *PVA II* (at 23) on the ground that, there, the relevant regulation "potentially foreclosed" applicants from taking advantage of the full one-year grace period, while, here, VA's construction of § 5102(c) purportedly "does not foreclose anything clearly allowed by the statute." But that contention misses the key point: Applicants enjoyed a one-year grace period in *PVA II* precisely because, by enacting essentially the same language at issue here, Congress had "clearly intended to provide claimants with [the] one year" period. 345 F.3d at 1345.[10]

VA is likewise incorrect (at 24) in invoking deference to its interpretation of § 5102(c) under § 501(a)(2) and § 5110(a). As explained above, those provisions have nothing to do with effective dates. Moreover, neither § 5110(a) nor

---

[9] *National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs ("NOVA II")*, 669 F.3d 1340, 1345-1346 (Fed. Cir. 2012), is distinguishable because it arose in a different context (i.e., the evidentiary standards for PTSD claims) and only involved the converse of the question presented here. *Id.* (interpreting "may" as conferring discretion).

[10] It is also of no consequence that § 5102 is codified under subchapter I ("Claims") as opposed to subchapter II ("Effective Dates") of Chapter 51. RB 23. That was true in *PVA II* as well, which interpreted § 5103, another provision codified under subchapter I. In any event, the point is that § 5102 has clear effective-date *implications* which foreclose VA's position, not that § 5102 is itself labeled an effective-date provision.

§ 501(a)(a) nor *Chevron* accord VA discretion to interpret § 5102(c) in a way that this Court has already rejected in *PVA II* as contrary to Congress' clear intent.

Finally, there is no merit to VA's assertion that it can unilaterally moot the import of § 5102(c) by rewriting the phrase "incomplete applications" in § 5102(c) to mean only "incomplete application form[s]," 38 C.F.R. § 3.155(c). RB 25-26. Congress has used the phrase "[i]ncomplete applications" as a term of art since at least the 1957 Act. *E.g.*, Pub. L. No. 85-56, § 903(a), 71 Stat. at 119. There is no dispute that, at that time and thereafter, the term always included all "incomplete" submissions, including informal ones. *See* 38 C.F.R. § 3.212(a) (1956). The inference of ratification is thus at least as strong with respect to "incomplete" applications as it was with respect to the phrase "same factual basis" in *Boggs*.

### D. The Final Rule Also Fails At *Chevron* Step-One Because It Is Contrary To Congress' Legislative Purpose

VA's elimination of informal effective-date placeholders also contradicts Congress' overarching mandate that VA maintain a veterans benefit system that "'function[s] throughout with a high degree of informality and solicitude for the claimant.'" *Henderson*, 562 U.S. at 431; *see* OB 34-39. None of VA's arguments excuse its departure from this congressional directive.

1. VA suggests that it is entitled to deference under *Chevron* unless the *text* of the statute expressly resolves the question presented. RB 26-29. But the Supreme Court and this Court have both rejected this view: "In order to determine

whether a statute clearly shows the intent of Congress in a *Chevron* step-one analysis, [this Court] … employ[s] traditional tools of statutory construction and examine[s] 'the statute's text, *structure, and legislative history, and appl[ies] the relevant canons of interpretation*.'" *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012) (emphasis added); *see also Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("'[T]he meaning of statutory language, plain or not, depends on context.'").[11] The relevant tools thus include due consideration of Congress' legislative purpose—a core consideration that, in veterans cases, has been expounded in Supreme Court precedent, *see, e.g., Henderson*, 562 U.S. at 440-441, and reflected in the canon that "interpretative doubt is to be resolved in the veteran's favor," *DAV II*, 327 F.3d at 1344 (quoting *NOVA I*, 260 F.3d at 1378 (citing *Gardner*, 513 U.S. at 118)). *See also, e.g., Disabled Am. Veterans v. Gober ("DAV I")*, 234 F.3d 682, 691-692 (Fed. Cir. 2000) ("[M]odifying the traditional *Chevron* analysis is the doctrine governing the interpretation of ambiguities in veterans' benefit statutes[.]").

VA's attempt to create a special-deference rule that applies only to VA is without merit. VA dismisses as dicta (at 28) the Supreme Court's unambiguous endorsement, at *Chevron* step-one, of the "rule that interpretive doubt is to be resolved in the veteran's favor." *Gardner*, 513 U.S. at 117-118. But this Court

---

[11] *See also, e.g., Haas v. Peake*, 525 F.3d 1168, 1183 (Fed. Cir. 2008).

follows the Supreme Court's "explicit and carefully considered statements" even when they are technically "dicta." *DaimlerChrysler Corp. v. United States*, 361 F.3d 1378, 1385 n.3 (Fed. Cir. 2004). VA does not dispute that the Court's statements in *Gardner* were carefully considered. And, in any event, VA cannot ignore *this Court*'s decisions recognizing that *Gardner* applies at *Chevron* step-one. *See DAV II*, 327 F.3d at 1344; *NOVA I*, 260 F.3d at 1378; *DAV I*, 234 F.3d at 691-692. Furthermore, regardless of whether the *Gardner* canon is itself dispositive, VA cannot disregard Congress' mandate that the veteran system "'function throughout with a high degree of informality and solicitude for the claimant.'" *Henderson*, 562 U.S. at 431.

*Sears v. Principi*, 349 F.3d 1326 (Fed. Cir. 2003), is not to the contrary. *Sears* simply noted that Congress' pro-veteran mandate does not necessarily compel adoption of rules that "provide for a pro-claimant outcome *in every imaginable case*." *Id.* at 1331-1332 (emphasis added). Accordingly, *Sears* stressed that the regulation at issue "[did] not conflict with the spirit of the veterans' benefits scheme in any substantial way, if at all"; indeed, "[i]n the vast majority of cases, the regulation provide[d] veterans complete relief[.]" *Id.* at 1332. *Sears* does not give VA special license to ignore Congress' legislative purpose by adopting regulations that, as in this case, have the aggregate effect of transforming the benefit-adjudication process into a "trap for the unwary" for large

segments of the veteran population. *Comer v. Peake*, 552 F.3d 1362, 1369 (Fed. Cir. 2009).

2. VA's attempt to show that the Final Rule is consistent with Congress' "special solicitude for the veterans' cause," *Shinseki v. Sanders*, 556 U.S. 396, 412 (2009), is wholly unpersuasive.

VA repeatedly boasts about two aspects of the Final Rule: the option to file an intent-to-file form by telephone and the fact that the new form requires only identification of a "general benefit." *E.g.*, RB 29. But the question is not whether the Final Rule includes a couple of provisions that, in isolation, may make things easier for *some* veterans in *some* cases. The question is: How will the Final Rule affect the veteran population in the aggregate? Here, the answer is clear: For the vast segments of the veteran population who are elderly or disabled, learning about and complying with the formalities introduced by the Final Rule will be burdensome and result in lost benefits. *See* OB 37-39. Indeed, for all its rhetoric about the Final Rule requiring "as little as a phone call" (RB 30), VA has no response to the obvious fact that telephone submissions cannot help the many veterans who suffer from hearing loss, brain injury, or other debilitating disabilities that make telephone contact unrealistic or unreliable. OB 44.

Finally, contrary to VA's suggestion, the Final Rule does not become consistent with Congress' veteran-friendly purpose simply because it might

comply with *some* statutory requirements. RB 30 (citing compliance with 38 U.S.C. §§ 5103A, 5107(b)). If true, such compliance may remove *additional* bases for invalidating it. But it cannot mitigate the Final Rule's tendency to deprive veterans of their earned benefits by artificially postponing effective dates.

## II. THE FINAL RULE'S NEW EFFECTIVE-DATE REQUIREMENTS ARE ARBITRARY AND CAPRICIOUS

It is well-established that agency action is arbitrary and capricious if it fails to "articulate … a 'rational connection between the facts found and the choice made'" or "consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here, the sole purpose identified by the agency is administrative efficiency. RB 31-34. But, as Petitioners explained in their opening brief, the Final Rule bears no rational relation to that goal: Making standardized forms a *requirement* for effective-date purposes neither reduces the number of non-standard submissions nor saves the agency any work. OB 40-44.

VA does not contest these critical facts. It does not dispute that, if the intent-to-file form is optional, applicants who can reasonably be expected to learn about the option and use it will *choose* to do so. OB 41-42. It concedes that it is still required to "review all submissions … to comply with section 5102(a)" and "for their evidentiary value." RB 31. And it does not contest that, to substantiate its compliance, it must record in the veteran's file the basic information from any

submission seeking benefits. OB 41. Nonetheless, VA maintains that the Final Rule can be justified on efficiency grounds. Its explanations, however, are unpersuasive.

1. VA argues that, if non-standard submissions no longer preserve effective dates, there will be no need to "review[ them] again" when the effective date is established. RB 31-32. But no such review is necessary in any event. When a non-standard submission is received, VA must already review it, determine whether it reflects an intent to apply for benefits, § 5102, and record the veteran's basic information—information comparable to that collected through an intent-to-file form. RB 31; OB 41. Thus, to establish the benefits' effective date, VA need only refer back to the previously recorded information.

There is likewise no merit to VA's argument that accepting informal effective-date placeholders would require VA to "determine whether the [submission] constitute[s] an informal claim, and for which disability." RB 32. Nothing in the statute requires VA to make that determination, which, indeed, is not part of VA's new intent-to-file form. RB 5-6. VA can simply accord effective-date consequences to non-standard submissions when, as part of its

statutorily required review, it discerns a general "intent to claim or apply." 38 U.S.C. § 5102(a).[12]

VA further argues that standard forms permit VA to "virtually automate" the notice required by 38 U.S.C. § 5103(a) by printing it on the application forms. RB 33. But allowing informal effective-date placeholders does not affect that process. Rather, when VA furnishes the appropriate application forms in response to a non-standard submission, § 5102(a), those forms will contain the § 5103(a) notice—precisely as under current practice.

Finally, VA suggests that its assertions about efficiency are essentially unreviewable. RB 31. In fact, this Court has resoundingly rejected VA's efficiency arguments where, as here, they are unsupported by the administrative record. *PVA II*, 345 F.3d at 1346.

2. Once the flaws in VA's efficiency contentions are recognized, VA's brief is most notable for what it does *not* say: It does not point to any meaningful discussion in the rulemaking of the Final Rule's impact on veterans who are old, disabled, or impoverished. Instead, VA's only explanation for its failure to account for this problem, OB 37—or to consider case-by-case equitable

[12] Relatedly, VA asserts that data from standard forms is easier to manage because it can be "automatically extracted." RB 32. That is true but irrelevant. As noted, VA is independently required to review, respond, and record the relevant data to comply with § 5102(a). *Supra* pp. 17-18; RB 31-32.

exceptions, OB 45—is to assert that its new framework is *itself* an "equitable exception." RB 35-36. Such tautological statements cannot substitute for reasoned decisionmaking. *State Farm*, 463 U.S. at 43.

VA does claim that it can ignore the Final Rule's impact on elderly and disabled veterans because agencies are not required to "design around the least common denominator." RB 35-36. But the problem VA overlooked is not limited to a few isolated cases; it potentially affects the 9 million veterans who are 65 or older, the 5.5 million veterans who suffer from disabilities, and the 17% of disabled veterans under 65 years of age who live below the poverty line. OB 37-38. The magnitude of the population potentially penalized by the Final Rule easily distinguishes the cases of minor over- or under-inclusiveness cited by VA—cases that, in any event, involved the more deferential due process standard applicable to *legislative* classifications and did so in non-veteran contexts. RB 35-36 (citing cases involving retirement benefits under the Railroad Retirement Act (*Fritz*); medical benefits to recently admitted aliens (*Diaz*); and social security benefits (*Salfi* and *Jobst*)); *see Hodge v. West*, 155 F.3d 1356, 1361 (Fed. Cir. 1998) ("The [Veterans] court inexplicably borrowed a definition of materiality from an entirely different benefits scheme," "social security benefits").[13]

[13] *Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008)—the only veteran case cited by VA (at 36)—is readily distinguished. There, the Court unremarkably upheld a classification that limited a presumption of service connection for exposure to

## III. THE FINAL RULE'S NEW EFFECTIVE-DATE REQUIREMENTS ARE NOT A LOGICAL OUTGROWTH OF THE PROPOSED REGULATION

VA concedes that the intent-to-file "concept" adopted in the Final Rule, 79 Fed. Reg. 57,660, 57,664 (Sept. 25, 2014), reflects a "different … structure," RB 38, from anything VA had mentioned in the Proposed Rule. Nonetheless, VA maintains that the Final Rule is a logical outgrowth of the Proposed Rule. VA's contention rests on several misapprehensions of both the logical-outgrowth doctrine and the rulemaking record.

First, VA incorrectly contends that the logical-outgrowth doctrine invalidates only final rules that find "'no root'" in the agency's proposal. RB 37. The relevant standard, however, is significantly more demanding: "A final rule is a logical outgrowth of the proposed rule 'only if interested parties should have anticipated that the change was possible.'" *International Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94-95 (D.C. Cir. 2010). The cases on which VA relies (at 37) confirm this standard. *See Environmental Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005) (final rule cannot be "'surprisingly distant'" from proposal).

Second, final rules are not exempt from logical-outgrowth review just because the agency does not go "as far as originally proposed." RB 37-38.

---

herbicides during "service in Vietnam" to Vietnam veterans who had served on land. *Id.* at 1193.

Otherwise, agencies could insulate *any* final rule by simply proposing the most extreme changes imaginable and then promulgating a totally different but less extreme framework. "Such a rule would hardly promote the purposes of the APA's notice requirement." *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1082 (D.C. Cir. 2009) (rejecting standard that would have permitted agencies to avoid logical-outgrowth requirements by issuing strategically broad notices).[14]

Third, VA mischaracterizes the record when it suggests that two commenters "'anticipated'" that VA's "'change was possible.'" RB 38. In fact, those commenters simply made *their own* proposals, which shared some similarities with VA's eventual course. JA102, 282.[15] The law in such cases is clear: "'The [agency] must *itself* provide notice of a regulatory proposal.'" *Association of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 462 (D.C. Cir. 2012). "[I]t cannot bootstrap notice from a comment." *Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1312 (D.C. Cir. 1991).

---

[14] VA cites *American Iron & Steel Inst. v. EPA*, 886 F.2d 390, 400 (D.C. Cir. 1989), and *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986), but those cases simply recognize that agencies may properly decide, after issuing a proposal, to adhere to the status quo ante. Here, VA undisputedly promulgated a new framework.

[15] Notably, those two commenters did not suggest that the new standard forms be made *mandatory*—the Final Rule's key flaw. JA102, 282.

Under an appropriate understanding of the logical-outgrowth doctrine, the flaws in the rulemaking process are clear. In the Final Rule, VA adopted a new intent-to-file "concept"—complete with a new form and set of regulations. OB 47-48. Nothing in its Proposed Rule mentioned the possibility of such a framework, nor did VA solicit comments about its adoption. Indeed, VA has now conceded that the intent-to-file framework is "different" from VA's proposal not just in "terminology" but in actual "structure." RB 38. That VA's departure may have been intended to mitigate now-admitted flaws in its extreme proposal does not address the problem: Because the change was not foreseeable, interested parties were deprived of their ability to provide comments on, *inter alia*, the burdens imposed by the intent-to-file requirements on vulnerable veterans and the need for equitable exceptions.

## IV. THE FINAL RULE'S RESTRICTIONS ON POTENTIAL CLAIMS RAISED BY RECORD EVIDENCE IS CONTRARY TO LAW[16]

The Final Rule severely restricts the potential claims VA discerns and develops when reviewing veterans' requests for benefit. Under the Final Rule, VA considers benefits only for (1) the "claimed condition" specifically identified in the veteran's application; and (2) "complications" of that condition. 79 Fed. Reg. at

---

[16] VA claim that Petitioners' challenge under the *Roberson* line of precedent falls under the "arbitrary and capricious" rubric. RB 39, 53-55. In fact, because VA's duty to develop is statutory, *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001), Petitioners' challenge is a *Chevron* step-one issue.

57,696 (38 C.F.R. § 3.155(d)(2)); *id.* at 57,673. VA refuses to consider benefits for any other condition, no matter how obvious on the face of the veteran's record. As Petitioners explained, this approach violates VA's statutory duty to "give a sympathetic reading to the veteran's filings by 'determin[ing] *all potential claims* raised by the evidence[.]'" *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004) (quoting *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004)) (emphasis added).

None of VA's contrary contentions have merit, and indeed two of VA's primary arguments are entirely beside the point. *First*, VA strains to show that its pre-existing practice *already* failed to develop potential claims raised by the evidence. RB 40-41. But the age of an agency's practice "is no antidote to clear inconsistency with a statute." *Gardner*, 513 U.S. at 122. Thus, even if true, VA's assertions about its past practice would only confirm its obstinacy in refusing to give effect to its statutory duties under *Hodge*, *Robinson*, and later cases—a reluctance this Court has repeatedly noted. *See, e.g.*, *Comer*, 552 F.3d at 1367-1368 ("This is not the first time that [VA] has advanced an overly restrictive interpretation of" its duty to develop veterans' claims); OB 49-50. *Second*, it is irrelevant that VA now recognizes its duty to adjudicate *certain* implied benefits that are closely related to specifically claimed conditions—mostly, complications

and, in some cases, eligibility for total disability ("TDIU"). RB 41-42. VA cannot claim credit for complying with its statutory obligations *some of the time*.

VA also claims that its duty to develop potential claims (under *Roberson* and later decisions) arises only *after* a claim has been filed—an argument that is based primarily on a narrow reading of the legislative history of the Veterans Judicial Review Act ("VJRA"). RB 43-44 (citing H.R. Rep. No. 100-963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795 (VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits")). But this Court has conclusively rejected this argument, holding that VA "must generously construe a pro se veteran's filing to discern all *possible* claims raised by the evidence." *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013) (emphasis added); *see also Szemraj*, 357 F.3d at 1373 ("'potential'"); *Roberson*, 251 F.3d at 1384 (same).[17]

VA next returns to § 5101(a), asserting that its reference to a "specific claim" forecloses a duty to develop "all possible claims." RB 44-45. But, in addition to ignoring this Court's plain holdings, *see supra*, this contention misconstrues § 5101(a). As explained above, § 5101(a) provides only that a

---

[17] VA's narrow reading also conflicts with Congress' overarching purpose that the system "'function throughout with a high degree of informality and solicitude for the claimant.'" *Henderson*, 562 U.S. at 431; *see also* OB 6-8, 34-39; *supra* pp. 13-17.

"specific claim … must be filed *in order for benefits to be paid*[.]" (Emphasis added); *see supra* pp. 4-6. It says nothing about which claims must be discerned and developed with the applicant.

VA's reliance on § 5103 fares no better. RB 45-47. Section 5103 requires VA to assist applicants in providing *evidence* for their claims. *Roberson* and later cases recognize a related but separate duty to *construe* applicants' submissions broadly and sympathetically. *Supra* p. 24. Thus, even assuming VA's interpretation of § 5103 (at 46-47) is correct, there would be no tension in requiring VA to discern "all *possible* claims raised by the evidence" from the time a request for disability benefits is made, *Harris*, 704 F.3d at 948 (emphasis added), while activating the duty to assist with *evidence* only when a specific condition is identified.

VA's other attempts to downplay the *Roberson* line of precedent are equally unpersuasive. VA observes (at 48-49) that the Final Rule would not alter the outcome of *Roberson* because VA now recognizes that TDIU (the benefit at issue in *Roberson*) is deemed raised when supported by the record. But this Court has made clear that *Roberson* "is not limited to its particular facts," *Szemraj*, 357 F.3d at 1373, and has applied its holding to claims that do not involve TDIU, *see Harris*, 704 F.3d at 948-949. Indeed, VA itself now concedes that *Roberson*

applies to "more than just TDIU." RB 49 n.10 (conceding VA must consider "the entire reasonable scope of the claim filed as informed by the evidence of record").

VA similarly contends that *Roberson* applies only to claims connected to specifically identified conditions, assertedly because in *Roberson* the claimant had "filed a specific claim" (RB 49), and that *Roberson* does not "directly deal" with the requirements applicable at the claim-initiation stage (RB 50). But while these may be fair descriptions of the facts in *Roberson*, they again misapprehend the scope of this Court's subsequent decisions. *Harris* illustrates the point. There, the Court remanded the denial of an earlier effective date with instructions to apply *Roberson* to Harris' *initial submission*—a submission in which Harris had not specified that he was seeking disability benefits for the condition at issue. 704 F.3d at 949 (condition noted in examination record, but no specific request by applicant for disability benefits for that condition).

VA also suggests that reading *Roberson* and later decisions for what they plainly establish—i.e., that, in reviewing requests for benefits, VA must discern all claims raised by the evidence—would cause "tension" with other decisions. RB 50 (citing *Fleshman*, *Mansfield*, and *Jones*), 51-52 (citing *MacPhee v. Nicholson*, 459 F.3d 1323 (Fed. Cir. 2006)), 52-53 (citing *Jones*). These concerns are baseless. At most, *Fleshman*, *Mansfield*, and *Jones* confirm that VA can require veterans to perfect their claim with the required specificity before those claims become

payable. *Supra* pp. 5-6. Nothing in those decisions implies any limitation on VA's statutory duty to "discern all possible claims raised by the evidence," *Harris*, 704 F.3d at 948, when presented with a benefits request at the outset of the process.[18]

*MacPhee* is even farther afield. There, the applicant argued that his medical records could give rise to a claim for an increase of preexisting benefits under former 38 C.F.R. § 3.157, even though he had never filed an initial claim for the relevant medical condition. The Court held that former § 3.157—which treated medical records as automatic claims for increase of existing benefits—applied only where "service connection has already been established for the disability." 459 F.3d at 1327-1328. That holding does not shed light on the question presented here: Whether, in adjudicating an initial request for benefits, VA must discern all conditions raised by the evidence. Indeed, there is every reason to treat the two scenarios differently. Because MacPhee did not have a pending request for benefits when the relevant medical reports were generated, 459 F.3d at 1326, VA had no reason to comprehensively review his preexisting record—beyond confirming existing benefits and previously denied claims. The opposite is true when the veteran *does* express an intent to apply for benefits; then, VA *is* required

[18] Moreover, *Fleshman*, *Mansfield* and *Jones* all predated *Harris*, and *Fleshman* and *Jones* even predated *Roberson*.

to "consider all information and lay and medical evidence of record." 38 U.S.C. § 5107(b).

Finally, attempting to rebut a hypothetical proposed by Petitioners, VA disputes that the Final Rule is so draconian as to *necessarily* penalize a veteran who files a claim for PTSD but fails to mention his combat-related double amputation. RB 55-56. In its main response, VA claims that such an outcome is "all but impossible" because a service member may not be discharged for disability unless he is advised of his rights to file a claim. RB 56 (citing 10 U.S.C. § 1218(a)). But VA greatly overstates the safeguards provided by § 1218(a). Well-documented lapses in recordkeeping can complicate even basic attempts to verify compliance with § 1218(a). *See, e.g.*, Partrick, *More Than 1,800 Vets' Records Intentionally Destroyed or Misfiled by 2 Clerks*, Stars and Stripes (Jan. 30, 2014). And, even when the service records are complete, confirming actual compliance with § 1218(a) can present the insurmountable challenges inherent in proving a negative—i.e., that the veteran did *not* decline to file a claim at the time of discharge. *See, e.g.*, *McGee v. Shinseki*, No. 10-0626, 2011 WL 2192624, at *3-4 (Vet. App. June 7, 2011).

More fundamentally, § 1218(a) does not address countless equally troubling scenarios—for example, where a service person who is discharged as a result of a combat-related physical injury files a claim for that disability but fails to mention

unrelated service-connected psychiatric problems. VA now claims it is not obligated to ensure such a veteran receives his earned benefits—even if the psychiatric problems are obvious on the face of the record. Congress' "special solicitude for the veterans' cause," *Sanders*, 556 U.S. at 412, dictates otherwise.

## CONCLUSION

The Final Rule should be set aside.

June 25, 2015

Respectfully submitted,

/s/ Francesco Valentini

CARL J. NICHOLS
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com

BARTON F. STICHMAN
NATIONAL VETERANS LEGAL SERVICES PROGRAM
1600 K Street, N.W.
Suite 500
Washington, D.C. 20006
Tel.: (202) 621-5677
Fax: (202) 328-0063

## CERTIFICATE OF SERVICE

I certify that on June 25, 2015, I filed the foregoing with the United States Court of Appeals for the Federal Circuit via the Court's CM/ECF system, which will send notice of the filing to all registered CM/ECF users.

/s/ Francesco Valentini
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com

## CERTIFICATE OF COMPLIANCE

Counsel for Petitioners hereby certifies that:

1. The brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, exclusive of the exempted portions, it contains 6,999 words as counted by the word processing program used to prepare the brief; and

2. The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Office Word 2010 in proportionally spaced typeface: Times New Roman, font size 14.

June 25, 2015

/s/ Francesco Valentini
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
francesco.valentini@wilmerhale.com